**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GWG Holdings, Inc., *et al.*,[1] | ) ) ) | Case No. 22-90032 (MI) |
| Debtors. | ) ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE PAYMENT OF
<u>CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF</u>**

> **Emergency relief has been requested. Relief is requested not later than 3:30 p.m. on Thursday, April 21, 2022. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on Thursday, April 21, 2022, at 3:30 p.m. (prevailing Central Time) in Courtroom 404, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); and GWG Life USA, LLC (5538). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' proposed claims and noticing agent: https://donlinrecano.com/gwg.

> **name, complete the required fields and click "Submit" to complete your appearance.**

GWG Holdings, Inc. ("GWGH") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, collectively, "GWG" or the "Company")[2] respectfully state as follows in support of this motion (this "Motion"):

## Relief Requested

1.  The Debtors seek entry of interim and final orders, substantially in the forms attached hereto (the "Interim Order" and "Final Order," respectively): (a) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, up to $125,000 (on an interim basis) (the "Interim Amount") and up to $250,000 (on a final basis, inclusive of the interim amount) (the "Final Amount") of undisputed, liquidated, prepetition amounts owing on account of Critical Vendors (as defined herein); and (b) granting related relief.  In further support of this Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## Jurisdiction and Venue

2.  The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are sections 105(a), 363, and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules

---

[2] For the avoidance of doubt, the definitions of "GWG" and "Company" do not include non-affiliated entities The Beneficient Company Group L.P., FOXO Technologies, Inc., or their respective direct and indirect subsidiaries.

of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5. On April 20, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that the Chapter 11 Cases be jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

6. The Company is a financial services firm with two principal types of assets: (i) equity interests in independent, non-affiliated entities that operate in the alternative assets and epigenetics spaces; and (ii) secondary life insurance assets, comprised of a portfolio of near-duration, intermediate-duration, and long-duration life insurance policies (each a "Policy" and collectively, the "Policy Portfolio"). A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Chapter 11 Cases, are set forth in greater detail in the *Declaration of Timothy Evans, Chief Financial Officer of GWG Holdings, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[3] filed contemporaneously herewith. In further support of this Motion, the Debtors rely upon and incorporate by reference herein the First Day Declaration.

---

[3] Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

**Obligations to Be Paid**

7. The Debtors seek authority, but not direction, to pay any accrued and outstanding amounts due pursuant to the prepetition Critical Vendor Claims (as defined herein) and to continue to honor the Critical Vendor Claims in the ordinary course of business on a postpetition basis.

8. In the ordinary course of business, the Debtors utilize critical services provided at competitive prices by a limited number of specialized vendors and, in many instances, could not operate effectively without access to the services provided by certain of these parties (collectively, the "Critical Vendors"). The Debtors are not able to easily switch service providers on short notice and could potentially face significant risks to their operations if prepetition amounts owed to the Critical Vendors (collectively, the "Critical Vendor Claims") could not be paid.[4]

9. The Debtors rely upon the Critical Vendors for a variety of specialized services that are essential to the operations of the Debtors. For example, a number of the Critical Vendors provide services relating to the evaluation, monitoring, and servicing of the Debtors' Policy Portfolio—the core of the value held and generated by the Debtors. The services provided by certain of these Critical Vendors are highly specialized and enable the Debtors to value the Policy Portfolio and project cash flows, both of which are critical not just to the Debtors' business but to the progress of these Chapter 11 Cases as well. Other Critical Vendors provide various administrative support services to the Debtors, including software and technology platforms, that are utilized daily in the operations and administration of the Debtors, without which the transition into and administration of these Chapter 11 Cases would be needlessly turbulent. In other words,

---

[4] The Debtors do not believe that they have any critical suppliers of physical goods, lien claimants, 503(b)(9) claimants, or other classes of claimants with respect to which a chapter 11 debtor would typically request emergency payment of prepetition amounts. Nevertheless, out of an abundance of caution, "Critical Vendors" and "Critical Vendor Claims" shall include any such claimants and their prepetition claims, respectively, in the event the Debtors identify any such claimants and claims.

disruption of the services provided by the Critical Vendors would not only affect the Debtors and their ability to manage these Chapter 11 Cases, but could impair the ability of creditors and other interested parties to realize the maximum available value from the Debtors' estates.

10.     The Debtors have identified a limited number of Critical Vendors (fewer than 30) holding nearly $4,000,000 in potential Critical Vendor Claims.[5]  The Debtors seek authority to pay up to the Interim Amount pursuant to the Interim Order, and up to the Final Amount following entry of the Final Order, subject to the terms and conditions set forth herein.  These amounts represent a tiny fraction of the Company's more than $2 billion in funded debt, and are one of the smallest line-items contemplated to be paid under the Debtors' postpetition financing facility.  Accordingly, while the requested payments to the Critical Vendors will have a negligible impact on the Debtors' finances and any recoveries ultimately obtained by other creditors of the Debtors, nonpayment, or even a delay in payment, of the Critical Vendors could have a significant adverse impact on the Debtors' business and its ability to navigate these Chapter 11 Cases.

11.     The Debtors seek authority to pay the Critical Vendors only up to the Interim Amount and Final Amount, as applicable, and only to the extent necessary to avoid detrimental disruption to the Debtors' business, as determined in the Debtors' discretion in the exercise of the Debtors' business judgment.  In light of the limited resources available for the payment of Critical Vendors, as well as the requirements incident to payment thereof, not all vendors that fall into the service categories described above are expected to be paid in full on account of their prepetition claims pursuant to this Motion.

---

[5]   Due to the timing of invoicing and other factors, this amount is merely an estimate of the amounts of prepetition services from Critical Vendors outstanding as of the Petition Date.

12.     In light of the above, the Debtors seek entry of the Interim Order and Final Order granting them the authority, in their sole discretion and business judgment, to make payments on account of the Critical Vendor Claims in an amount not to exceed the Interim Amount and Final Amount, as applicable, which amounts represent the Debtors' best estimate as to what amounts must and can be paid to Critical Vendors to continue the uninterrupted provision of critical services.

13.     The Debtors further request that the Court grant the Debtors the authority to allocate the foregoing amounts at their discretion, without prejudice to the right to seek additional relief, subject to an agreement to receive terms consistent with the Customary Terms (as defined below) from each Critical Vendor receiving payment hereunder.

## Determination of Critical Vendors

14.     To determine the list of Critical Vendors, the Debtors, with the assistance of their advisors, reviewed their books and records, consulted with employees, reviewed pertinent contracts, and analyzed applicable laws and historical practices.  Specifically, in identifying the Critical Vendors, the Debtors examined each of their service-provider relationships while considering, among other things: (1) whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms; (2) whether alternative service providers are available that can provide replacement services on comparable or better terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto; (3) the degree to which any transition costs would exceed the amount of a service provider's prepetition claim; (4) whether the Debtors' inability to pay all or part of a service provider's prepetition claim could trigger financial distress for such service provider; and (5) the likelihood that a temporary disruption in the service provider's relationship with the Debtors could be

remedied through the use of the tools available in these chapter 11 case.  Indeed, the Debtors have narrowly tailored the list of potential Critical Vendors to fewer than 30 vendors.[6]

15.     In addition to the foregoing factors, the Debtors and their advisors evaluated the strength of each service provider relationship, each service provider's familiarity with the chapter 11 process, and the extent to which each service provider's prepetition claims could be satisfied elsewhere in the chapter 11 process.  The Debtors believe this deliberative process justifies the limited relief requested herein.

### Terms Agreements

16.     In exchange for the payment of prepetition Critical Vendor Claims, the Debtors propose that Critical Vendors whose claims are paid under the authority requested herein also be required to continue providing services to the Debtors, and to provide these services on Customary Terms for at least one year following the date of the agreement (a "Terms Agreement").  "Customary Terms" means (i) the most favorable terms, practices, and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, and other applicable terms and programs), in effect between the Critical Vendor and the Debtors during the 180 days preceding the Petition Date, or (ii) such other terms favorable to the Debtors as the Debtors and the Critical Vendor may mutually agree upon.

17.     If, following receipt of payment on its Critical Vendor Claim, a Critical Vendor refuses to provide continuing services to the Debtors, or otherwise fails to comply with the Terms Agreement, the Debtors seek authorization, but not direction, to, without further order of the Court, declare (a) that the Terms Agreement is terminated, and/or (b) that any payments made to the

---

[6]  For the avoidance of doubt, this Motion does *not* seek this Court's authorization make any payment directly or indirectly to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider, of the Debtors.

Critical Vendor on account of its Critical Vendor Claim be deemed to have been made on account of any then-outstanding postpetition claims of such Critical Vendor.  In such event, the Debtors propose that a Critical Vendor be required immediately to repay to the Debtors any payment made to it on account of its Critical Vendor Claim to the extent that payments on account of such Critical Vendor Claim exceed any then-outstanding postpetition claims of such Critical Vendor without giving effect to any rights of setoff claims, provision for payment of reclamation or Bankruptcy Code section 503(b)(9) claims, or otherwise.

18. The Debtors further propose that any Terms Agreement terminated as a result of a Critical Vendor's refusal to comply with the terms thereof may be reinstated if (i) such determination is subsequently reversed by the Court after notice and a hearing following a motion by the Critical Vendor, for good cause shown, on the grounds that the determination was materially incorrect; (ii) the underlying default under the Terms Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor that a default had occurred; or (iii) the Debtors, in their sole discretion, reach a favorable alternative agreement with the Critical Vendor.

19. In light of the small number of identified potential Critical Vendors, the limited payment amounts requested relative to the size of the Debtors' assets and liabilities, and the limited amount of DIP financing available for payment of professional fees, the Debtors believe that it is essential to have the flexibility to determine, in their discretion (including any cost-benefit analysis), how to resolve disputes with a Critical Vendor as to any Terms Agreement.  It may not be in the best interests of the Debtors, their estates, nor their creditors, were the Debtors forced to expend significant sums to litigate small-dollar disputes in front of the Court.

**Basis for Relief**

**I.    The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

20.    Courts in the Fifth Circuit and others have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Scotia Dev., LLC*, No. 07-20027, 2007 WL 2788840, at *2 (Bankr. S.D. Tex. Sept. 21, 2007) (discussing factors to be considered in determining whether to allow "critical vendor" payments); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

21.    Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an

operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497). Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor-in-possession to pay prepetition claims); *In re CEI Roofing, Inc.*, 315 B.R. at 56 (finding that "[b]ecause Congress has specifically provided that prepetition wage claims up to a certain amount per claim be elevated to priority status under § 503(1)(3)," the court's job is easier when it considers approval of such prepetition claims); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003). The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g.*, *In re CoServ*, *L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use section 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

22. Failure to pay, or even a short delay in payment of, the Critical Vendor Claims could have severe consequences for the Debtors' business operations. Based on these potentially value-destroying consequences, as discussed above, the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, maximizes the value of their estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

**II.     The Court Should Confirm that Services Provided to the Debtors on a Postpetition Basis in Connection With Prepetition Arrangements Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized.**

23.     Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition provision of services, including services requested prepetition, are in fact administrative expense priority claims because they benefit the estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority). Thus, the granting of the relief sought herein with respect to any services provided to the Debtors on a postpetition basis will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted and will not prejudice any other party in interest.

24.     Absent such relief, however, the Debtors may be required to expend substantial time and effort renegotiating with existing service providers to provide such service providers with assurance of such administrative priority.  The attendant disruption to the continuous and timely provision of critical services to the Debtors could result in significant disruptions to the Debtors' business operations and require the incurrence of additional expenditures for the purpose of obtaining substitute service providers, all to the detriment of the Debtors and their creditors. The Court should confirm the administrative expense priority status of any services provided to the Debtors on a postpetition basis in connection with prepetition arrangements and should authorize the Debtors to pay any related amounts in the ordinary course of business.

### Emergency Consideration

25.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the

commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, authorizing the Debtors to pay the Critical Vendor Claims up to the Authorized Amounts and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' business, and any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  The failure to receive the requested relief during the first 25 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  The Debtors have satisfied both (a) the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and (b) the requirements of Bankruptcy Local Rule 9013-1(i) and request that the Court approve the relief requested in this Motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

26. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

27. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an

administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

28.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rule 4001, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) counsel to the DIP lender; (f) counsel to CLMG Corp. and LNV Corporation; (g) counsel to National Founders LP; (h) counsel to Bank of Utah, in its capacity as indenture trustee for the Bonds; (i) counsel to the plaintiffs in the Putative Securities Class Action Suit; (j) counsel to the plaintiffs in the California Collection Suit; (k) the U.S. Securities and Exchange Commission;  (l) the Attorney General of each state in which the Debtors conduct business; and (m) any party that

has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court enter the Interim Order and Final Order granting the relief requested in this Motion and grant such other and further relief as is appropriate under the circumstances.

Houston, Texas
April 20, 2022

Respectfully Submitted,

*/s/ Charles S. Kelley*
**MAYER BROWN LLP**

| | |
|---|---|
| Charles S. Kelley (TX Bar No. 11199580)<br>700 Louisiana Street, Suite 3400<br>Houston, TX 77002-2730<br>Telephone:  (713) 238-3000<br>Email:  ckelley@mayerbrown.com | Kristhy M. Peguero (TX Bar No. 24102776)<br>Matthew D. Cavenaugh (TX Bar No. 24062656)<br>**JACKSON WALKER LLP**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Telephone:  (713) 752-4200<br>Facsimile:  (713) 752-4221<br>Email:  kpeguero@jw.com<br>  mcavenaugh@jw.com |

-and-

Thomas S. Kiriakos (*pro hac vice* pending)
Louis S. Chiappetta (*pro hac vice* pending)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 701-0600
Email:  tkiriakos@mayerbrown.com
  lchiappetta@mayerbrown.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

-and-

Adam C. Paul (*pro hac vice* pending)
Lucy F. Kweskin (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:  (212) 506-2500
Email:  apaul@mayerbrown.com
  lkweskin@mayerbrown.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Charles S. Kelley*

**Certificate of Service**

I certify that on April 20, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles S. Kelley*