**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GWG Holdings, Inc. *et al.*,[1] | ) ) | Case No. 22-90032 (MI) |
| Debtors. | ) ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED
INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS
RELATED THERETO AND (B) RENEW, AMEND, SUPPLEMENT, EXTEND,
<u>OR PURCHASE INSURANCE POLICIES AND (II) GRANTING RELATED RELIEF</u>**

> **Emergency relief has been requested. Relief is requested not later than 3:30 p.m. on Thursday, April 21, 2022. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on Thursday, April 21, 2022, at 3:30 p.m. (prevailing Central Time) in Courtroom 404, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); and GWG Life USA, LLC (5538). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' proposed claims and noticing agent: https://donlinrecano.com/gwg.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

GWG Holdings, Inc. ("GWGH") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, collectively, "GWG" or the "Company")[2] respectfully state as follows in support of this motion (this "Motion"):

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing, but not directing, the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto and (ii) renew, amend, supplement, extend, or purchase insurance policies in the ordinary course of business on a postpetition basis; and (b) granting related relief. In further support of this Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] For the avoidance of doubt, the definitions of "GWG" and "Company" do not include non-affiliated entities The Beneficient Company Group L.P., FOXO Technologies, Inc., or their respective direct and indirect subsidiaries.

2

4.      The bases for the relief requested herein are sections 105(a), 363(b), and 1107(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5.      On April 20, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that the Chapter 11 Cases be jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

6.      The Company is a financial services firm with two principal types of assets: (i) equity interests in independent, non-affiliated entities that operate in the alternative assets and epigenetics spaces; and (ii) secondary life insurance assets, comprised of a portfolio of near-duration, intermediate-duration, and long-duration life insurance policies (each a "Policy" and collectively, the "Policy Portfolio"). A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Chapter 11 Cases, are set forth in greater detail in the *Declaration of Timothy Evans, Chief Financial Officer of GWG Holdings, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[3] filed

---

[3] Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

3

contemporaneously herewith. In further support of this Motion, the Debtors rely upon and incorporate by reference herein the First Day Declaration.

**The Insurance Policies and Related Payment Obligations**

7.      In the ordinary course of business, the Debtors maintain numerous insurance policies (the "Insurance Policies") administered by various third-party insurance carriers (the "Insurance Carriers").  The Insurance Policies provide coverage for, among other things, cyber liability, financial institution crimes, and directors and officers liability ("D&O").  A schedule of Insurance Policies in effect as of the Petition Date is attached as **Exhibit 1** to the Order and incorporated herein by reference.[4]

8.      The limited range of policies held directly by the Debtors is a function of the fact that the Debtors are covered under certain other insurance policies (the "Ben Policies") maintained by independent third-party The Beneficient Company Group, L.P. ("Ben LP") and its operating subsidiaries (collectively with Ben LP, "Ben").  As of the Petition Date, the Ben Policies include commercial general liability, property & casualty, worker's compensation, commercial property, and other commercial insurance policies.  Additionally, the Debtors understand that Ben intends to acquire "tail coverage" with respect to the existing D&O Insurance Policies, which tail coverage may not be in effect until after the Petition Date.  For the avoidance of doubt, the term "Ben Policies" includes such tail coverage.

9.      Likewise, certain of the Insurance Policies in effect as of the Petition Date cover Ben in addition to the Debtors.  The Debtors seek authorization to continue honoring their

---

[4]   The descriptions of the Insurance Policies set forth in this Motion constitute a summary only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this Motion.  The Debtors request authority, but not direction, to honor obligations related to all Insurance Policies, as applicable, regardless of whether the Debtors inadvertently fail to include a particular Insurance Policy on **Exhibit 1** to the Order, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Order.

obligations under such policies, provided that the Debtors' share of the financial outlays, if any, with respect to any such policies is consistent with historical practice and the actual benefits received by the Debtors with respect to such outlays.

10. With the prior Insurance Policies expiring on their own terms on April 26, 2022, the Debtors have acquired new Insurance Policies covering only the Company (the "New Insurance Policies") for a period of one year. These New Insurance Policies comprise D&O, financial institution crimes, and cyber liability policies providing similar coverage as the Debtors' existing Insurance Policies. However, the Debtors must pay the premiums for such policies shortly after the Petition Date in order to ensure that coverage is uninterrupted. Accordingly, the Debtors seek authority to pay the full unpaid premiums on the New Insurance Policies, in the amount of approximately $2.2 million, in order to ensure the Debtors' continued coverage under such policies.[5]

11. Continuation of the Insurance Policies and honoring all obligations with respect to into the New Insurance Policies is essential to preserving the value of the Debtors' businesses. In many instances, insurance coverage is mandated by, among other things, the requirement by the United States Trustee that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors seek authorization, but not direction, to maintain their existing Insurance Policies, pay prepetition obligations related thereto and to the Ben Policies, and to renew, amend, supplement, extend, or purchase New Insurance Policies on a postpetition basis.

---

[5] The Debtors believe that continuation of the Insurance Policies, and the ability to supplement, amend, extend, renew or replace such Insurance Policies (including entry into the New Insurance Policies) is authorized in the ordinary course. 11 U.S.C. § 363(c)(1). The Debtors therefore seek relief out of an abundance of caution given the importance of the Insurance Policies to the protection of their estates.

**I.     Premium Payments.**

12.     The Debtors' share of the aggregate annual premium for the Insurance Policies has historically been approximately $4.4 million, including any applicable taxes and surcharges, Brokerage Fees (as defined herein), consulting fees, and commissions, but not including Deductibles (as defined herein). The Insurance Policies generally have been issued for one year in length (although certain Insurance Policies may be longer or shorter than one year based on market conditions and availability at the time of renewal, among other factors).

13.     For all of the existing Insurance Policies, the Debtors have typically paid their share of such Insurance Policies' premiums in full on or shortly before the start date of each policy period, and Ben has paid its respective share of such premiums. The Debtors believe that, as of the Petition Date, there are no outstanding Insurance Policy premiums due with respect to any Insurance Policy that is in effect as of the Petition Date.

14.     However, as noted above, the existing Insurance Policies are scheduled to expire on April 26, 2022, so new coverage must be paid for during the pendency of these Chapter 11 Cases. The premium for the New Insurance Policies is approximately $2.2 million, inclusive of any Brokerage Fees (as defined below) with respect to such policies and therefore the Debtors seek the authority to pay such amount on a postpetition basis.

**II.    Deductibles.**

15.     The Debtors would typically honor their share of any deductibles or retainers due under the Insurance Policies, to the extent the related claims are intended to benefit the Debtors (the "Deductibles") directly. The Deductibles for certain of the Insurance Policies are typically between $100,000 and $150,000, although some Deductibles may be higher or lower. The Debtors are not aware of having honored any Deductibles in the twelve months immediately preceding the Petition Date, and they do not believe that there are any prepetition obligations owed to Insurance

6

Carriers relating to such Deductibles.  In light of the pending litigation and securities investigation relating to the Debtors, as described in more detail in the First Day Declaration, the Debtors have notified certain of their prepetition insurers of such potential claims.  Thus, out of an abundance of caution, the Debtors seek authority, but not direction, to honor any Deductibles that may exist currently or arise under the Insurance Policies or the Ben Policies, in either case, to the extent such Deductibles arise from claims made for the benefit of the Debtors, in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies and Ben Policies.[6]

### III. Brokerage Fees.

16.     The Debtors obtain the Insurance Policies primarily through their insurance broker, USI Southwest Dallas ("USI").  USI assists the Debtors in obtaining comprehensive insurance coverage for their operations in the most cost-effective manner by negotiating policy terms, provisions, and premiums, assisting the Debtors with claims, and providing ongoing support throughout the applicable policy periods.  USI collects commission payments for services rendered in addition to or as part of the premiums paid on the Insurance Policies or New Insurance Policies (the "Brokerage Fees").  As of the Petition Date, the Debtors do not believe that they owe any amounts to USI on account of prepetition Brokerage Fees.

17.     Continuation of the services of USI is necessary to assure the Debtors' ability to secure Insurance Policies and New Insurance Policies on advantageous terms and at competitive rates, facilitate the proper maintenance of the Debtors' Insurance Policies on a postpetition basis, and ensure adequate protection of the Debtors' property for any party in interest.  Without the payment of the Brokerage Fees, these critical services provided by USI may be discontinued.

---

[6]   To the extent the Debtors assert a claim under an expired or renewed Insurance Policy, the Debtors will honor any Deductibles based on the applicable Insurance Policy in place at the time the claim arose.

Accordingly, to the extent any prepetition amounts on account of the Brokerage Fees are determined to remain outstanding, the Debtors seek authority, but not direction, to honor any Brokerage Fees in full and in cash to ensure uninterrupted coverage under the Insurance Policies, and to continue paying any postpetition Brokerage Fees in the ordinary course of business.

## Basis for Relief

### I. Continuation of the Insurance Policies and Purchasing the Postpetition Policies is Required by the Bankruptcy Code and U.S. Trustee Guidelines.

18. Given this backdrop, the Debtors believe it is essential to their business, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they (a) maintain and continue to make all payments required under their Insurance Policies and (b) have the authority, but not direction, to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court, including their acquisition of the New Insurance Policies.[7]

### II. Honoring Obligations Related to the Insurance Policies, Ben Policies, and Postpetition Policies is Warranted.

19. The Debtors are unaware of any outstanding prepetition obligations under or related to the Insurance Policies or the Ben Policies, including any Deductibles or Brokerage Fees. Out of an abundance of caution, however, given the importance of the Insurance Policies to the continued operation of the Debtors' business, the Debtors request authority to pay any prepetition amounts due on account of the Insurance Policies and Ben Policies, including any Deductibles or Brokerage Fees, consistent with historical practice.

---

[7] The continuation of the Insurance Policies and the ability to supplement, amend, extend, renew, or replace such Insurance Policies are authorized in the ordinary course. *See* 11 U.S.C. § 363(c)(1). The Debtors therefore seek such relief out of an abundance of caution given the importance of the Insurance Policies, Ben Policies, and New Insurance Policies for the protection of their estates.

20. Courts in the Fifth Circuit recognize that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (affirming bankruptcy court order authorizing payments by debtor in possession to prepetition creditors because payments were essential to the debtor in possession's survival). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

21. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

22. Moreover, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Court's power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations is popularly referred to as the

"necessity of payment" rule (also referred to as the "doctrine of necessity") and has long been recognized as precedent within the Fifth Circuit. *See CoServ*, 273 B.R. at 492–93. The rationale for the necessity of the payment rule—the rehabilitation of a debtor in reorganization cases—is the paramount policy and goal of chapter 11. *See id.* at 497 (finding that, where claims require satisfaction for the debtor in possession to perform its obligations, the bankruptcy court is able to use section 105 of the Bankruptcy Code to authorize satisfaction of prepetition claims in aid of preservation or enhancement of the estate); *see also In re Scotia Dev., LLC*, 2007 WL 2788840, at *1 (Bankr. S.D. Tex. Sept. 21, 2007); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's businesses); 2 Collier on Bankruptcy, ¶ 105.02[4][a] (Richard Levin & Henry J. Sommer eds., 16th ed.) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately). Satisfying possible outstanding or future obligations related to the Insurance Policies and Ben Policies, including any Deductibles and Brokerage Fees, is warranted under the doctrine of necessity.[8]

23.  The Debtors seek to honor their obligations with respect to the Insurance Policies and the Ben Policies in the ordinary course of business, and to purchase the New Insurance Policies. The Debtors believe that the failure to timely honor any outstanding prepetition obligations on account of the Insurance Policies or Ben Policies could negatively affect the Debtors' ability to enter into the New Insurance Policies. Continuation of the Insurance Policies and is essential to preserving the value of the Debtors' assets and minimizing exposure to risk during the pendency of these Chapter 11 Cases. Furthermore, insurance coverage is required by

---

[8] Although the Debtors do not believe there are any such obligations outstanding as of the Petition Date, to the extent any such obligations exist, the Debtors submit it would be within their sound business judgment to honor those obligations.

the Bankruptcy Code and the United States Trustee. *See* U.S. Trustee Guidelines; 11 U.S.C. § 1112. Accordingly, the relief requested herein is appropriate and warranted under the circumstances.

## Emergency Consideration

24. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to continue their Insurance Policies and obtain the New Insurance Policies, and granting the other relief requested herein, is integral to the Debtors' ability to transition their operations into these chapter 11 cases. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' business, and any delay in granting the relief requested could hinder the Debtors' business and cause irreparable harm. The failure to receive the requested relief during the first 25 days of these chapter 11 cases would severely disrupt the Debtors' business at this critical juncture and imperil the Debtors' restructuring. This is especially the case in light of the imminent lapse of the Insurance Policies and the need to obtain the New Insurance Policies. The Debtors have satisfied both (a) the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and (b) the requirements of Bankruptcy Local Rule 9013-1(i) and request that the Court approve the relief requested in this Motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

26.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

27.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rule 4001, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders

of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) counsel to the DIP lender; (f) counsel to CLMG Corp. and LNV Corporation; (g) counsel to National Founders LP; (h) counsel to Bank of Utah, in its capacity as indenture trustee for the Bonds; (i) counsel to the plaintiffs in the Putative Securities Class Action Suit; (j) counsel to the plaintiffs in the California Collection Suit; (k) the U.S. Securities and Exchange Commission; (l) the Attorney General of each state in which the Debtors conduct business; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
April 20, 2022

Respectfully Submitted,

*/s/ Charles S. Kelley*
**MAYER BROWN LLP**

| | |
|---|---|
| Charles S. Kelley (TX Bar No. 11199580) | Kristhy M. Peguero (TX Bar No. 24102776) |
| 700 Louisiana Street, Suite 3400 | Matthew D. Cavenaugh (TX Bar No. 24062656) |
| Houston, TX 77002-2730 | **JACKSON WALKER LLP** |
| Telephone: (713) 238-3000 | 1401 McKinney Street, Suite 1900 |
| Email: ckelley@mayerbrown.com | Houston, Texas 77010 |
| | Telephone: (713) 752-4200 |
| -and- | Facsimile: (713) 752-4221 |
| | Email: kpeguero@jw.com |
| Thomas S. Kiriakos (*pro hac vice* pending) | mcavenaugh@jw.com |
| Louis S. Chiappetta (*pro hac vice* pending) | |
| 71 S. Wacker Drive | *Proposed Co-Counsel to the Debtors and Debtors* |
| Chicago, IL 60606 | *in Possession* |
| Telephone: (312) 701-0600 | |
| Email: tkiriakos@mayerbrown.com | |
| lchiappetta@mayerbrown.com | |

-and-

Adam C. Paul (*pro hac vice* pending)
Lucy F. Kweskin (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500
Email: apaul@mayerbrown.com
lkweskin@mayerbrown.com

*Proposed Counsel for the Debtors and Debtors
in Possession*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Charles S. Kelley*

## Certificate of Service

I certify that on April 20, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles S. Kelley*

## Exhibit 1

## The Insurance Policies

| Policy Description | Policy Number | Insurance Carrier | Period Start | Period End |
|---|---|---|---|---|
| 2021 Primary D&O/E&O Extension | ELU16713420 | Indian Harbor Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 1st Layer Extension | G46772040002 | ACE American Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 2nd Layer Extension | 47EPF30764802 | Berkshire Hathaway Specialty Ins. Co. | 4/26/2021 | 4/26/2022 |
| D&O/E&O 3rd Layer Extension | 03118353 | Allied World National Assurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 4th Layer Extension | USF00296120 | Allianz Global Risks US Insurance Co. | 4/26/2021 | 4/26/2022 |
| D&O/E&O 5th Layer Extension | BPRO8050233 | Berkley Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 6th Layer Extension | FIX30001065901 | Endurance Risk Solutions Assurance Co | 4/26/2021 | 4/26/2022 |
| D&O/E&O 7th Layer Extension | QPL1326899 | QBE Insurance Corporation | 4/26/2021 | 4/26/2022 |
| D&O/E&O 8th Layer Extension | MLX4248321 | Argonaut Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 9th Layer Extension | FIP000471 | Stratford Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 10th Layer Extension | NHS686778 | RSUI Indemnity Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 11th Layer Extension | EPC100596 | Crum & Forster Specialty Insurance Co. | 4/26/2021 | 4/26/2022 |
| D&O/E&O 12th Layer Extension | 14MGU20A49192 | US Specialty Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 13th Layer Extension | XMF2009029 | Freedom Specialty Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 14th Layer Extension | ANV131462A | Associated Industries Ins. Co., Inc. | 4/26/2021 | 4/26/2022 |
| D&O/E&O 15th Layer Extension | FIXS201000001201 | Ascot Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 16th Layer Extension | 61DA035074820 | Twin City Fire Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 17th Layer Extension | B0507FI2000805 | Certain Underwriters at Lloyds | 4/26/2021 | 4/26/2022 |
| D&O/E&O 18th Layer Extension | FIN0005390001 | Atlantic Specialty Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 19th Layer Extension | 013096983 | National Union Fire Ins Pittsburgh, PA | 4/26/2021 | 4/26/2022 |

| **Policy Description** | **Policy Number** | **Insurance Carrier** | **Period Start** | **Period End** |
|---|---|---|---|---|
| D&O/E&O 20th Layer Extension | USF00296320 | Allianz Global Risks US Insurance Co. | 4/26/2021 | 4/26/2022 |
| D&O/E&O 21st Layer Extension | ELU16720520 | XL Specialty Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 22nd Layer Extension | 47EPF30764702 | Berkshire Hathaway Specialty Ins. Co. | 4/26/2021 | 4/26/2022 |
| D&O/E&O 23rd Layer Extension | FIX300001058101 | Endurance American Insurance Co. | 4/26/2021 | 4/26/2022 |
| D&O/E&O 24th Layer Extension | 652105526 | Continental Casualty Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 25th Layer Extension | 03118354 | Allied World National Assurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 26th Layer Extension | G71519983002 | Westchester Fire Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 27th Layer Extension | MKLM6EL0005435 | Markel American Insurance Company | 4/26/2021 | 4/26/2022 |
| D&O/E&O 28th Layer Extension | ORPRO44323 | Old Republic Insurance Company | 4/26/2021 | 4/26/2022 |
| Financial Institution Crime Bond | FSE7969760000 | Great American Insurance Company | 11/29/2021 | 4/26/2022 |
| Cyber Liability-Primary | W2DD38210101 | Lloyd's Syndicate 2623 (Beazley Furlong) | 1/12/2021 | 4/26/2022 |
| Cyber Liability-Excess | 03127147 | Allied World Specialty Insurance Co. | 1/12/2021 | 4/26/2022 |