IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GWG Holdings, Inc., *et al.*,[1] | ) ) | Case No. 22-90032 (MI) |
|  Debtors. | ) ) ) | (Jointly Administered) (Emergency Hearing Requested) |

**DLP IV LENDER PARTIES' <u>EMERGENCY</u> MOTION FOR CLARIFICATION OF THE CASE MANAGEMENT ORDER**

> **Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (prevailing Central Time) on April 28, 2022.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 28, 2022 at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th Floor, 515 Rusk, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917 1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "Judge Isgur." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Debtors in these chapter 11 cases (collectively, the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); and GWG Life USA, LLC (5538). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201.

CLMG Corp. ("**CLMG**") and LNV Corporation ("**LNV**" and, together with CLMG, the "**DLP IV Lender Parties**" or the "**Movants**") state as follows in support of this motion (the "**Motion**"):

## RELIEF REQUESTED

1. In order to preserve the value of its portfolio of insurance policies, non-Debtor subsidiary GWG DLP Funding IV, LLC ("**DLP IV**") must make $5,114,229.52 in premium payments on certain policies contained in the DLP IV Policy Portfolio (defined herein) during May 2022 (the "**May Premium Payments**"). Such premiums come due on different dates in May. For operational ease, DLP IV has typically pre-funded premiums just prior to or at the beginning of each month.

2. The Debtors explained to the Court at the first day hearing that the Debtors' interim DIP financing budget did not include amounts necessary to make the May Premium Payments because, prior to the bankruptcy filing, LNV agreed to make an advance under DLP IV's secured credit facility to finance the May Premium Payments (the "**Subject Loan Advance**"). LNV making the Subject Loan Advance to DLP IV would result in an increase in the Obligations owed under DLP IV's secured credit facility. Given the Court's statements in the April 22, 2022 *Case Management Order* [Docket No. 95] (the "**Case Management Order**"), the Movants file this Motion to ensure the Court is fully aware of LNV's intent to make the Subject Loan Advance and to confirm that LNV making the Subject Loan Advance to DLP IV and the claims and liens associated solely with respect to the Subject Loan Advance (i) would not be subject to any challenge related to or based on the fact that the Subject Loan Advance would be made while these Chapter 11 Cases are pending and (ii) do not violate the Case Management Order.

3. Because the Subject Loan Advance is necessary in order to preserve the value of

DLP IV's assets (i.e., its portfolio of policies), and because that value benefits all of DLP IV's stakeholders (including the Debtors and their estates), the Movants respectfully request this Motion be granted. The Movants were, prior to the commencement of these Chapter 11 Cases, and continue to be in negotiations with DLP IV regarding the financing of future premiums payable in respect of the DLP IV Policy Portfolio, to relieve the Debtors of the burden of funding such payments and, if such an agreement is reached, it will be presented to the Court for approval. For now, this Motion is limited solely to the making of the Subject Loan Advance. The Movants file this Motion on an emergency basis because the May Premium Payments must be paid in May and certain May Premium Payments are due in the coming days.

## JURISDICTION AND VENUE

4.  The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein is section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**").

## BACKGROUND

5.  The Movants are lenders to DLP IV under the terms of a Fifth Amended and Restated Loan and Security Agreement, dated as of December 14, 2021 (the "**DLP IV Loan Agreement**" and the facility thereunder, the "**DLP IV Facility**").[2]

6.  DLP IV is a non-Debtor special purpose entity, wholly-owned by Debtor GWG Life, LLC. DLP IV is a pledgor and grantor under the DLP IV Loan Agreement and the other

---

[2] A copy of the Form 8-K filed by GWG Holdings, Inc. dated December 14, 2021, which includes as Exhibit 10.1 thereto a copy of the DLP IV Loan Agreement, is attached hereto as **Exhibit A**. Capitalized terms used but not defined herein shall have the meanings set forth in the DLP IV Loan Agreement.

Transaction Documents with respect to (among other things) a portfolio of certain secondary life insurance policies and the proceeds thereof (the "**DLP IV Policy Portfolio**").

7. None of the Debtors are obligors or guarantors under the DLP IV Facility.

8. In order to maintain and preserve the DLP IV Policy Portfolio, DLP IV is required to pay premiums on the underlying policies each month. Prior to the filing of these Chapter 11 Cases and at the request of DLP IV, LNV agreed to fund, as additional Advances under the DLP IV Facility, the May Premium Payments. DLP IV does not currently have the cash necessary to make the May Premium Payments on its own.[3] If the May Premium Payments are not made, certain policies in the DLP IV Policy Portfolio could (after expiration of a grace period) lapse and permanently lose all of their value. Even a cured grace would result in additional material upfront costs to DLP IV because insurance carriers typically require additional reserves for future premiums in connection with such a cure.

## BASIS FOR RELIEF

9. DLP IV is not a debtor in the Chapter 11 Cases. But on April 22, 2022, the Court entered the Case Management Order informing all parties that "[t]he Court does not presently know whether the property held by the alleged subsidiaries is, in fact, property of the estate. It is a violation of the automatic stay to act against property that is *arguably* estate property." Case Management Order ¶ 3.d. The Case Management Order also states that the Debtors' estates "either (i) own interest in their alleged subsidiaries; or (ii) own property that is nominally titled in the

---

[3] The Debtors' DIP budget is predicated on LNV (rather than DLP IV or any of the Debtors) making the Subject Loan Advance. *See* [Docket No. 124, Ex-2]. We note that the non-default interest rate under the DLP IV Loan Agreement is 4.0% plus a Benchmark Rate (i.e., the greater of (i) the sum of the Federal Funds Rate plus 0.50% and (ii) 1.0%). *See* DLP IV Loan Agreement, § 3.1. This is significantly lower than the interest rate under the DIP Facility (as defined below), which results in savings for the Debtors' enterprise as a whole. The reason for this relatively low interest rate is because this is a standard "off balance sheet" financing that is designed to be bankruptcy remote.

name of alleged subsidiaries." *Id.* ¶ 3.c.

10. Because (i) DLP IV a wholly-owned subsidiary of Debtor GWG Life, LLC and (ii) the Movants do not wish to do anything that could even potentially be viewed by the Court as violating either the letter or the spirit of the Case Management Order, the Movants ask the Court to clarify that (i) the Movants may proceed with making the Subject Loan Advance and (ii) the claims and liens associated solely with the Subject Loan Advance will not be subject to challenge related to or based on the fact that the Subject Loan Advance would be made while these Chapter 11 Cases are pending. *See U.S. v. Philip Morris USA, Inc.*, 793 F.Supp.2d 164, 168 (D. D.C. 2011) ("The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend."); *see also Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15, 65 S. Ct. 478, 481-82 (1945) ("we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty towards the court.").[4]

11. Here, there is no reason to prevent the Movants from funding the Subject Loan Advance, as there is no prejudice to the Debtors or any other party in interest. The Subject Loan Advance is necessary to ensure that the DLP IV Policy Portfolio is maintained, preserving value for DLP IV and its creditors and for the Debtors and their stakeholders.

12. Absent the clarification sought in this Motion, LNV would not be willing to make the crucial Subject Loan Advance and risk violating the Case Management Order or having the liens and claims associated solely with the Subject Loan Advance be subject to challenge related to or based on the fact that the Subject Loan Advance would be made during the pendency of these Chapter 11 Cases. On the other hand, the Debtors and DLP IV do not have the financial capability

---

[4] Even if DLP IV were a debtor in the Chapter 11 Cases, sufficient cause would exist to modify the automatic stay to permit LNV to make the Subject Loan Advance to preserve the value of DLP IV's estate property.

of making the May Premium Payments, and the failure to make the May Premium Payments would result in a material amount of additional expenditures being owed by DLP IV to the insurance carriers in order to "cure" certain policies that go into grace, and could ultimately result in certain policies in the DLP IV Policy Portfolio lapsing and losing their value. Such expenditures would materially exceed the increased Obligations under the DLP IV Facility if LNV makes the Subject Loan Advance. Further, the increase in the Obligations owed under the DLP IV Loan Agreement are justifiable under the circumstances because (i) LNV will not make the Subject Loan Advance otherwise, and (ii) because DLP IV's only other potential source of capital to make the May Premium Payments is a contribution by the Debtors and the interest rate under the DLP IV Loan Agreement is substantially lower than that available to the Debtors under the post-petition financing for the Debtors (the "**DIP Facility**") previously approved by the Court on an interim basis [Docket No. 124].

## EMERGENCY CONSIDERATION

13. The Movants request relief on an emergency basis because the May Premium Payments are due on various dates in May (including some at the beginning of the month). For operational ease, DLP IV has typically pre-funded premiums it pays just prior to or at the beginning of each month. If the requested relief is not granted on an emergency basis and the May Premium Payments are not made, the DLP IV Policy Portfolio and the Debtors' equity interests in DLP IV could suffer irreversible and material diminution in value. Therefore, the Movants respectfully request that the Court enter an order on an expedited basis, to clarify that (i) LNV is permitted to make the Subject Loan Advance to DLP IV and increase the Obligations under the DLP IV Loan Agreement accordingly and (ii) the liens and claims associated solely with respect to the Subject Loan Advance would not be subject to challenge related to or based on the fact that the Subject

Loan Advance would be made while these Chapter 11 Cases are pending.

## RESERVATION OF RIGHTS

14. The relief sought in this Motion is without prejudice to the DLP IV Lender Parties' rights to seek additional relief. The DLP IV Lender Parties do not hereby waive any available claims or defenses, including at law, equity, or otherwise, except as otherwise provided in the proposed Order attached hereto. Nor is this Motion an admission by the DLP IV Lender Parties that the automatic stay or the Case Management Order applies to any of the actions described herein.

[*Remainder of page intentionally left blank.*]

The Movants request that the Court grant the relief requested in this Motion and such other relief as is just and proper.

Houston, Texas
Dated: April 28, 2022

/s/ Charles Koster

**WHITE & CASE LLP**
Thomas E Lauria (TX Bar No. 11998025)
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
tlauria@whitecase.com

Scott Greissman (admitted *pro hac vice*)
Andrew Zatz (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
sgreissman@whitecase.com
azatz@whitecase.com

Charles Koster (admitted *pro hac vice*)
609 Main Street, Suite 2900
Houston, TX 77002
Telephone: (713) 496-9700
charles.koster@whitecase.com

Jason Zakia (*pro hac vice* pending)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5403
jzakia@whitecase.com

*Counsel to CLMG Corp. and LNV Corporation*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                      */s/ Charles Koster*
                                      Charles Koster

**Certificate of Service**

I certify that on April 28, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                      */s/ Charles Koster*
                                      Charles Koster