# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GWG Holdings, Inc., *et al.*,[1] | ) | Case No. 22-90032 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR (I) ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY AND AUTHORIZING USE OF ESTATE PROPERTY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT, REIMBURSEMENT, AND/OR ADVANCEMENT OF DEFENSE COSTS UNDER INSURANCE POLICIES AND (II) GRANTING RELATED RELIEF

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

GWG Holdings, Inc. ("GWGH") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, collectively, "GWG" or the "Company")[2] respectfully state as follows in support of this motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); and GWG Life USA, LLC (5538). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

[2] For the avoidance of doubt, the definitions of "GWG" and "Company" do not include non-affiliated entities The Beneficient Company Group, L.P., FOXO Technologies, Inc., or their respective direct and indirect subsidiaries.

# I.  Preliminary Statement

1.      The Debtors and the Debtors' current and former directors and officers are insured under prepetition directors and officers insurance and related corporate liability policies (collectively, the "<u>D&O Policies</u>" or the "<u>Policies</u>").[3]   Non-debtors Beneficient Company Holdings, L.P. and The Beneficient Company Group, L.P. (collectively, "<u>Beneficient</u>") are "Additional Parent Companies" as defined in the D&O Policies and also are insureds under the D&O Policies.  Beneficient is a former affiliate of the Debtors, and the Debtors' passive investment in Beneficient is its largest asset.

2.      The Debtors and/or certain of the other insureds under the Policies (including certain of the Debtors' and Beneficient's current and former officers and directors) have insurance claims relating to the ongoing, non-stayed SEC Investigation,[4] a currently-stayed class action lawsuit alleging various securities laws violations (the "<u>Securities Class Action</u>"),[5] and a non-stayed lawsuit filed by Paul Capital Advisors, LLC and various other plaintiffs (the "<u>PCA Suit</u>,"[6]

---

[3]     The policies acquired solely for the benefit of the Debtors, their subsidiaries, and their directors and officers following the Petition Date are not at issue in or affected by this Motion.

[4]     In October 2020, the Enforcement Division of the Securities Exchange Commission (the "<u>SEC</u>") served a subpoena on GWGH in connection with its investigation (the "<u>SEC Investigation</u>") regarding certain accounting and disclosure matters and GWGH's issuance of bonds.  This investigation is ongoing and has involved the full cooperation of the Company, and, to GWGH's knowledge, has not demonstrated the violation of any securities laws or any other wrongdoing.  However, as noted, it is continuing, and, as it is an enforcement investigation, is excepted from the reach of the automatic stay.  11 U.S.C. § 362(b)(4).  *See SEC v. First Fin. Grp. of Texas*, 645 F.2d 429, 437-38 (5th Cir. 1981) ("[T]he SEC's continuing civil enforcement action and the enforcement of the preliminary injunction against [the debtor] are not stayed under [§] 362(a).").

[5]     The Securities Class Action is styled *Bayati, et al v. GWG Holdings, Inc, et al.*, and is pending in the United States District Court for the Northern District of Texas.  GWGH vehemently denies all of the allegations in the Securities Class Action and intends to vigorously defend itself in such lawsuit.

[6]     The PCA Suit is styled *Paul Capital Advisors, LLC, et al. v. Murray T. Holland, as Trust Advisor of the LT-1 to LT-9 Exchange Trusts, James E. Turvey, as Trust Advisor to the LT-1 to LT-9 Exchange Trusts, MHT Financial LLC, the Beneficient Company Group, L.P., Highland Consolidated Business Holdings GP, L.L.C., Beneficient Management, L.L.C., Beneficient Company Holdings, L.P., Highland Consolidated, L.P., Beneficient Holdings, Inc., Highland Real Assets, L.L.C., and Beneficient Management Counselors, L.L.C.*, C.A. No. 2022-0167-56, Court of Chancery, Delaware.  While the Debtors are not a party to the PCA Suit, certain of the defendants have

and the insurance claims relating to the SEC Investigation, the Securities Class Action, and the PCA Lawsuit, the "Insurance Claims").[7]

3.      Notwithstanding the rights of the Debtors as insureds and Beneficient as "Additional Parent Company" (including Beneficient's status as a non-debtor), as well as the rights of the other "insureds" under the D&O Policies, the Insurance Carriers (as defined below), in light of the pendency of the Chapter 11 cases and the imposition of the automatic stay have requested that the Debtors seek the entry of an Order from this Court clarifying the applicability of the automatic stay and modifying the automatic stay, to the extent that it is applicable, as a precondition to honoring any payment, advancement, or reimbursement obligations under the Policies with respect to the Securities Class Action and SEC Investigation.  Moreover, because Beneficient and its current directors and officers are insureds under the Policies, the Insurance Carriers have also requested as a further precondition to honoring obligations with respect to the Securities Class Action and SEC Investigation that the Debtors seek the Court's approval of the Order with respect to the PCA Action as well. The Insurance Carriers wish  to alleviate any concern that the automatic stay would otherwise prevent the timely performance of their payment, advancement, or reimbursement obligations under the D&O Policies relating to the SEC Investigation (as defined below) and certain other litigation and other claims that are covered by the Policies.  The requested relief furthermore will permit the Debtors to continue to receive critical legal representation, and to fulfil their indemnification obligation in favor of their former and

---

asserted Insurance Claims relating to the PCA Suit.  Upon information and belief, such defendants deny the allegations in the PCA Suit and have filed a motion to dismiss the PCA Suit, which motion is currently pending.

[7]     The Policies contain "Priority of Payments" clauses giving priority to the payment of any Loss arising from a covered claim against individual insureds over the payment of any Loss arising from a covered claim against the Debtors or Beneficient.

current officers and directors, with no additional cash payment by the Debtors, which will inure to the benefit of their bankruptcy estates and their creditors.

4.     The Insurance Carriers have confirmed coverage in favor of the Debtors and, upon information and belief, as of the date hereof, have also confirmed coverage in favor of certain of the non-Debtor insureds under the D&O Policies with respect to the Insurance Claims.

5.     Any retention or deductible obligation under the D&O Policies relating to the SEC Investigation or the PCA Suit has been fully satisfied.[8]  Accordingly, GWGH is entitled under the terms of such policies to have the carriers thereunder cover the costs of GWGH's counsel Willkie Farr & Gallagher LLP ("Willkie Farr") and other related professionals relating thereto. It is the Debtors' understanding that Beneficient and related insureds may also be entitled to have the carriers thereunder cover costs with respect to the PCA Suit.  Moreover, former and current officers and directors of GWG have been or will be represented by counsel in connection with the SEC Investigation and are entitled to the reimbursement by the carriers of their defense costs under "Side A" coverage of the D&O Policies.[9]

6.     The Debtors believe that the automatic stay should not prevent such carriers from complying with such obligations, whether in favor of GWGH or such individuals.  However, to the extent that such performance would violate the automatic stay, sufficient "cause" within the meaning of Section 363(d)(1) of the Bankruptcy Code exists to modify the automatic stay to permit such carriers to honor their coverage obligations with respect to the SEC Investigation.  The

---

[8]    Upon information and belief, in connection with such claim, Beneficient has provided the Insurance Carriers with supporting documentation that it advanced at least $565,000 of its own defense costs in connection with the PCA Suit.  The Insurance Carriers have confirmed that such advance satisfied any remaining retention obligation of either the Debtors or Beneficient under the D&O Policies.

[9]    MHT Financial LLC, an entity in which Murray T. Holland has a 30% ownership interest and which is a Co-Defendant Insured via an endorsement to the Primary D&O Policy, and the individual defendants in the PCA Suit also may be entitled to coverage under the D&O Policies with respect to the PCA Suit.

Debtors' continued cooperation with the SEC Investigation and the prompt resolution thereof are in the best interests of the Debtors and their estates. Indeed, if the postpetition fees and expenses for services provided by Willkie Farr and other professionals retained by the Debtors in connection with the SEC Investigation are not paid or reimbursed under the Debtors' insurance policies, such claims will be entitled to administrative expense priority and will significantly deplete the estates' limited resources. The very purpose of this type of insurance is to protect the Debtors and cover their exposure in exactly these types of circumstances at no additional expense to the Debtors or their estates.

7. The Insurance Carriers are also seeking entry of the Order with respect to the PCA Action before honoring obligations in connection with the SEC Investigation and Securities Class Action. Beneficient is both an "Additional Parent Company" and a separate insured under the D&O Policies and proceeds payable under the D&O Policies on its covered claims may not constitute property of the Debtors' bankruptcy estate. As noted, Beneficient is neither a Debtor nor a subsidiary or an affiliate of the Debtors. The Debtors' interest in Beneficient is a passive investment, and the Debtors do not control the actions of Beneficient. Irrespective of whether such Policy proceeds constitute property of the Debtors' estates, sufficient "cause" nonetheless exists under Section 362(d)(1) of the Bankruptcy Code to modify the automatic stay for such purpose because (1) the Insurance Carriers will not honor any payment, advancement, or reimbursement obligation under the Policies with respect to the Securities Class Action and SEC Investigation until receiving clarity with respect to the PCA Action as well, and (2) Debtors' passive investment in Beneficient is the Debtors' most valuable asset and protecting the value of that interest by permitting the funding of Beneficient's defense costs inures to Debtors' direct benefit.

8.     Upon the commencement of these Chapter 11 cases, the Securities Class Action was, of course, automatically stayed as to GWGH and, since then, has been stayed as to all remaining individual defendants by stipulation.  However, to the extent that GWGH incurs any defense costs going forward, such costs again should be covered by the carriers under the D&O Policies.  And, as such amounts would be reimbursed directly to GWGH, the Debtors submit that such reimbursement would not violate any of the subsections of Section 362(a) of the Bankruptcy Code and thus, the automatic stay.  However, to the extent that the automatic stay could apply to prevent such reimbursement, sufficient "cause" exists under Section 362(d)(1), as the Debtors will be able to utilize the insurance obtained pre-petition for this very purpose at no post-petition additional expense to the Debtors or their estates.

9.     Moreover, any reimbursement by the carriers of the defense costs of former and current officers and directors in connection with the Insurance Claims (solely to the extent that they qualify as "Insureds" under the D&O Policies), under the "Side A" coverage of the D&O Policies would not violate the automatic stay.  Courts have held that while directors and officers policies that are owned by a debtor and that provide "Side A" coverage are property of a debtor's bankruptcy estate, the proceeds paid in coverage of individual officers and directors under those "Side A" provisions, particularly when there is a priority of payments provision favoring directors' and officers' claims over those of the corporate entity, do not constitute property of any such debtor's bankruptcy estate, and thus, payment, advancement, or reimbursement of any such proceeds for the benefit of any such covered, non-debtor individuals does not and cannot violate the automatic stay.  *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) (To the extent of D&O Policy provides Side A coverage, "the proceeds of that D&O Policy are *not* part of the debtor's bankruptcy estate.") (emphasis in original).

6

10.     Accordingly, for the reasons summarized above and set forth in greater detail below, the relief requested in the Motion is appropriate and should be granted.

## II.  **Relief Requested**

11.     The Debtors seek entry of an order substantially in the form attached hereto (the "Order"): (a) modifying the automatic stay and authorizing the use of property of the Debtors' estates outside the ordinary course of business, in each case, to the extent applicable, with respect to proceeds of the D&O Policies to allow the Insurance Carriers to pay, reimburse, and/or advance covered amounts of the Insureds under the D&O Policies relating to the Insurance Claims, including, without limitation, defense costs, of (i) the Company in connection with the SEC Investigation and the Securities Class Action (ii) Beneficient in connection with the PCA Suit, and (iii) current and former directors and officers of the Debtors or Beneficient in connection with the pending SEC Investigation, the Securities Class Action, and/or the PCA Suit and (b) granting related relief.

## III.  **Jurisdiction and Venue**

12.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court.

13.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The bases for the relief requested herein are sections 105(a), 362(d), and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## IV.  <u>Background</u>

**A.    The Debtors and the Commencement of these Chapter 11 Cases**

15.    On April 20, 2022 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "<u>Chapter 11 Cases</u>").  On April 20, 2022, the Court entered an order authorizing the joint administration of the Chapter 11 Cases. *See* Dkt. No. 18.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On May 9, 2022, a Committee of Bondholders (the "<u>Bondholders Committee</u>") was appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "<u>United States Trustee</u>").  No trustee or examiner has been appointed in the Chapter 11 Cases.

16.    The Company is a financial services firm with two principal types of assets: (i) equity interests in independent, non-affiliated entities that operate in the alternative assets and epigenetics spaces; and (ii) secondary life insurance assets, comprised of a portfolio of near-duration, intermediate-duration, and long-duration life insurance policies (each a "<u>Policy</u>" and collectively, the "<u>Policy Portfolio</u>").  A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Chapter 11 Cases, are set forth in greater detail in the *Declaration of Timothy Evans, Chief Financial Officer of GWG Holdings, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 17] (the "<u>First Day Declaration</u>").[10]  In further support of this Motion, the Debtors rely upon and incorporate by reference herein the First Day Declaration.

---

[10]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

**B.      The D&O Policies**

17.      The insureds in a standard D&O insurance policy are the corporate policyholder and its subsidiaries, as well as the corporation's directors and officers, who are the primary beneficiaries of the policy.  Standard D&O insurance policies usually provide one or more of the following three types of coverage:

> Side A "Liability" Coverage, which protects only the corporation's directors and officers and only applies when the corporation is unable to indemnify them against a claim.[11]
>
> Side B "Indemnification" Coverage, which provides insurance only for the corporation and only when it agrees to indemnify its directors and officers against a claim;[12] and
>
> Side C "Entity" Coverage, which insures only the corporation and typically only when the corporation is a defendant in a "securities action."[13]

Some D&O insurance policies only provide Side A coverage—they cover only the non-indemnified loss of a corporation's directors and officers.  Other types of D&O insurance policies provide a combination of Side A, Side B, and Side C coverage.

18.      This Motion concerns the prepetition D&O Policies set forth on **Schedule 1** hereto issued by the insurance carriers set forth thereon (collectively, the "Insurance Carriers"). The Policies were originally issued effective as of April 26, 2020 for a one-year term, and were extended in 2021 to be effective until April 26, 2022, shortly after the Petition Date.  Each of the Policies is a "claims made" policy, generally meaning that they provide coverage for claims that were first asserted during the applicable policy period.  As noted above, Beneficient is a separate insured under the Primary D&O Policy and the Policies that follow form to it as an "Additional Parent Company."

---

[11]   *See* Jason S. Brookner and Lydia R. Webb, *Ain't No Easy Answers: D&O Insurance Proceeds in Bankruptcy*, 26 No. 4 NORTON J. BANKR. L. & PRAC. NL ART. 2 (Aug. 2017).

[12]   *Id.*

[13]   *Id.*

19.     The Debtors, with Beneficient, hold two primary comprehensive Policies, an "Executive and Corporate Securities Liability Insurance Policy" (Policy No. ELU167134-20) (the "Primary D&O Policy") and a "Financial Services Liability Policy" (Policy No. ELU167135-20) (the "Primary Company Policy" and, together with the Primary D&O Policy, the "Primary Policies"), each issued by Indian Harbor Insurance Company.  The Primary D&O Policy provides Side A, Side B, and Side C coverage to the Debtors, Beneficient, and their respective former and current officers and directors[14] and certain other parties, for certain losses, including defense costs arising out of covered claims.  The Primary Company Policy supplements the Primary D&O Policy by, among other things, providing direct coverage with respect to certain claims made against, and regulatory investigations involving, the Debtors and Beneficient.  The Primary Policies together provide coverage up to a set combined policy limit.  However, the remaining Policies (the "Excess Policies") provide excess coverage (subject to their own terms and conditions) beyond the primary limit.[15]  As is usually the case with respect to policies of this nature, defense costs paid by the Insurance Carriers count towards the coverage limits under the Policies.

20.     Five Excess Policies (the "Limited Excess Policies") provide excess coverage and follow form to the Primary D&O Policy but do not follow form to the Primary Company Policy.

21.     Some of the excess policies in this tower provide Side A coverage only, *i.e.*, they do not cover the obligations of the Debtors or Beneficient, but rather only provide direct coverage to their respective individual directors and officers.  The Lead Side A Policy is issued by National Union Fire Insurance Company (Policy No. 01306983) (the "Lead Side A Policy"), and it follows form (subject to its own terms and conditions) to the Primary D&O Policy with respect to coverage

---

[14]   The Individual Insureds (as defined below) are "Insured Persons" under the Primary D&O Policy.
[15]   Each of the Excess Policies generally follows form to the Primary D&O Policy and, in some cases, the Primary Company Policy, subject to certain exceptions contained therein.

for individuals.  Because it contains certain of its own terms and conditions, it is known as a Side A DIC (difference in conditions) Policy.  The Lead Side A Policy is followed by seven additional excess Policies (the "Excess Side A Policies" and, together with the Lead Side A Policy, the "Side A DIC Policies") that provide an additional excess Side A coverage that is available solely to non-Debtor parties.  Each of the Excess Policies generally follows form to the Primary D&O Policy, and, in some cases, the Primary Company Policy, but they are all DIC policies.

22.    Moreover, each of the D&O Policies that also provides Side B and Side C coverage also contains a priority of payment provision that provides that losses for covered claims for which payment is due are payable first to the Individual Insureds.

**C.    The Pending SEC Investigation**

23.    On October 6, 2020, as noted in the First Day Declaration and in the Debtors' public securities filings, GWGH received a subpoena to produce documents from the Chicago office of the SEC's Division of Enforcement pursuant to a non-public, fact-finding investigation.  Since the initial subpoena, the SEC has issued subsequent subpoenas for additional documents and information from the Company and for the testimony of current and former directors and officers of the Company.  The requested information from the SEC has primarily related to GWGH's investment products, including its bonds, as well as various accounting and disclosure matters. The SEC has also requested information concerning the documents and information that GWGH made available to broker-dealers who sold L Bonds to investors.[16]

---

[16]    On June 15, 2022, the SEC filed a complaint against Western International Securities, Inc., a broker-dealer that sold certain of the Bonds, along with certain individuals affiliated with it, for violations of the SEC's Regulation BI, which requires brokers and investment advisers to exercise reasonable diligence, care, and skill to have a reasonable basis to believe the investment recommendation is in the best interests of the customer, based on the customer's investment profile and the potential risks, rewards, and costs associated with the recommendation (the "Reg BI Lawsuit").  Neither the Debtors nor any of the Debtors' former or current officers or directors were named as defendants in the Reg BI Lawsuit.

24.     The Debtors have been cooperating fully with the SEC in connection with the SEC Investigation, and, as it is an enforcement investigation excepted from the automatic stay pursuant to Section 362(b)(4) of the Bankruptcy Code, have continued and will continue to do so during the pendency of the Chapter 11 Cases. *See First Fin. Grp. of Texas*, 645 F.2d at 437-38 ("[T]he SEC's continuing civil enforcement action and the enforcement of the preliminary injunction against [the debtor] are not stayed under [§] 362(a)."). *See also In re Nw Corp.*, No. 03-12872 (CGC), 2004 WL 1345100, at *2 (Bankr. D. Del. June 16, 2004) ("[T]he Debtor acknowledges that the SEC is free under its regulatory authority (and the police power exception to the automatic stay) to open an investigation if it wishes to do so.").

25.     GWGH, through its insurance broker, timely notified the Insurance Carriers of the pendency of the SEC Investigation and its concomitant coverage claim on April 6, 2021.  As noted above, the Debtors and Beneficient have satisfied all retention or deductible requirements relating thereto.

26.     The costs incurred by the Debtors in connection with the SEC Investigation have been and will continue to be significant.  Prior to the Petition Date, the Debtors retained Willkie Farr to advise and represent them in connection with the SEC Investigation.  Willkie Farr has also represented current and former officers and affiliates of the Debtors in the SEC Investigation. Willkie Farr has worked diligently with the Debtors towards a successful resolution of the SEC Investigation prior to the Petition Date and, subject to the Court's approval of its retention application, it will continue to do so during the pendency of the Chapter 11 Cases.[17]  The fees and expenses for postpetition services provided by Willkie Farr, as well as by the other professionals

---

[17]     The *Debtors' Application for Entry of an Order (I) Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Willkie Farr & Gallagher LLP as Special Counsel for the Debtors Effective as of the Petition Date and (II) Granting Related Relief* [ECF No. 268] was granted on June 22, 2022 [ECF No 450].

retained by the Debtors who will continue to render post-petition services on behalf of GWGH in connection with the SEC Investigation, as it is an enforcement investigation excepted from the reach of the automatic stay pursuant to Section 362(b)(4) of the Bankruptcy Code, will be entitled to administrative expense priority with respect to the approved fees and expenses relating to such post-petition services and, accordingly, will significantly deplete the estates' limited resources if not paid or reimbursed under the Debtors' insurance policies.

27.      As of the Petition Date, Willkie Farr was owed more than $4,000,000, which the Debtors submit, in light of the satisfaction of any retention amount, is the contractual obligation of the Insurance Carriers under the D&O Policies.  Likewise, and as noted, other service providers, including an e-discovery vendor, have provided and continue to provide essential services to the Debtors in connection with the SEC Investigation.

28.      From the Debtors' perspective, and in addition to its continuing post-petition obligation to respond to such investigation, the prompt and favorable resolution of the SEC Investigation will facilitate the Debtors' ability to successfully emerge from the Chapter 11 Cases as a going concern.  Accordingly, the Debtors believe that it is necessary and appropriate to ensure that all expenses incurred in connection with the SEC Investigation are promptly paid by the Insurance Carriers, at no additional cost to the Debtors, so that the Debtors' experienced professionals, including Willkie Farr, continue providing these essential services.  Importantly, and as described above, granting the relief requested herein will not require the Debtors to go out-of-pocket for any deductibles or self-insured retentions.  The entry of the Order will merely give the Insurance Carriers comfort that they thereafter may pay or advance the Debtors' or other insureds' expenses incurred in connection with the SEC Investigation (including the expenses of the individual former and current officers and directors involved in the SEC Investigation,

including those also represented by separate counsel), without fear of running afoul of the Bankruptcy Code.

**D.     The PCA Suit**

29.     As noted above, Beneficient both is an "Additional Parent Company" and is separately insured under the D&O Policies.   The PCA Suit is described above and includes allegations against various insureds, including Murray T. Holland, who is the Debtors' Chief Executive Officer and a director (and MHT Financial LLC, an entity in which Mr. Holland holds a 30% ownership interest), although the allegations against Mr. Holland in the PCA Suit relate to a period prior to Mr. Holland becoming an employee or director of the Debtors.   Upon information and belief, the defendants in the PCA Suit vehemently deny the factual allegations, as well as the legal claims, asserted in the PCA Suit, and there is a pending motion to dismiss such suit.   Further, upon information and belief, Beneficient has acknowledged its indemnification obligation in favor of the individual defendants, including the advance or reimbursement of their defense costs incurred in connection therewith.

**E.     The Securities Class Action**

30.     The Securities Class Action was commenced on February 18, 2022 and purports to assert against GWGH and certain of its past and present directors and officers alleging violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933.   The case is titled *Bayati, et al. v. GWG Holdings, Inc., et al.*, bears case number 22-00410, and is currently pending before the United States District Court for the Northern District of Texas.   As discussed in the First Day Declaration, GWGH believes that the allegations of wrongdoing in the Securities Complaint are entirely without merit, and GWGH intends to vigorously contest the claims asserted therein.   At this time, GWGH and the other defendants have not answered or otherwise responded to the Securities

Complaint, and all parties to the case have agreed that the case should be stayed as to all defendants on an interim basis, with all parties reserving rights to assert or challenge the extension of the automatic stay to the non-debtor Defendants.[18]

31.     GWGH, through its broker, timely notified the Insurance Carriers of the commencement of the Securities Class Action and the commencement coverage clauses under the D&O Polices on behalf of GWGH and the Non-Debtor defendants on February 22, 2022.

32.     As of the date hereof, the non-Debtor defendants in the Securities Class Action are Roy W. Bailey (a former director of GWGH), David F. Chavenson (a director of GWGH), David H. De Weese (a director of GWGH), Murray T. Holland (CEO of the Debtors and a director of GWGH), and Timothy L. Evans (CFO of the Debtors and a director of GWGH) (collectively, together with the former or current officers and directors currently, or in the future may be, represented by separate counsel in connection with the SEC Investigation, the "Individual Insureds").[19] Each of the Individual Insureds, by virtue of their status as current or former directors and/or officers of the Debtors, are entitled to indemnification by GWGH, which indemnification obligation with respect to the claims asserted against them in the Securities Class Action, *inter alia*, would include the timely advance or reimbursement of such Individual Insured's defense costs incurred in connection with their defense in the Securities Class, had GWGH not been prevented from such advance or reimbursement by virtue of the pendency of its Chapter 11 case.

---

[18]     *See* Agreed Joint Statement on Automatic Stay [Doc. 41], filed in the Securities Class Action on May 5, 2022. Also, the proposed lead plaintiffs in the Securities Class Action filed in these Chapter 11 Cases a motion for relief from the automatic stay (the "Limited Lift Stay Motion") [ECF No. 201] for a modification of the automatic stay in order to pursue the appointment of themselves as lead plaintiffs in the Securities Class Action, to serve and enforce (at their direction) two limited third-party subpoenas, and to take related actions.  The Limited Lift Stay Motion does not seek any relief that otherwise would affect the existing stay of the Securities Class Action against GWGH and non-debtor Defendants.

[19]     On May 2, 2022, the plaintiffs filed their Notice of Voluntary Dismissal Without Prejudice Pursuant to Fed.R.CIV.P. 41(a) of Clauses Brought Against Peter T. Cangany, Brad K. Heppner, Thomas O. Hicks, Dennis P. Lockhart, and Bruce W. Schnitzer [Doc. 40] in the Securities Class Action.

However, notwithstanding such existing inability of GWGH to honor such obligations, each of the Individual Insureds, again by virtue of their status as current or former officers and directors of the Debtors, meet the definition of "Insured Persons" under the Policies and their expenses with respect to the Securities Class Action. Thus, subject to policy limits and other terms and conditions, the expenses incurred by the Individual Insureds in connection with the SEC Investigation or their defenses in the Securities Class Action, as the case may be, are payable by the Insurance Carriers under the Policies.

33.     GWGH intends that Mayer Brown will continue to represent GWGH as defendant in the Securities Class Action, and its fees and expenses in connection therewith will be dealt with in connection with the Chapter 11 Cases, although GWGH will remain entitled to reimbursement of such fees and expenses to the extent provided in the D&O Policies. However, based on potential conflicts of interest, the Individual Insureds, in the case of the SEC Investigation, have or may be represented by separate counsel in addition to or instead of Willkie Farr, and in the case of those Individual Insureds who are defendants in the Securities Class Action, should retain separate counsel and incur expenses to mount their own individual defenses to the claims asserted in the Securities Complaint. Pursuant to the terms of the Policies, the Individual Insureds are entitled to have costs in connection with the SEC Investigation and their defense in the Securities Class Action costs, as the case may be, satisfied from proceeds of such policies.

34.     Further, it is worth noting again that no self-insured retention will be required to be paid by the Debtors in connection with either the SEC Investigation or the Securities Class Action as a precondition to the Insurance Carriers advancing funds under the Policies with respect to the Debtors' fees and expenses and other costs. Accordingly, the Debtors will not have to pay out of pocket for any of the Debtors' costs discussed herein.

F.     **The D&O Insurance Policies**[20]

35.     The Securities Class Action falls within the scope of coverage of the Primary D&O Policy (as to the Debtors and Individual Insureds) and the Primary Company Policy (solely as to the Debtors).  On the other hand, the SEC Investigation, as a direct expense of the Debtors, is covered by all Policies other than the Side A DIC Policies (except with respect to the applicable Individual Insureds).  On information and belief, and based on the confirmation of claim coverage by the Insurance Carriers, Beneficient believes the Policies provide coverage for the PCA Suit with respect to Beneficient and the other insureds under the Policies.  Thus, as set forth in the below table, coverage (under the Policies other than the Side A DIC Policies) is available to the Debtors, Beneficient, and certain non-Debtor parties with respect to all of the Securities Class Action, the SEC Investigation, and the PCA Suit, as applicable.  Additional amounts (under the Side A DIC Policies) are available exclusively to non-Debtor parties (including with respect to the Securities Class Action and the SEC Investigation) but would not cover the Debtors' or Beneficient's expenses in connection with either the SEC Investigation or the Securities Class Action, or Beneficient's expenses in the case of the PCA Suit.  The Debtors anticipate that there is more than ample coverage available under the Policies to satisfy all defense costs properly payable thereunder and discussed herein.

| Matter | Coverage for | Policies |
|---|---|---|
| SEC Investigation | Debtors | All Policies other than Side A DIC Policies |
| Securities Class Action | Debtors | All Policies other than Side A DIC Policies |

---

[20]     Any description or summary of the Policies' provisions set forth herein is subject to the actual language contained therein, and capitalized terms utilized in connection with the description of the Policies and not defined herein shall have the meanings ascribed to such terms in the Policies.  The coverage amounts under the Policies have been provided to the Office of the United States Trustee and the Bondholders Committee.

| Matter | Coverage for | Policies |
|---|---|---|
| SEC Investigation Securities Class Action | Debtors' D's & O's | Primary D&O Policy and policies that follow form to it<br><br>Side A DIC Policies |
| PCA Suit | Beneficient and other Insureds[21] | All Policies other than Side A DIC Policies |
| PCA Suit | Individual Defendants | All Policies (solely to the extent they qualify as "Insureds" under such Policies) |

## V. Applicable Authority

**A.** **The Insurance Carriers' Honoring their Payment or Reimbursement Obligations under the D&O Policies under Side B or Side C Coverage of the D&O in Favor of the Debtors Arguably Would Not Violate the Automatic Stay.**

36.    It is not clear that the automatic stay would be violated by an Insurance Carrier honoring its payment, advancement, or reimbursement obligations in favor of the Debtors under Side B or Side C coverage set forth in a D&O Policy.  At its most fundamental level, such payment, advancement, or reimbursement obligation is a payment obligation in favor of the Debtors, and as such, does not constitute the commencement or continuation of an action against the Debtors stayed by Section 363(a)(1), the enforcement of a judgment stayed by Section 362(a)(2), the act to create or enforce a lien against property of the estate stayed by Section 362(a)(4) or Section 362(a)(5), the act to collect or recover a claim against the debtor that arose prior to the commencement of the case stayed by Section 362(a)(6), the setoff of a debt that arose prior to the commencement of the case stayed by Section 362(a)(7), or the commencement or continuation of a proceeding before the United States Tax Court stayed by Section 362(a)(8).  At first blush, an

---

[21]    *See* note 9, *supra*.

Insurance Carrier's honoring of its payment, advancement, or reimbursement obligation under Side B or Side C coverage of a D&O Policy at most would implicate Section 362(a)(3)'s stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over the estate."  However, even Section 362(a)(3) should not be implicated where the payment is made directly to the Debtors.  *See, e.g.*, 11 U.S.C. §542(b) (generally, "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the [debtor-in-possession], except to the extent that such debt may be offset under [11 U.S.C. §553] against a claim against the debtor").

**B.    The Insurance Carriers' Honoring their Payment Obligations under Side B or Side C of the D&O Policies in Favor of Beneficient Should Not Violate the Automatic Stay.**

37.    As with those in favor of the Debtors, it is also not clear that Side B or Side C payments in favor of Beneficient with respect to the Insurance Claims would violate the automatic stay.  As noted, Beneficient is an "Additional Parent Company" under the D&O Policies and is separately insured thereunder and, as a result, its interest therein arguably never became part of the Debtors' estate, and payments under such Policies for claims made against Beneficient accordingly should not violate the automatic stay.

**C.    Proceeds of the Side A Coverage under the D&O Policies are Not Property of the Estates.**

38.    The proceeds of the "Side A" coverage under the D&O Policies are not property of the estates and, therefore, the Insurance Carriers should be permitted to distribute such proceeds to the Individual Insureds in accordance with the terms of the Policies without the need for stay relief.  Section 541(a)(1) of the Bankruptcy Code provides that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

39.     Even where the Debtor has an interest in an insurance policy, courts have found that while insurance *policies* are property of the bankruptcy estate, the *proceeds* of such policies may not be when coverage is provided only to the debtor's officers and directors or when the policy in question contains a priority of payments provision similar to the Policies.  *See In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) ("There are a great many bankruptcy cases holding that liability insurance *policies* that provide coverage for the bankrupt's liability belong to the bankrupt's estate . . . .  However . . . [t]he question is not who owns the policies, but who owns the liability proceeds.") (emphasis in original); *Unsecured Creditors Disbursement Comm. v. Antill Pipeline Constr. Co., Inc. (In re Equinox Oil Co., Inc.)*, 300 F.3d 614, 618 (5th Cir. 2002) ("An insurance policy owned by the debtor is generally considered property of the estate.  But, whether the proceeds of a particular insurance policy is property of the estate depends on the nature of the policy.") (citation omitted); *see also In re Adelphia Communs. Corp.*, 285 B.R. 580, 591 (Bankr. S.D.N.Y. 2002) ("whether the proceeds of a D&O liability insurance policy is property of the estate must be analyzed in light of the facts of each case.") (internal quotations omitted).

40.     It is well-established that, when a liability insurance policy only covers non-debtors, including directors and officers (Side A coverage), the proceeds are not property of the estate.  *See Vitek*, 51 F.3d at 535 ("[W]hen a debtor corporation owns a liability policy that *exclusively* covers its directors and officers . . . the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate.") (emphasis in original).  Thus, no proceeds of the Side A coverage under the D&O Policies are property of the Debtors' estates, and the automatic stay therefore does not apply to the Insurance Carriers as to such Policies.  And this is the case even with respect to the D&O Policies that also provide Side B and Side C coverage by virtue of the priority of payment

provision in such policies. *See*, *e.g.*, *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (priority of payment provision in favor of individual non-debtor insureds fully enforceable in bankruptcy).  Accordingly, in the event the Side A coverage under the D&O Policies is reached (either through exhaustion of underlying policies or a DIC Event[22] as defined in the Lead Side A Policy, which causes the Side A DIC Policies to "drop down" and provide immediate coverage), the Side A Insurance Carriers should not be prevented from distributing proceeds with respect to covered losses of the Individual Insureds with respect to the Securities Class Action or the SEC Investigation, as the case may be, including incurred or advanced defense costs.

**D.     Cause Exists to Modify the Automatic Stay with Respect to the Proceeds of the Policies.**

41.     Even assuming *arguendo* that the automatic stay does otherwise apply, "cause" exists under Section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow payment of covered losses of the Debtors and Beneficient (and their respective former or current officers and directors), including payment, reimbursement and/or advancement of defense costs, under the Policies.  Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause." 11 U.S.C. § 362(d)(1).

42.     The term "cause" is not defined in Section 362(d)(1).  Rather, courts determine whether cause exists on a case-by-case basis. *See, e.g.*, *In re Xenon Anesthesia of Tex., PLLC*, 510

---

[22]     The Lead Side A Policy provides that the failure of the Debtors "to advance, pay or indemnify Loss . . . of an Insured Person by reason of bankruptcy" constitutes a DIC Event.  The Lead Side A Policy identifies numerous other DIC Events; however, the Debtors are not aware of the occurrence of any such DIC Events with respect to Beneficient.

B.R. 106, 112 (Bankr. S.D. Tex. 2014). "The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case." *Id.*

43.     Moreover, even putting aside Beneficient's separate and distinct rights as an "Additional Parent Company" under the Policies, Beneficient's use of the D&O Policies to cover its and the other defendants' defense costs as to the PCA Suit inure to the Debtors' benefit because the Debtors' passive investment in Beneficient is the Debtors' most valuable asset. Therefore, the Debtors' interests are furthered by the defense of any pending action against Beneficient, especially where, upon information and belief, Beneficient maintains that such action is meritless, as the adverse resolution of such action could negatively impact Beneficient's value.

44.     The Debtors submit that cause exists to modify the stay to the extent that it otherwise applies. First, as discussed above, the Debtors' use of the Policies (other than the Side A coverage under the D&O Policies) to cover their own defense costs in connection with the SEC Investigation and Securities Class Action (i) reduces the depletion of limited estate resources that would otherwise need to go towards payment of postpetition professional fees at no additional expenses to the Debtors' estates and (ii) ensures that the Debtors can continue to be competently represented in connection with the SEC Investigation and, as and when it resumes, the Securities Class Action, which will strengthen the Debtors' going-forward prospects.

45.     Further, the Policies should operate within bankruptcy just as they would outside the bankruptcy context to allow the non-Debtor insureds access to the policy proceeds to which they are legally entitled. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). The Debtors' estates are bound by the terms of the Policies, which expressly recognize Beneficient as

an Additional Parent Company and as an insured and contemplate the impact of bankruptcy on the applicability of the Policies.  Thus, the estates do not have any greater interest in the policy proceeds than the Debtors did prior to the Petition Date.  Allowing the automatic stay to prevent the payment, reimbursement, and/or advancement of defense costs of non-Debtor insureds' would infringe on such insureds' interests in the Policies and, in effect, improperly grant the Debtors greater rights to the proceeds than the Debtors would have otherwise had outside the bankruptcy context.  *See In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010) ("were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [proceeds] than the debtor had before filing for bankruptcy.'") (citation omitted).

46.    Accordingly, the Debtors submit that cause exists to modify the automatic stay, to the extent applicable, to allow the Insurance Carriers to make any required payments, including advances for future defense costs and reimbursement of defense costs that have already been incurred, with respect to the Insurance Claims, including as to (i) the Debtors in connection with the SEC Investigation and the Securities Class Action, (ii) Beneficient and, solely to the extent that they qualify as "Insureds" under the D&O Policies, the other defendants in connection with the PCA Suit, and (iii) the Individual Insureds in connection with the Securities Class Action, to the extent covered under the Policies.

**E.    Permitting the Payment, Reimbursement, and/or Advancement of Defense Costs Is an Appropriate Exercise of the Court's Powers.**

47.    Finally, Section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." For the reasons stated above, permitting the Insurance Carriers to pay, reimburse, and/or advance

defense costs in accordance with and subject to the terms and conditions of the Policies is an appropriate exercise of the Court's powers under these factual circumstances.

## VI.  Reservation of Rights

48.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## VII. Notice

49.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rule 4001, as well as the Procedures for Complex Cases in the Southern District of Texas, the Bankruptcy Local Rules; and/or the Order

Granting Debtors' Emergency Motion for Order Pursuant to Bankruptcy Code Section 105, Bankruptcy Rules 1015, 2002, 9007, and 9036, Local Bankruptcy Rule 2002-1, and the Complex Case Procedures Authorizing the Establishment of Certain Notice Procedures [Docket No. 125], and is sufficient under the circumstances.  Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) counsel to the Bondholders Committee; (f) counsel to the Final DIP lender; (g) National Founders, L.P.; (h) counsel to CLMG Corp. and LNV Corporation; (i) counsel to National Founders LP; (j) counsel to Bank of Utah, in its capacity as indenture trustee for the Bonds; (k) counsel to the plaintiffs in the Securities Class Action; (l) counsel to the plaintiffs in the California Collection Suit; (m) the U.S. Securities and Exchange Commission; (n) the Attorney General of each state in which the Debtors conduct business; (o) the Insurance Carriers; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
July 26, 2022

Respectfully Submitted,

/s/  Kristhy M. Peguero
**JACKSON WALKER LLP**

Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:      (713) 752-4200
Email:          kpeguero@jw.com
                mcavenaugh@jw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**MAYER BROWN LLP**

Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:      (713) 238-3000
Email:          ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:      (312) 701-0600
Email:          tkiriakos@mayerbrown.com
                lchiappetta@mayerbrown.com

-and-

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:      (212) 506-2500
Email:          apaul@mayerbrown.com
                lkweskin@mayerbrown.com

*Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on July 26, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 */s/ Kristhy M. Peguero*
Kristhy M. Peguero

**Schedule 1**

**The Insurance Policies**

| Coverage Description | Insurance Carrier | Policy No. | Original Policy Period[23] |
|---|---|---|---|
| Primary Policies | Indian Harbor Insurance Company | ELU16713420 ELU16713520 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 1st Layer Extension (Excess Policy) | ACE American Insurance Company | G46772040002 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 2nd Layer Extension (Excess Policy) | Berkshire Hathaway Specialty Ins. Co. | 47EPF30764802 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 3rd Layer Extension (Excess Policy) | Allied World National Assurance Company | 03118353 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 4th Layer Extension (Excess Policy) | Allianz Global Risks US Insurance Co. | USF00296120 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 5th Layer Extension (Excess Policy) | Berkley Insurance Company | BPRO8050233 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 6th Layer Extension (Excess Policy) | Endurance Risk Solutions Assurance Co | FIX30001065901 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 7th Layer Extension (Excess Policy) | QBE Insurance Corporation | QPL1326899 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 8th Layer Extension (Excess Policy) | Argonaut Insurance Company | MLX4248321 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 9th Layer Extension (Excess Policy) | Stratford Insurance Company | FIP000471 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 10th Layer Extension (Excess Policy) | RSUI Indemnity Company | NHS686778 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 11th Layer Extension (Excess Policy) | Crum & Forster Specialty Insurance Co. | EPC100596 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 12th Layer Extension (Limited Excess Policy) | US Specialty Insurance Company | 14MGU20A49192 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 13th Layer Extension (Limited Excess Policy) | Freedom Specialty Insurance Company | XMF2009029 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 14th Layer Extension (Limited Excess Policy) | Associated Industries Ins. Co., Inc. | ANV131462A | 4/26/2020 to 4/26/2022 |
| D&O/E&O 15th Layer Extension (Limited Excess Policy) | Ascot Insurance Company | FIXS201000001201 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 16th Layer Extension (Limited Excess Policy) | Twin City Fire Insurance Company | 61DA035074820 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 17th Layer Extension (Excess Policy) | Certain Underwriters at Lloyds | B0507FI2000805 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 18th Layer Extension (Excess Policy) | Atlantic Specialty Insurance Company | FIN0005390001 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 19th Layer Extension (Lead Side A Policy) | National Union Fire Ins Pittsburgh, PA | 013096983 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 20th Layer Extension (Side A DIC Policy) | Allianz Global Risks US Insurance Co. | USF00296320 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 21st Layer Extension (Side A DIC Policy) | XL Specialty Insurance Company | ELU16720520 | 4/26/2020 to 4/26/2022 |

---

[23]   Upon information and belief, Beneficient acquired and paid for tail coverage with respect to the Policies, providing for coverage of claims first asserted no later than April 14, 2028, but solely with respect to acts or omissions occurring prior to April 14, 2022.

| Coverage Description | Insurance Carrier | Policy No. | Original Policy Period[23] |
|---|---|---|---|
| D&O/E&O 22nd Layer Extension (Side A DIC Policy) | Berkshire Hathaway Specialty Ins. Co. | 47EPF30764702 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 23rd Layer Extension (Side A DIC Policy) | Endurance American Insurance Co. | FIX300001058101 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 24th Layer Extension (Excess Policy) | Continental Casualty Company | 652105526 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 25th Layer Extension (Side A DIC Policy) | Allied World National Assurance Company | 03118354 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 26th Layer Extension (Side A DIC Policy) | Westchester Fire Insurance Company | G71519983002 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 27th Layer Extension (Excess Policy) | Markel American Insurance Company | MKLM6EL0005435 | 4/26/2020 to 4/26/2022 |
| D&O/E&O 28th Layer Extension (Side A DIC Policy) | Old Republic Insurance Company | ORPRO44323 | 4/26/2020 to 4/26/2022 |