United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 07, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GWG Holdings, Inc., *et al.*,[1] | ) | Case No. 22-90032 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 639** |

**ORDER MODIFYING THE AUTOMATIC STAY AND
AUTHORIZING USE OF ESTATE PROPERTY, TO THE EXTENT
APPLICABLE, TO ALLOW PAYMENT, REIMBURSEMENT AND/OR
ADVANCEMENT OF DEFENSE COSTS UNDER INSURANCE POLICIES**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (a) modifying the automatic stay and authorizing the use of property of the estates outside the ordinary course of business, in each case, to the extent applicable, to allow the Insurance Carriers to pay, reimburse, and/or advance defense costs under the Policies, and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); and GWG Life USA, LLC (5538). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or in any of the Policies, as the context requires.

749532944

notice need be provided as set forth herein; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. Pursuant to Section 362(d)(1) of the Bankruptcy Code, limited relief from the automatic stay, to the extent applicable, is granted for cause, and relief is granted pursuant to Section 363(b) of the Bankruptcy Code, to the extent applicable, solely to permit the Insurance Carriers, pursuant to the terms of the Policies, to pay, reimburse and/or advance covered Defense Expenses incurred by or to be incurred by the Debtors, Beneficient, and the other non-Debtor individuals or entities insured under the Policies for the Insurance Claims (collectively, the "Insureds"), in each case, including any Defense Expenses previously incurred (including prior to the Petition Date, presently being incurred, or that will in the future be incurred; *provided, however,* that the Defense Expenses that comprise prepetition fees and expenses of Willkie Farr and KLDiscovery shall be governed entirely by Paragraph 3 hereof; *provided, further, however*, that, notwithstanding anything to the contrary in this paragraph, absent further order of the Court, Beneficient, MHT Financial LLC, or Murray Holland, or their respective counsel (including the counsel set forth in the table below and any counsel supplemented thereto or substituted therefor), shall not receive proceeds from the Policies on account of the PCA Suit or any expenses and fees incurred in connection therewith in excess of the sum of the Accrued Defense Expenses (which, for the avoidance of doubt, includes Defense Expenses incurred prior to the Petition Date) and Additional Defense Expenses set forth in the table below with respect to such Insureds and their

counsel. Other than those amounts set forth below, nothing contained in this Order authorizes payments of any other amounts on account of the PCA Suit from the proceeds of the Policies to or on behalf of any other Insureds or their counsel. In the event that any amended complaint or other document is filed in the PCA Suit that purports to name additional defendants therein, Beneficient shall provide the Bondholders Committee a copy of such amended complaint or other document within two business days after its receipt thereof.

| Insured | Counsel | Accrued Defense Expenses | Additional Defense Expenses |
|---|---|---|---|
| Beneficient | Holland & Knight LLP | $447,649.00 | $2,250,000.00[3] |
| Beneficient | Potter Anderson & Corroon LLP | $1,079,851.38 | |
| MHT Financial LLC & Murray Holland | Young Conaway Stargatt & Taylor, LLP | $800,000 | $1,250,000 |

2. Nothing in this Order shall be deemed to be a modification of the automatic stay to permit the Insurance Carriers to pay, reimburse, and/or advance amounts covered under Side B or Side C of the Policies on account of any settlements or compromises of any investigation or litigation, whether relating to the Insurance Claims or otherwise. Each of the Debtors, Beneficient, MHT Financial, and Murray Holland has agreed that such party will seek and obtain an order of this Court, which may be submitted for approval in the form of a consent order under certification of counsel agreed to by the Debtors and the Bondholders Committee, prior to any such payment, reimbursement, and/or advancement of amounts covered under the Policies on account of any settlements or compromises of any investigation or litigation to which it is a party.

---

[3] The cap for the Additional Defense Expenses for counsel for Beneficent is a single combined cap that can be used by either of the law firms representing Beneficient so long as the aggregate total for the law firms representing Beneficient does not exceed such cap without further order of the Court.

3. Defense Expenses that comprise Willkie Farr's prepetition fees and expenses in connection with the SEC Investigation shall be treated as follows:

A. The prepetition fees and expenses of Willkie Farr and KLDiscovery incurred in connection with the SEC Investigation that may be paid or reimbursed under the Policies shall be no more than $4,447,805.30, consisting of $4,238,970.36 invoiced by Willkie Farr (the "<u>Willkie Prepetition Amount</u>") directly and $208,834.94 invoiced separately by KLDiscovery (the "<u>KLDiscovery Prepetition Amount</u>" and together with the Willkie Prepetition Amount, the "<u>SEC Investigation Prepetition Amount</u>").[4] The Insurance Carrier(s) promptly shall pay $4,072,629.10 to the Debtors, which is the amount equal to all of the prepetition fees and expenses of Willkie Farr and KLDiscovery incurred in connection with the SEC Investigation determined to be reasonable and necessary Defense Expenses and which is allocated $3,863,794.16 to Willkie Farr (the "<u>Initial Willkie Prepetition Amount</u>") and $208,834.94 to KLDiscovery (the "<u>Initial KLDiscovery Prepetition Amount</u>"), and payment of the Initial Willkie Prepetition Amount and the Initial KLDiscovery Prepetition Amount shall be in full discharge of any obligation under the Policies with respect thereto. To the extent provided by the Policies, the Policies will be considered eroded in an amount equivalent to any such payments made pursuant to this subparagraph.

---

[4] Nothing contained herein prevents (i) Willkie Farr from pursuing the allowance of a general prepetition unsecured claim for the unpaid balance of the Willkie Prepetition Amount following application all amounts paid pursuant to this Order, (ii) KLDiscovery from pursuing the allowance of a general prepetition unsecured claim for the unpaid balance of the KLDiscovery Prepetition Amount following application all amounts paid pursuant to this Order, or (iii) any party in interest from objecting to allowance of either of the foregoing.

B.       The Debtors shall hold the amounts received from the Insurance Carriers in trust pursuant to the preceding subparagraph for distribution solely as provided in the following subparagraphs hereof.

C.       Within 30 days of the date of the entry of this Order, the Debtors, Willkie Farr, and the Bondholders Committee shall seek to negotiate (i) the portion of the Willkie Prepetition Amount reasonably attributable to Willkie Farr's prepetition representation of individual current and former officers and directors of the Debtors in connection with the SEC Investigation that are payable pursuant to Side A of the Policies (the "Willkie Side A Amount") and (ii) the portion of the KLDiscovery Prepetition Amount reasonably attributable to KLDiscovery's prepetition services on behalf of individual current and former officers and directors of the Debtors in connection with the SEC Investigation that are payable pursuant to Side A of the Policies (the "KLDiscovery Side A Amount" and together with the Willkie Side A Amount, the "SEC Investigation Side A Amount").  If the Debtors, Willkie Farr, and the Bondholders Committee agree upon the SEC Investigation Side A Amount, the Debtors shall promptly remit to Willkie Farr the portion of the SEC Investigation Side A Amount allocable to Willkie Farr and shall promptly remit to KLDiscovery the portion of the SEC Investigation Side A Amount allocable to KLDiscovery, in full and final satisfaction of the SEC Investigation Side A Amount.  If the Debtors, Willkie Farr, and the Bondholders Committee are not able to agree upon such a stipulation (i) on September 29, 2022 at 1:30 p.m. prevailing Central time the Court will hold a hearing to determine the Willkie Side A Amount and/or the KLDiscovery Side A Amount (as applicable) and (ii) by no later than September 22, 2022, the Debtors, the

Bondholders Committee, and Willkie Farr shall agree upon submission dates for filing position papers with the Court.

   D. Following judicial determination of the SEC Investigation Side A Amount pursuant to the last sentence of the immediately preceding subparagraph, the Debtors shall pay the Willkie Side A Amount to Willkie Farr and the KLDiscovery Side A Amount to KLDiscovery from the SEC Investigation Prepetition Amount. The remaining balance of (i) the Willkie Prepetition Amount (the "Remaining Prepetition Willkie Amount") shall then be paid by the Debtors to Willkie Farr to be held by Willkie Farr as a retainer for security against the nonpayment of postpetition fees and expenses incurred by Willkie Farr in its capacity as special counsel to the Debtors (the "Willkie Retainer") and (ii) the KLDiscovery Prepetition Amount (the "Remaining Prepetition KLDiscovery Amount") shall be held by the Debtors in trust, pending further order of the Court as set forth below. Notwithstanding such payment to Willkie Farr of the Willkie Retainer, the Insurance Carriers are authorized to pay the fees and expenses incurred from and after the Petition Date, by Willkie Farr (and KLDiscovery, if applicable) as Defense Expenses in accordance with the provisions of the Policies (x) in the case of Willkie Farr, the *Order (I) Pursuant to Section 327(e) of the Bankruptcy Code Authorizing and Approving Employment and Retention of Willkie Farr & Gallagher LLP as Special Counsel to the Debtors and (II) Granting Related Relief* [Docket No. 450] and (y) in the case of KLDiscovery, the Order (I) Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief [Docket No. 412]. The payment of the Willkie Retainer Amount shall in no manner whatsoever alter the administrative expense nature of such postpetition fees and expenses.

E. Absent agreement between the Debtors, Willkie Farr, and the Bondholders Committee regarding use of (i) the Willkie Retainer to satisfy the Remaining Willkie Prepetition Amount that was incurred on behalf of the Debtors and/or (ii) the Remaining KLDiscovery Prepetition Amount held by the Debtors, the Court shall hold a hearing on December 1, 2022 at 1:30 p.m. prevailing Central time to determine whether, and to what extent, (x) the Willkie Retainer may be used to satisfy any portion of the Remaining Willkie Prepetition Amount and (y) the Remaining KLDiscovery Prepetition Amount may be paid to KLDiscovery. By no later than November 17, 2022, the Debtors, the Bondholders Committee, and Willkie Farr shall agree upon a briefing and discovery schedule with respect to any such hearing.

F. If any portion of the Willkie Retainer is not (i) authorized to be used and applied by Willkie Farr in accordance with the immediately preceding subparagraph or (ii) used to satisfy any postpetition fees and expenses incurred by Willkie Farr in its capacity as special counsel to the Debtors, such amount will be returned to the applicable Insurance Carrier. If any portion of the Remaining KLPrepetition Amount is not (i) authorized to be paid by the Debtors to KLDiscovery in accordance with the immediately preceding subparagraph or (ii) used by the Debtors to satisfy any postpetition fees and expenses incurred by KLDiscovery in its capacity as a vendor for the Debtors, such amount will be returned to the applicable Insurance Carrier.

4. The Debtors shall provide counsel to the Bondholders Committee with notice of the Debtors' actual receipt, if any, of any notice (written or otherwise) from any Insurance Carrier, the Debtors' insurance broker or any Insured of any request of payment of an indemnity claim of any Insured under any Side of the Policies (*e.g.*, settlement, compromise, or judgment) submitted

to any Insurance Carrier.  Within five business days of entry of this Order, the Debtors shall provide notice of entry of this Order to the Insurance Carriers and the Debtors' insurance broker and request that such information be provided no less frequently than every thirty days.

5. Nothing in this Order affects the ability of any Insured that is a current or former director or officer of the Debtors (in their capacity as such) to request payment, reimbursement, and/or advancement from any Insurance Carrier of any Loss payable from proceeds of any Side A coverage under the Policies, or the ability of any Insurance Carrier to satisfy any such request, and any such payments, reimbursements, or advances are authorized hereunder.

6. As soon as practicable after September 30, 2022 and the last day of every calendar quarter thereafter during the pendency of the Chapter 11 Cases (each such date, an "Information Request Date"), counsel to the Debtors shall request reporting from each Insurance Carrier responsible for covering Defense Expenses during the preceding calendar quarter showing: (a) all amounts disbursed by the applicable Insurance Carriers under the Policies since the last Information Request Date (or, with respect to the first Information Request Date, since entry of the Order); and (b) the aggregate amount of Defense Expenses and other Loss for which invoices (or other evidence of payment obligations) have been tendered to the applicable Insurance Carriers for payment, reimbursement, or advancement under such Policies but for which the Insurance Carriers have not yet made a disbursement as of the last day immediately prior to the applicable Information Request Date; in each case, in the format the applicable Insurance Carriers have used or typically use in complying with any information obligations under the Policies and subject to customary confidentiality and privilege limitations.  The Debtors shall provide to the Bondholders Committee all such information actually received by the Debtors no later than 30 days following the related Information Request Date together with an estimate, based solely upon the information

actually received by the Debtors from the applicable Insurance Carriers, of the aggregate amount of coverage remaining under the Policies as of the most recent Information Request Date.

7. Notwithstanding anything herein to the contrary, the Debtors, their estates, and the Bondholders Committee reserve any and all rights and/or remedies under the Policies and applicable law with respect to any payments authorized and made pursuant to the proviso set forth in Paragraph 1 of this Order including, without limitation, any and all rights and remedies under the Policies or applicable law to seek recovery of any such payments that may be made by any Insurance Carrier; *provided* this Order preserves, but does not create, any such rights or remedies under the Policies or applicable law, whether on behalf of the Debtors, their estates, the Bondholders Committee, any Insurance Carrier, or otherwise.

8. Nothing in this Order shall be deemed a determination (i) as to whether any proceeds of any Policies are or are not property of the Debtors' estates or (ii) that the automatic stay applies, and all rights of the Debtors, their estates, the non-Debtor insureds, the Notice Parties, and all other parties in interest are reserved with respect thereto.

9. Nothing in this Order shall modify or alter the rights and obligations provided for under the terms and provisions of the various Policies issued by the Insurance Carriers.

10. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order in accordance with the Motion.

11. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: September 07, 2022

_____
Marvin Isgur
United States Bankruptcy Judge

| | |
|---|---|
| /s/ *Kristhy M. Peguero* | /s/ *Allison S. Mielke* (pending edits below) |

/s/ *Kristhy M. Peguero*
**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   (713) 752-4200
Email: kpeguero@jw.com
Email: mcavenaugh@jw.com

*Co-Counsel to the Debtors and
Debtors in Possession*

**MAYER BROWN**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 2400
Houston, TX 77002-2730
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

-- and --

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-0600
Email: tkiriakos@mayerbrown.com
Email: lchiappetta@mayerbrown.com

-- and --

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500
Email: apaul@mayerbrown.com
Email: lkweskin@mayerbrown.com

*Counsel for the Debtors and
Debtors in Possession*

/s/ *Jennifer Hardy*
**WILLKIE FARR & GALLAGHER LLP**
Jennifer Hardy (TX Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com

*Special Litigation Counsel to the Debtors*

/s/ *Allison S. Mielke*
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Allison S. Mielke (admitted *pro hac vice*)
1000 N. King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: amielke@ycst.com

*Counsel for MHT Financial LLC and Murray Holland*

749532944

/s/ *Steve J. Levitt*
**HOLLAND AND KNIGHT**
David M. Bennett (TX Bar No. 02139600)
Steven J. Levitt (TX Bar No. 24092690)
1722 Routh St., Suite 1500
Dallas, TX 75201
Telephone: (214) 969-1486
Facsimile: (214) 969-1751
Email: David.Bennett@hklaw.com
Email: Steve.Levitt@hklaw.com

Anthony F. Pirraglia (TX State Bar No. 24103017)
811 Main Street, Suite 2500
Houston, TX 77002
Telephone: (713) 217-2886
Email: Anthony.Pirraglia@hklaw.com

*Counsel to the Beneficent Company Group, L.P.*

/s/ *Eric M. English*
**PORTER HEDGES LLP**
Eric M. English (TX Bar No. 24062714)
M. Shane Johnson (TX Bar No. 24083263)
1000 Main Street, 36th Floor
Houston, TX 77002-274
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
Email: eenglish@porterhedges.com
Email: sjohnson@porterhedges.com

*Counsel to the Official Committee of Bondholders of GWG Holdings, Inc., et al.*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Lacy Lawrence (TX Bar No. 24055913)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: llawrence@akingump.com

Michael Stamer (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Jason P. Rubin (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
Email: aqureshi@akingump.com
Email: jrubin@akingump.com

Scott Alberino (admitted *pro hac vice*)
Benjamin L. Taylor (admitted *pro hac vice*)
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006-1037
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Email: salberino@akingump.com
Email: taylorb@akingump.com

*Counsel to the Official Committee of Bondholders of GWG Holdings, Inc., et al.*