**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GWG Holdings, Inc., *et al.*,[1] | ) | Case No. 22-90032 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDERS (I) APPROVING
SETTLEMENTS AMONG THE DEBTORS, THE DLP SECURED PARTIES,
<u>AND OTHER PARTIES IN INTEREST, AND (II) GRANTING RELATED RELIEF</u>**

---

**Emergency relief has been requested. Relief is requested no later than December 1, 2022. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

GWG Holdings, Inc. ("<u>GWGH</u>") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Initial Debtors</u>") and GWG DLP Funding IV, LLC ("<u>DLP IV</u>"), GWG DLP Funding VI, LLC ("<u>DLP VI</u>"), and GWG DLP Funding Holdings VI, LLC ("<u>DLP Holdings VI</u>" and, together with DLP VI, the "<u>DLP VI Debtors</u>"), as debtors and debtors in possession in the above-captioned cases (collectively, the "<u>DLP Debtors</u>"

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (6955); and GWG DLP Funding Holdings VI, LLC (6955). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201.  Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

and, together with the Initial Debtors, the "Debtors" and, together with their non-debtor affiliates, "GWG" or the "Company")[2] respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1.      The Debtors seek entry of (i) the order attached hereto (the "DLP IV Settlement Order") approving a compromise between the Debtors and the Prepetition DLP IV Secured Parties (defined herein), among other parties, with respect to the allowance and payment of the Prepetition DLP IV Secured Parties' claims, the repurchase of the Residual Beneficial Interest (defined herein), accelerating the Challenge Period Termination Date under the DLP IV Cash Collateral Order (defined herein), and granting related relief and (ii) the order attached hereto (the "DLP VI Settlement Order" and, together with the DLP IV Settlement Order, the "Settlement Orders") approving a compromise between the Debtors and the Prepetition DLP VI Secured Parties (defined herein), among other parties, with respect to the allowance and payment of the Prepetition DLP VI Secured Parties' claims, accelerating the Investigation Termination Date under the DLP VI Cash Collateral Order (defined herein), and granting related relief.

2.      The compromises embodied in this Motion and in the Settlement Orders are the product of extensive negotiation among the Debtors, the Bondholder Committee (defined herein), the Investigations Committee of the Board of Directors of GWGH and, as applicable, the respective Conflicts Committees of DLP IV and DLP VI, and the respective Prepetition DLP Secured Parties (defined herein) (collectively, the "Settlement Parties"), and resolve what would otherwise likely be complex and costly litigation that could, among other things, delay or prevent approval and consummation of the proposed $630 million replacement debtor-in-possession financing (the "Replacement DIP Financing") provided by Vida Insurance Credit Opportunity

---

[2]    For the avoidance of doubt, the definitions of "GWG" and "Company" do not include non-affiliated entities The Beneficient Company Group L.P., FOXO Technologies, Inc., or their respective direct and indirect subsidiaries.

2

Fund III GP, LLC and/or its affiliate(s) ("Vida"), the development, approval, and consummation of the Debtors' plan of reorganization, and the Debtors' swift emergence from chapter 11. In addition, the Settlements (defined herein) will provide the Debtors' estates with more than $3.6 million in incremental value that would otherwise need to be paid to the Prepetition DLP Secured Parties while also saving the Debtors' estates from incurring significant expense in connection with litigation over the settled claims (which the Debtors estimate could exceed millions of dollars in the aggregate). The Debtors firmly believe that approval of the Settlement Orders and the compromises set forth therein is in the best interest of their estates and is supported by the Debtors' sound business judgment.

3.      Emergency relief is warranted because the Settlements (a) have the support of certain of the Debtors' key stakeholders, including but not limited to the Bondholder Committee; (b) resolve the Prepetition DLP Secured Parties' opposition to the Replacement DIP Financing, thereby clearing the way for approval of the Replacement DIP Financing and the DLP Debtors' continued use of cash collateral; and (c) provide for the allowance and satisfaction in full of the Prepetition DLP Secured Parties' claims, thereby reducing the complexity and expense of these Chapter 11 Cases. Further, emergency relief is essential to satisfying the milestones required by Vida to ensure the Replacement DIP Financing is in place prior to the expiration of the Debtors' existing DIP facility.

### Jurisdiction and Venue

4.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are sections 105, 363, and 502 of title 11 of the United States Code (the "Bankruptcy Code"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures").

### Background

7.      On April 20, 2022 (the "Initial Petition Date"), the Initial Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Initial Chapter 11 Cases").  On the Initial Petition Date, the Court entered an order authorizing the joint administration of the Initial Chapter 11 Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  *See* [Dkt. No. 18.].  On May 9, 2022, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee secured of bondholders [Dkt. No. 214] (the "Bondholder Committee") in the Initial Chapter 11 Cases.  No trustee or examiner has been appointed in the Initial Chapter 11 Cases.

8.      On October 31, 2022 (the "DLP Petition Date"), the DLP Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (with respect to DLP IV, the "DLP IV Chapter 11 Case" and with respect to the DLP VI Debtors, the "DLP VI Chapter 11 Cases" and, collectively, the "DLP Chapter 11 Cases" and, collectively with the Initial Chapter 11 Cases, the "Chapter 11 Cases").  An order directing joint administration of the DLP Chapter 11 Cases with the Initial Chapter 11 Cases for procedural purposes only was entered on the DLP Petition Date [Dkt. No. 970], and certain "Applicable Preexisting Orders" (as defined in such

order) apply to the DLP Chapter 11 Cases pursuant to such order.  To date, no creditors' committee, trustee, or examiner has been appointed by the U.S. Trustee in the DLP Chapter 11 Cases.  The Prepetition DLP Secured Parties are the only material prepetition creditors of the respective DLP Debtors as of the DLP Petition Date.

9.        Each of DLP IV and DLP VI owns a policy portfolio of near-duration, intermediate-duration, and long-duration life insurance policies (each, a "<u>Policy</u>" and collectively, the "<u>Policy Portfolios</u>"), which the Initial Debtors manage.  The Policy Portfolios generate death benefit funds once a Policy matures, which funds are received by the Company approximately two to three months after the maturity.  Those funds are used to fund monthly premiums for the remainder of the Policy Portfolios, in addition to certain other Company costs and expenses.

10.        The DLP Debtors commenced the DLP Chapter 11 Cases, in part, to satisfy a condition precedent of the Replacement DIP Financing.  Commencing the DLP Chapter 11 Cases, among other things, also emerged, in the Debtors' view, as the best path to maximize the value of the Policy Portfolios and the Debtors' estates and satisfy valid claims of the DLP Debtors' creditors.  However, to ensure that the Replacement DIP Financing may be consummated in a timely manner, it is essential to fully and finally allow the claims relating to the DLP IV Facility and the DLP VI Facility on the terms set forth in the Settlement Orders.

### DLP Debtors' Prepetition Secured Debt

**I.        DLP IV Facility.**

11.        DLP IV, as borrower, LNV Corporation ("<u>LNV</u>"), as lender, and CLMG Corp., as administrative agent (the "<u>Prepetition DLP IV Agent</u>" and, together with LNV and any other lenders party to the DLP IV Loan Agreement (defined below) from time to time, the "<u>Prepetition DLP IV Secured Parties</u>"), are party to that certain *Fifth Amended and Restated Loan and Security Agreement*, dated as of December 14, 2021 (as amended  by that certain First Amendment to the

Fifth Amended and Restated Loan and Security Agreement, dated as of February 25, 2022; that certain Second Amendment to the Fifth Amended and Restated Loan and Security Agreement, dated as of June 27, 2022 (the "Second DLP IV Facility Amendment"); that certain Third Amendment to the Fifth Amended and Restated Loan and Security Agreement, dated as of October 12, 2022; and as may be further amended, restated, supplemented or otherwise modified from time to time, the "DLP IV Loan Agreement"). Under the DLP IV Loan Agreement and the other Transaction Documents (as defined in the DLP IV Loan Agreement, the "DLP IV Transaction Documents"), the Prepetition DLP IV Secured Parties provided a secured credit facility to DLP IV (the "DLP IV Facility").

12.     The DLP IV Facility is scheduled to mature on February 1, 2027, and the obligations thereunder are secured by a first priority lien on substantially all of DLP IV's assets—*i.e.*, Policies with an approximate face amount as of the DLP Petition Date of $1.270 billion (the "DLP IV Collateral"). As of the DLP Petition Date, DLP IV was indebted and liable to the Prepetition DLP IV Secured Parties under the DLP IV Loan Agreement in the approximate aggregate principal amount of not less than $275,029,636.

13.     Additionally, on November 15, 2021, in consideration for certain cash collateral being released, DLP IV assigned and granted to the Prepetition DLP IV Agent, for the ratable benefit of the lenders under the DLP IV Facility, an irrevocable beneficial interest in a weighted average of three percent (3.0%) of the U.S. dollar death benefit payable under the pledged policies under the DLP IV Facility (the "Residual Beneficial Interest"). Such assignment means that, with respect to a maturity under an applicable pledged policy after such date, the Prepetition DLP IV Agent has its own claim with the subject carrier with respect to such residual death benefit, and approximately three percent (3.0%) of the death benefit then paid under any such pledged policy

is paid directly to the Prepetition DLP IV Agent.  The Second DLP IV Facility Amendment granted DLP IV the option to repurchase the Residual Beneficial Interest at a price equal to or greater than $20,000,000 (which the Prepetition DLP IV Secured Parties believe is likely below the actual value of the Residual Beneficial Interest), subject to satisfaction of certain specified conditions and documentation and terms in form and substance acceptable to the Prepetition DLP IV Agent.

### II.   DLP VI Facility.

14.    On August 11, 2021, National Founders LP ("NFLP") in its capacity as the administrative agent (in such capacity, the "Prepetition DLP VI Agent") and sole lender (collectively with the Secured Parties as defined in the DLP VI Credit Agreement (as defined below) from time to time, the "Prepetition DLP VI Secured Parties" and, collectively with the Prepetition DLP IV Secured Parties, the "Prepetition DLP Secured Parties") entered into that certain *Credit Agreement* (as the same has been, and hereafter may be, amended, restated, amended and restated, supplemented, or otherwise modified from time to time pursuant to the terms thereof, including, without limitation, the prepetition amendments thereto, the "DLP VI Credit Agreement") with DLP VI, as borrower.  Under the DLP VI Credit Agreement and various security agreements (the "DLP VI Credit Documents"), the Prepetition DLP VI Secured Parties provided a secured credit facility to the DLP VI Debtors (the "DLP VI Facility" and, together with the DLP IV Facility, the "DLP Credit Facilities").

15.    The DLP VI Facility is scheduled to mature on August 11, 2031, and the obligations thereunder are secured by a first priority lien (the "DLP VI Lien") on substantially all of the DLP VI Debtors' assets—which include Policies with an approximate face amount of $400.6 million held by the DLP VI Debtors (the "DLP VI Collateral" and, together with the DLP IV Collateral, the "DLP Collateral").  The DLP VI Facility is guaranteed by GWGH upon the occurrence of certain events, including a bankruptcy filing.  As of the DLP Petition Date, approximately

$111,366,824 in principal amount remains outstanding under the DLP VI Facility.  Outside of the Prepetition DLP VI Secured Parties, the DLP VI Debtors do not have any other material creditors as of the DLP Petition Date.

### III.    Interim Cash Collateral Orders & Proposed Replacement DIP Financing.

16.    In connection with the commencement of the DLP Chapter 11 Cases, the DLP Debtors filed their *Emergency Motion for Interim Orders (I) Authorizing the Use of DLP Cash Collateral, (II) Granting Adequate Protection to the Prepetition DLP Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Dkt. No. 985] (the "Cash Collateral Motion").  Following a hearing held on the Cash Collateral Motion, this Court entered interim orders approving the use of cash collateral by DLP IV [Dkt. No. 1014] (the "DLP IV Cash Collateral Order") and by DLP VI [Dkt. No. 1032] (the "DLP VI Cash Collateral Order" and, together with the DLP IV Cash Collateral Order, the "Cash Collateral Orders").

17.    As conditions to the Prepetition DLP Secured Parties' consent to the use of cash collateral, the Cash Collateral Orders include, among other things, stipulations by the DLP Debtors regarding the validity of the obligations under the respective DLP Credit Facilities, including the prepayment premiums with respect to each facility, *i.e.*, the "Yield Maintenance Fee" under the DLP IV Facility and the "Acceleration Prepayment Premium Amount" under the DLP VI Facility (collectively, the "Yield Maintenance Amounts").  Additionally, the Cash Collateral Orders provide for releases of potential claims held by the DLP Debtors against the Prepetition DLP Secured Parties and indemnities in favor of the Prepetition DLP Secured Parties by the applicable DLP Debtors, in each case subject to a challenge period.  Absent a timely challenge, the stipulations, releases, and indemnities contained in each of the Cash Collateral Orders become final and binding upon the occurrence of, with respect to the DLP IV Cash Collateral Order, the

"Challenge Period Termination Date" and, with respect to the DLP VI Cash Collateral Order, the "Investigation Termination Date."[3]

18.    At this time, the Debtors' motion for approval of the Replacement DIP Financing is pending.  The objection deadline for the Replacement DIP Financing has passed except with respect to the Prepetition DLP Secured Parties and the Bondholder Committee, and no objections to the proposed Replacement DIP Financing have been filed.  However, as a condition to final approval and closing of the Replacement DIP Financing, the Debtors understand that Vida requires the irrevocable release of all liens in favor of the Prepetition DLP Secured Parties (or that certain arrangements be made to consummate such releases immediately following closing), and DLP IV's purchase of the Residual Beneficial Interest from the Prepetition DLP IV Agent.  Importantly, the foregoing must occur no later than December 15, 2022 under the terms of the Replacement DIP Financing.  Thus, it is essential that the Replacement DIP Financing is timely approved so that it can close by such date and, ultimately, avoid a default on the existing DIP facility.

19.    However, the deadline to close the Replacement DIP Financing is ***prior*** to the Challenge Period Termination Date and the Investigation Termination Date specified under the respective Cash Collateral Orders, and the Prepetition DLP Secured Parties have indicated that they are unwilling to voluntarily grant the required lien releases in connection with the Replacement DIP Financing unless all obligations under the DLP Credit Facilities are indefeasibly paid in full, the stipulations, releases, and indemnities in the Cash Collateral Orders are made final, binding, and irrevocable, and, as to DLP IV, the Residual Beneficial Interest is repurchased on

---

[3]    The respective Cash Collateral Orders provide that the Challenge Period Termination Date or Investigation Termination Date, as applicable, would occur on: (i) the date that is the earlier of (A) January 3, 2023 or (B) the later of (1) forty-five (45) calendar days from the entry of such order (*i.e.*, December 17 and 19, 2022); or (2) thirty (30) calendar days after any recommendation is presented to the respective board of directors for each of the DLP Debtors by any conflicts committee for the board of directors thereof, (ii) any later date as has been agreed to, in writing, by the applicable DLP Credit Facility Agent, or (iii) any later date as has been ordered by the Court for cause upon a timely filed motion.

acceptable terms.  Thus, to proceed with the Replacement DIP Financing consensually, the Challenge Period Termination Date and Investigation Termination Date must be accelerated or an agreement must be reached with the respective Prepetition DLP Secured Parties to provide the functional equivalent thereof.  Without the consent of the Prepetition DLP Secured Parties, the DLP Debtors likely would face contentious and costly litigation in an effort to either compel the Prepetition DLP Secured Parties' lien releases coupled with provisional acceptance of payment in full and/or receipt of substitute collateral or provide Vida with priming liens in the DLP Collateral, any of which could jeopardize the Debtors' ability to ensure that the Replacement DIP Financing can close prior to the December 15 deadline.  It is likely that, even if the Debtors were successful, the parties would thereafter engage in additional costly litigation to resolve any remaining issues following the closing of the Replacement DIP Financing.

20.     As discussed below, the Settlements (defined herein) avoid the need for what is otherwise likely to be significant litigation by finalizing the stipulations, releases, and indemnities in the Cash Collateral Orders, fixing the amount of the Prepetition DLP Secured Parties' claims, and providing for repurchase of the Residual Beneficial Interest while providing direct monetary benefits to the Debtors' estates in the form of (1) savings of more than $3.6 million as a result of the agreed reductions to the purchase price for the Residual Beneficial Interest and to the Prepetition DLP VI Secured Parties' Acceleration Prepayment Premium Amount and (2) savings to the Debtors' estates from minimizing professional fees that would otherwise be incurred in connection with litigation of the claims being resolved.  The Settlements also eliminate numerous potential roadblocks to the approval and consummation of the Replacement DIP Financing and the proposal and approval of the Debtors' plan of reorganization and emergence from the Chapter 11 Cases.  Further, to ensure that the Settlements are comprehensive and address all potential

litigation related to the Prepetition DLP Secured Parties, the Debtors hereby represent and warrant that they have not transferred, sold or assigned any claims or causes of action that they may have against any of the Prepetition DLP Secured Parties or any other party released under the Cash Collateral Orders.

## TERMS OF SETTLEMENTS WITH PREPETITION DLP SECURED PARTIES

21.     Following extensive discussions, the following agreements have been reached among the Settlement Parties, with such agreements to be effectuated pursuant to the Settlement Orders, the order approving the Replacement DIP Financing (the "Vida DIP Order"), and the consummation of the Replacement DIP Financing (the "Vida DIP Closing").  As detailed below, each of the Settlements provides for a global resolution of all issues pertaining to the Prepetition DLP Secured Parties' claims.  In exchange for avoiding costly and time-consuming litigation, (i) the Prepetition DLP IV Secured Parties have agreed to a $2.15 million reduction to the purchase price for the Residual Beneficial Interest, from $20 million to $17.85 million, and (ii) the Prepetition DLP VI Secured Parties have agreed to a 10% discount to the amount of the Acceleration Prepayment Premium Amount, which, together, will incrementally benefit the Debtors by more than $3.6 million and avoid what would likely be millions of dollars in litigation costs.

22.     The terms of the settlement with respect to the DLP IV Facility (the "DLP IV Settlement") are as follows:

(i)     **Claims Allowance**.  The DLP IV Settlement Parties stipulate and agree that the Prepetition DLP IV Secured Parties have an allowed secured claim against DLP IV in the following amounts: (a) outstanding principal in the amount of $275,029,635.91; (b) accrued unpaid interest as of December 15, 2022 in the amount of $4,396,807.12, plus interest accrued thereafter at the Default Rate (as defined in the DLP IV Loan Agreement)

11

and until the Vida DIP Closing and the indefeasible and irrevocable receipt by the Prepetition DLP IV Secured Parties of the DLP IV Payoff (defined herein); (c) a Yield Maintenance Fee in the amount of $21,186,923.02; and (d) other reasonable fees and expenses (including legal expenses of the Prepetition DLP IV Secured Parties)[4] payable under the DLP IV Facility through the date of the indefeasible and irrevocable receipt by the Prepetition DLP IV Secured Parties of the DLP IV Payoff and the deposit of the RDB Purchase Price into the RDB Escrow Account (each as defined herein) (clauses (a) through (d), collectively, the "DLP IV Allowed Claim Amount").

(ii)     **Residual Beneficial Interest**.  The DLP IV Settlement Parties acknowledge and agree that (a) the Residual Beneficial Interest was validly and irrevocably transferred to the Prepetition DLP IV Agent and, accordingly, the Prepetition DLP IV Agent is the valid owner of the Residual Beneficial Interest; (b) upon the Vida DIP Closing, DLP IV shall indefeasibly and irrevocably, and without recourse, representation, or warranty of any kind or nature, repurchase the Residual Beneficial Interest from the Prepetition DLP IV Agent for a total purchase price of $17,850,000 (the "RDB Purchase Price"), which amount is the contractually agreed $20,000,000 repurchase price *less* the $2,150,000 agreed reduction thereto, with the RDB Purchase Price to be paid using proceeds from the Replacement DIP Financing; and (c) the Vida DIP Order will provide for (x) the release and transfer of the Residual Beneficial Interest to DLP IV without recourse, representation, or warranty of any kind or nature, upon the indefeasible and irrevocable receipt by the Prepetition DLP IV Secured Parties of the DLP IV Payoff and the deposit into the RDB Escrow Account (as defined in the Vida DIP Order, which shall be in form and substance

---

[4]     Such legal expenses will include a reasonable estimate for fees and expenses to be incurred after the DLP IV Payoff.

reasonably acceptable to the Prepetition DLP Secured Parties)[5] of the RDB Purchase Price and (y) the Prepetition DLP IV Agent's obligation to take any commercially reasonable steps necessary or appropriate to consummate the foregoing (all at the sole cost and expense of DLP IV), including, but not limited to, the granting of a limited power of attorney solely by the Prepetition DLP IV Agent to DLP IV with respect to the Residual Beneficial Interest (the "DLP IV Power of Attorney") in form and substance acceptable to the Prepetition DLP IV Agent (which DLP IV Power of Attorney shall be limited solely to a schedule of all Policies held by DLP IV and/or subject to the Residual Beneficial Interest). Any other documentation necessary or reasonably required to effectuate the DLP IV Settlement shall be in form and substance reasonably acceptable to the Prepetition DLP IV Secured Parties, the Debtors, and the other DLP IV Settlement Parties, and any fees, costs, and expenses incurred by the Prepetition DLP IV Secured Parties in connection with any such documentation, the DLP IV Power of Attorney, and the administration and enforcement of their rights thereunder (including, in each case, the fees, costs, and expenses of counsel) shall be paid by DLP IV and shall have administrative priority status in the DLP IV Chapter 11 Case under section 503(b) of the Bankruptcy Code.

(iii)    **Payoff of Prepetition DLP IV Secured Parties**.  Upon the Vida DIP Closing, DLP IV shall (a) indefeasibly and irrevocably pay to the Prepetition DLP IV Agent the DLP IV Allowed Claim Amount in full and final indefeasible satisfaction of all obligations under the DLP IV Facility and the DLP IV Cash Collateral Order (the "DLP IV Payoff"); and (b) deposit the RDB Purchase Price into the RDB Escrow Account. Notwithstanding anything to the contrary in the Vida DIP Order, until (or substantially

---

[5]    As of the time of filing of this Motion, the Prepetition DLP IV Secured Parties and the Debtors have not yet agreed on the terms of the RDB Escrow Account and any related escrow agreement.

contemporaneously with) such irrevocable and indefeasible payment, (i) the Replacement DIP Super-Priority Claims (as defined in the Vida DIP Order) shall be junior to any and all claims of the Prepetition DLP IV Secured Parties and Prepetition DLP VI Secured Parties, (ii) the Replacement DIP Liens (as defined in the Vida DIP Order) shall not attach to any DLP Collateral, and (iii) the DLP Debtors' Cash Collateral (as defined in the Vida DIP Order) shall not be subject to any control or deposit account control agreements other than by or for the benefit of the Prepetition DLP IV Secured Parties and Prepetition DLP VI Secured Parties.

(iv)     **Release of DLP IV Liens**.  Upon the Vida DIP Closing, the indefeasible and irrevocable receipt by the Prepetition DLP IV Secured Parties of the DLP IV Payoff, and the deposit of the RDB Purchase Price into the RDB Escrow Account, all liens of the Prepetition DLP IV Secured Parties securing any obligations under the DLP IV Facility and the DLP IV Cash Collateral Order shall be released.  The DLP IV Power of Attorney will authorize DLP IV to take all further steps necessary or appropriate effectuate the foregoing releases.

(v)     **DLP IV Cash Collateral Order**.  Immediately upon entry of the DLP IV Settlement Order, the Challenge Period Termination Date (as defined in the DLP IV Cash Collateral Order) shall be deemed to have occurred, with the effect being as if no challenge (including, without limitation, in respect of any Challenge Matter (as defined in the DLP IV Cash Collateral Order)) has been made by any person or entity.  The Vida DIP Order will provide that, upon the occurrence of the Vida DIP Closing, the indefeasible and irrevocable receipt by the Prepetition DLP IV Secured Parties of the DLP IV Payoff, and the deposit of the RDB Purchase Price into the RDB Escrow Account, the DLP IV Cash

14

Collateral Order shall be deemed terminated and of no further effect; *provided* that the stipulations, releases, and indemnities set forth in Paragraphs F and 8(a) thereof (and the effect of Paragraph 18 thereof on such provisions) shall remain valid and shall be fully enforceable and binding on the Debtors and all other parties in interest immediately upon entry of the DLP IV Settlement Order and such releases shall further apply to any claim or cause of action held by any DLP IV Settlement Party as of the date of the indefeasible and irrevocable receipt by the Prepetition DLP IV Secured Parties of the DLP IV Payoff related to the DLP IV Settlement or the Chapter 11 Cases.

(vi)     **Effectiveness of DLP IV Settlement**.  The DLP IV Settlement shall remain binding on the DLP IV Settlement Parties and, once the DLP IV Settlement Order is entered, all other parties in interest, regardless of whether the Vida DIP Order is entered. If the Debtors incur postpetition financing from any party other than Vida, the terms "Replacement DIP Financing," "Vida DIP Order" and "Vida DIP Closing" in the DLP IV Settlement Order shall mean such financing, the order approving such financing, and the consummation of such financing, respectively.  The DLP IV Settlement shall automatically terminate and shall be null and void if the Vida DIP Order (or any other order authorizing the Debtors to incur postpetition financing) is entered prior to approval of this Motion.

23.     The terms of the settlement with respect to the DLP VI Facility (the "<u>DLP VI Settlement</u>" and, together with the DLP IV Settlement, the "<u>Settlements</u>") are as follows:

(i)     **Claims Allowance**.  The DLP VI Settlement Parties[6] stipulate and agree that the Prepetition DLP VI Secured Parties have an allowed secured claim against DLP

---

[6]     The DLP VI Settlement Parties are: (a) the Debtors, (b) the Investigations Committee of the Board of Directors of GWGH, (c) the Conflicts Committee of DLP VI, (d) the Prepetition DLP VI Secured Parties, and (e) the Bondholder Committee.

VI in the following amounts: (a) outstanding principal in the amount of $111,366,824.42, plus the aggregate principal amount of any Loans (as defined in the DLP VI Credit Agreement) made after the date hereof, if any; (b) accrued but unpaid interest as of December 15, 2022[7] totaling $530,942.25 (provided no additional Loans are made after the date hereof); (c) the Acceleration Prepayment Premium Amount in the amount of $13,115,556.28 (after accounting for the agreed reduction pursuant to this DLP VI Settlement);[8] and (d) other reasonable fees and expenses (including legal expenses of the Prepetition DLP VI Secured Parties)[9] payable under the DLP VI Facility through the date of the DLP VI Payoff (collectively, the "DLP VI Allowed Claim Amount").

(ii) **Payoff of Prepetition DLP VI Secured Parties**.  Upon the Vida DIP Closing, DLP VI shall irrevocably and indefeasibly pay to the Prepetition DLP VI Agent the DLP VI Allowed Claim Amount in cash in full and final indefeasible satisfaction of all obligations under the DLP VI Facility and the DLP VI Cash Collateral Order (the "DLP VI Payoff").  Notwithstanding anything to the contrary in the Vida DIP Order, until (or substantially contemporaneously with) such irrevocable and indefeasible payment, (i) the Replacement DIP Super-Priority Claims (as defined in the Vida DIP Order) shall be junior to any and all claims of the Prepetition DLP IV Secured Parties and Prepetition DLP VI Secured Parties, (ii) the Replacement DIP Liens (as defined in the Vida DIP Order) shall not attach to any DLP Collateral, and (iii) the DLP Debtors' Cash Collateral (as defined in

---

[7]   For the avoidance of doubt, if the DLP VI Payoff occurs after December 15, 2022, the DLP VI Allowed Claim Amount shall include accrued but unpaid interest at the Default Rate (as defined in the DLP VI Credit Agreement) through the date of the DLP VI Payoff.

[8]   The DLP VI Settlement Parties agree that the contractually calculated amount of the Acceleration Prepayment Premium Amount is $14,572,840.31, and that a reduction of 10% thereof pursuant to the DLP VI Settlement, $1,457,284.03, results in the amount actually payable set forth above.

[9]   Such legal expenses will include a reasonable estimate for fees and expenses to be incurred after the DLP VI Payoff.

the Vida DIP Order) shall not be subject to any control or deposit account control agreements other than by or for the benefit of the Prepetition DLP IV Secured Parties and Prepetition DLP VI Secured Parties.

(iii)    **Release of DLP VI Liens**.  Upon the Vida DIP Closing and the indefeasible and irrevocable receipt by the Prepetition DLP VI Secured Parties of the DLP VI Payoff, all liens of the Prepetition DLP VI Secured Parties securing any obligations under the DLP VI Facility and the DLP VI Cash Collateral Order shall be released.  The Prepetition DLP VI Secured Parties will take any further steps necessary or appropriate to effectuate the foregoing releases, *provided* that any reasonable fees, costs, and expenses incurred by the Prepetition DLP VI Secured Parties in connection with any such steps (including the fees, costs, and expenses of counsel) shall be paid by DLP VI and shall have administrative priority status in the DLP VI Chapter 11 Case under section 503(b) of the Bankruptcy Code.

(iv)    **DLP VI Cash Collateral Order**.  Immediately upon entry of the DLP VI Settlement Order, the Investigation Termination Date, as such term is used in the DLP VI Cash Collateral Order, shall be deemed to have occurred without any Challenge (defined therein) having been brought by any party.  The Vida DIP Order will provide that, upon the occurrence of the Vida DIP Closing, the DLP VI Cash Collateral Order shall be deemed terminated and of no further effect; *provided* that the provisions of Paragraph F, the indemnity contained in Paragraph 4, and the releases contained in Paragraph 9(a) thereof shall remain valid and shall be fully enforceable and binding on the Debtors and all other parties in interest immediately upon entry of the DLP VI Settlement Order and such releases shall further apply to any claim or cause of action held by any DLP VI Settlement

17

Party as of the date of the DLP VI Payoff related to the DLP VI Settlement or the Chapter 11 Cases.

       (v)    **Effectiveness of DLP VI Settlement**.  The DLP VI Settlement shall remain binding on the DLP VI Settlement Parties and, once the DLP VI Settlement Order is entered, all other parties in interest, regardless of whether the Vida DIP Order is entered. If the Debtors incur postpetition financing from any party other than Vida, the terms "Replacement DIP Financing," "Vida DIP Order" and "Vida DIP Closing" in the DLP VI Settlement Order shall mean such financing, the order approving such financing, and the consummation of such financing, respectively.  The DLP VI Settlement shall automatically terminate and shall be null and void if the Vida DIP Order (or any other order authorizing the Debtors to incur postpetition financing) is entered prior to approval of this Motion.

24.    The Settlement Parties intend that the entry of the Settlement Orders, as well as their subsequent agreement to the pertinent language of the Vida DIP Order consistent with the terms of the Settlement Orders, will constitute the full agreement of such parties, and that, accordingly, no separate settlement agreements shall be required.

## **Basis for Relief Requested**

### I.    **Legal Standard**

25.    Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement provided the proposed settlement is fair, reasonable, and in the best interest of the estate.  *In re Age Refin. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).  As set forth in more detail below, this analysis requires the consideration of (i) the probability of success in litigation, (ii) the complexity, duration, expense, and delay of any litigation, and (iii) other "factors bearing on the wisdom of the compromise." *Id.; Official Comm.*

*of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 355 (5th Cir. 1997).

26.      Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *U.S. v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 97 (5th Cir. 1984). Generally, however, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). In determining whether a compromise is "fair, equitable, and in the best interest of the estate," courts in the Fifth Circuit consider: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and  (3) all other factors bearing on the wisdom of the compromise." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted).

27.      In engaging in that analysis, "[g]reat judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) (citation omitted). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation omitted).

## II.     **The Settlements are Fair, Equitable, and in the Best Interests of the Estates.**

28.     The vast majority of the Prepetition DLP Secured Parties' claims are not subject to meaningful dispute.  Indeed, the Debtors are not aware of *any* dispute as to (1) the outstanding principal balances of the DLP Credit Facilities, (2) the solvency of DLP IV and DLP VI (entitling the Prepetition DLP Secured Parties to postpetition interest and reasonable fees, costs, and charges to the extent provided by section 506(b) of the Bankruptcy Code), or (3) the validity, extent, and priority of the liens securing the DLP Credit Facilities.  The potential areas of dispute identified by the Settlement Parties are (a) the transactions giving rise to DLP IV's transfer of, and right to repurchase, the Residual Beneficial Interest, (b) the enforceability of the Yield Maintenance Amounts, and (c) whether any other potential causes of action exist against any of the Prepetition DLP Secured Parties.  In each case, the Debtors have closely evaluated the facts and circumstances surrounding the DLP Credit Facilities and concluded that pursuing the settlements set forth herein is the soundest course of action.

29.     The Debtors understand that the Bondholder Committee, Investigation Committee, and Conflicts Committees are each independently investigating and separately considering the facts and circumstances surrounding the DLP Credit Facilities, including the DLP Debtors' contractual agreements to pay the Yield Maintenance Amounts.  These investigations are, among other things, taking into consideration the DLP Debtors' solvency when evaluating such facts and circumstances.

30.     The Debtors further understand that the Conflicts Committee of DLP IV (the "DLP IV Conflicts Committee") is investigating and considering the facts and circumstances surrounding the grant of the Residual Beneficial Interest to the Prepetition DLP IV Agent.  The DLP IV Conflicts Committee's investigation is ongoing and could, to the extent the relief sought in this

Motion is not granted, result in certain challenges and causes of action regarding such grant and the Prepetition DLP IV Secured Parties' entitlement to any payment on account of the repurchase of the same.  While the DLP IV Conflicts Committee's investigation continues, the Debtors, as of the filing of this Motion, are not aware of, and have not been informed that any of the other Settlement Parties have yet identified, any procedural or substantive defect with respect to either the transfer of the Residual Beneficial Interest to the Prepetition DLP IV Agent or the establishment of the repurchase price therefor.  The Debtors also have not identified any legal basis that would compel the DLP IV Secured Parties to sell the Residual Beneficial Interest back to DLP IV, whether for the originally negotiated price of $20 million or for any other amount.  Instead, it is the Debtors' belief (consistent with the contracts relating to the Residual Beneficial Interest), that the Prepetition DLP IV Secured Parties have the right to condition the repurchase on terms acceptable to it, including the full allowance of their claims and the release of any potential challenges thereto.

31.    Despite the ongoing nature of these investigations, it is clear that any litigation over the issues presented would be long and costly with an uncertain outcome.  Accordingly, to avoid litigation and the attendant risks with respect thereto (as well as any other litigation regarding the DLP Credit Facilities or the Residual Beneficial Interest) the Settlement Parties have agreed to forgo any such litigation (and to otherwise resolve any other potential disputes with the Prepetition DLP Secured Parties, including with respect to the Residual Beneficial Interest) in exchange for reductions to the purchase price for the Residual Beneficial Interest and to the Prepetition DLP VI Secured Parties' Acceleration Prepayment Premium Amount.  Thus, the Debtors believe that the agreements and releases resulting from the Settlements are justified and a sound exercise of the Debtors' business judgment.

32.     Finally, the consequences to the Debtors and their estates if the Settlements are not promptly approved are potentially highly prejudicial to the Debtors' estates due to the impact this could have on the Debtors' ability to timely consummate the Replacement DIP Financing.  The Settlements provide a smooth path towards finalizing and consummating the Replacement DIP Financing, while also granting the Debtors' a direct monetary benefit in the form of the agreed reductions to the purchase price for the Residual Beneficial Interest and to the Prepetition DLP VI Secured Parties' Acceleration Prepayment Premium Amount.  In addition, by fully and finally resolving the claims of two major creditor constituencies, the Settlements substantially reduce the complexity of the Chapter 11 Cases, thereby reducing the administrative expense and burden on the Debtors' estates and providing a clearer path towards a consensual plan process.  In contrast, rejecting the Settlements will likely result in, among other things, the filing of, and costly litigation concerning, (1) objections to the Replacement DIP Financing by the Prepetition DLP Secured Parties and/or (2) the decision to bring certain challenges to the claims of the Prepetition DLP Secured Parties.  If not resolved almost immediately such that the Replacement DIP Financing closes by December 15, 2022, the Debtors will potentially lose Vida's DIP commitment and  suffer the consequences therefrom, including the potential default on the Debtors' existing DIP credit facility.  Even if such objections are promptly resolved, the costs borne by the estates in doing so will likely negate some or all of the negotiated benefits to the Debtors embodied in the Settlements.

33.     The Settlements provide for direct monetary benefit to the Debtors' estates in the form of reductions of more than $3.6 million total to the purchase price for the Residual Beneficial Interest and to the Acceleration Prepayment Premium Amount.  The Settlements also benefit the Debtors' estates by reducing the risk, cost, and uncertainty inherent in the pursuit by the Debtors, the Investigation Committee, the Conflicts Committees, and/or the Bondholder Committee (to the

extent they have or establish standing) of claims with respect to the Prepetition DLP Secured Parties or their claims (the costs of which likely would be borne entirely by the Debtors' estates), while making it more likely that the Replacement DIP Financing is approved and consummated as planned, providing a critical step for the Debtors to finally exit the Chapter 11 Cases.   In exchange for these substantial benefits, the Debtors and other stakeholders must only give up claims that are highly disputed and expensive to pursue, with the ultimate benefit to the Debtors' estates of such claims, even if successfully litigated, being uncertain at this time.  Accordingly, the Settlements are fair, equitable, and in the best interests of the Debtors and their estates and should therefore be approved.

### Emergency Consideration

34.     Emergency consideration is appropriate because, as discussed above, resolution of the issues resolved pursuant to the Settlements is essential to the prompt approval and closing of the Replacement DIP Financing, without which the Debtors will potentially lose Vida's DIP commitment and likely default on their existing DIP facility, potentially severely impairing the Debtors' ability to move towards confirmation of a plan of reorganization.  Further, the Debtors and other key stakeholders—the secured lenders to the DLP Debtors, the Bondholder Committee, the GWGH Investigations Committee, and the DLP Debtors' Conflicts Committees—are all fully aligned as to both the substance of the settlements set forth in this Motion and the Settlement Orders and the prompt approval thereof to further the shared goal of facilitating approval and closing of the Replacement DIP Financing.

### Notice

35.     The Debtors will provide notice of this Motion to the Master Service List pursuant to, and as defined in, the *Order Granting Debtors' Emergency Motion for Order Pursuant to Bankruptcy Code Section 105, Bankruptcy Rules 1015, 2002, 9007, and 9036, Local Bankruptcy*

*Rule 2002-1, and the Complex Case Procedures Authorizing the Establishment of Certain Notice Procedures* [Dkt. No. 125].

WHEREFORE, the Debtors respectfully request that the Court enter the Settlement Orders approving of the Settlements set forth therein and in this Motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
November 30, 2022

*/s/ Kristhy M. Peguero*
**JACKSON WALKER LLP**
Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Email:          kpeguero@jw.com
                    mcavenaugh@jw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:    (713) 238-3000
Email:          ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:    (312) 701-0600
Email:          tkiriakos@mayerbrown.com
                    lchiappetta@mayerbrown.com

-and-

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:    (212) 506-2500
Email:          apaul@mayerbrown.com
                    lkweskin@mayerbrown.com

*Counsel for the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Kristhy M. Peguero*
Kristhy M Peguero

## **Certificate of Service**

I certify that, on November 30, 2022 I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kristhy M Peguero*
Kristhy M. Peguero