# **Exhibit 4**

SEC Charges HP Inc. With Disclosure Violations and Control Failures

Press Release

# SEC Charges HP Inc. With Disclosure Violations and Control Failures

**FOR IMMEDIATE RELEASE**
**2020-241**

*Washington D.C., Sept. 30, 2020* — The Securities and Exchange Commission today announced charges against technology company HP Inc. for misleading investors by failing to disclose the impact of sales practices undertaken in an effort to meet quarterly sales and earnings targets. HP has agreed to pay $6 million to settle the charges.

According to the SEC's order, from early 2015 through the middle of 2016, in an effort to meet quarterly sales targets, regional managers at HP used a variety of incentives to accelerate, or "pull-in" to the current quarter, sales of printing supplies that they otherwise expected to materialize in later quarters. The order further finds that, in an effort to meet revenue and earnings targets, managers in one HP region sold printing supplies at substantial discounts to resellers known to sell HP products outside of the resellers' designated territories, in violation of HP policy and distributor agreements. The order finds that HP failed to disclose known trends and uncertainties associated with these sales practices. The order further finds that HP failed to disclose that its internal channel inventory ranges, which it described in quarterly earnings calls, included only channel inventory held by channel partners to which HP sold directly and not by channel partners further down the distribution chain, thereby disclosing only a partial and incomplete picture of HP's channel health.

As set forth in the order, HP changed its go-to-market model in part to address these undisclosed sales practices and undertook a channel inventory reduction that reduced its net revenue by approximately $450 million during the third and fourth quarters of 2016.

"Investors are entitled to accurate disclosures of business trends that are likely to have a material impact on a company's future revenues or operating profits," said Melissa Hodgman, an Associate Director in the SEC's Division of Enforcement. "HP's failure to disclose the foreseeable negative impact of its use of pull-ins and other sales practices created a misleading and incomplete picture of the company's financial condition."

The SEC's order finds that HP violated the antifraud, reporting and disclosure controls provisions of the federal securities laws. Without admitting or denying the SEC's findings, HP consented to a cease-and-desist order and to pay a $6 million penalty.

The SEC's investigation was conducted by W. Bradley Ney, Sarah Hall and Max Polonsky with assistance from accountant Jamie Wohlert, and supervised by Lisa Robertson.

###

## Related Materials

sec.gov | SEC Charges Fitbit With Disclosure Violations and Control Failures

- SEC Order

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 55801 / May 23, 2007

ADMINISTRATIVE PROCEEDING
File No. 3-12643

| | |
|---|---|
| **In the Matter of**<br><br>HEWLETT-PACKARD<br>COMPANY,<br><br>**Respondent.** | ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934 |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 ("Exchange Act"), against Hewlett-Packard Company ("HP," "Hewlett-Packard," or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over Respondent and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings, Making Findings, and Imposing a Cease-and-Desist Order Pursuant to Section 21C of the Securities Exchange Act of 1934 ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds that:

A.     **Summary**

1.     This matter involves Hewlett-Packard's failure to disclose the circumstances surrounding a board member's resignation amidst the company's controversial investigation into boardroom leaks. On May 18, 2006, HP's Board of Directors learned the findings of the company's leak investigation and voted to request the resignation of a director believed to have violated HP's policies by providing confidential information to the press. Silicon Valley venture capitalist and fellow director Thomas Perkins (not the source of the leak) voiced his strong objections to the handling of the matter, announced his resignation, and walked out of the Board meeting. Contrary to the reporting requirements of the federal securities laws, HP failed to disclose to investors the circumstances of Mr. Perkins' disagreement with the company.

B.     **Respondent**

2.     Hewlett-Packard is a Delaware corporation headquartered in Palo Alto, California. HP sells computers, computer equipment, and support services. HP's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and is listed on the New York Stock Exchange under the stock symbol "HPQ."

C.     **Facts**

### Legal Background

3.     Under the Exchange Act, a public company must file with the Commission a report on Form 8-K when a director resigns from the board. If a director has resigned because of a disagreement with the company, known to an executive officer, on any matter relating to the company's operations, policies, or practices, the company must, among other things, disclose a brief description of the circumstances of the disagreement. In addition, the company must give the director the opportunity to timely review and respond to the company's disclosure about the director's resignation, and the company is required to file any letter written by the director to the company in response to the company's disclosure. Absent such a disagreement, the company must report the resignation, but need not provide the reasons.

### HP's Leak Investigation

4.     In or around January 2006, in response to apparent unauthorized disclosures of confidential information about HP Board meetings to the press, HP initiated an investigation to determine the source of the leaks. HP Board member Thomas Perkins, Chairman of the Board's Nominating and Governance Committee (which was responsible for, among other things, establishing board member qualifications and evaluating board operations), was generally informed of the inquiry. Mr. Perkins believed that he and HP's Chairman had agreed that, upon completion of the investigation, they would approach any individual implicated privately, obtain an assurance that it would not happen again, and inform the full Board that the matter had been resolved without identifying the source of the leak.

5. By April 2006, HP investigators tentatively concluded that a long-standing HP director had leaked information in connection with a January 23, 2006 press article. After consulting with HP's Chief Executive Officer, General Counsel, outside counsel, and Chairman of the Audit Committee, the Chairman of the Board determined that the leak investigation findings should be presented to the full Board.

### Mr. Perkins Resigns During the May 18, 2006 Board Meeting

6. HP's Board of Directors met beginning at 12:30 p.m. on May 18, 2006 at HP's headquarters in Palo Alto, California. All but one of the directors attended, including the CEO (who is a director), as did the company's General Counsel (acting as the Board secretary).

7. At the start of the meeting, the head of HP's Audit Committee discussed the leak investigation and its findings. After some discussion, the identity of the director who provided information for the January 2006 article was revealed. The director addressed the Board, explained his actions, and left the room to permit additional deliberations. The Board discussed HP's policy on unauthorized public disclosures, and considered measures that could be taken in response to the director's actions, including asking him to resign.

8. During the course of the Board's deliberations, which lasted approximately 90 minutes, Mr. Perkins voiced his strong objections to the manner in which the matter was being handled. Among other things, he repeatedly told the Board that the source of the leak should have been approached "off-line" for an explanation and a warning, rather than identified to the whole Board. He affirmed his belief that the matter should have been handled confidentially by the Chairman of the Board and himself as Chairman of the Nominating and Governance Committee. He also questioned the wisdom of requesting the director to resign over what he perceived to be a relatively minor offense, noting that the director had made significant contributions to HP.

9. After a lengthy and heated discussion, the Board, by a secret written ballot, passed a motion to ask the director to resign from the Board. When HP's General Counsel announced the results of the vote on whether to ask the director to resign, Mr. Perkins continued to voice disagreement. As noted in the Board minutes, Mr. Perkins "restated his strong objections to the process, specifically [the Chairman's] decision to bring the matter to the full Board and the manner in which the meeting was conducted." Mr. Perkins then resigned from the Board and departed the meeting at approximately 2:00 p.m. The director identified by the leak investigation was asked to resign following the vote, but declined to resign at that time.

### HP Fails to Disclose the Reasons for Mr. Perkins' Resignation

10. HP executives understood that, in the event a director resigned over a disagreement with the company on a matter relating to its operations, policies, or practices, the company would need to report to the Commission (and thereby disclose to investors) the circumstances of the disagreement.

11. On May 22, 2006, HP filed a report on Form 8-K, pursuant to Item 5.02(b), reporting Mr. Perkins' resignation, but did not comply with Item 5.02(a) by failing to disclose that there had been a disagreement with the company. HP also filed with the Form 8-K a May 19 press release, which announced that Mr. Perkins had resigned without disclosing the circumstances of his disagreement.

12. HP concluded, with the advice of outside legal counsel and the General Counsel, that it need not disclose the reasons for Mr. Perkins' resignation because he merely had a disagreement with the company's Chairman, and not a disagreement with the company on a matter relating to its operations, policies, or practices. Contrary to HP's conclusion, the disagreement and the reasons for Mr. Perkins' resignation should have been disclosed, pursuant to Item 5.02(a), in the May 22 Form 8-K. Mr. Perkins resigned as a result of a disagreement with HP on the following matters: (1) the decision to present the leak investigation findings to the full Board; and (2) the decision by majority vote of the Board of Directors to ask the director identified in the leak investigation to resign. Mr. Perkins' disagreement related to important corporate governance matters and HP policies regarding handling sensitive information, and thus constituted a disagreement over HP's operations, policies or practices.

13. HP did not disclose further information relating to Mr. Perkins' resignation until September 6, 2006, after Mr. Perkins (and the staff of the Securities and Exchange Commission) had begun to raise questions about the adequacy of the company's disclosures.

**D.     Violations**

14. Section 13(a) of the Exchange Act and Rule 13a-11 promulgated thereunder require issuers of securities registered pursuant to Section 12 of the Exchange Act to file with the Commission current reports on Form 8-K upon the occurrence of certain events, including the departure of directors or principal officers. Item 5.02(a) of Form 8-K specifies that if a director has resigned because of a disagreement with the registrant, known to an executive officer of the registrant, on any matter relating to the registrant's operations, policies, or practices, the registrant must, among other things, disclose a brief description of the circumstances representing the disagreement that the registrant believes caused, in whole or in part, the director's resignation. In addition, the registrant must provide the resigning director with a copy of the disclosure no later than the day the company files the disclosure with the Commission. Also, the registrant must provide the director with the opportunity to furnish a response letter stating whether the director agrees with the disclosure in the registrant's Form 8-K. In the event that the registrant receives a response letter from the former director, the letter must be filed by the registrant as an amendment to its Form 8-K within two business days of its receipt. No showing of scienter is required to establish a violation of Section 13(a) of the Exchange Act. SEC v. Savoy, 587 F.2d 1149, 1167 (D.C. Cir. 1978).

15. On May 18, 2006, director Thomas Perkins resigned because of a disagreement with HP regarding the decision to present the leak investigation findings to the full Board and the decision by the Board to ask the director identified in the leak investigation to resign. The disagreement was known to HP executive officers. Mr. Perkins' disagreement with HP related to

4

the operations, policies, or practices of HP. Consequently, HP was required by Item 5.02(a) of Form 8-K to disclose a brief description of the circumstances representing the disagreement, and was required to provide Mr. Perkins with a copy of this disclosure no later than the day of filing. By disclosing the resignation of Mr. Perkins pursuant to Item 5.02(b) in a Form 8-K filed on May 22, 2006, HP failed to disclose the circumstances of Mr. Perkins' disagreement with HP and also failed to provide the director with a copy of such a filing. As a result, HP violated Section 13(a) of the Exchange Act and Rule 13a-11 thereunder.

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondent HP's Offer.

Accordingly, it is hereby ORDERED that Respondent HP cease and desist from committing or causing any violations and any future violations of Section 13(a) of the Exchange Act and Rule 13a-11 thereunder.

By the Commission.

Nancy M. Morris
Secretary

5