**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GWG HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-90032 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**STATEMENT OF THE DEBTORS AND THE INDEPENDENT**
**COMMITTEES OF GWG HOLDINGS, INC.'S BOARD OF DIRECTORS**
**REGARDING MEDIATION AGREEMENT**

> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE AMENDED PLAN.  ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

GWG Holdings, Inc. ("GWGH" or the "Company") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors), and the Special Committee and the Investigations Committee of the GWGH board of directors (collectively, the "Independent Committees"), comprised of Jeffrey S. Stein and Anthony R. Horton, respectfully submit this statement (the "Statement") regarding the Chapter 11 Cases.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (none); and GWG DLP Funding Holdings VI, LLC (none). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these Chapter 11 Cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

**STATEMENT**[2]

1.      The Debtors, together with the Independent Committees, are pleased to report that, as a result of the ongoing mediation with United States Bankruptcy Judge David R. Jones, the Debtors have reached a settlement with the Official Committee of Bondholders (the "Bondholder Committee") and L Bond Management LLC ("LBM" and, together with the Bondholder Committee, the "Creditor Proponents"), which will form the basis for the Debtors' soon-to-be-filed amended chapter 11 plan (the "Second Amended Plan").

2.      The Debtors and the Creditor Proponents are working towards filing the Second Amended Plan and related disclosure statement (the "Disclosure Statement") by March 14, 2023, but, in any event, the Debtors anticipate such filing no later than March 17, 2023 and intend to seek Bankruptcy Court approval of the Disclosure Statement at a hearing to be held on March 20, 2023 at 8:00 a.m. (Central Time).

3.      The terms of the mediation settlement with the Creditor Proponents are summarized below,[3] and set forth in the mediation agreement (the "Mediation Agreement") attached hereto as **Exhibit A**.

*Second Amended Plan*

4.      Pursuant to the Mediation Agreement, the Bondholder Committee and LBM will be co-proponents with the Debtors of the Second Amended Plan.  If the Debtors and the Creditor Proponents are unable to agree on the final form of the Debtors' chapter 11 plan, the Debtors may

---

[2] Capitalized terms not defined herein have the definitions set forth in the Mediation Agreement.

[3]      The summary of the Mediation Agreement contained in this Statement is provided for convenience only.  In the event of any inconsistency between what is set forth herein and in the Mediation Agreement, the Mediation Agreement shall govern.

file, as the sole proponent, a plan that the Debtors reasonably believe is consistent in all material respects with the Mediation Agreement.

*Trust Structure*

5.      The Second Amended Plan will provide for the Debtors to be liquidated and for the creation of two liquidating trusts, subject to any agreed changes to address corporate structure and related issues.  The first trust (the "Wind-Down Trust") will take all necessary steps to wind down the business affairs of the Debtors and maximize the value of the Debtors' non-litigation assets, including the Debtors' equity interests in: (a) The Beneficient Company Group, L.P. and its subsidiaries (together with Brad Heppner and each of their affiliates and related parties, collectively, "Ben"); (b) the newly-formed entity that will hold the Policy Portfolio; and (c) FOXO Technologies, Inc.  The trustee for the Wind-Down Trust will be the Debtors' Chief Executive Officer and Chief Restructuring Officer, Jeffrey S. Stein (or an affiliate of Mr. Stein).  The Wind-Down Trust will issue trust interests (Series A1, A2, B, C, D and E) to all holders of claims against and equity interests in the Debtors who are not being paid in full in cash on the effective date of the Second Amended Plan (the "Effective Date").  Distributions to each holder of the trust interests will be in accordance with the priority set forth in the Mediation Agreement, which provides for distributions to Bondholders ahead of distributions to other stakeholders.

6.      The second trust (the "Litigation Trust") will receive all non-released litigation assets of the Debtors as well as the Debtors' interest in any insurance policies covering directors and officers of the Debtors.  The trustee for the Litigation Trust (the "Litigation Trustee") will have discretion to prosecute or settle such claims, with Bankruptcy Court approval required in certain circumstances.  The Litigation Trustee will be appointed by the Bondholder Committee and will be an independent, third-party fiduciary with no affiliation with any Bondholder

Committee member nor a Bondholder.  Proceeds from the Litigation Trust will be distributed to the Wind Down Trust for further distribution to holders of trust interests in accordance with the waterfall set forth in the Mediation Agreement, which, *inter alia*, provides for distributions to Bondholders and General Unsecured Creditors on a *pari passu* basis after satisfaction of any allowed diminution in collateral value claims of the Indenture Trustee arising from the adequate protection liens granted pursuant to the Debtors' debtor in possession financing orders.

*Ability to Continue Negotiations with Ben*

7.     Pursuant to the Mediation Agreement, Ben will not receive a release under the Plan, and all potential claims and causes of action held by the Debtors' estates against Ben (and any other party that is not released under the Plan) will be assigned to and pursued by the Litigation Trust on and following the Effective Date.  However, the Debtors and the Creditor Proponents may engage in further negotiations with Ben.  If the Debtors reach a settlement with Ben prior to the confirmation hearing (the "Confirmation Hearing") for the Second Amended Plan, the Debtors will file a separate motion under Bankruptcy Rule 9019 to seek Court approval to enter into such settlement, to be heard on no less than 21 days' notice.  The Debtors will notify the Creditor Proponents within 24 hours of any settlement being reached and a term sheet or mediation agreement between Debtors and Ben being signed.  Each of the Creditor Proponents reserve their respective rights to object to any settlement with Ben.  The Second Amended Plan will be able to be confirmed and its Effective Date able to occur whether or not a settlement is reached with Ben.  Specifically, if the Debtors reach a settlement with Ben that is approved by a separate order of the Bankruptcy Court, the terms of the settlement will be implemented without any re-solicitation of the Second Amended Plan.

*LBM Settlement*

8.      Paragraph 5 of the Mediation Agreement contains several agreements specifically related to LBM (the "LBM Settlement").  LBM has agreed to subordinate 15% of claims on account of the Bonds held by the trusts named in the Mediation Agreement on whose behalf LBM acts (collectively, the "LBM L Bond Claims") to other bondholder claims in full and final satisfaction of all claims, offsets, setoffs, credits, subordination claims, recharacterization claims and objections to the LBM L Bond Claims.  In exchange for the agreement to subordinate a portion of the LBM L Bond Claims, LBM and certain of its related parties as set forth in the Mediation Agreement will receive a full release of any and all civil claims held by the Debtors' estates against them.  Such releases will be limited solely to the stated role, and actions taken as part of that role, of such released party.

9.      The Mediation Agreement further provides that, in the event that the Debtors reach a settlement of potential claims and causes of action against Ben, LBM may withdraw from the LBM Settlement by filing a written notice with the Bankruptcy Court within three business days of the filing of the Bankruptcy Rule 9019 motion to approve a settlement with Ben.  In the event that LBM withdraws from the LBM Settlement, (a) all agreements set forth in the LBM Settlement will be deemed withdrawn, including the agreement to subordinate a portion of the LBM L Bond Claims, and (b) all claims, offsets, credits, objections and challenges of any kind to claims proposed to be settled pursuant to the LBM Settlement will be reinstated in their entirety and transferred to the Litigation Trust on the Effective Date.  Notwithstanding the foregoing, and even if LBM elects to withdraw from the LBM Settlement, LBM will continue to support and vote in favor of the Second Amended Plan so long as the Second Amended Plan remains consistent with the Mediation Agreement.

*Broker Dealer Settlement Election*

10.     The Mediation Agreement also provides that broker-dealers and registered investment advisors who sold Public L Bonds (each, a "<u>Broker-Dealer</u>") may elect to receive a release from the Debtors of any estate causes of action in exchange for paying the Debtors cash in the amount equal to 30% of all value received by such electing Broker-Dealer from the Debtors on account of the sale of Public L Bonds and a mutual release of all claims held by such Broker-Dealer against the Debtors (the "<u>Broker Dealer Settlement</u>").  Any Broker-Dealer may opt in to the Broker Dealer Settlement by submitting an election notice and making the requisite payment within 90 days following the Second Amended Plan's Effective Date.  Any payments received on account of the Broker Dealer Settlement will be allocated to the Litigation Trust.

*Additional Agreements*

11.     Additionally, the Mediation Agreement provides for the following:

   a.  The Debtors will not consent to the business combination transaction between Ben and Avalon Acquisition, Inc. without Bankruptcy Court approval;

   b.  The Creditor Proponents will not object to the Debtors' exclusive period to solicit a chapter 11 plan through the earlier of either the Confirmation Hearing or May 25, 2023;

   c.  The hearing on the Bondholder Committee's Standing Motion will be adjourned until either the earlier of the Confirmation Hearing or May 25, 2023 (or the first available date on the Bankruptcy Court's calendar after May 25, 2023);

   d.  The Debtors' Compensation Motion will be adjourned to the Confirmation Hearing;

   e.  The Creditor Proponents will not object to a valuation of the Debtors' assets for Plan purposes only within certain parameters; and

   f.  The general parameters of the exculpations and releases to be included in the Second Amended Plan.

## **CONCLUSION**

The Debtors, together with the Independent Committees, respectfully submit this Statement regarding the Mediation Agreement to advise the Court and other parties in interest of this agreement and look forward to filing the Second Amended Plan and Disclosure Statement.

[*Remainder of page intentionally left blank.*]

Houston, Texas
March 11, 2023


Respectfully Submitted,

*/s/ Kristhy Peguero*
**JACKSON WALKER LLP**
Kristhy M. Peguero
   (TX Bar No. 24102776)
Matthew D. Cavenaugh
   (TX Bar No. 24062656)
Elizabeth C. Freeman
   (TX Bar No. 24009222)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email: kpeguero@jw.com
   mcavenaugh@jw.com
   efreeman@jw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**MAYER BROWN LLP**
Charles S. Kelley
   (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (*pro hac vice*)
Louis S. Chiappetta (*pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-0600
Email: tkiriakos@mayerbrown.com
   lchiappetta@mayerbrown.com

-and-

Adam C. Paul (*pro hac vice*)
Lucy F. Kweskin (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500
Email: apaul@mayerbrown.com
   lkweskin@mayerbrown.com

*Counsel for the Debtors and Debtors in Possession*

**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman (*pro hac vice*)
Cindi M. Giglio (*pro hac vice*)
Marc B. Roitman (*pro hac vice*)
Jerry Hall (*pro hac vice*)
50 Rockefeller Plaza
New York, NY 10020
Telephone: (212) 940-8800
Email: sreisman@katten.com
   cgiglio@katten.com
   marc.roitman@katten.com

-and-

Daniel Barnowski (*pro hac vice*)
2900 K Street NW, Suite 200
Washington, DC 20007
Telephone: (202) 625-3500
Email: dan.barnowski@katten.com

*Counsel to Jeffrey S. Stein and Anthony R. Horton, in their capacity as members of the Investigations Committee and Special Committee of the Board of Directors of GWG Holdings, Inc.*

**<u>Certificate of Service</u>**

I certify that on March 11, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kristhy Peguero*　　　　　　　　

Kristhy M. Peguero

## Exhibit A

**Mediation Agreement Term Sheet**

EXECUTION COPY

***CONFIDENTIAL – SUBJECT TO F.R.E. 408***
***SUBJECT TO ALL MEDIATION PRIVILEGES***

### MEDIATION SETTLEMENT TERM SHEET

1.     All executing parties (the "Parties") to this Mediation Settlement Term Sheet dated March 9, 2023 (this "Term Sheet") have the right to review and consent to the form and substance of the anticipated 1) revised disclosure statement (the "Disclosure Statement"); 2) revised plan (the "Plan"); and 3) plan supplement, including trust agreements and other applicable documents.  The scope of the consent is (i) to ensure that such documents are consistent with, and can effectuate the settlement memorialized in this Term Sheet; and (ii) to address issues not explicitly covered by this Term Sheet but that are customary or required for a plan of reorganization. To the extent there is a disagreement, the Parties agree to submit the dispute to the mediator, Judge David Jones. The tax and corporate structure under the Plan shall be acceptable to the Parties and implemented so as to minimize the adverse tax consequences and post-effective date costs.

2.     The Debtors, the Committee and L Bond Management shall be co-proponents of the Plan.  If the Parties cannot agree to the final form of the Plan, the Debtors may proceed to file, as the sole proponent, of a Plan the Debtors reasonably believe is consistent in all material respects with this Term Sheet.

3.     The Debtors agree that if a settlement is reached with The Beneficent Company Group, L.P. (together with Brad Heppner and each of their affiliates and related parties covered by such settlement, "Ben") prior to the Confirmation Hearing, the Debtors will file a separate motion to approve settlement under Rule 9019, which will be heard no later than the hearing on confirmation and on no less than 21 days' notice unless (i) the Court, on its own motion, orders otherwise; or (ii) the Debtors, L Bond Management and the Committee agree otherwise.  The Debtors will notify the Official Committee of L Bondholders (the "Committee") and L Bond Management within 24 hours of any settlement being reached and a term sheet or mediation agreement being signed. Notwithstanding the foregoing, the Debtors shall advise the Committee and L Bond Management that a settlement has been reached at least 2 days prior to the filing of a motion to approve such settlement under Rule 9019.  L Bond Management and the Committee each reserve their rights to object to any such settlement with Ben.  Should additional formal mediation between the Debtors and Ben be conducted by Judge Jones, the Committee and L Bond Management may each have observers present at the mediation, consisting of two principals (together with such professional advisors as such principals deem to be reasonably necessary) for each of the Committee and L Bond Management, who may consult with Judge Jones. The Debtors will provide copies of all written settlement proposals either made or received to the Committee and L Bond Management

upon receipt or transmission of such proposals.  All Parties agree that the Committee is a significant creditor constituency for purposes of the Fifth Circuit's requirement that the Court consider the reasonable views of creditors set forth in *In re: Foster Mortgage*. Nothing herein is intended to limit the Bankruptcy Court in its analysis of a proposed settlement or otherwise alter existing applicable Fifth Circuit precedent.

4.     The Debtors will not consent to the Ben SPAC without court approval.  For purposes of clarity, such approval may be contained in an order approving a proposed settlement.

5.     Settlement with L Bond Management – The Parties agree that L Bond Management will subordinate 15% of the LBM L Bond Claims (defined below) solely to all other existing L Bonds in full and final satisfaction of all claims, offsets, setoffs, credits, subordination claims, recharacterization claims and objections to the LBM L Bond Claims and in exchange for (i) the final allowance of the LBM L Bond Claims and (ii) a full release of any and all civil claims held by the estate against the LBM L Bond Claims and L Bond Management, (x) its managers, employees, agents, attorneys and representatives solely in such capacity and solely for actions taken in such capacity that are related to the acquisition, holding or disposition of any L Bonds for which L Bond Management acts as agent including the LBM L Bond Claims; and (y) the trusts who directly hold the LBM L Bond Claims, the trustees and trust advisors of such trusts, current officers, directors and advisors of such trusts solely in such capacity and solely for actions taken on behalf of such trusts; and (iii) Richard Schmidt and his professionals.  For purposes of clarity the foregoing releases that are limited in capacity and action are to be narrowly construed and to the extent persons serve in multiple capacities such releases do not extend to actions beyond the roles described above.  For the avoidance of doubt, the non-subordinated portion of the LBM L Bond Claims shall receive Series A1 Beneficial Interests and the subordinated portion of the LBM L Bond Claims shall receive Series A2 Beneficial Interests. Notwithstanding anything in this paragraph to the contrary, if the Debtors reach a settlement with Ben, L Bond Management shall have the right to withdraw from this settlement by filing a written notice on the Court's docket within 3 business days of a motion to approve such settlement being filed on the docket.  In such event, (i) all agreements in this paragraph are withdrawn, including but not limited to all subordination agreements and all claim allowances; and(ii) all claims, offsets, credits, objections and challenges of any kind to claims proposed to be settled in this paragraph are reinstated in their entirety and shall be transferred to Trust B.  Under either scenario (*i.e.*, whether or not L Bond Management withdraws from the settlement reflected in paragraph 5), L Bond Management will support and vote for the Plan so long as no amendments are made to the Plan that are inconsistent with this Term Sheet (it being understood that any settlement with Ben shall be set forth in an order approving any such settlement under Rule 9019 and that L Bond Management's only rights with respect to a settlement with are Ben (i) withdrawing from the settlement set forth in paragraph 5 above and/or (ii) objecting to such settlement with Ben).

"LBM L Bond Claims" shall mean all the amounts owed by the Debtors on all L Bonds held by the following trusts as of the Petition Date: The LT-1 Exchange Trust (c/o MHT Financial LLC), The LT-2 Exchange Trust, The LT-3 Exchange Trust, The LT-4 Exchange Trust, The LT-5 Exchange Trust, The LT-6 Exchange Trust, The LT-7 Exchange Trust, The LT-8 Exchange Trust, The LT-9 Exchange Trust, The LT-12 Exchange Trust, The LT-14 Exchange Trust, The LT-15 Exchange Trust, The LT-16 Exchange Trust, The LT-17 Exchange Trust, The LT-18 Exchange Trust, The LT-19 Exchange Trust, The LT-20 Exchange Trust, The LT-21A Custody Trust, The LT-22A Custody Trust, The LT-23A Custody Trust, The LT-24A Custody Trust, The LT-25A Custody Trust, The LT-26A Custody Trust.

6.      Except as provided in this paragraph 6, exculpations/post-petition releases by in the Plan will be limited to post-petition conduct and pre-petition conduct related to the preparation of and filing of the Chapter 11 Cases by (i) Jeffrey Stein; the Independent Directors in such capacity; (ii) Michael A. Tucker, in his capacity as an officer of the Debtors; (iii) the Non-Management Directors; (iv) the DLP Independent Directors in such capacity; (v) the members of the Bondholder Committee in such capacity; and (vi) professionals retained by the Debtors, the Independent Directors, the DLP Independent Directors or the Bondholder Committee and each of the members of the Bondholder Committee in such capacity.  Except as provided in this paragraph 6, no releases for pre-petition conduct unrelated to the preparation of and filing of the Chapter 11 Cases will be contained in the Plan (it being understood that any advice provided by the Debtors' advisors in connection with the de-coupling of the Debtors and Beneficient (and any related transactions) was unrelated to the preparation of and filing of the Chapter 11 Cases).  For avoidance of doubt, PJT Partners and FTI Consulting shall receive a full release under the Plan.  The exculpation/post-petition release provisions shall contain carve outs for willful misconduct, intentional breach of fiduciary duty, gross negligence and fraud.  For purposes of clarity, the Parties agree that (i) neither the act itself of filing or prosecuting a motion to approve a settlement with Ben nor the act itself of filing or prosecuting an objection to any settlement of any estate claims or causes of action against Ben shall in and of itself constitute an intentional breach of fiduciary duty and (ii) any claims that any Party may seek to bring against an Exculpated Party shall be limited to the actions of such Exculpated Party after the signing of the Term Sheet.  Any such claims must be filed in the Bankruptcy Court and in accordance with the Federal Rules of Civil Procedure. Any such claims shall be pled with specificity with respect to the who, what, when, where and how of the alleged wrongful conduct.

7.      The Committee's Standing Motion will be adjourned to the earlier of (i) the date of the confirmation hearing; or (ii) May 25, 2023 (or the first available date on the Court's calendar after May 25, 2023).  The objection deadline to such motion is extended to 5:00 p.m. (prevailing Eastern time) on the day that is 7 days prior to the hearing.

8.      The Parties will not oppose the extension of the Debtors' exclusivity through the earlier of (i) date set for the Confirmation Hearing; or (ii) May 25, 2023.  Any

Party may oppose a requested extension by the Debtors beyond the foregoing.

9.      The Debtors' Compensation Motion will be adjourned to the confirmation hearing with the objection deadline being extended to 5:00 p.m. (prevailing Eastern time) on the day that is 7 days prior to the hearing.  Judge Jones will be available for mediation at the Parties' joint request.

10.      The Parties will not object to a mid-range valuation for the Debtors' assets solely for the purposes of the Plan unless such valuation exceeds $1 billion in which case Parties may choose to object or not to object as the case may be.

11.      The Disclosure Statement hearing set for March 20, 2023, will proceed as currently scheduled.  Parties will cooperate and use best efforts to file an amended Disclosure Statement by March 14, 2023.  The Parties will jointly seek a hearing for confirmation at the earliest possible available date that is available and satisfies the Bankruptcy Code and applicable Rules.

12.      The Parties agree to support a plan that is consistent with this Term Sheet.

13.      On the Effective Date, the Debtors will be liquidated (unless the Committee and the Debtors otherwise agree to a different date in order to promote tax efficiencies) and two liquidating trusts will be created. The Committee will be dissolved, except as specifically set forth in the Plan, which will be for customary limited purposes.  Each trust will be governed by a trustee as set forth below:

a)      <u>Trust A</u>

i)      Trust A will receive all non-litigation assets of the Debtors (the "Trust A Assets"). Trust A will issue beneficial interests to holders of Allowed Claims.  Trust A will take all necessary steps to wind down the business affairs of the Debtors and maximize the value of Trust A Assets.  Jeff Stein will serve as the Liquidating Trustee of Trust A.

ii)      The  term of Trust A will be three (3) years.  The term of Trust A may be extended by a motion filed prior to the expiration of the existing term and order of the Court approving such extension for up to two (2) years per request (subject, in each instance, to reasonable due consideration being given to implications of tax law and other applicable law of a proposed extension of the term of such trust).  The Liquidating Trustee and the Litigation Trustee will cooperate and confer to ensure that Trust A does not terminate prior to Trust B.

iii)   Trust A will be responsible for handling all claims reconciliation except as specifically set forth below.

iv)   The Liquidating Trustee will have discretion to enter into, consummate, settle, or otherwise resolve any transaction or dispute in respect of the Trust A Assets with an economic value at the time of the consummation, settlement or resolution of such transaction or dispute of less than $5 million. All other matters will be submitted to the Bankruptcy Court for approval after notice and opportunity for hearing.

v)   The Liquidating Trustee will make an initial distribution of excess cash within 60 days after the effective date of the Plan to the extent of excess cash. Future distributions will be promptly made by the Liquidating Trustee based on the availability of excess cash in Trust A. The Trust A agreement shall contain appropriate provisions for monetizing Trust A Assets in an orderly fashion (subject to the Liquidating Trustee's reasonable business judgment).

vi)   The Parties will cooperate on the final wind-down budget. Judge Jones will remain available to resolve any disputes. If no agreement can be reached, the Debtors must seek approval from the Bankruptcy Court of the final wind-down budget.

vii)   Trust A will be responsible for all distributions to creditors and interest holders in accordance with the following waterfall:

Non-Litigation Proceeds Waterfall (in following order of distribution; no distribution to a junior class until senior class paid in full):

| | |
|---|---|
| 1 | Series A1 Beneficial Interests (including reasonable Indenture Trustee Fees and L Bonds except for subordinated portion of LBM L Bond Claims) equal to allowed pre-petition amount, with amounts first being applied to reasonable Indenture Trustee Fees to the extent not otherwise paid on the Effective Date of the Plan. All distributions shall be paid first to the Indenture Trustee until all reasonable and unpaid Indenture Trustee Fees have been paid in full in cash. |
| 2 | Series A2 Beneficial Interests equal to allowed pre-petition amount (subordinated portion of LBM L Bond Claims). |
| 3 | Interest accruing from the Petition Date under the Series A1 and Series A2 at a rate of 9% per annum. |

| 4 | Series B Beneficial Interests (Allowed Unsecured Claims) up to allowed pre-petition amount plus interest at the rate set forth in the Plan. |
| 5 | Series C Beneficial Interests (Series 1 Preferred Interests) and Series D Beneficial Interests (Series 2 Preferred Interests), pari passu, per liquidation rights under governing instruments and applicable law until full recovery of the pre-petition amount. |
| 6 | Series E Beneficial Interests (Common Stock) |

Litigation Trust Proceeds Waterfall (in the following order of distribution; no distribution to a junior class until senior class paid in full):

| 1 | Any allowed diminution in collateral value claims, including any Allowed Indenture Trustee Diminution-in-Value Claim. |
| 2 | Series A1 and A2 Beneficial Interests (subject to intercreditor arrangements described above under general priority waterfall) and Series B Beneficial Interests, *pari passu* |
| 3 | Series C Beneficial Interests and Series D Beneficial Interests, pari passu, per liquidation rights under governing instruments and applicable law until full recovery. |
| 4 | Series E Beneficial Interests |

b)    Trust B

    i)    Trust B will receive all non-released litigation assets of the Debtors and shall step into the shoes of the Debtors for the purpose of privilege and shall have reasonable access to available books and records of the Debtors. For purposes of clarity, the Debtors' interest in any D&O Policies and proceeds thereof will be Trust B Assets.

    ii)    The sole beneficiary of Trust B will be Trust A. All proceeds of Trust B distributed to Trust A shall be for the sole purpose of distributions to the holders of beneficial interests in Trust A; *provided, however*, proceeds may be otherwise retained and used by Trust A only with consent of the Litigation Trustee or by Order of the Bankruptcy Court.

    iii)    Trust B will be responsible for objections to claims filed by any broker-dealers and any defendant in any litigation that is initiated by Trust B.

iv) The Committee will appoint an independent, third-party fiduciary with no affiliation with any Committee member and does not own any L Bonds or other security of the Debtors to serve as the Litigation Trustee of Trust B.

v) The Committee will publish the identity of the Litigation Trustee as soon as the selection is made with such selection to be made no later than the date the plan supplement documents are filed.

vi) The Debtors will fund Trust B with $3 million in cash on the Effective Date.

vii) The Litigation Trustee will have discretion to enter into, consummate, settle, or otherwise resolve any transaction or dispute with an economic value at the time of the consummation, settlement or resolution of such transaction or dispute of less than $5 million. All other matters will be submitted to the Bankruptcy Court for approval after notice and opportunity for hearing.

viii) The term of Trust B will be the lesser of (i) three (3) years; (ii) the date all L Bonds are paid in full; or (iii) the date that all litigation claims have been resolved. The term of Trust B may be extended under (i) by a motion filed prior to the expiration of the existing term with a maximum extension of two (2) years per request (subject, in each instance, to reasonable consideration being given to implications of tax law and other applicable law of a proposed extension of the term of such trust). The Liquidating Trustee and the Litigation Trustee will cooperate and confer to ensure that Trust A does not terminate prior to Trust B.

ix) No later than the termination of Trust B, the Litigation Trustee will transfer all Trust B assets to Trust A. Nothing herein prevents the Litigation Trustee from making interim transfers of cash to Trust A for distribution.

x) During their existence, Trust A and Trust B will file quarterly statements of all receipts and disbursements along with summary of all major activities during the period with the Bankruptcy Court.

xi) The Liquidating Trustee and the Litigation Trustee will be compensated at market rates and may engage professionals in their discretion that are required to meet their duties under the applicable trust agreements.

xii)    Trust A and Trust B (and their respective trustees) are deemed to be parties in interest with standing to appear in the Debtors' bankruptcy cases with rights to object to any pleading filed after the effective date of the Plan.

14.    Broker-Dealer Settlement. The Parties agree that the Plan will provide that any Broker-Dealer may receive a release of any estate claims and causes of action upon (i) executing the Broker-Dealer Settlement Election Notice (the "Notice") and returning such Notice along with good funds equal to 30% of all value received by such Broker-Dealer from the Debtors on account the sale of L Bonds. Such election will involve a mutual release of all claims held by such Broker-Dealer and the Debtors against each other. The Notice and the required payment must be received by the Debtors/Liquidating Trustee within 90 days after the effective date of the Plan. Any funds received will be forwarded to Trust B.

15.    To the extent that the Parties reach an agreement on part or all of the Indenture Trustee's reasonable fees and expenses, such amounts shall be paid by the Debtors on the effective date of the Plan. Between the date of this Term Sheet and March 10, 2023, the Parties will confer. Likewise the Parties will confer on the amount of the Indenture Trustee Diminution-in-Value Claim. If an agreement cannot be reached on one or both of these issues, the Parties will submit the dispute for further mediation to Judge Jones and to the extent agreement cannot be reached after such further mediation, the Debtors may submit the dispute to the Bankruptcy Court.

16.    The Debtors are required to provide on biweekly basis updated financial reporting including cash flows.

17.    Counsel by their signatures below have been authorized to execute this Term Sheet on behalf of their respective clients.

[Signature pages follow]

**JACKSON WALKER LLP**

_/s/_

Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Email:          kpeguero@jw.com
                   mcavenaugh@jw.com

_Co-Counsel for the Debtors and Debtors in_
_Possession_

**MAYER BROWN LLP**

Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:    (713) 238-3000
Email:          ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (admitted _pro hac vice_)
Louis S. Chiappetta (admitted _pro hac vice_)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:    (312) 701-0600
Email:          tkiriakos@mayerbrown.com
                   lchiappetta@mayerbrown.com

-and-

Adam C. Paul (admitted _pro hac vice_)
Lucy F. Kweskin (admitted _pro hac vice_)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:    (212) 506-2500
Email:          apaul@mayerbrown.com
                   lkweskin@mayerbrown.com

_Counsel for the Debtors and Debtors in_
_Possession_

**KATTEN MUCHIN ROSENMAN LLP**

Steven J. Reisman (admitted _pro hac vice_)
Cindi M. Giglio (admitted _pro hac vice_)
Marc B. Roitman (admitted _pro hac vice_)
50 Rockefeller Plaza
New York, NY 10020
Telephone:    (212) 940-8800
Email:          sreisman@katten.com
                   cgiglio@katten.com

**JACKSON WALKER LLP**

_____

Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:     (713) 752-4200
Email:            kpeguero@jw.com
                     mcavenaugh@jw.com

_Co-Counsel for the Debtors and Debtors in
Possession_

**MAYER BROWN LLP**

Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:     (713) 238-3000
Email:            ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (admitted _pro hac vice_)
Louis S. Chiappetta (admitted _pro hac vice_)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:     (312) 701-0600
Email:            tkiriakos@mayerbrown.com
                     lchiappetta@mayerbrown.com

-and-

Adam C. Paul (admitted _pro hac vice_)
Lucy F. Kweskin (admitted _pro hac vice_)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:     (212) 506-2500
Email:            apaul@mayerbrown.com
                     lkweskin@mayerbrown.com

_Counsel for the Debtors and Debtors in
Possession_

**KATTEN MUCHIN ROSENMAN LLP**

_____

Steven J. Reisman (admitted _pro hac vice_)
Cindi M. Giglio (admitted _pro hac vice_)
Marc B. Roitman (admitted _pro hac vice_)
50 Rockefeller Plaza
New York, NY 10020
Telephone:     (212) 940-8800
Email:            sreisman@katten.com
                     cgiglio@katten.com

marc.roitman@katten.com

-and-

Daniel Barnowski (admitted *pro hac vice*)
2900 K Street NW, Suite 200
Washington, DC 20007
Telephone:    (202) 625-3500
Email:        dan.barnowski@katten.com

*Counsel to Jeffrey S. Stein and Anthony R.*
*Horton, in their capacities as members of the*
*Special Committee and the Investigations*
*Committee of the Board of Directors of GWG*
*Holdings, Inc.*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Lacy M. Lawrence
State Bar No. 24055913; S.D. Tex. No. 995675
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
llawrence@akingump.com

-and-

Michael S. Stamer (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Jason P. Rubin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:    (212) 872-1000
Facsimile:    (212) 872-1002
mstamer@akingump.com
aqureshi@akingump.com
jrubin@akngump.com

-and-

Scott L. Alberino (admitted *pro hac vice*)
Benjamin L. Taylor (admitted *pro hac vice*)
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
Phone:    (202) 887-4000
Fax:      (202) 887-4288
salberino@akingump.com
taylorb@akingump.com

*Counsel to the Official Committee of
Bondholders of GWG Holdings, Inc., et al*

**OKIN ADAMS LLP**

Matthew S. Okin (Texas Bar No. 00784695)
David L. Curry, Jr. (Texas Bar No. 24065107)
Edward A. Clarkson, III (Texas Bar No. 24059118)
mokin@okinadams.com
dcurry@okinadams.com
eclarkson@okinadams.com
1113 Vine Street, Suite 240
Houston, Texas 77002
Tel: (713) 228-4100
Fax: (346) 247-7158

*Counsel to L Bond Management*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Lacy M. Lawrence
State Bar No. 24055913; S.D. Tex. No. 995675
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
llawrence@akingump.com

-and-

Michael S. Stamer (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Jason P. Rubin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:     (212) 872-1000
Facsimile:     (212) 872-1002
mstamer@akingump.com
aqureshi@akingump.com
jrubin@akngump.com

-and-

Scott L. Alberino (admitted *pro hac vice*)
Benjamin L. Taylor (admitted *pro hac vice*)
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
Phone:     (202) 887-4000
Fax:       (202) 887-4288
salberino@akingump.com
taylorb@akingump.com

*Counsel to the Official Committee of
Bondholders of GWG Holdings, Inc., et al*

**OKIN ADAMS LLP**

Matthew S. Okin (Texas Bar No. 00784695)
David L. Curry, Jr. (Texas Bar No. 24065107)
Edward A. Clarkson, III (Texas Bar No. 24059118)
mokin@okinadams.com
dcurry@okinadams.com
eclarkson@okinadams.com
1113 Vine Street, Suite 240
Houston, Texas 77002
Tel: (713) 228-4100
Fax: (346) 247-7158

*Counsel to L Bond Management*