**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GWG Holdings, Inc., *et al.*,[1] | ) | Case No. 22-90032 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**DEBTORS' MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN,
SUBMITTED BY THE DEBTORS, THE BONDHOLDER COMMITTEE,
AND L BOND MANAGEMENT, LLC AS CO-PROPONENTS**

---

March 27, 2023

**JACKSON WALKER LLP**
Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Email:    kpeguero@jw.com
        mcavenaugh@jw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:    (713) 238-3000
Email:    ckelley@mayerbrown.com

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
Jamie R. Netznik (admitted *pro hac vice*)

Lisa Holl Chang
Joshua R. Gross (admitted *pro hac vice*)
Jade Edwards
71 S. Wacker Drive
Chicago, IL 60606
Telephone:    (312) 782-0600
Email:    tkiriakos@mayerbrown.com
        lchiappetta@mayerbrown.com
        jnetznik@mayerbrown.com
        lhollchang@mayerbrown.com
        jgross@mayerbrown.com
        jmedwards@mayerbrown.com

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
Ashley Anglade
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:    (212) 506-2500
Email:    apaul@mayerbrown.com
        lkweskin@mayerbrown.com
        aanglade@mayerbrown.com

*Counsel for the Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (6955); and GWG DLP Funding Holdings VI, LLC (6955). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

# TABLE OF CONTENTS

**Page**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ...........................................................................................................1
    A.    *Defined Terms.* .......................................................................................................1
    B.    *Rules of Interpretation.* ........................................................................................22
    C.    *Computation of Time.* ...........................................................................................22
    D.    *Governing Law.* ....................................................................................................23
    E.    *Reference to Monetary Figures.* ...........................................................................23
    F.    *Controlling Document.* .........................................................................................23
    G.    *Proponents' Consent Right.* ..................................................................................23

**ARTICLE II. ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL FEE COMPENSATION CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, AND INDENTURE DIMINUTION CLAIMS** ...........................................................................................................................24
    A.    *Administrative Claims.* .........................................................................................24
    B.    *Accrued Professional Compensation Claims.* ......................................................25
    C.    *Chapford DIP Facility Claims.* .............................................................................27
    D.    *Vida DIP Claims.* ..................................................................................................27
    E.    *DLP Secured Claims.* ............................................................................................27
    F.    *Indenture Diminution Claims.* ..............................................................................27
    G.    *Priority Tax Claims.* .............................................................................................28
    H.    *Substantial Contribution Compensation and Expenses.* ......................................28

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...........................28
    A.    *Summary of Classification.* ...................................................................................28
    B.    *Treatment of Claims and Interests.* ......................................................................29
    C.    *Special Provision Governing Unimpaired Claims.* ...............................................33
    D.    *Elimination of Vacant Classes.* ............................................................................33
    E.    *Voting Classes; Presumed Acceptance by Non-Voting Classes.* ..........................33
    F.    *Subordinated Claims.* ...........................................................................................34
    G.    *Presumed Acceptance of Plan.* .............................................................................34
    H.    *Presumed Rejection of Plan.* .................................................................................34
    I.    *Acceptance by Impaired Classes of Claims.* ........................................................34
    J.    *Acceptance by Impaired Classes of Interests.* ......................................................34
    K.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.* ................34
    L.    *Controversies Regarding Impairment.* ..................................................................35

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ..............................................................35
    A.    *Wind Down Trust.* .................................................................................................35
    B.    *U.S. Federal Income Tax Treatment and Reporting.* ...........................................38
    C.    *General Settlement of Claims and Interests.* ........................................................40
    D.    *Wind Down Transactions.* .....................................................................................40
    E.    *Litigation Trust.* ...................................................................................................41
    F.    *Sources of Plan Consideration.* ............................................................................44
    G.    *Redemption of New WDT Interests.* ......................................................................46
    H.    *Priority of Cash Distributions to Holders of New WDT Interests.* ........................47
    I.    *LBM Settlement.* ...................................................................................................48
    J.    *Exemption from Registration Requirements.* ........................................................49
    K.    *Section 1146(a) Exemption.* ..................................................................................50
    L.    *Cancellation of Securities and Agreements.* ........................................................51
    M.    *Corporate Action.* .................................................................................................51
    N.    *Dissolution and Board of Directors.* ....................................................................52

i

| | | |
|---|---|---|
| O. | *Effectuating Documents; Further Transactions.* | 53 |
| P. | *Vesting of Assets.* | 53 |
| Q. | *Preservation of Causes of Action.* | 53 |
| R. | *Continuing Effectiveness of Final Orders.* | 54 |
| S. | *D&O Liability Insurance Policies.* | 55 |
| T. | *Payment of Certain Fees.* | 55 |
| U. | *Beneficient SPAC Transaction Consents.* | 56 |
| V. | *Termination of Any Continuing Business Relationship With Beneficient.* | 56 |

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..... **57**
| | | |
|---|---|---|
| A. | *Assumption and Rejection of Executory Contracts and Unexpired Leases.* | 57 |
| B. | *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* | 58 |
| C. | *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.* | 58 |
| D. | *Insurance Policies.* | 59 |
| E. | *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* | 59 |
| F. | *Reservation of Rights.* | 59 |
| G. | *Non-occurrence of the Effective Date.* | 60 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ..... **60**
| | | |
|---|---|---|
| A. | *Timing and Calculation of Amounts to Be Distributed.* | 60 |
| B. | *Distributing Parties.* | 60 |
| C. | *Delivery of Distributions Related to the Litigation Trust.* | 61 |
| D. | *Delivery of Distributions and Undeliverable or Unclaimed Distributions.* | 62 |
| E. | *Single Satisfaction of Claims and Interests.* | 63 |
| F. | *No Postpetition Interest On Claims.* | 63 |
| G. | *Compliance with Tax Requirements/Allocations.* | 64 |
| H. | *Setoffs.* | 64 |
| I. | *Allocation of Plan Distributions between Principal and Interest.* | 65 |
| J. | *Claims Paid or Payable by Third Parties.* | 65 |

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ..... **66**
| | | |
|---|---|---|
| A. | *Allowance of Claims.* | 66 |
| B. | *Claims Administration Responsibilities.* | 66 |
| C. | *Estimation of Claims.* | 66 |
| D. | *Adjustment to Claims or Interests without Objection.* | 67 |
| E. | *Disallowance of Claims and Interests.* | 67 |
| F. | *Disputed Claims Reserve.* | 68 |
| G. | *Amendments to Claims.* | 68 |
| H. | *No Distributions Pending Allowance.* | 69 |
| I. | *Distributions After Allowance.* | 69 |

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ..... **69**
| | | |
|---|---|---|
| A. | *Settlement, Compromise, and Release of Claims and Interests.* | 69 |
| B. | *Release of Liens.* | 70 |
| C. | *Releases by the Debtors.* | 70 |
| D. | *[RESERVED.]* | 72 |
| E. | *Exculpation.* | 72 |
| F. | *Protections Against Discriminatory Treatment after the Effective Date.* | 73 |
| G. | *Injunction.* | 73 |
| H. | *Recoupment.* | 74 |
| I. | *Subordination Rights.* | 74 |
| J. | *Ipso Facto and Similar Provisions Ineffective.* | 74 |
| K. | *Reimbursement or Contribution.* | 74 |

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ..... **75**

|   |   |   |   |
|---|---|---|---|
| A. | Conditions Precedent to the Effective Date. | .................................................. | 75 |
| B. | Effect of Non-Occurrence of Conditions Precedent to Consummation | ........................ | 76 |
| C. | Waiver of Conditions Precedent. | ............................................................... | 77 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**............................**77**

|   |   |   |   |
|---|---|---|---|
| A. | Modification and Amendments. | ............................................................. | 77 |
| B. | Effect of Confirmation on Modifications. | .................................................. | 77 |
| C. | Revocation or Withdrawal of the Plan. | ................................................... | 77 |

**ARTICLE XI. RETENTION OF JURISDICTION** ........................................................**78**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .....................................................**80**

|   |   |   |   |
|---|---|---|---|
| A. | Immediate Binding Effect. | ................................................................. | 80 |
| B. | Additional Documents. | .................................................................... | 81 |
| C. | Payment of Statutory Fees. | ................................................................ | 81 |
| D. | Dissolution of the Bondholder Committee. | ................................................ | 81 |
| E. | Reservation of Rights. | ..................................................................... | 81 |
| F. | Successors and Assigns. | ................................................................... | 82 |
| G. | Service of Documents. | ..................................................................... | 82 |
| H. | Enforcement of Confirmation Order. | ...................................................... | 83 |
| I. | Term of Injunctions or Stays. | ............................................................. | 83 |
| J. | Entire Agreement. | ......................................................................... | 83 |
| K. | Votes Solicited in Good Faith. | ............................................................ | 83 |
| L. | Exhibits. | ................................................................................. | 84 |
| M. | Nonseverability of Plan Provisions. | ...................................................... | 84 |
| N. | Closing of Chapter 11 Cases. | ............................................................. | 84 |
| O. | Creditor Default. | ......................................................................... | 84 |
| P. | Waiver or Estoppel. | ....................................................................... | 84 |

## INTRODUCTION

GWG Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases propose the following joint plan pursuant to chapter 11 of title 11 of the United States Code.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in <u>Article I.A</u> hereof.  Although proposed jointly for administrative purposes, this Plan constitutes a separate plan for each of the Debtors (as that term is defined herein) for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code, and this Plan does not contemplate substantive consolidation of any of the Debtors.  Each of the Debtors, the Bondholder Committee, and LBM is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan is supported by the Bondholder Committee and LBM.  The Plan, if consummated, will effectuate the terms of the Mediated Settlement (as reflected in the Mediation Agreement), which is further described in the Disclosure Statement.

Reference is made to the accompanying *Disclosure Statement for the Debtors' Modified Second Amended Joint Chapter 11 Plan* for a discussion of the Debtors' history, business, operations, valuation, projections, risk factors, a summary and analysis of this Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.    Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

**1.**    "<u>1940 Act</u>" means the U.S. Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a-1–80a-64, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

**2.**    "<u>2018 Supplemental Indenture</u>" means that certain Supplemental Indenture, dated as of August 10, 2018, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, among Debtors GWGH and GWG Life and the Indenture Trustee, to add and modify certain provisions of the A&R Indenture necessary to provide for the issuance of the Seller Trust L Bonds.

**3.**    "<u>2020 Supplemental Indenture</u>" means that certain Supplemental Indenture, dated as of December 31, 2020, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, among Debtors GWGH and GWG Life and the Indenture Trustee, to add and modify certain provisions of the A&R Indenture necessary to provide for the issuance of the Liquidity Bonds.

4.      "A&R Indenture" means that certain Amended and Restated Indenture, dated as of October 23, 2017, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, among Debtors GWGH and GWG Life and the Indenture Trustee, providing for the issuance of the Public L Bonds, the Seller Trust L Bonds, and the Liquidity Bonds.

5.      "Accrued Professional Compensation Claims" means, at any given moment, all Claims for accrued fees and expenses for services rendered by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses; *provided* that, to the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim and the Professional Fee Escrow Amount with respect to such Claim.

6.      "Administrative Claim" means a Claim for costs and expenses of the administration of the Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors incurred after the applicable Petition Date and through the Effective Date; (b) Accrued Professional Compensation Claims; (c) the Independent Director Fee Claims; (d) fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including the fees of the U.S. Trustee payable pursuant to section 1930(a) of the Judicial Code; and (e) the Indenture Diminution Claims.

7.      "Administrative Claims Payment Date" means, with respect to an Administrative Claim, the earlier of:  (a) the Effective Date; (b) if the Administrative Claim is not Allowed as of the Effective Date, as soon as reasonably practicable after the date on which an order Allowing such Administrative Claim becomes a Final Order; and (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the applicable Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.      "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

9.      "Allowed" means with reference to any Claim or Interest, as applicable: (a) any Claim (i) for which a Proof of Claim or Proof of Interest has been timely Filed on or before the applicable Claims Bar Date (or for which a Proof of Claim or Proof of Interest is not required to be Filed pursuant to the Bankruptcy Code or a Final Order), or (ii) that is identified in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim or Proof of Interest has been timely Filed; *provided*, that, in each case, any such Claim shall be considered Allowed only if and to the extent that no objection or other challenge to the allowance thereof has been timely Filed prior to the Claim Objection Bar Date or such objection or challenge has been timely Filed and the Claim thereafter has been Allowed by a Final Order; or (b) any Claim expressly deemed allowed by the Plan (except as addressed in Article IV.I hereof)

or allowed by a Final Order of the Bankruptcy Court (including pursuant to any stipulation or settlement agreement approved by the Bankruptcy Court). Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims unless otherwise subsequently Allowed. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Wind Down Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order Allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

10.     "Allowed Bondholder Claims" means: (a) with respect to Direct-Held Bonds (as defined in the Bondholder Claim Procedures Order), (i) to the extent a timely Bondholder POC Form has been Filed pursuant to the Bondholder Claim Procedures Order, Bondholder Claims shall be Allowed in the amount set forth in any such Bondholder POC Form, provided, that, in each case, any such Bondholder Claim shall be considered Allowed only if and to the extent that no objection or other challenge to the allowance thereof has been timely Filed prior to the Claim Objection Bar Date or such an objection or other challenge has been Filed and the Bondholder Claim thereafter has been Allowed by a Final Order, or (ii) to the extent that no Bondholder POC Form has been timely Filed, Bondholder Claims shall be Allowed in the amounts set forth in the Holder Notices pursuant to the Bondholder Claim Procedures Order; (b) with respect to Indirect-Held Bonds (as defined in the Bondholder Claim Procedures Order), Bondholder Claims Allowed pursuant to the Bondholder Claim Procedures Order; and (c) the LBM L Bond Claims otherwise Allowed to the extent provided by Article IV.I hereof (which, for the avoidance of doubt, do not include the LBM Subordinated Claims).

11.     "Assets" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

12.     "Avoidance Actions" means any and all actual or potential claims and causes of action to avoid, recover, or subordinate a transfer of property or an obligation incurred by the Debtors that may be brought by or on behalf of the Debtors or their Estates pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547-553, and 724(a) of the Bankruptcy Code or under similar or related state, federal, or foreign statutes and common law, including fraudulent transfer laws or other applicable law.

13.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended.

14.     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, pursuant to section 151 of the Judicial Code, the United States District Court for the Southern District of Texas.

**15.**     "<u>Bankruptcy Local Rules</u>" means the Bankruptcy Local Rules for the Southern District of Texas.

**16.**     "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the chambers rules of the Bankruptcy Court.

**17.**     "<u>Beneficient</u>" means The Beneficient Company Group, L.P. and its subsidiaries.

**18.**     "<u>Bond Claims</u>" means, collectively: (a) the Allowed Bondholder Claims; (b) any Indenture Fee and Expense Claims; and (c) subject to <u>Article IV.I</u> hereof, the LBM Subordinated Claims.

**19.**     "<u>Bondholder Claims</u>" means any Claims for principal or interest evidenced by, arising under, or in connection with the Indenture (other than the LBM Subordinated Claims).

**20.**     "<u>Bondholder POC Forms</u>" shall have the meaning set forth in the Bondholder Claim Procedures Order.

**21.**     "<u>Bondholder Claim Procedures Order</u>" means the order entered by the Bankruptcy Court on August 29, 2022 [Dkt. No. 739].

**22.**     "<u>Bondholder Committee</u>" means the official committee of bondholders appointed by the U.S. Trustee in the Chapter 11 Cases on May 9, 2022 [Dkt. No. 214].

**23.**     "<u>Broker Dealer(s)</u>" means the registered broker/dealers and registered investment advisers that the Public L Bonds were offered and sold through.

**24.**     "<u>Broker Dealer Settlement Election Notice</u>" means the settlement election notice that permits a Broker Dealer to be considered a Released Party in exchange for: (a) a Cash payment equal to 30% of all value received by such electing Broker Dealer from the Debtors on account of the sale of Public L Bonds; and (b) a mutual release of all Claims held by such Broker Dealer against the Debtors, which shall be in form and substance reasonably acceptable to the Creditor Proponents.  Any Broker Dealer seeking to become a Released Party must submit the executed Broker Dealer Settlement Election Notice with the required payment thereunder so that both items are actually received by the Debtors or the Wind Down Trustee, as applicable, by the Broker Dealer Settlement Deadline.

**25.**     "<u>Broker Dealer Settlement Deadline</u>" means the date that is 90 calendar days after the Effective Date.

**26.**     "<u>Broker Dealer Settlement Payments</u>" means the Cash the Debtors or the Wind Down Trustee, as applicable, receive from any Broker Dealers in connection with a Broker Dealer Settlement Election Notice.

**27.**     "<u>Business Day</u>" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

28. "Cash" means the legal tender of the United States or the equivalent thereof.

29. "Causes of Action" means any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross-claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

30. "Certificate" means any instrument evidencing a Claim or Interest.

31. "Chapford DIP Facility" means the "Final DIP Facility," as defined in the Chapford Final DIP Order.

32. "Chapford DIP Facility Claims" means any and all Claims for principal, interest, fees, costs, expenses, disbursements, and any and all other obligations of any kind under the Chapford DIP Facility, including any "DIP Obligations" (as defined in the Chapford Final DIP Order) owing as of the Effective Date; provided that, for the avoidance of doubt, the Chapford DIP Facility Claims shall not include the purported Alternate Stalking Horse Fee (as defined in the Chapford Final DIP Order).

33. "Chapford Final DIP Order" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims* [Dkt. No. 606].

34. "Chapter 11 Cases" means the jointly-administered chapter 11 cases of the Debtors pending before the Bankruptcy Court under the lead case of GWG Holdings, Inc., *et al.*, No. 22-90032 (MI) (Bankr. S.D. Tex.).

35. "Claim" means any "claim" (as defined in section 101(5) of the Bankruptcy Code).

36. "Claims Bar Date" means the applicable bar date by which a Proof of Claim or Proof of Interest, or request for payment of administrative expenses must be, or must have been, Filed, as established by an order of the Bankruptcy Court, including the Confirmation Order.

37. "Claims Objection Bar Date" shall mean, subject to rule 9006 of the Federal Rules of Bankruptcy Procedure, the date that is 180 days following the Effective Date.

38. "Claims Register" means the official register of Claims maintained by the Clerk of the Bankruptcy Court or the Notice and Solicitation Agent.

39. "Class" means a category of Holders of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

**40.** "Confirmation" means the entry of a Confirmation Order on the docket of the Chapter 11 Cases.

**41.** "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

**42.** "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider entry of a Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

**43.** "Confirmation Order" means a Final Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, the form and substance of which being subject to the Proponents' Consent Right.

**44.** "Consummation" means the occurrence of the Effective Date for the Plan.

**45.** "Creditor Proponents" means the Bondholder Committee and LBM.

**46.** "Cure Amounts" means all amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

**47.** "D&O Insurance Order" has the meaning set forth in Article II.B.1 hereof.

**48.** "D&O Liability Insurance Policies" means all insurance policies (including, without limitation, directors and officers liability policy, management liability policy, professional liability policy, general liability policy, errors and omissions policy, excess policy, umbrella policy, and/or any "tail policy") for current or former directors, members, trustees, officers, and managers' liability maintained by the Debtors as of the Effective Date.

**49.** "Debtors" means, collectively, GWG Holdings, Inc., GWG Life, LLC, GWG Life USA, LLC, GWG DLP Funding IV, LLC, GWG DLP Funding VI, LLC, and GWG DLP Funding Holdings VI, LLC.

**50.** "Debtor Release" means the releases set forth in Article VIII.C of this Plan.

**51.** "Direct Holder Notices" shall have the meaning set forth in the Bondholder Claim Procedures Order.

**52.** "Disclosure Statement" means the disclosure statement (including all exhibits and schedules thereto or referenced therein), as may be amended, supplemented, or modified from time to time, that relates to this Plan and has been prepared and distributed by the Debtors, the Bondholder Committee, and LBM as joint plan proponents in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

53.     "Disputed" means, with respect to any Claim or Interest or any portion thereof: (a) any Claim or Interest that is not Allowed; (b) any Claim or Interest that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) any Claim or Interest to which any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  For the avoidance of doubt, a Disputed Claim or Interest shall not include any Claim or Interest that has been deemed Allowed under the Plan (except as otherwise addressed in Article IV.I hereof) or by Final Order.

54.     "Disputed Claims Reserve" means a reserve in an amount equal to the Disputed Claims Reserve Amount for distributions on account of Disputed Claims that are subsequently Allowed after the Effective Date.  To the extent that any Claim is Disputed, and where this Plan provides for the payment in Cash on the Effective Date of such Claim if such Claim were Allowed, on the Effective Date, the Debtors shall transfer the pro rata portion of such Claim's distribution under the Plan to the Disputed Claims Reserve, where such amount shall be held in trust for the benefit of such Holder pending resolution by a Final Order or as otherwise agreed between the Wind Down Debtors on one hand, and such Holder on the other hand.  The Wind Down Trust shall have a reversionary interest, which shall be distributed in accordance with Article III and Article IV.H of this Plan, in the excess, if any, of any Cash or other property held in the Disputed Claims Reserve on account of any Disputed Claim after such Disputed Claim or portion thereof ultimately is disallowed by a Final Order or otherwise resolved between the Holder of the Disputed Claim and the Wind Down Debtors in a manner that leaves an excess amount in the Disputed Claims Reserve.

55.     "Disputed Claims Reserve Amount" means the amount of assets determined prior to the Effective Date by the Debtors, in consultation with the Creditor Proponents, that would likely have been distributed to the Holders of all applicable Disputed Claims against the Debtors as if such Disputed Claims against the Debtors had been Allowed Claims against the Debtors on the Effective Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum distribution purposes, to be:  (a) the lesser of (i) the asserted amount of each Disputed Claim against the Debtors as scheduled by the Debtors or, if and solely to the extent a non-duplicative Proof of Claim was Filed in an asserted amount greater than the scheduled amount, the asserted amount Filed with the Bankruptcy Court as set forth in such non-duplicative Proof of Claim or as provided by the parties to the Debtors as further information with respect to the Proof of Claim, and (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or ordered by other order of the Bankruptcy Court; or (b) the amount otherwise agreed to by the Debtors and the Holder of such Disputed or unliquidated Claim for reserve purposes.

56.     "Distribution Record Date" means, other than with respect to publicly-held securities, the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the later of the first day of the Confirmation Hearing or the day that such Claim becomes an Allowed Claim.

57.     "DLP Entities" means Debtors DLP IV, DLP VI, and GWG DLP Funding Holdings VI, LLC.

7

58.     "DLP Entity General Unsecured Claims" mean any Claim against any of the DLP Entities that is not Secured and that is not: (a) an Administrative Claim; (b) Chapford DIP Facility Claim; (c) Vida DIP Claim; (d) DLP Secured Claim; (e) Priority Tax Claim; (f) Other Secured Claim; (g) Other Priority Claim; (h) Bond Claim; or (i) Intercompany Claim.

59.     "DLP Independent Directors" means Albert J. Fioravanti and Sean Clements.

60.     "DLP IV" means Debtor GWG DLP Funding IV, LLC.

61.     "DLP IV Agent" means CLMG Corp., in its capacity as the administrative agent under the DLP IV Credit Agreement.

62.     "DLP IV Credit Agreement" means that certain Fifth Amended and Restated Loan and Security Agreement (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time), dated December 14, 2021, by and between Debtor DLP IV as borrower, DLP IV Agent as administrative agent, and the DLP IV Lenders as lenders thereto.

63.     "DLP IV Lenders" means the lenders from time to time party to the DLP IV Credit Agreement.

64.     "DLP IV Secured Claims" means any Claims evidenced by, arising under, or in connection with the DLP IV Credit Agreement or other agreements related thereto.

65.     "DLP Secured Claims" means, collectively, the DLP IV Secured Claims and the DLP VI Secured Claims.

66.     "DLP VI" means Debtor GWG DLP Funding VI, LLC.

67.     "DLP VI Agent" means National Founders LP, in its capacity as the administrative agent under the DLP VI Credit Agreement.

68.     "DLP VI Credit Agreement" means that certain Credit Agreement (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time), dated August 11, 2021, by and among the Debtor DLP VI as borrower, DLP VI Agent as administrative agent, and DLP VI Lender as the sole lender.

69.     "DLP VI Lender" means National Founders LP, in its capacity as the sole lender under the DLP VI Credit Agreement.

70.     "DLP VI Secured Claims" means any Claims evidenced by, arising under, or in connection with the DLP VI Credit Agreement or other agreements related thereto.

71.     "DTC" means The Depository Trust Company.

72.     "Effective Date" means, with respect to the Plan, the date that is a Business Day selected by the Debtors, in consultation with the Creditor Proponents, on or after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent

specified in <u>Article IX.A</u> of this Plan have been satisfied or waived (in accordance with <u>Article IX.C</u> of this Plan); and (c) the Debtors declare that the Plan is effective.

73. "<u>Entity</u>" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

74. "<u>Estate</u>" means, as to each Debtor, the estate created for the Debtor pursuant to section 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

75. "<u>Estimated Effective Date Shortfall Amount</u>" means the amount, if any, that the Debtors, in consultation with the Creditor Proponents, estimate prior to the Effective Date to be the difference between: (a) all Allowed Claims required to be paid or provided for in full, in Cash on the Effective Date under the provisions of this Plan; and (b) the amount of Cash that the Debtors expect to have available for such purpose on the Effective Date that does not consist of any of the net Cash proceeds of the Vida DIP Financing Facility.

76. "<u>Exculpated Claim</u>" means any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of:  (a) the Chapter 11 Cases; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Cases; (c) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the Chapter 11 Cases; (d) the pursuit of Consummation; and/or (e) the Filing, administration, and/or implementation of the Chapter 11 Cases, or the distribution of property in connection therewith or thereunder; *provided*, that, for the avoidance of doubt, any prepetition advice provided by any legal professionals in connection with prepetition transactions between the Debtors and Beneficient shall not constitute any act or omission that is covered by this definition of Exculpated Claim; *provided*, *further*, that, notwithstanding the foregoing, Exculpated Claims shall not include anything related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, intentional breach of fiduciary duty, or gross negligence.

77. "<u>Exculpated Party</u>" means, collectively, and in each case, in their respective capacities as such: (a) Jeffrey S. Stein, in his capacities as an officer, an Independent Director, and a director of the Debtors; (b) Anthony R. Horton, in his capacities as an Independent Director and director of the Debtors; (c) Michael A. Tucker, in his capacity as an officer of the Debtors; (d) the Non-Management Directors, in their capacity as such; (e) the DLP Independent Directors, in their capacity as such; (f) the members of the Bondholder Committee, in their capacity as such; (g) any Professional retained by the Debtors, the Independent Directors, the DLP Independent Directors, the Bondholder Committee, in such Professionals' capacity as such; and (h) any professional retained by any of the members of the Bondholder Committee, each in such professionals' capacity as such.

78. "<u>Executory Contract</u>" means a contract to which a Debtor is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

**79.** "<u>Existing Common Interests</u>" means the Interests in Debtor GWGH arising from or related to the Existing Common Stock.

**80.** "<u>Existing Common Stock</u>" means the shares of common stock issued by Debtor GWGH.

**81.** "<u>Federal Judgment Rate</u>" means the federal judgment rate in effect as of the Effective Date.

**82.** "<u>File</u>," "<u>Filed</u>," or "<u>Filing</u>" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Solicitation Agent.

**83.** "<u>Final Vida Order</u>" means the *Final Order (A) Authorizing the Debtors to Obtain Replacement DIP Financing From Vida Insurance Credit Opportunity Fund III GP, LLC and Its Affiliates and Enter Into and Perform Under the Replacement DIP Credit Documents, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Authorizing the Refinancing of Prepetition and Postpetition Secured Debt, (E) Authorizing Amending the Option Agreement, (F) Modifying the Automatic Stay, and (G) Granting Related Relief* [Dkt. No. 1144].

**84.** "<u>Final Order</u>" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Bankruptcy Local Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

**85.** "<u>FOXO</u>" means FOXO Technologies, Inc.

**86.** "<u>General Unsecured Claim</u>" means any Claim that is not Secured and that is not: (a) an Administrative Claim; (b) a Chapford DIP Facility Claim; (c) a Vida DIP Claim; (d) a DLP Secured Claim; (e) a Priority Tax Claim; (f) an Other Secured Claim; (g) an Other Priority Claim; (h) a Bond Claim; (i) a DLP Entity General Unsecured Claim; or (j) an Intercompany Claim; *provided*, that, for the avoidance of doubt, a Claim in the amount of $2,750.00 or less that would otherwise be a General Unsecured Claim shall be treated as a GUC Convenience Claim for purposes of this Plan.

**87.** "<u>Governmental Unit</u>" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

88.     "GUC Convenience Claim" means an Allowed Claim in an amount greater than $0.01 but less than or equal to $2,750.00, that would otherwise qualify as a General Unsecured Claim; *provided*, that any Holder of an Allowed General Unsecured Claim may elect to have such Claim reduced to $2,750.00 and treated as an Allowed GUC Convenience Claim for purposes of this Plan; *provided*, *further*, that, notwithstanding the foregoing, the total GUC Convenience Claims shall not exceed $150,000 in the aggregate.

89.     "GWGH" means Debtor GWG Holdings, Inc.

90.     "GWG Life" means Debtor GWG Life, LLC.

91.     "Holder" means any Entity holding a Claim or an Interest.

92.     "Holder Notices" means the Indirect Holder Notices and Direct Holder Notices distributed by the Notice and Solicitation Agent at the direction of the Debtors pursuant to the Bondholder Claim Procedures Order.

93.     "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

94.     "Indenture" means, collectively, the A&R Indenture, the 2018 Supplemental Indenture, and the 2020 Supplemental Indenture.

95.     "Indenture Diminution Claims" means any Claims of the Indenture Trustee asserted on account of the decrease in value of the Indenture Trustee's interest in the collateral securing the obligations under the Indenture, arising from the "Adequate Protection Liens" granted to the Indenture Trustee pursuant to the Chapford Final DIP Order and the Final Vida Order. On the Effective Date, the Indenture Diminution Claims shall be deemed an Allowed Administrative Claim in the amount as agreed by the Debtors, the Indenture Trustee, and the Creditor Proponents, or as determined by the Court, in the event such parties are unable to reach an agreement as to the amount during further mediation.

96.     "Indenture Documents" means the Indenture, the Public L Bonds, the Seller Trust L Bonds, and the Liquidity Bonds, and any amendments, modifications, or supplements thereto, and any notes, certificates, agreements, security agreements, documents, and instruments related thereto or executed in connection therewith.

97.     "Indenture Fee and Expense Claims" means any Claims of the Indenture Trustee payable pursuant to Article IV.T hereof, Article IV.L hereof, or the Indenture Documents, for its reasonable and documented fees and expenses and for indemnity, subrogation, and contribution, including, without limitation, attorneys' fees and expenses, arising under or in connection with the Indenture Documents, including in its capacity as collateral agent thereunder, whether before or after April 20, 2022 or before or after the Effective Date; *provided*, that, after the Effective Date, the Indenture Trustee shall not be able to assert any Claim against the Debtors or the Wind Down Debtors (except as otherwise provided in this Plan).

98.     "Indenture Trustee" means Bank of Utah, in its capacity as the Indenture Trustee under the Indenture.

99.     "Indenture Trustee Charging Lien" means any Lien or other priority of payment to which the Indenture Trustee is entitled under the Indenture Documents, against distributions to be made to Holders of Claims under the Indenture Documents, for payment of any Indenture Fee and Expense Claims.  For the avoidance of doubt, nothing contained in this Plan is intended to create or expand any such Lien (including its priority) beyond what is provided under the Indenture Documents and authorized and/or enforceable under applicable law.

100.     "Independent Director Fee Claims" means all unpaid fees and expenses as of the Effective Date due to the Independent Directors, the DLP Independent Directors, or David F. Chavenson pursuant to their respective agreements with the Debtors, as authorized by the *Order Authorizing and Approving (I) Designation of Jeffrey S. Stein as Chief Restructuring Officer, (II) the Appointment of Jeffrey S. Stein and Anthony R. Horton as New Independent Directors, and (III) Granting Related Relief* [Dkt. No. 594] or otherwise.  On the Effective Date, the Independent Director Fee Claims shall be deemed Allowed Administrative Claims.

101.     "Independent Directors" means Jeffrey S. Stein and Anthony R. Horton.

102.     "Indirect Holder Notices" shall have the meaning set forth in the Bondholder Claim Procedures Order.

103.     "Initial Litigation Trust Assets" means the following assets, which will ultimately vest in the Litigation Trust free and clear of all liens, claims, interests, and encumbrances on the Effective Date: (a) the Initial Litigation Trust Funding Amount; (b) the Retained Causes of Action; (c) the Debtors' interests in the D&O Liability Insurance Policies that provide coverage prior to April 20, 2022; (d) the Debtors' interests in the proceeds of such policies and the Debtors' entitlements and rights to payments thereunder; and (e) any Broker Dealer Settlement Payments received as of the Effective Date.

104.     "Initial Litigation Trust Funding Amount" means an amount equal to $3 million in Cash.

105.     "Intercompany Claim" means any Claim against a Debtor held by another Debtor.

106.     "Intercompany Interest" means any Interest in one Debtor held by another Debtor.

107.     "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor outstanding immediately prior to the applicable Petition Date, including any options, warrants, or other rights with respect thereto, or any other instruments evidencing an ownership interest in any of the Debtors and the rights of any Entity to purchase or demand the issuance of any of the foregoing, including: (a) redemption, conversion, exchange, voting, participation, and dividend rights (including any rights in respect of accrued and unpaid dividends); (b) liquidating preferences; and (c) stock options and warrants.

108.     "Interim Compensation Order" means the *Corrected Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and (II) Granting Related Relief* [Dkt. No. 378].

**109.** "<u>Investigations Committee</u>" means the Investigations Committee formed pursuant to the Resolutions of the Board of Directors of GWGH, dated June 19, 2022 (as subsequently amended and restated on July 13, 2022 and July 17, 2022).

**110.** "<u>Judicial Code</u>" means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

**111.** "<u>LBM</u>" means L Bond Management, LLC.

**112.** "<u>LBM L Bond Claims</u>" shall mean all amounts owed by the Debtors on Claims held by the following trusts for principal or interest evidenced by, arising under, or in connection with the Indenture as of April 20, 2022: The LT-1 Exchange Trust (c/o MHT Financial LLC), The LT-2 Exchange Trust, The LT-3 Exchange Trust, The LT-4 Exchange Trust, The LT-5 Exchange Trust, The LT-6 Exchange Trust, The LT-7 Exchange Trust, The LT-8 Exchange Trust, The LT-9 Exchange Trust, The LT-12 Exchange Trust, The LT-14 Exchange Trust, The LT-15 Exchange Trust, The LT-16 Exchange Trust, The LT-17 Exchange Trust, The LT-18 Exchange Trust, The LT-19 Exchange Trust, The LT-20 Exchange Trust, The LT-21A Custody Trust, The LT-22A Custody Trust, The LT-23A Custody Trust, The LT-24A Custody Trust, The LT-25A Custody Trust, and The LT-26A Custody Trust. For the avoidance of doubt (and except as provided in <u>Article IV.I</u> hereof), LBM L Bond Claims, including the LBM Subordinated Claims, are deemed Allowed under this Plan, shall be Allowed upon entry of the Confirmation Order, and otherwise constitute Allowed Class 3 Bond Claims.

**113.** "<u>LBM Released Claims</u>" means any and all civil claims held by the Debtors' Estates against the LBM Released Parties.

**114.** "<u>LBM Released Parties</u>" means, collectively, and in each case in their respective capacities as such: (a) LBM; (b) LBM's managers, employees, agents, attorneys and representatives solely in such capacity and solely for actions taken in such capacity that are related to the acquisition, holding, or disposition of any Seller Trust L Bonds for which LBM acts as agent including the LBM L Bond Claims; (c) the trusts identified in the definition of LBM L Bond Claims, the trustees and trust advisors of such trusts, current officers, directors, and advisors of such trusts, each solely in such capacity and solely for actions taken on behalf of such trusts; and (d) Richard Schmidt and his professionals; *provided*, *however*, that any release of the LBM Released Claims are to be narrowly construed, and to the extent any LBM Released Parties serve or have served in multiple capacities, such releases do not extend beyond capacities as described above.

**115.** "<u>LBM Settlement</u>" means the agreement between the Debtors and the Creditor Proponents set forth in <u>Article IV.I</u> hereof.

**116.** "<u>LBM Subordinated Claims</u>" means, as applicable: (a) where LBM has not timely withdrawn from the settlement described in <u>Article IV.I</u> of this Plan, the portion of the Allowed LBM L Bond Claims equal to fifteen percent (15%) of the total amount of such Claims as of April 20, 2022; or (b) where LBM has timely withdrawn from such settlement, the portion of such Bond Claims, if any, subordinated pursuant to a Final Order of the Bankruptcy Court.

**117.** "<u>Lien</u>" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

118. "<u>Litigation Trust</u>" means the litigation trust established on the Effective Date for the purpose of prosecuting or settling the Retained Causes of Action through the distribution of net proceeds thereof to the Wind Down Trust.

119. "<u>Litigation Trust Agreement</u>" means the agreement governing the Litigation Trust, the form and substance of which shall be subject to the Proponents' Consent Right, which shall be Filed as part of the Plan Supplement.

120. "<u>Litigation Trust Reconciliation Claims</u>" means Claims or Interests held or Filed by any: (a) defendant in any litigation initiated by the Litigation Trustee or, in consultation with the Wind Down Trustee, Entity against whom the Litigation Trustee expects to initiate litigation; (b) any Broker Dealers; and (c) Holders of LBM L Bond Claims, in the event LBM withdraws from the settlement described in <u>Article IV.I</u> herein.

121. "<u>Litigation Trustee</u>" means the independent, third-party fiduciary appointed as trustee of the Litigation Trust by the Bondholder Committee in their sole discretion and as identified in the Plan Supplement; *provided*, that, for the avoidance of doubt, the Litigation Trustee shall have no affiliation with any Bondholder Committee member and must not own any Public L Bonds, New WDT Interests, or other Interests in or Securities issued by any of the Debtors. The Litigation Trustee shall, among other things: (a) prosecute and/or settle the Retained Causes of Action; and (b) facilitate distributions as set forth in <u>Section IV.D</u> hereof.

122. "<u>Liquidating Company Exception</u>" has the meaning set forth in <u>Article IV.A.5</u> of this Plan.

123. "<u>Liquidation Analysis</u>" means the liquidation analysis Filed as part of the Plan Supplement.

124. "<u>Liquidity Bonds</u>" means the bonds issued pursuant to and under the 2020 Supplemental Indenture.

125. "<u>Minimum Distribution Amount</u>" means $15,000,000 in Cash.

126. "<u>Mediated Settlement</u>" means the settlement by and among the Debtors and the Creditor Proponents, memorialized in the Mediation Agreement.

127. "<u>Mediation Agreement</u>" means the written agreement entered into by the Debtors and the Creditor Proponents, dated as of March 9, 2023 [Dkt. No. 1518], which is described in further detail in the Disclosure Statement.

128. "<u>Net Cash Proceeds</u>" means with respect to any disposition or monetization by the Wind Down Trustee of any of the Wind Down Trust Assets, including of any interest in Beneficient or FOXO, the excess, if any, of: (a) the sum of cash and cash equivalents received in connection with such transaction (including any cash or cash equivalents received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received); less (b) the sum of (i) the reasonable and customary out-of-pocket expenses incurred by the Wind Down Trustee, as applicable, in connection with such transaction and (ii) income taxes reasonably estimated to be actually payable within two years of the date of the

relevant transaction as a result of any gain recognized in connection therewith; *provided* that, if the amount of any estimated taxes pursuant to subclause (ii) exceeds the amount of taxes actually required to be paid in cash in respect of such disposition or monetization, the aggregate amount of such excess shall constitute Net Cash Proceeds.

129.    "New Series A1 WDT Interests" shall mean the new beneficial interests in the Wind Down Trust issued to Holders of Allowed Bond Claims in Class 3 (other than Allowed LBM Subordinated Claims) pursuant to this Plan in an amount equal to the amount of the outstanding Allowed Bond Claims (less the amount of the Allowed LBM Subordinated Claims) as of the Petition Date, which shall be satisfied, redeemed, and/or cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of any New Series A2 WDT Interests, New Series B WDT Interests, New Series C WDT Interests, New Series D WDT Interests, or New Series E WDT Interests, and shall provide for the accrual of interest from April 20, 2022 at a rate of 9% per annum, subject to and in accordance with the waterfall provisions set forth in Article IV.H and Article VI.C hereof.  The New Series A1 WDT Interests shall include any New Series A1 WDT Interests issued to the Indenture Trustee on account of any outstanding Indenture Fee and Expense Claims.

130.    "New Series A2 WDT Interests" shall mean the new beneficial interests in the Wind Down Trust issued to Holders of Allowed LBM Subordinated Claims in Class 3 pursuant to this Plan in an amount equal to the amount of the Allowed LBM Subordinated Claims, which shall be satisfied, redeemed, and/or cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of any New Series B WDT Interests, New Series C WDT Interests, New Series D WDT Interests, or New Series E WDT Interests, but following the satisfaction, redemption, and/or cancellation of the New Series A1 WDT Interests, and shall provide for the accrual of interest from April 20, 2022 at a rate of 9% per annum, subject to and in accordance with the waterfall provisions set forth in Article IV.H and Article VI.C hereof.

131.    "New Series B WDT Interests" shall mean the new beneficial interests in the Wind Down Trust issued to Holders of Allowed General Unsecured Claims in Class 4(a) pursuant to this Plan in an amount equal to the aggregate amount of Allowed Class 4(a) General Unsecured Claims, which shall be satisfied, redeemed, and/or cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of any New Series C WDT Interests, New Series D WDT Interests, or New Series E WDT Interests, but following the satisfaction, redemption, and/or cancellation of the New Series A1 WDT Interests and the New Series A2 WDT Interests, subject to and in accordance with the waterfall provisions set forth in Article IV.H and Article VI.C hereof.

132.    "New Series C WDT Interests" shall mean the new beneficial interests in the Wind Down Trust issued to Holders of Allowed Series 1 Preferred Interests in Class 8 pursuant to this Plan in an amount equal to the aggregate amount of Allowed Class 8 Series 1 Preferred Interests (based on each Series 1 Preferred Interest having an initial stated value of $1,000.00 per share), which shall be satisfied, redeemed, and/or cancelled in full in accordance with the terms and provisions of the New WDT Documents on a *pari passu* basis with the New Series D WDT Interests, prior to any distributions on account of any New Series E WDT Interests, but following the satisfaction, redemption, and/or cancellation of the New Series A1 WDT Interests, the New

15

Series A2 WDT Interests, and the New Series B WDT Interests, subject to and in accordance with the waterfall provisions set forth in <u>Article IV.H</u> and <u>Article VI.C</u> hereof.

133.     "<u>New Series D WDT Interests</u>" shall mean the new beneficial interests in the Wind Down Trust issued to Holders of Allowed Series 2 Preferred Interests in Class 9 pursuant to this Plan in an amount equal to the aggregate amount of Allowed Class 9 Series 2 Preferred Interests (based on each Series 2 Preferred Interest having an initial stated value of $1,000.00 per share), which shall be satisfied, redeemed, and/or cancelled in accordance with the terms and provisions of the New WDT Documents on a *pari passu* basis with the New Series C WDT Interests, prior to any distributions on account of any New Series E WDT Interests, but following the satisfaction, redemption, and/or cancellation of the New Series A1 WDT Interests, the New Series A2 WDT Interests, and the New Series B WDT Interests, subject to and in accordance with the waterfall provisions set forth in <u>Article IV.H</u> and <u>Article VI.C</u> hereof.

134.     "<u>New Series E WDT Interests</u>" shall mean the new beneficial interests in the Wind Down Trust issued to Holders of Allowed Existing Common Stock in Class 10 pursuant to this Plan in a number equal to the aggregate number of Allowed Class 10 Existing Common Stock. Holders of New Series E WDT Interests shall receive distributions as authorized by the Wind Down Trustee; *provided*, that (a) holders of New Series E WDT Interests shall not be entitled to receive any distributions until all other New WDT Interests have been satisfied, cancelled, and/or redeemed in accordance with the terms and provisions of the New WDT Documents, and (b) nothing herein requires the Wind Down Trustee to authorize any distribution to holders of New Series E WDT Interests.

135.     "<u>New WDT Interests</u>" means, collectively, the New Series A1 WDT Interests, the New Series A2 WDT Interests, the New Series B WDT Interests, the New Series C WDT Interests, the New Series D WDT Interests, and the New Series E WDT Interests.

136.     "<u>New WDT Documents</u>" means any and all documentation required to implement, issue, and distribute the New WDT Interests, the form and substance of which being subject to the Proponents' Consent Right, and which documentation may be part of the Wind Down Trust Agreement.

137.     "<u>Non-Management Directors</u>" shall mean David F. Chavenson and David de Weese.

138.     "<u>Non-Released Parties</u>" shall mean any Entities that are not Released Parties, which Entities shall include, without limitation, Beneficient, its current and former directors and officers (including, without limitation, Bradley K. Heppner, Thomas O. Hicks, Bruce W. Schnitzer, Dennis P. Lockhart, and Peter T. Cangany), HCLP Nominees, L.L.C., the Debtors' former directors and officers (including, without limitation, Murray Holland and Timothy Evans) in their capacity or capacities as such, and any Entities affiliated with or otherwise related to the foregoing.

139.     "<u>Notice and Solicitation Agent</u>" means Donlin, Recano & Company, Inc., in its capacity as such to the Debtors in the Chapter 11 Cases.

**140.** "Ordinary Course Professional" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

**141.** "Ordinary Course Professionals Order" means the *Order (I) Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Dkt. No. 412].

**142.** "Other Priority Claim" means any Claim against any Debtor entitled to priority in right of payment under section 507 of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**143.** "Other Secured Claim" means a Secured Claim against any of the Debtors that is not: (a) a Chapford DIP Facility Claim; (b) a Vida DIP Claim; (c) a DLP Secured Claim (otherwise paid in full in Cash before the Effective Date); or (d) a Bond Claim.

**144.** "Petition Date" means the date on which each of the Debtors commenced the Chapter 11 Cases, as applicable.

**145.** "Plan" means this *Debtors' Modified Second Amended Joint Chapter 11 Plan*, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, which are incorporated herein by reference and made part of this Plan as if set forth herein, as each may be modified, supplemented, or waived from time to time in accordance with the respective terms thereof.

**146.** "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof), which may include the following, as applicable and if needed: (a) the identity of the Wind Down Trustee; (b) the identity of the Litigation Trustee; (c) a schedule of the known Retained Causes of Action; (d) a Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the form of Litigation Trust Agreement; (f) the form of Wind Down Trust Agreement; (g) the Wind Down Amount; (h) the form of New WDT Documents, if any; (i) the form of notice of Effective Date; (j) the form of the Broker Dealer Settlement Election Notice; (k) the Valuation Analysis; (l) the Liquidation Analysis; and (m) any other documentation necessary to effectuate or that is contemplated by this Plan. The Debtors shall File the Plan Supplement, which Plan Supplement documents shall be subject to the Proponents' Consent Right, no later than 5 Business Days before the Voting Deadline. Prior to the Effective Date and in accordance with the terms hereof and subject to the Proponents' Consent Right, the Plan Supplement may be modified, amended, supplemented, restated, or withdrawn after it is Filed and such changes shall be made publicly available.

**147.** "Policy Portfolio" means the portfolio of near-duration, intermediate-duration, and long-duration life insurance policies, owned by Debtors DLP IV and DLP VI.

**148.** "Policy Portfolio Equity Interests" means the direct and indirect equity interests in Portfolio Co., which shall constitute property of the Debtors' Estates and shall be retained or transferred as described herein.

**149.** "Portfolio Proceeds Amount" means an amount consisting of the expected net Cash proceeds from the Vida DIP Financing Facility, less: (a) the Estimated Effective Date Shortfall Amount, if any; (b) the Initial Litigation Trust Funding Amount; and (c) the Wind Down Amount.

**150.** "Portfolio Co." means, in connection with the Vida DIP Financing Facility and the Vida Exit Financing Facility, the new successor entity, to be created after Confirmation, to which Debtors DLP IV and DLP VI shall transfer the Policy Portfolio.

**151.** "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**152.** "Professional" means an Entity: (a) retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code, for the avoidance of doubt, a "Professional" shall not include any Ordinary Course Professional.

**153.** "Professional Fee Escrow Account" means an interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Escrow Amount in the manner described in Article II.B of this Plan, which account shall be established by the Debtors on or before the Effective Date and held in trust for the Professionals solely for the purpose of paying Allowed and unpaid Accrued Professional Compensation Claims.

**154.** "Professional Fee Escrow Amount" means the aggregate Accrued Professional Compensation Claims through the Confirmation Date, as estimated in accordance with Article II.B of this Plan.

**155.** "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

**156.** "Proof of Interest" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

**157.** "Public L Bonds" means the bonds issued in a registered public offering under the Securities Act pursuant to and under the A&R Indenture.

**158.** "Proponents' Consent Right" has the meaning set forth in Article I.G of this Plan.

**159.** "Reinstate" means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall be correlative meanings.

**160.** "Released Party" means, collectively, and in each case in their respective capacities as such and subject to the limitations set forth in Article VIII.C hereof: (a) (i) the Debtors and the Wind Down Debtors, (ii) Vida, (iii) the Bondholder Committee and each of its members, (iv) Anthony R. Horton, in his capacities as an Independent Director and director of the Debtors, (v) Jeffrey S. Stein, in his capacities as an officer, an Independent Director, and a director of the

Debtors, (vi) Michael A. Tucker, in his capacity as an officer of the Debtors, (vii) the DLP Independent Directors, (viii) FTI Consulting, Inc., (ix) PJT Partners LP, and (x) any other Professional retained by the Debtors, the Independent Directors, the DLP Independent Directors, or the Bondholder Committee by order of the Bankruptcy Court in the Chapter 11 Cases or any professional retained by any of the members of the Bondholder Committee, each in such capacity; and (b) solely to the extent and on the terms and conditions set forth in this Plan, (i) the LBM Released Parties, and (ii) the Broker Dealers that timely submit a Broker Dealer Settlement Election Notice and Broker Dealer Settlement Payment by the Broker Dealer Settlement Deadline.

161.    "Retained Causes of Action" means all Avoidance Actions, all Causes of Action set forth on a schedule in the Plan Supplement, the form and substance of which being subject to the Proponents' Consent Right, and any other Causes of Action belonging to the Debtors or their Estates that are not released pursuant to this Plan or other Final Order, and, for the avoidance of doubt, all entitlements, proceeds and rights to payments with respect to any of the foregoing; *provided*, that Retained Causes of Action shall not include any Causes of Action that the Debtors may have against the DLP Independent Directors or their Professionals (in their capacities as such).

162.    "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, in form and substance reasonably acceptable to the Creditor Proponents.

163.    "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such Schedules may be amended, modified, or supplemented from time to time.

164.    "SEC" means the United States Securities and Exchange Commission.

165.    "Secured" means when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, as applicable; or (b) Allowed pursuant to the Plan as a Secured Claim.

166.    "Securities Act" means the U.S. Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, and the rules and regulations promulgated thereunder.

167.    "Securities Exchange Act" means the U.S. Securities Exchange Act of 1934, as amended, §§ 78a-78qq, and the rules and regulations promulgated thereunder.

168.    "Security" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

169.    "Seller Trust L Bonds" means the bonds issued pursuant to and under the 2018 Supplemental Indenture.

170.     "Series 1 Preferred Interests" means the redeemable preferred shares issued by Debtor GWGH pursuant to that certain Registration Statement on Form S-1 filed pursuant to the Securities Act and declared effective by the SEC on October 30, 2015, with an initial stated value of $1,000.00 per share.

171.     "Series 2 Preferred Interests" means the redeemable preferred shares issued by Debtor GWGH pursuant to that certain Registration Statement on Form S-1 filed pursuant to the Securities Act and declared effective by the SEC on February 14, 2017, with an initial stated value of $1,000.00 per share.

172.     "Shared Services Agreement" means the Shared Services Agreement dated May 27, 2020, entered into by Debtor GWGH and Beneficient, pursuant to which Beneficient provides certain services to Debtor GWGH.

173.     "Special Committee" means the Special Committee formed pursuant to the Resolutions of the Board of Directors of GWGH, dated June 19, 2022 (as subsequently amended and restated on July 13, 2022 and July 17, 2022).

174.     "U.S. Trustee" means the Office of the United States Trustee for the Southern District of Texas.

175.     "Unexpired Lease" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

176.     "Unimpaired" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

177.     "United States" means the United States of America, its agencies, departments, or agents.

178.     "Valuation Analysis" means the valuation analysis Filed as part of the Plan Supplement.

179.     "Vida" means Vida Capital.

180.     "Vida DIP Claims" means any and all Claims for principal, interest, fees, costs, expenses, disbursements, and any and all other obligations of any kind under the Vida DIP Financing Facility, owing as of the Effective Date.

181.     "Vida DIP Financing Facility" means the replacement debtor-in-possession financing facility obtained by the Debtors and approved by the Bankruptcy Court pursuant to the Final Vida Order.

182.     "Vida Exit Financing Facility" means the exit financing facility obtained by Portfolio Co., pursuant to this Plan.

**183.**    "Vida Exit Financing Facility Documents" means the agreements memorializing the Vida Exit Financing Facility, and any amendments, modifications, or supplements thereto, and together with any related notes, certificates, agreements, intercreditor agreements, security agreements, mortgages, deeds of trust, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the Vida Exit Financing Facility; *provided*, that the form and substance of the Vida Exit Financing Facility Documents shall be in form and substance subject to the Proponents' Consent Right, it being understood that the documents that were Filed at [Dkt. No. 975] are in substantially final form from the Debtors' perspective and shall be the starting point for Vida Exit Financing Facility Documents.

**184.**    "Wind Down Amount" means an amount set forth in the Plan Supplement to initially fund the Wind Down Debtors, as agreed to by the Debtors and the Creditor Proponents, subject to the Proponents' Consent Right.

**185.**    "Wind Down Budget" means a budget setting forth the basis for, and proposed uses of, the Wind Down Amount.

**186.**    "Wind Down Debtors" means, collectively, a Debtor or any successor or assign thereto, by merger, consolidation, amalgamation, or otherwise, on and after the Effective Date, including any new entity established in connection with the implementation of the Wind Down Transactions (which, for the avoidance of doubt, shall include Portfolio Co.).

**187.**    "Wind Down Documents" means this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, and the various agreements and other documentation formalizing this Plan.

**188.**    "Wind Down Transactions" means the transactions that the Wind Down Trustee determines to be necessary or appropriate to implement the terms of this Plan, and that ultimately result in the dissolution or other termination of the Debtors or Wind Down Debtors, as applicable.

**189.**    "Wind Down Trust" means the liquidation trust established on the Effective Date for the purpose of monetizing the Wind Down Trust Assets.

**190.**    "Wind Down Trust Agreement" means the agreement governing the Wind Down Trust, which shall be Filed as part of the Plan Supplement.

**191.**    "Wind Down Trust Assets" means the following assets, which will ultimately vest in the Wind Down Trust free and clear of all liens, claims, interests, and encumbrances on the Effective Date:  (a) the Policy Portfolio Equity Interests; (b) the Debtors' interests in Beneficient; (c) the Debtors' interests in FOXO; (d) all reversionary and beneficial interests in the Litigation Trust; and (e) any remaining Assets of the Debtors', other than the Initial Litigation Trust Assets.

**192.**    "Wind Down Trustee" means Jeffrey S. Stein or any Affiliate of Jeffrey S. Stein identified in the Plan Supplement who shall, among other things:  (a) be the ultimate governing authority for the Wind Down Debtors; (b) make or facilitate distributions to Holders of Allowed Claims under the Plan; (c) receive for distribution, or direct the distribution of, the proceeds from the realization of the Initial Litigation Trust Assets pursuant to the provisions of this Plan; and

(d) oversee and make all decisions with respect to the wind down, dissolution, and liquidation of the Wind Down Debtors and the Wind Down Trust after the Effective Date, including, without limitation, the monetization of the Debtors' Assets (other than Initial Litigation Trust Assets).

B.      *Rules of Interpretation.*

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, provided that no effectuating provision shall be deemed immaterial if it has any substantive legal or economic effect on any party.  References in the Plan to the Debtors shall mean the Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, as applicable.

C.      *Computation of Time.*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan or Confirmation Order. If the date on which a transaction may

occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Wind Down Debtors shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Wind Down Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

F.      *Controlling Document.*

Except as set forth in the Plan, to the extent that any provision of any other Wind Down Document or any document or other exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, with respect to any conflict or inconsistency between the Plan and the Wind Down Trust Agreement and/or the Litigation Trust Agreement (each in the form executed on or before the Effective Date), such Wind Down Trust Agreement and/or Litigation Trust Agreement, as applicable, shall govern; *provided*, *further*, that, with respect to any conflict or inconsistency between the Plan and the Plan Supplement (including the Wind Down Trust Agreement and the Litigation Trust Agreement) on the one hand, and the Confirmation Order on the other hand, the Confirmation Order shall govern.

G.      *Proponents' Consent Right.*

The Debtors submit this Plan with the Debtors and the Creditor Proponents co-proposing this Plan within the meaning of section 1129 of the Bankruptcy Code.  Per the Mediation Agreement, the Debtors and the Creditor Proponents have the right, acting separately (the "Proponents' Consent Right") to review and consent to the form and substance of the: (1) the Disclosure Statement accompanying this Plan; (2) this Plan; and (3) the Plan Supplement, including trust agreements and other applicable documents.  Per the Mediation Agreement, the scope of the Proponents' Consent Right is: (a) to ensure that such documents are consistent with, and can effectuate the settlement memorialized in the Mediation Agreement; and (b) to address issues not explicitly covered by the Mediation Agreement but are customary or required for a plan of reorganization.

Following the Filing of this Plan, submitted by the Debtors, the Bondholder Committee, and LBM as co-proponents, dated as of March 27, 2023, in the event the Debtors and the Creditor Proponents cannot agree to the form and substance of any document in connection with this Plan (and such document is subject to the Proponents' Consent Rights or other consent rights hereunder) or any decision which requires the consent of the Creditor Proponents, by the applicable deadline for Filing such document hereunder, any such dispute shall be submitted to the mediator, Judge David Jones.  To the extent of any remaining disputes following such mediation, then, pending final resolution thereof, any of the Debtors and the Creditor Proponents may File its own version of any such disputed document by the applicable deadline therefor.  In such event:  (x) the Filing of the competing versions of any such disputed document shall be deemed to have satisfied any such Filing deadline hereunder; (y) the Debtors and the Creditor Proponents shall continue as co-proponents of this Plan for all purposes; and (z) the final form of any such disputed document will be subsequently resolved through either mediation with Judge Jones or by order of the Bankruptcy Court.

For the avoidance of doubt, this Article I.G applies to and supersedes (in the event of conflict) every provision of this Plan that refers to any consent right of the Creditor Proponents (except with respect to the consent right described in Article X.C hereof).  Further, in the event of any dispute, and for the avoidance of doubt, the Debtors and the Creditor Proponents agree to support this Plan (including any amended plan) and any document comprising the Plan Supplement, provided that the form and substance of such document is resolved, if necessary, pursuant to the dispute resolution mechanic set forth above.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL FEE COMPENSATION CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, AND INDENTURE DIMINUTION CLAIMS

A.    *Administrative Claims.*

Except as otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or Wind Down Debtors or as provided herein, on the Administrative Claims Payment Date (or within a reasonable period of time after such Claims become Allowed Claims), each Holder of an Allowed Administrative Claim shall receive payment in full in Cash in full and final satisfaction, settlement, discharge, and release of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the applicable Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Wind Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**EXCEPT AS OTHERWISE PROVIDED BY THIS PLAN, THE CONFIRMATION ORDER, OR A FINAL ORDER PREVIOUSLY ENTERED BY THE BANKRUPTCY COURT (INCLUDING THE FINAL VIDA ORDER), UNLESS PREVIOUSLY FILED, REQUESTS FOR PAYMENT OF ADMINISTRATIVE CLAIMS MUST BE FILED AND SERVED ON THE DEBTORS (OR THE WIND DOWN DEBTORS, AS APPLICABLE) NO LATER THAN THE CLAIMS BAR DATE APPLICABLE TO ADMINISTRATIVE CLAIMS PURSUANT TO THE PROCEDURES SPECIFIED IN THE CONFIRMATION ORDER AND THE NOTICE OF THE EFFECTIVE DATE; *PROVIDED*, THAT THE FOREGOING SHALL NOT APPLY TO ACCRUED PROFESSIONAL COMPENSATION CLAIMS, INDEPENDENT DIRECTOR FEE CLAIMS, THE INDENTURE DIMINUTION CLAIMS, OR CLAIMS ARISING UNDER SECTION 503(b)(1)(D) OF THE BANKRUPTCY CODE.**

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE CLAIMS BAR DATE APPLICABLE TO ADMINISTRATIVE CLAIMS THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE CLAIMS BAR DATE APPLICABLE TO ADMINISTRATIVE CLAIMS SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS, THE WIND DOWN DEBTORS, THE DEBTORS' ESTATES, OR THEIR RESPECTIVE PROPERTY, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE. ALL SUCH CLAIMS SHALL BE SUBJECT TO THE PERMANENT INJUNCTION SET FORTH IN ARTICLE VIII.G HEREIN.**

B.      *Accrued Professional Compensation Claims.*

    1.      **Professional Fee Escrow Account**.

No later than one Business Day prior to the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with the Debtors' Cash on hand in the amount of the aggregate Professional Fee Escrow Amount for all Professionals; *provided* that each Professional's respective share of the Professional Fee Escrow Account shall be reduced, on a dollar-for-dollar basis, by any unused retainer held by such Professional as of the Effective Date.[2] The Professional Fee Escrow Account shall be maintained in trust for the Professionals and the funds held in the Professional Fee Escrow Account shall not be considered property of the Debtors' Estates or any

---

[2]     For the avoidance of doubt, nothing contained in this Plan shall be deemed to resolve any of the issues relating to the payment of fees and expenses for services rendered by Willkie Farr & Gallagher, LLP prior to the Petition Date, including with respect to all Cash held as a retainer by the Debtors or Willkie Farr & Gallagher, LLP pursuant to the *Order Modifying the Automatic Stay and Authorizing the Use of Estate Property, to the Extent Applicable, to Allow Payment, Reimbursement and/or Advancement of Defense Costs Under the Insurance Policies* [Dkt. No. 754] (the "D&O Insurance Order") and the *Stipulation and Agreed Order Regarding the Order Modifying the Automatic Stay and Authorizing Use of Estate Property, to the Extent Applicable, to Allow Payment, Reimbursement and/or Advancement of Defense Costs Under Insurance Policies* [Dkt. No. 825]. In accordance with the D&O Insurance Order, any and all such issues remain subject to resolution through either (i) further order of the Bankruptcy Court or (ii) agreement between the Debtors (or, if after the Effective Date, the Wind Down Trustee), Willkie Farr & Gallagher, LLP, and the Bondholder Committee (or, if after the Effective Date, the Litigation Trustee).

successor to the Debtors; *provided* that, notwithstanding the foregoing, the Wind Down Trust shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Escrow Account over the aggregate Allowed Accrued Professional Compensation Claims to be paid from the Professional Fee Escrow Account, and such excess shall be paid to the Wind Down Debtors (and distributed to the Wind Down Trust, if determined by the Wind Down Trustee) without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

2.      **Final Fee Applications and Payment of Accrued Professional Compensation Claims.**

All final requests for payment of Claims of a Professional for services rendered and reimbursement of expenses incurred prior to the Confirmation Date shall be Filed no later than the first Business Day that is 60 days after the Confirmation Date. After notice and an opportunity for a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court. The amount of Accrued Professional Compensation Claims owing to the applicable Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account after such Claims are Allowed by a Final Order.  After all Accrued Professional Compensation Claims have been paid in full, the Final Order Allowing such Accrued Professional Compensation Claims shall direct the escrow agent to return any excess amounts to the Wind Down Trustee without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3.      **Estimate of Professional Fee Compensation Claims.**

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall provide a reasonable and good faith estimate of their Accrued Professional Compensation Claims before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than three Business Days before the Confirmation Date; *provided*, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional; *provided, further,* that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional.

4.      **Post-Confirmation Fees and Expenses.**

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors or the Bondholder Committee; *provided*, that each Entity seeking such payment shall promptly provide copies of its invoices to the Debtors or the Wind Down Trustee, as applicable, and the Bondholder Committee, and the Bankruptcy Court shall have exclusive jurisdiction over any objections raised to the amount of the fees and expenses proposed to be paid, which objections may only be raised within 14 days after receipt thereof.  In the event that within 14 days from receipt of such invoices, the Debtors or the Wind Down Trustee, as

applicable, or the Bondholder Committee raises an objection to a particular invoice, and the parties are unable to resolve any dispute regarding the fees and expenses included in such invoice, the Bankruptcy Court shall hear and determine such dispute. Upon the Confirmation Date, any requirement that Professionals and Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Wind Down Trustee, as applicable, may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  Furthermore, as of the date one day prior to the Effective Date, the obligation of any Ordinary Course Professional to File a fee application pursuant to the Ordinary Course Professionals Order shall be deemed waived, and, on the Effective Date, the Debtors or the Wind Down Trustee, as applicable, may pay any Ordinary Court Professional for fees incurred or accrued after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Chapford DIP Facility Claims.*

On or prior to the Effective Date, and to the extent each such Chapford DIP Facility Claims have not previously been satisfied in full in connection with the consummation of the Vida DIP Financing Facility or otherwise, each Holder of an Allowed Chapford DIP Facility Claim shall receive payment in full in Cash; *provided, however,* for the avoidance of doubt, the Chapford DIP Facility Claims shall not include the purported Alternate Stalking Horse Fee, as defined and referenced in the Chapford Final DIP Order (including any professional fees and expenses relating in any manner to the assertion of the purported Alternate Stalking Horse Fee).

D.      *Vida DIP Claims.*

No later than the Effective Date, the Vida DIP Claims will be deemed satisfied in connection with the Debtors' exercise of the exit financing option and upon the closing under the Vida Exit Financing Facility Documents.

E.      *DLP Secured Claims.*

All Allowed DLP Secured Claims will be satisfied by payment in full in Cash on or prior to the Effective Date from proceeds of the Vida DIP Financing Facility; *provided*, that, notwithstanding the foregoing, to the extent that all Allowed DLP Secured Claims are not paid in full in cash before the Effective Date, they shall be treated as Other Secured Claims.  Any Disputed portion of the DLP Secured Claims shall be treated in accordance with <u>Article VII</u> hereof.

F.      *Indenture Diminution Claims.*

Any Allowed Indenture Diminution Claims will be satisfied by one or more payments in Cash after the Effective Date from proceeds realized by the Litigation Trust, pursuant to and in accordance with <u>Article VI.C</u> hereof.

G.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

H.      *Substantial Contribution Compensation and Expenses.*

Any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5) must File an application and serve such application on counsel to the Debtors or the Wind Down Debtors, as applicable, and the Bondholder Committee and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Claims Bar Date applicable to Administrative Claims.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Chapford DIP Facility Claims, the Vida DIP Claims, Administrative Claims, Accrued Professional Fee Compensation Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of this Plan.

A.      *Summary of Classification.*

A Claim or Interest is classified in a particular Class pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  Except as provided below, the Plan shall apply as a separate Plan for each of the Debtors.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, disallowed, or otherwise satisfied before the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| Class 3 | Bond Claims | Impaired | Entitled to Vote |
| Class 4(a) | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4(b) | GUC Convenience Claims | Unimpaired | Deemed to Accept |
| Class 5 | DLP Entity General Unsecured Claims | Unimpaired | Deemed to Accept |
| Class 6 | Intercompany Claims | Impaired | Deemed to Reject |
| Class 7 | Intercompany Interests | Impaired | Deemed to Reject |
| Class 8 | Series 1 Preferred Interests | Impaired | Entitled to Vote |
| Class 9 | Series 2 Preferred Interests | Impaired | Entitled to Vote |

| Class 10 | Existing Common Interests | Impaired | Entitled to Vote |

**B.** *Treatment of Claims and Interests.*

The treatment provided to each Class relating to each of the Debtors for distribution purposes and voting rights are specified below.

**1.     Class 1 — Other Secured Claims.**

(a)     *Classification*: Class 1 consists of all Other Secured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Other Secured Claim agrees to a less favorable treatment of its Allowed Claim, on the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the Debtors' option: (i) payment in full in Cash; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

**2.     Class 2 — Other Priority Claims.**

(a)     *Classification*: Class 2 consists of all Other Priority Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)     *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

**3.     Class 3 — Bond Claims.**

(a)     *Classification*: Class 3 consists of all Bond Claims.

(b)     *Treatment*: Except to the extent that a Holder of a Bond Claim agrees to a less favorable treatment of its Allowed Claim, each such Holder shall receive, as applicable, as follows:

29

(i)     each Holder of an Allowed Bond Claim (other than the LBM Subordinated Claims) shall receive, on the Effective Date, its pro rata share of the Portfolio Proceeds Amount, if any; *provided*, *however*, that the Indenture Fee and Expense Claim shall be satisfied first from the Portfolio Proceeds Amount prior to any such further pro rata distributions in accordance with this subsection (i);

(ii)    each Holder of an Allowed Bond Claim (other than the LBM Subordinated Claims) shall receive, on the Effective Date (or as soon as practicably thereafter), its pro rata share of the New Series A1 WDT Interests. The New Series A1 WDT Interests may be redeemed at any time without penalty at stated value and, pending any such redemption, shall be entitled to Cash distributions pursuant to the priority of payment waterfalls described in <u>Article IV.H</u> and <u>Article VI.C</u>. Any New Series A1 WDT Interests issued to the Indenture Trustee on account of any outstanding Indenture Fee and Expense Claims shall be expressly senior in all respects to any New Series A1 WDT Interests issued to Holders on account of their respective Allowed Class 3 Bond Claims; and

(iii)   each Holder of an Allowed LBM Subordinated Claim shall receive, on the Effective Date, its pro rata share of the New Series A2 WDT Interests. The New Series A2 WDT Interests may be redeemed at any time without penalty at stated value and, pending any such redemption, shall be entitled to Cash distributions, but only pursuant to the priority of payment waterfalls described in <u>Article IV.H</u> and <u>Article VI.C</u> of this Plan.

The pro rata distributions on account of the Allowed Class 3 Bond Claims shall be calculated based upon the sum of the aggregate amount of Allowed Class 3 Bond Claims (less any LBM Subordinated Claims) as of the Petition Date with respect to subsections (i) and (ii) above, and the sum of the aggregate amount of Allowed LBM Subordinated Claims as of the Petition Date with respect to subsection (iii) above, and after accounting for each Holder's receipt of its pro rata share of the Portfolio Proceeds Amount, as applicable.

(c)    *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

**4.    Class 4(a) — General Unsecured Claims.**

(a)    *Classification*: Class 4(a) consists of all General Unsecured Claims.

(b)    *Treatment*: Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, on the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its

pro rata share of the New Series B WDT Interests. The New Series B WDT Interests may be redeemed at any time without penalty at stated value and, pending any such redemption, shall be entitled to Cash distributions, but only pursuant to the priority of payment waterfalls described in <u>Article IV.H</u> and <u>Article VI.C</u> of this Plan.

(c)     *Voting*: Class 4(a) is Impaired under the Plan. Holders of Allowed Claims in Class 4(a) are entitled to vote to accept or reject the Plan.

### 5.     Class 4(b) — GUC Convenience Claims.

(a)     *Classification*: Class 4(b) consists of all GUC Convenience Claims.

(b)     *Treatment*: Except to the extent that a Holder of a GUC Convenience Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed GUC Convenience Claim, each Holder thereof shall receive, and the option of the applicable Debtor, either:

     (i)     payment in full in Cash of the due and unpaid portion of its Allowed GUC Convenience Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable), or (y) as soon as practicable after the date such Claim becomes due and payable; or

     (ii)     such other treatment rendering its Allowed GUC Convenience Claim Unimpaired.

(c)     *Voting*: Class 4(b) is Unimpaired under the Plan. Holders of Claims in Class 4(b) are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

### 6.     Class 5 — DLP Entity General Unsecured Claims.

(a)     *Classification*: Class 5 consists of all DLP Entity General Unsecured Claims.

(b)     *Treatment*: On the Effective Date or as soon thereafter as such Claim becomes an Allowed Claim, each Holder of an Allowed DLP Entity General Unsecured Claim shall receive payment in full in Cash.

(c)     *Voting*: Class 5 is Unimpaired under the Plan. Holders of Claims in Class 5 are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

### 7.     Class 6 — Intercompany Claims.

(a)     *Classification*: Class 6 consists of all Intercompany Claims.

(b)     *Treatment*:  Other than the Policy Portfolio Equity Interests, which shall be transferred to the Wind Down Trust as set forth herein, on the Effective Date, any Debtor's Claim against any other Debtor shall be deemed satisfied except to the extent necessary to effectuate the other terms of this Plan.

(c)     *Voting*: Class 6 is Impaired under the Plan. Holders of Claims in Class 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**8.     Class 7 — Intercompany Interests.**

(a)     *Classification*:  Class 7 consists of all Intercompany Interests.

(b)     *Treatment*: On the Effective Date, any Debtor's equity Interests in any other Debtor shall be deemed cancelled except to the extent necessary to effectuate the other terms of this Plan.

(c)     *Voting*:  Class 7 is Impaired under the Plan.  Holders of Interests in Class 7 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**9.     Class 8 — Series 1 Preferred Interests.**

(a)     *Classification*: Class 8 consists of all Series 1 Preferred Interests.

(b)     *Treatment*: On the Effective Date, and in all instances, each Holder of a Series 1 Preferred Interest shall receive its pro rata share of the New Series C WDT Interests.  The New Series C WDT Interests may be redeemed at any time without penalty at stated value and, pending any such optional redemption, shall be entitled to Cash distributions, but only pursuant to the priority of payment waterfalls described in <u>Article IV.H</u> and <u>Article VI.C</u> herein.  The New Series C WDT Interests shall rank junior in right of payment to the New Series A1 WDT Interests, the New Series A2 WDT Interests, and the New Series B WDT Interests, *pari passu* with the New Series D WDT Interests, and senior to the New Series E WDT Interests.

(c)     *Voting*: Class 8 is Impaired under the Plan.  Holders of Allowed Interests in Class 8 are entitled to vote to accept or reject the Plan.

**10.     Class 9 — Series 2 Preferred Interests.**

(a)     *Classification*: Class 9 consists of all Series 2 Preferred Interests.

(b)     *Treatment*: On the Effective Date, and in all instances, each Holder of a Series 2 Preferred Interest shall receive its pro rata share of the New Series D WDT Interests.  The New Series D WDT Interests may be redeemed at

any time without penalty at stated value and, pending any such optional redemption, shall be entitled to Cash distributions, but only pursuant to the priority of payment waterfalls described in Article IV.H and Article VI.C herein. The New Series D WDT Interests shall rank junior in right of payment to the New Series A1 WDT Interests, the New Series A2 WDT Interests, and the New Series B WDT Interests, *pari passu* with the New Series C WDT Interests, and senior to the New Series E WDT Interests.

 (c) *Voting*: Class 9 is Impaired under the Plan. Holders of Allowed Interests in Class 9 are entitled to vote to accept or reject the Plan.

**11. Class 10 — Common Stock in GWGH.**

 (a) *Classification*: Class 10 consists of all Holders of Common Stock in GWGH.

 (b) *Treatment*: On the Effective Date, each Holder of Common Stock in GWGH shall receive its pro rata share of the New Series E WDT Interests. The holders of the New Series E WDT Interests shall only be entitled to Cash distributions upon the satisfaction and redemption of all other classes of New WDT Interests, pursuant to the priority of payment waterfalls described in Article IV.H and Article VI.C herein.

 (c) *Voting*: Class 10 is Impaired under the Plan. Holders of Allowed Interests in Class 10 are entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or Wind Down Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims. Unimpaired Claims shall remain Disputed Claims under the Plan until such Claims are Allowed.

D. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E. *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted

by the Holders of such Claims or Interests in such Class; *provided*, *however*, that such Class shall not qualify as an impaired accepting class under section 1129(a)(8) of the Bankruptcy Code.

F.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Wind Down Debtors reserve the right to re-classify any Allowed Claim (including the LBM L Bond Claims to the extent provided by <u>Article IV.I</u> hereof) or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.    *Presumed Acceptance of Plan.*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.  Classes 1, 2, 4(b), and 5 are Unimpaired under this Plan.  Therefore, the Holders of Claims in such Classes are deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

H.    *Presumed Rejection of Plan.*

Classes 6 and 7 are Impaired, and the Holders of Claims or Interests in such Classes shall receive no distribution under the Plan on account of such Claims or Interests.  Therefore, the Holders of Claims or Interests in such Classes are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

I.    *Acceptance by Impaired Classes of Claims.*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted this Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept this Plan.

J.    *Acceptance by Impaired Classes of Interests.*

Pursuant to section 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests has accepted this Plan if the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Interests in such Class actually voting have voted to accept this Plan.

K.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by Classes 3 or 4(a).  The Debtors request Confirmation of this Plan

under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify this Plan, subject to the Proponents' Consent Right, including the Plan Supplement, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

L.    *Controversies Regarding Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Wind Down Trust.*

### 1.    **Wind Down Trust Generally.**

The Confirmation Order shall provide that, upon the occurrence of the Effective Date, the Wind Down Trust shall be deemed established in accordance with the Wind Down Trust Agreement and the Plan. On the Effective Date, the Wind Down Trust shall commence the taking of all necessary steps to wind down the business affairs of the Debtors.

The Wind Down Trust Assets shall be deemed disbursed by the Debtors and transferred to the Wind Down Trust on the Effective Date, the proceeds of which shall be distributed in accordance with the waterfall set forth in Article IV.H. The powers, authorities, responsibilities, and duties of the Wind Down Trust and the Wind Down Trustee are set forth in and shall be governed by this Plan and the Wind Down Trust Agreement. The Wind Down Trust Agreement, which shall be part of the Plan Supplement, shall be consistent with the Plan and shall contain provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, any and all provisions necessary to ensure the continued treatment of the Wind Down Trust as a grantor trust. The Wind Down Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Wind Down Trust as a "liquidating trust" for United States federal income tax purposes or as an entity that can fall within the exception from registration in Section 7 of the 1940 Act for activities of companies that are merely incidental to their dissolution.

Notwithstanding anything to the contrary herein, the Wind Down Trust's sole purpose is to liquidate the Wind Down Trust Assets with a view towards maximizing the value of such assets for the benefit of New WDT Interest holders, and promptly distributing such liquidation proceeds (in accordance with the provisions of this Plan) to New WDT Interest holders. The Wind Down Trust will have no going concern operations and will not be permitted to continue or engage in the conduct of a trade or business or to make any investments (other than holding, on a temporary basis (pending distribution to holders or use for payment of permitted expenses) certain short-term, high-quality cash equivalents (as set out in the Wind Down Trust Agreement); instead the Wind Down Trust's activities will be limited to those reasonably necessary to, and consistent with, the

Wind Down Trust's liquidating purpose and reasonably necessary to conserve, protect, and/or maximize the value of the Wind Down Trust Assets and provide for the orderly liquidation thereof. The Wind Down Trust Agreement shall contain appropriate provisions for monetizing the Wind Down Trust Assets in an orderly fashion, subject to the Wind Down Trustee's reasonable business judgment. The Wind Down Trustee, on behalf of the Wind Down Trust, will have discretion to enter into, consummate, settle, or otherwise resolve any transaction or dispute with respect to each of the Wind Down Trust Assets that have an economic value of less than $5 million (in the Wind Down Trustee's good faith determination) as of the date of the consummation, settlement, or resolution of such transaction or dispute. The Wind Down Trustee will submit all other matters to the Bankruptcy Court for approval after notice and an opportunity for a hearing.

The Wind Down Trust will have an initial term of three years, which, subject to applicable law, may be extended by the Wind Down Trustee Filing a motion with the Bankruptcy Court prior to the expiration of the existing term and obtaining Bankruptcy Court approval of an extension for up to two years per request (subject, in each instance, to reasonable due consideration being given to implications of tax law and other applicable law of the proposed extension of the term of the Wind Down Trust). The Wind Down Trustee and the Litigation Trustee will cooperate and confer to ensure that the Wind Down Trust does not terminate prior to the Litigation Trust.

### 2. Transfer of Assets Into the Wind Down Trust.

Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Wind Down Trust Assets shall be deemed transferred to the Wind Down Trust by the Debtors, such assets shall vest in the Wind Down Trust on such date, to be administered by the Wind Down Trustee in accordance with this Plan and the Wind Down Trust Agreement, and the Debtors and their Estates shall have no further interest with respect to the Wind Down Trust Assets. The Wind Down Trust Assets will vest in the Wind Down Trust free and clear of all Liens, Claims, Interests, encumbrances, etc. The act of transferring the Wind Down Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Wind Down Trustee as if the asset or right was still held by the relevant Debtor.

The Wind Down Trustee shall have the authority to create additional sub-trusts within (or other subsidiary Entities under) the Wind Down Trust, which may have a separate legal existence, but which shall be considered sub-trusts (or other subsidiary Entities under, as applicable) of the Wind Down Trust.

### 3. Wind Down Trustee.

The Wind Down Trustee shall have the sole authority to make decisions and take action with respect to the Wind Down Trust in accordance with the terms of this Plan and the Wind Down Trust Agreement. The Wind Down Trustee shall be the successor to and representative of the Estates of the Debtors within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code. Following the Effective Date, the Wind Down Trust and the Wind Down Trustee shall be deemed a party in interest with standing to appear in the Chapter 11 Cases and object to any pleading Filed thereafter; *provided*, *however*, such standing and right to object does not alter the respective rights or responsibilities of the Wind Down Trustee or the Litigation Trustee under the Plan, the Wind

Down Trust Agreement, or the Litigation Trust Agreement, alter any governing approval standard under applicable law, or otherwise limit the ability of any party with standing to respond to pleadings Filed, or objections raised, by the Wind Down Trustee.  The powers, rights, and responsibilities of the Wind Down Trustee shall be specified in this Plan and the Wind Down Trust Agreement, and shall include, within the confines of the stated purpose of the Wind Down Trust, taking all appropriate actions to maximize the value of and monetize the Wind Down Trust Assets for the benefit of stakeholders, whether by accepting, preserving, receiving, collecting, administering, selling, liquidating, or transferring, as applicable, the Wind Down Trust Assets.  All determinations with respect to the monetization of the Wind Down Trust Assets, including the Wind Down Trust's interests in Beneficient and FOXO, will be subject to the reasonable business judgment of the Wind Down Trustee, subject to compliance with any applicable lock-up agreement or securities law requirements and subject to the requirement that the Wind Down Trustee seek and obtain Bankruptcy Court approval of any transaction with an economic value of $5 million or more, as set forth herein.

For the avoidance of doubt, the Wind Down Trustee may conduct sales or liquidations of Wind Down Trust Assets on any terms it deems reasonable, without further order of the Bankruptcy Court (except as provided herein).  The Wind Down Trustee may also abandon any Wind Down Trust Assets that the Wind Down Trustee determines in its reasonable discretion to be of *de minimis* value or burdensome to the Wind Down Trust.

The Wind Down Trustee shall use the Wind Down Amount (and any subsequent monetization proceeds from the Wind Down Trust) to fund all expenses related to its duties under this Plan.  The Wind Down Trustee, on behalf of the Wind Down Trust, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously engaged in the Chapter 11 Cases), employees, or other independent contractors to assist in carrying out its duties this Plan, including the Wind Down Trust Agreement, and may compensate and reimburse the expenses of these professionals, employees, or other independent contractors based upon the nature of the work performed by such parties without further order of the Bankruptcy Court, subject to any limitations and procedures established by the Wind Down Trust Agreement.

### 4.      Reports to Be Filed by the Wind Down Trust.

Following the Effective Date, and during the existence of the Wind Down Trust, the Wind Down Trust shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Wind Down Trust Agreement), within 90 days after the end of each calendar year during the term of the Wind Down Trust, and within 45 days after the end of each calendar quarter during the term of the Wind Down Trust (other than the fourth quarter) and as soon as practicable upon termination of the Wind Down Trust, the Wind Down Trustee shall make available on its website, a written report including:  (a) financial statements of the Wind Down Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Wind Down Trustee) reflecting the result of such agreed-upon procedures relating to the administration of the Wind Down Trust as proposed by the Wind Down Trustee; (b) a summary description of any action taken by the Wind Down Trust which, in the judgment of the Wind Down Trustee, materially affects the Wind Down Trust; (c) a description of the progress of liquidating the Wind Down Trust Assets and making distributions to the holders of the New WDT Interests, which description shall

include a written report detailing, among other things, the status of the equity interests in Beneficient and FOXO that are held by the Wind Down Trust, the status of Portfolio Co., the status of the Litigation Trust, the proceeds recovered as of the relevant date with respect to assets of the Wind Down Trust or any of the foregoing, and the distributions made by the Wind Down Trust as of the relevant date; and (d) any other material or significant information relating to the Wind Down Trust Assets and the administration of the Wind Down Trust deemed appropriate to be disclosed by the Wind Down Trustee.  In addition, the Wind Down Trust shall provide unaudited financial statements to each holder of the New WDT Interests on a quarterly basis (which may be quarterly operating reports Filed with the Bankruptcy Court).  The Wind Down Trustee may post any such report on a website maintained by or on behalf of the Wind Down Trustee and electronically File it with the Bankruptcy Court in lieu of actual notice to each holder of New WDT Interests (unless required by law).

Notwithstanding the foregoing, so long as the Wind Down Trust files periodic reports with the SEC pursuant to Section 13(a) or Section 15(d) of the Securities Exchange Act, the Wind Down Trustee shall be deemed to have satisfied its obligations set forth in the preceding paragraph by filing such periodic reports with the SEC, posting a copy of such reports on a website maintained by or on behalf of the Wind Down Trustee, and Filing a copy of such reports with the Bankruptcy Court.

## 5.    1940 Act Matters.

The implementation of this Plan and the Wind Down Transactions, *inter alia*, via the creation and administration of the Wind Down Trust, the Portfolio Co. and the Litigation Trust, is intended to enable the Wind Down Trust and the Debtors to fall within an exception to registration for companies that are dissolving, in accordance with Section 7 of the 1940 Act and the SEC staff's guidance regarding the same (the "Liquidating Company Exception").  In the event that the Wind Down Trustee determines in its sole and absolute discretion at any time that, notwithstanding such remedial actions undertaken or to be undertaken by the Wind Down Trust and/or the Debtors pursuant to the provisions of this Plan, the Wind Down Trust and the Debtors nonetheless are or will be unable to comply with or otherwise qualify for the Liquidating Company Exception or any other exception to or an exemption from registering under the 1940 Act, the Wind Down Trustee shall have the sole discretion and authority to develop another strategy to comply with or otherwise qualify under an exception to or exemption from such requirements of the 1940 Act.  If it becomes necessary for 1940 Act compliance purposes to change the organization, operations and/or activities of the Wind Down Trust, the Wind Down Trustee will attempt to do so in a way to preserve the economic benefits of ownership of Wind Down Trust to the maximum extent possible.

B.    *U.S. Federal Income Tax Treatment and Reporting.*

The Wind Down Trust is intended to qualify as a "grantor trust" as governed by sections 671 through section 679 of the Internal Revenue Code for U.S. federal income tax purposes with the New WDT Interest holders treated as grantors and owners of the Wind Down Trust. For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the Wind Down Trustee and the New WDT Interest holders) shall treat the Wind Down Trust, other than any portion thereof in respect of which a "disputed ownership fund" election has been made, as a liquidating trust under Treasury Regulation

Section 301.7701-4 of which the New WDT Interest holders are the grantors and owners. Accordingly, for federal income tax purposes, it is intended that the New WDT Interest holders be treated as if they had received a transfer from the Debtors of an undivided interest in the Wind Down Trust Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Wind Down Trust, and the New WDT Interest holders will be treated as the grantors and owners thereof. As soon as practicable after the Effective Date, the Wind Down Trustee shall make a good faith determination of the fair market value of the Wind Down Trust Assets as of the Effective Date. This valuation shall be used consistently by all parties (including the Debtors, the Wind Down Trustee and the New WDT Interest holders) for all U.S. federal income tax purposes.

The Wind Down Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wind Down Trust. The Wind Down Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in this Plan or in the Wind Down Trust Agreement. The record holders of New WDT Interests shall be recorded and set forth in a register maintained by the Wind Down Trustee expressly for such purpose.

The Wind Down Trustee shall be responsible for filing all federal, state, and local tax returns for the Wind Down Trust and for the Debtors. The Wind Down Trustee shall be responsible for payment, out of the Wind Down Trust Assets, of any taxes imposed on the Wind Down Trust or the Wind Down Trust Assets. The Wind Down Trustee may request an expedited determination of taxes of the Wind Down Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Wind Down Trust for all taxable periods through the dissolution of the Wind Down Trust.

The Wind Down Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Wind Down Trust shall be subject to any such withholding and reporting requirements. The Wind Down Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim or Interest complete the appropriate IRS Form W-8 or IRS Form W-9. Notwithstanding any other provision of the Plan to the contrary, (1) each Holder of an Allowed Claim or Interest that is to receive a distribution pursuant to this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution (whether from the Debtors, the Wind Down Trust, or otherwise), and (2) no distribution shall be made to or on behalf of such Holder under the Plan unless and until such Holder has made arrangements satisfactory to the Wind Down Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Wind Down Trust shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Wind Down Trustee until such time as the Wind Down Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

C.      *General Settlement of Claims and Interests.*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of Claims and Interests and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

D.      *Wind Down Transactions.*

On the Effective Date, the Wind Down Trustee will enter into such Wind Down Transactions as may be necessary or appropriate on each of the Debtors' or the Wind Down Debtors', as applicable, behalf to merge, dissolve, or otherwise terminate the corporate existence of each of the Debtors in accordance with the Wind Down Trust Agreement and the constituent documents of the Debtors without further order of the Bankruptcy Court; *provided*, that the Debtors and the Creditor Proponents may agree to dissolve the Debtors on a later date in order to promote efficiencies in the accrual of tax and other payment liabilities.  The actions to effect the Wind Down Transactions may include:  (1) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation, or dissolution containing terms that, among other things, are consistent with the terms of this Plan; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of this Plan and that satisfy the requirements of applicable law; (3) the filing of appropriate certificates or articles of merger, consolidation, continuance, or dissolution, or similar instruments with the applicable governmental authorities; and (4) the taking of all other actions that the Wind Down Trustee determines, in its sole discretion, to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Wind Down Transactions.

On the Effective Date, subject in all respects (and after giving effect) to the treatment, distribution, and all other provisions of the Plan and the Confirmation Order, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to this Plan shall vest in the Wind Down Debtors (and thereafter ultimately in the Wind Down Trust and/or the Litigation Trust, as applicable), free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances, except for those Liens, Claims, charges, or other encumbrances arising from or related to the Vida Exit Financing Facility.  Each Debtor may be deemed dissolved in accordance with applicable law, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  The Wind Down Trust shall be the issuer of the New WDT Interests as set forth herein.

On or before the Effective Date, the Policy Portfolio will be transferred free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances (except solely with respect to any such interests expressly granted in connection with the Vida Exit Financing Facility) to the fullest extent provided by the Bankruptcy Code to Portfolio Co., and the Policy Portfolio Equity Interests will be issued and transferred pursuant to the provisions of this Plan to the Wind Down Trust.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described, contemplated, or necessary to effectuate this Plan. The Debtors, Wind Down Trust, Wind Down Trustee, Litigation Trust, and Litigation Trustee shall all use best efforts to cooperate with each other to ensure all necessary actions are taken as contemplated under this Plan.

E.     *Litigation Trust.*

### 1.     Litigation Trust Generally.

The Litigation Trust will be established on the Effective Date to retain and hold all Retained Causes of Action, the proceeds of which shall be deemed distributed to the Wind Down Trust for ultimate distribution by or at the direction of the Wind Down Trustee in accordance with the waterfall set forth in Article VI.C hereof.  On the Effective Date, the Initial Litigation Trust Assets shall be deemed transferred to the Litigation Trust by the Wind Down Trust and will vest in the Litigation Trust free and clear of all Liens, Claims, interests, encumbrances, etc., with all reversionary and beneficial interests in the Litigation Trust to be held by the Wind Down Trust, subject to the waterfall set forth in Article VI.C hereof.  The sole beneficiary of the Litigation Trust will be the Wind Down Trust (or the Wind Down Trustee on behalf of the Wind Down Trust, to the extent provided by applicable law), and all proceeds of the Litigation Trust distributed to the Wind Down Trust on account of such reversionary interest shall be for the sole purpose of distributions to the holders of the New WDT Interests issued by the Wind Down Trust; *provided, however*, such proceeds may be otherwise retained and used by the Wind Down Trust only with the consent of the Litigation Trustee or by order of the Bankruptcy Court. The act of transferring the Initial Litigation Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Litigation Trust as if the asset or right was still held by the relevant Debtor. Notwithstanding anything to the contrary herein, the Litigation Trust may abandon to creditors or otherwise not accept any Retained Causes of Action that the Litigation Trustee believes, in good faith, have no value to the Litigation Trust; *provided*, that the Litigation Trust Agreement shall provide for the assignment by creditors to the Litigation Trust of any such Retained Causes of Action so abandoned to creditors.

For the avoidance of doubt, the Litigation Trustee, on behalf of the Litigation Trust, shall step into the shoes of the Debtors as it relates to either communications that occurred prior to, or documents prepared before, April 20, 2022 with respect to Debtors' right to assert attorney-client privilege or any other privilege or immunity Debtor possesses, if any, and the Litigation Trustee shall be entitled to preserve, assert, access, or waive such privilege or immunity of the Debtors as it relates to such documents or communications.  On the Effective Date, the Litigation Trustee

41

shall have the power, right and responsibility to access or take possession of all books, files and records of the Debtors or Wind Down Debtors, as applicable, for purposes of carrying out the purpose of the Litigation Trust.  At any time after the Effective Date, upon reasonable request of the Litigation Trustee, the Wind Down Trustee shall provide the Litigation Trustee with any of the Debtors' or the Wind Down Debtors' books, records, and files in the Wind Down Trust's or Wind Down Trustee's possession, custody, or control, and the Wind Down Trustee may, in good faith, provide such privileged information of the Debtors as is in the Wind Down Trustee's possession that relates to the evaluation and prosecution of the Retained Causes of Action; *provided*, that, notwithstanding the foregoing, the privilege of the Independent Directors, the DLP Independent Directors, and David F. Chavenson in his capacity as a former member of the Special Committee, in each case, is hereby recognized and shall remain in full force and effect and shall not be waived, nor shall any such privileged documents be turned over to any person or Entity without the consent of all Independent Directors or all DLP Independent Directors, as applicable.  The Wind Down Trustee shall use commercially reasonable efforts to assist the Litigation Trustee by providing additional information based on the books, files, and records in the Wind Down Trust's possession, provided that any such request for assistance is reasonable.  Following the Effective Date, the Litigation Trust and the Litigation Trustee shall be deemed a party in interest with standing to appear in the Chapter 11 Cases and object to any pleadings Filed thereafter; *provided*, *however*, such standing and right to object does not alter the respective rights or responsibilities of the Litigation Trustee or the Wind Down Trustee under the Plan, the Wind Down Trust Agreement, or the Litigation Trust Agreement, alter any governing approval standard under applicable law, or otherwise limit the ability of any party with standing to respond to pleadings Filed, or objections raised, by the Litigation Trustee.

## 2. Litigation Trustee.

The Litigation Trustee shall be an independent, third-party fiduciary selected by the Bondholder Committee and identified in the Plan Supplement, and shall be compensated at market rates; *provided*, that, for the avoidance of doubt, the Litigation Trustee shall have no affiliation with any Bondholder Committee member and must not own any Public L Bonds, New WDT Interests, or other Interests in or Securities issued by any of the Debtors.  The Litigation Trustee shall have the sole authority to make decisions and take action with respect to the Initial Litigation Trust Assets, the Retained Causes of Action, and the Litigation Trust Reconciliation Claims, and shall have a duty to maximize the value of the assets of the Litigation Trust in accordance with the Litigation Trust Agreement.  The Litigation Trustee shall confer with the Wind Down Trustee with respect to the commencement of any litigation in respect of such assets, provided that the ultimate decision with respect to whether to commence any litigation shall be in the sole discretion of the Litigation Trustee.  For the avoidance of doubt, in exercising such sole discretion, the Litigation Trustee shall be entitled to consider and may take such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the holders of the New WDT Interests.  The Litigation Trustee shall seek Bankruptcy Court approval, after notice and an opportunity for a hearing, of (a) any settlements with respect to the Retained Causes of Action, and (b) any other transaction with respect to any assets of the Litigation Trust, in each case, that has an economic value of $5 million or more (in the Litigation Trustee's good faith determination) as of the date of such transaction.

The Litigation Trustee shall use the Initial Litigation Trust Funding Amount to fund all expenses related to its duties under this Plan and the Litigation Trust Agreement.  Thereafter, the Litigation Trust and the Litigation Trustee may use proceeds from monetizing the Retained Causes of Action and any Broker Dealer Settlement Payments received after the Effective Date (which payments, for the avoidance of doubt, shall be made directly to the Litigation Trust) to fund the reasonable and customary out-of-pocket expenses incurred by the Litigation Trust and Litigation Trustee.  Beginning on the Effective Date, the Litigation Trustee shall have customary powers, including the power to employ (without further order of the Bankruptcy Court) professionals (including professionals previously engaged in the Chapter 11 Cases), employees, or other independent contractors to assist in carrying out its duties under this Plan, including the Litigation Trust Agreement, and may compensate and reimburse the expenses of these professionals, employees, or other independent contractors based upon the nature of the work performed by such parties without further order of the Bankruptcy Court, subject to any limitations and procedures established by the Litigation Trust Agreement.

### 3.       Reports to Be Filed by the Litigation Trust.

Following the Effective Date, and unless otherwise ordered by the Bankruptcy Court, and during the existence of the Litigation Trust, the Litigation Trust shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Litigation Trust Agreement), within 90 days after the end of each calendar year during the term of the Litigation Trust, and within 45 days after the end of each calendar quarter during the term of the Litigation Trust (other than the fourth quarter), a quarterly report regarding the administration of property subject to its ownership and control pursuant to this Plan, receipts, distributions made by it, an update regarding the status of the Retained Causes of Action being prosecuted by the Litigation Trust, and a summary of all major activities during the period.

### 4.       Termination of the Litigation Trust.

The initial term of the Litigation Trust shall be the lesser of: (a) three years; (b) the date all holders of New Series A1 WDT Interests and New Series A2 WDT Interests receive the full amount to which they are entitled to pursuant to this Plan; and (c) the date that all Retained Causes of Action have been fully resolved, as reasonably determined by the Litigation Trustee in its sole determination; *provided*, *however*, that, subject to applicable law, the Litigation Trustee may extend the term of the Litigation Trust solely in the event termination would otherwise occur under subsection (a) of this paragraph by Filing a motion with the Bankruptcy Court prior to the expiration of the initial term and obtaining court approval of such extension, with a maximum extension of two (2) years per request (subject, in each instance, to reasonable consideration being given to implications of tax law and other applicable law of a proposed extension of the term of the Litigation Trust).  The Wind Down Trustee and the Litigation Trustee will cooperate and confer to ensure that the Wind Down Trust does not terminate prior to the Litigation Trust.  For the avoidance of doubt, no later than the termination of the Litigation Trust, the Litigation Trustee shall transfer all of the Litigation Trust's assets, including any remaining Retained Causes of Action and net proceeds realized therefrom, to the Wind Down Trust.  Notwithstanding the foregoing, and for the avoidance of doubt, nothing in this Plan (or the Plan Supplement, as applicable) shall prohibit the Litigation Trustee from making interim transfers of Cash realized by

the Litigation Trust to the Wind Down Trust for distribution to holders of New WDT Interests in accordance with this Plan.

F.      *Sources of Plan Consideration.*

> **1.      Vida DIP Financing Facility and Vida Exit Financing Facility.**

On the Effective Date, the Debtors (or the Wind Down Debtors, as applicable) shall obtain the Vida Exit Financing Facility from an affiliate of Vida, the terms of which will be set forth in the Vida Exit Financing Facility Documents.  The proceeds from the Vida Exit Financing Facility shall be used to refinance the Vida DIP Financing Facility.  Confirmation of this Plan shall be deemed approval of the Vida Exit Financing Facility and the Vida Exit Financing Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Portfolio Co. in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Portfolio Co. to enter into and execute the Vida Exit Financing Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Vida Exit Financing Facility.  The proceeds from the Vida DIP Financing Facility and Vida Exit Financing Facility, as applicable, shall be used to fund, among other things, the Portfolio Proceeds Amount, the Initial Litigation Trust Funding Amount, and the Wind Down Amount. For the avoidance of doubt, PJT shall not earn an additional Capital Raising Fee on account of the Vida Exit Facility Financing.

On the Effective Date, all of the Liens and security interests in respect of the assets of Portfolio Co. to be granted in accordance with the Vida Exit Financing Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Vida Exit Financing Facility Documents; (c) shall be deemed automatically perfected, subject only to such Liens and security interests as may be permitted under the Vida Exit Financing Facility Documents; and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Wind Down Debtors shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect all Liens and security interests under the Vida Exit Financing Facility Documents under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required to perfect such Liens and security interests).

> **2.      New WDT Interests.**

On the Effective Date, the Wind Down Trust shall issue the New WDT Interests directly or indirectly to Holders of Claims and Interests to the extent provided in this Plan as follows:

>> (a)      New Series A1 WDT Interests:  The Wind Down Trust shall issue the New Series A1 WDT Interests in an amount equal to the outstanding amount of

44

the Allowed Class 3 Bond Claims (less any LBM Subordinated Claims) after taking into consideration the Cash payment(s) made on account of such Claims on the Effective Date in connection with Article III.B.3 of this Plan. The New Series A1 WDT Interests shall be satisfied, redeemed, and cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of any subsequent series of New WDT Interests.  Any New Series A1 WDT Interests, if any, issued to the Indenture Trustee on account of any outstanding Indenture Fee and Expense Claims shall be expressly senior in all respects to any New Series A1 WDT Interests issued to other Holders on account of their respective Allowed Class 3 Bond Claims.

(b)  New Series A2 WDT Interests:  The Wind Down Trust shall issue the New Series A2 WDT Interests in an amount equal to the aggregate amount of Allowed LBM Subordinated Claims in Class 3.  The New Series A2 WDT Interests shall be satisfied, redeemed, and cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of any subsequent series of New WDT Interests. The New Series A2 WDT Interests shall not receive any distributions prior to the satisfaction, redemption, and cancellation of the New Series A1 WDT Interests

(c)  New Series B WDT Interests:  The Wind Down Trust shall issue the New Series B WDT Interests in an amount equal to the aggregate amount of Class 4(a) Allowed General Unsecured Claims.  The New Series B WDT Interests shall be satisfied, redeemed, and cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of any subsequent series of New WDT Interests.  The New Series B WDT Interests shall not receive any distributions prior to the satisfaction, redemption, and cancellation of the New Series A1 WDT Interests and the New Series A2 WDT Interests.

(d)  New Series C WDT Interests:  The Wind Down Trust shall issue New Series C WDT Interests in an amount equal to the aggregate amount of Allowed Class 8 Series 1 Preferred Interests (based on each Series 1 Preferred Interest having an initial stated value of $1,000.00 per share).  The New Series C WDT Interests shall receive distributions on a *pari passu* basis with the New Series D WDT Interests, and the New Series C WDT Interests shall be satisfied, redeemed, and cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of the New Series E WDT Interests.  The New Series C WDT Interests shall not receive any distributions prior to the satisfaction, redemption, and cancellation of the New Series A1 WDT Interests, the New Series A2 WDT Interests, and the New Series B WDT Interests.

(e)  New Series D WDT Interests:  The Wind Down Trust shall issue the New Series D WDT Interests in an amount equal to the aggregate amount of

45

Allowed Class 9 Series 2 Preferred Interests (based on each Series 2 Preferred Interest having an initial stated value of $1,000.00 per share). The New Series D WDT Interests shall receive distributions on a *pari passu* basis with the New Series C WDT Interests, and the New Series D WDT Interests shall be satisfied, redeemed, and cancelled in full in accordance with the terms and provisions of the New WDT Documents prior to any distributions on account of the New Series E WDT Interests. The New Series D WDT Interests shall not receive any distributions prior to the satisfaction, redemption and cancellation of the New Series A1 WDT Interests, the New Series A2 WDT Interests, and the New Series B WDT Interests.

(f) <u>New Series E WDT Interests</u>: The Wind Down Trust shall issue the New Series E WDT Interests in a number equal to the aggregate number of Allowed Class 10 Common Stock. Holders of New Series E WDT Interests shall receive distributions as authorized by the Wind Down Trustee; *provided*, that (a) holders of New Series E WDT Interests shall not be entitled to receive any distributions until all other series of New WDT Interests have been satisfied, cancelled, and redeemed in accordance with the terms and provisions of the New WDT Documents, and (b) nothing herein requires the Wind Down Trustee to authorize any distributions to holders of New Series E WDT Interests.

The issuance of the New WDT Interests shall be authorized without the need for any further corporate action and without any further action by any party. The terms of the New WDT Interests shall be governed by the New WDT Documents, the terms of which shall be set forth in the Plan Supplement.

All of the New WDT Interests issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in <u>Article III</u> hereof shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance, and by the terms and conditions relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

G.     *Redemption of New WDT Interests.*

Each Cash distribution from or at the direction of the Wind Down Trustee on behalf of the Wind Down Trust (including any Cash distributions consisting of any proceeds realized from the prosecution and/or settlement of the Retained Causes of Action by the Litigation Trust) on account of any New WDT Interests shall be deemed to constitute the redemption, satisfaction, and cancellation of such New WDT Interests in an amount equal to such Cash distribution. Cash recoveries from the Debtors' Estates, including the Wind Down Trust, or the Litigation Trust shall be deemed applied on a dollar-for-dollar basis as a redemption of, and in reduction of, the amount of such New WDT Interests.

Holders of the New WDT Interests cannot recover more than the full amounts owed on account of such New WDT Interests unless such recovery is: (1) permissible under applicable

law; and (2) from third-party sources other than the Debtors, the Wind Down Trust, or the Litigation Trust, as provided for under this Plan.

H.    *Priority of Cash Distributions to Holders of New WDT Interests.*

The Wind Down Trustee shall make an initial Cash distribution to holders of New WDT Interests consisting of the Net Cash Proceeds, if any, within 60 days after the Effective Date, and on a semi-annual basis thereafter to the extent of any Net Cash Proceeds; *provided*, that the Wind Down Trustee may, in its sole discretion, make additional special distributions to the extent of any Net Cash Proceeds available; *provided*, *further*, that, in each instance, no distribution shall be required unless the Net Cash Proceeds then held by the Wind Down Trustee is equal to or greater than the Minimum Distribution Amount.

Any Cash distributions, including any distributions consisting of the Net Cash Proceeds realized from the monetization of the Wind Down Trust Assets, including the interests in Beneficient or FOXO, made by the Wind Down Trust to holders of New WDT Interests, after establishment of appropriate reserves for payment of Wind Down Trust expenses to the extent provided in the Wind Down Budget or the Wind Down Trust Agreement (or approved by separate order of the Bankruptcy Court), shall be distributed in the following order of priority (with no distributions to any junior class until all payments are made to senior classes in full):

1.    the New Series A1 WDT Interests (if any) issued to the Indenture Trustee in connection with the Indenture Fee and Expense Claims in Class 3, up to the outstanding amount of such Claims;

2.    all other New Series A1 WDT Interests, up to the Allowed outstanding prepetition amount of Allowed Bondholder Claims in Class 3;

3.    the New Series A2 WDT Interests, up to the Allowed outstanding prepetition amount of Allowed LBM Subordinated Claims in Class 3;

4.    the New Series A1 WDT Interests and the New Series A2 WDT Interests, up to the amount of interest accrued on such New Series A1 WDT Interests and New Series A2 WDT Interests, which interest shall accrue under the New WDT Documents from April 20, 2022 calculated at a 9% per annum interest rate;

5.    the New Series B WDT Interests, up to the Allowed prepetition outstanding amount of Class 4(a) Allowed General Unsecured Claims;

6.    the New Series B WDT Interests, up to the Allowed postpetition balance of Class 4(a) Allowed General Unsecured Claims, comprised of interest on the Allowed prepetition amount of such Claims starting from April 20, 2022 calculated at the Federal Judgment Rate;

7.    the New Series C WDT Interests and the New Series D WDT Interests, on a pro rata *pari passu* basis, per liquidation rights under the New WDT Documents and applicable law, up to the Allowed aggregate outstanding amount of the Class 8 Series 1 Preferred Interests and Class 9 Series 2 Preferred Interests (based on each

47

Series 1 Preferred Interest and each Series 2 Preferred Interest having an initial stated value of $1,000.00 per share); and

8.      the New Series E WDT Interests.

I.      *LBM Settlement.*

Unless LBM withdraws from the LBM Settlement as provided in the following paragraphs of this Article IV.I, on the Effective Date, the LBM L Bond Claims shall be:  (1) Allowed in full with the LBM Subordinated Claims classified as Allowed Class 3 Bond Claims to be treated as provided in Article III.B.3.(b).(iii) of this Plan, and the remainder of the LBM L Bond Claims as Allowed Bondholder Claims in Class 3 to be treated as provided in Article III.B.3.(b).(i) and (ii) of this Plan; and (2) the LBM Released Claims shall be fully and finally released against all of the LBM Released Parties.

In the event that the Debtors reach a settlement with Beneficient, LBM shall have the right to withdraw from the agreements with respect to the allowance and treatment of the LBM L Bond Claims, and the right to releases, each as described and provided in the preceding paragraph by Filing a written notice on the docket within three Business Days of a motion to approve such Beneficient settlement being Filed on the docket.  In event of such a timely-Filed withdrawal: (a) all agreements memorialized above shall be deemed withdrawn, including, but not limited to, all subordination agreements and all Claim allowances; (b) all claims, offsets, credits, objections and challenges of any kind to claims proposed to be settled above are reinstated in their entirety and shall be transferred to the Litigation Trust on the Effective Date as Litigation Trust Reconciliation Claims; and (c) the LBM L Bond Claims will be deemed Disputed Class 3 Claims without further action, Filing, or other request by the Debtors or the Bondholder Committee until the Claim Objection Bar Date at which time the LBM L Bond Claims shall be Allowed;  *provided*, that such LBM L Bond Claims shall be considered Allowed only if and to the extent that no objection or other challenge in respect of the LBM L Bond Claims has been Filed on or prior to the Claim Objection Bar Date or such timely objection or other challenge has been Filed and the Claim thereafter has been Allowed by a Final Order.  In any case, the LBM L Bond Claims shall be fully Allowed for voting purposes, and LBM agrees to and shall support and shall be deemed to accept this Plan on account of the LBM L Bond Claims and be a Creditor Proponent consistent with the Mediation Agreement (it being understood that any settlement with Beneficient shall be set forth in an order approving any such settlement under Bankruptcy Rule 9019 and that LBM's only rights with respect to a settlement with Beneficient are (i) withdrawing from the settlement set forth in this Article IV.I and/or (ii) objecting to such settlement with Beneficient).

In the event of such a withdrawal and subject to the timely Filing of an objection or other challenge to the LBM L Bond Claims:  (i) the New Series A1 WDT Interests shall not be issued on account of any portion of the LBM L Bond Claims on the Effective Date; (ii) pending the resolution of such timely-Filed disputes, the Wind Down Trustee shall not make any distributions of any kind on account of the LBM L Bond Claims, but shall maintain appropriate reserves for the LBM L Bond Claims in any distribution on account of New Series A1 WDT Interests made during that period, in a manner the Wind Down Trustee solely determines is reasonable; (iii) no New Series A2 WDT Interests shall be issued on the Effective Date; *provided*, *however*, that prior to the Allowance (if any) of the LBM L Bond Claims, such class of New WDT Interests, as

48

applicable, shall not be deemed vacant; and (iv) upon the final resolution of any timely-Filed objection or other challenge of any kind through the entry of a Final Order of the Bankruptcy Court, the Wind Down Trustee shall cause to be issued or cancelled, as applicable, the New Series A1 WDT Interests and New Series A2 WDT Interests (as necessary), or any other class of New WDT Interests, as appropriate, so that LBM receives the New Series A1 WDT Interests in the Allowed, non-subordinated amount of its LBM L Bond Claims, if any, and the New Series A2 WDT Interests in the subordinated amount, if any, of its Allowed Class 3 LBM Subordinated Claims, or any other class of New WDT Interests, as appropriate, as determined by such Final Order, and the Wind Down Trustee shall thereafter promptly distribute (or redistribute) any such maintained reserve amounts, as appropriate, consistent with the determination in such Final Order.  Notwithstanding any other provision of this Plan to the contrary:  (x) the Debtors or the Wind Down Trustee, as the case may be, may modify the Plan to provide for treatment of the LBM L Bond Claims consistent with the determination in any such Final Order in subsection (iv) above; and (y) any conflict between the provisions of this subsection and any other provision of this Plan shall be governed by the provisions of this subsection.

*J.*     *Exemption from Registration Requirements.*

The Debtors intend that the Wind Down Trust will be organized in compliance with applicable law such that the New WDT Interests will not be deemed to be or treated as securities under applicable law.  As a result, the Debtors do not believe that registration under the Securities Act and applicable state law in connection with the issuance and distribution of the New WDT Interests or an exemption from such registration requirements is required.  However, to the extent that the New WDT Interests issued under this Plan are deemed securities, the issuance and distribution thereof would qualify for issuance without registration under the Securities Act or any similar federal, state, or local law pursuant to section 1145 of the Bankruptcy Code.  To the extent that the issuance and distribution of the New WDT Interests issued under this Plan is completed pursuant to section 1145 of the Bankruptcy Code, such New WDT Interests would be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities. Pursuant to section 1145 of the Bankruptcy Code, any such New WDT Interests issued under this Plan: (1) would not be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act; and (2) as a matter of federal securities law, would be freely tradable and transferrable under the federal securities laws by any holder thereof that (a) is not an "affiliate" of the Wind Down Trust, as defined in Rule 144(a)(1) under the Securities Act, (b) has not been such an "affiliate" within three months of such transfer, (c) has not acquired the New WDT Interests from an "affiliate" within one year of such transfer, and (d) is not an Entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

Notwithstanding the forgoing or anything to the contrary in this Plan, the New WDT Documents will provide that the New WDT Interests may not be transferred, sold, pledged or otherwise disposed of, or offered for sale, except for transfers by will, intestacy or operation of law.  The Wind Down Trust will be organized in compliance with applicable law such that the New WDT Interests will not be treated as securities and under such facts the Debtors do not believe that registration under the Securities Act and applicable state law in connection with the issuance and distribution of the New WDT Interests or an exemption from such registration requirements would be required.  The Wind Down Trustee will be permitted to determine in its sole discretion

to take such actions that are necessary or reasonably advisable (including, without limitation, completing a registration under the Securities Exchange Act) to modify or remove any contractual restrictions on transferability of the New WDT Interests, with any such determination by the Wind Down Trustee, and all costs associated therewith, to be deemed a determination with respect to the monetization of the Wind Down Trust Assets subject to Bankruptcy Court approval to the extent provided pursuant to Article IV.A.3 hereof and to be evaluated solely under a reasonable business judgment standard.

To the extent that the New WDT Interests are rendered transferable as described in the preceding paragraph, DTC shall be required to accept and conclusively rely upon this Plan or the Confirmation Order in lieu of a legal opinion regarding whether such securities are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in this Plan, no legal opinion regarding the offering, issuance, and distribution of any securities contemplated by this Plan, including, for the avoidance of doubt, whether the New WDT Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services shall be required.

K.      *Section 1146(a) Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind Down Trust, the Litigation Trust, or to any other from any other party, as the case may be) of property under this Plan or pursuant to:  (1) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity interest, or other interest in the Debtors or the Wind Down Trust; (2) the transactions, including the Wind Down Transactions, described herein; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such other means; (4) the making, assignment, or recording or any lease or sublease; (5) the grant of collateral as security for any or all of the Debtors or Wind Down Debtors' obligations under or in connection with the Vida Exit Financing Facility; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, recordation fee or governmental assessment and accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax, recordation fee or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

L.    *Cancellation of Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument or other document entered into in connection with the Plan, all prepetition credit agreements, security agreements, intercreditor agreements, notes, instruments, Certificates, and other documents evidencing, or in any way related to, Claims or Interests (including the Indenture Documents) shall be deemed cancelled and surrendered without further action or approval of the Bankruptcy Court or any Holder of a Claim or Interest, and the obligations of the Debtors thereunder or in any way related thereto shall be released, settled, and compromised, and the Indenture Trustee, and its agents, successors and assigns shall each be automatically and fully released and discharged of and from all duties and obligations thereunder; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such prepetition credit agreement, security agreement, intercreditor agreement, or other document that governs the rights of the Holder of a Claim or Interest (including the Indenture Documents) shall continue in effect solely for purposes of: (1) enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; (2) governing the contractual rights and obligations among creditor parties (including, without limitation, indemnification, expense reimbursement, and distribution provisions); (3) allowing the Indenture Trustee to exercise its Indenture Trustee Charging Lien against distributions to Holders of Claims under the Indenture Documents, as applicable; (4) preserving all rights, remedies, indemnities, powers, and protections, including rights of enforcement, of the Indenture Trustee against any person or entity (including, without limitation, with respect to any indemnification or contribution from Holders of Bond Claims under the Indenture), other than the Debtors or the Wind Down Debtors (except as otherwise provided in this Plan) or any exculpations of the Indenture Trustee, to the extent that such rights, remedies, indemnities, powers, or protections exist pursuant to the terms of the Indenture Documents and applicable law; (5) permitting the Indenture Trustee to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce the obligations owed to it under this Plan and to enforce any obligations owed to Holders of Bond Claims under this Plan in accordance with the applicable Indenture Documents; and (6) permitting the Indenture Trustee to perform any functions that are necessary to effectuate the foregoing; *provided, further*, that, except to the extent otherwise provided in this Plan, the Confirmation Order, or any agreement, instrument or other document entered into in connection with this Plan, the survival of any prepetition credit agreements, security agreements, intercreditor agreements, rights, notes, instruments, Certificates, and other documents evidencing Claims or Interests shall not give rise to any Claims against the Debtors, the Wind Down Debtors, or the Wind Down Trustee or their respective officers, managers, directors, representatives, and agents for fees, expenses, or otherwise.  As a condition precedent to receiving any distribution on account of its Allowed Class 3 Bond Claim, each Holder of an Allowed Class 3 Bond Claim shall be deemed to have surrendered its respective bonds and other documentation underlying its Class 3 Bond Claims, and all such surrendered bonds and other documentation shall be deemed to be cancelled pursuant to this section, except to the extent otherwise provided herein.

M.    *Corporate Action.*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, and without the need for any further corporate action or other action by Holders of Claims or Interests, all corporate actions contemplated under this Plan shall be deemed authorized and approved in all respects,

without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to this Plan, or any further notice to or action, order, or approval of the Bankruptcy Court, including, as applicable: (1) selection and appointment of the Wind Down Trustee; (2) the creation of and vesting in the Wind Down Trust, including the adoption, execution, acknowledgement, delivery, recording, and/or filing (as applicable) of the Wind Down Trust Agreement; (3) the authorization, issuance, delivery, and distribution of the New WDT Interests issued pursuant to this Plan; (4) the execution of and entry into the Vida Exit Financing Facility Documents; (5) the creation of and vesting in the Litigation Trust; and (6) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date).

Upon the Effective Date, all matters provided for in this Plan involving the corporate or company structure of the Debtors, the Wind Down Debtors, or the Wind Down Trust and any corporate or company action required by the Debtors or the Wind Down Trustee in connection with this Plan, including the transfer of the Policy Portfolio to Portfolio Co. and the issuance of the Policy Portfolio Equity Interests, shall be deemed to have occurred and shall be in effect, without any requirement or further action by the security holders, directors, managers, or officers of the Debtors, the Wind Down Debtors, or the Wind Down Trustee.  On or prior to the Effective Date (as applicable), the appropriate officers of the Debtors, the Wind Down Trustee, or the Litigation Trustee (as applicable) shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Wind Down Debtors, the Wind Down Trust, and/or the Litigation Trust including the New WDT Interests, the Wind Down Trust Agreement, the Litigation Trust Agreement, the Vida Exit Financing Facility Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.M shall be effective notwithstanding any requirements under non-bankruptcy law.

*N.      Dissolution and Board of Directors.*

As of the Effective Date, the term of the current members of the board of directors of the Debtors, including the Independent Directors and the DLP Independent Directors, shall expire, the Investigations Committee, the Special Committee and each conflicts committee at each DLP Entity shall cease to exist; *provided*, *that*, following the Effective Date, the Independent Directors and the DLP Independent Directors shall retain authority solely with respect to matters related to Accrued Professional Compensation Claims by Professionals acting at their authority and direction in accordance with the terms of the Plan.  Any Causes of Action that have been commenced by the Investigations Committee, and are not released pursuant to Article VIII.C hereof, shall be included in the Retained Causes of Action and transferred to the Litigation Trust on the Effective Date.   Notwithstanding any other language to the contrary herein, solely with respect to communications that occurred on or after April 20, 2022, each of the Independent Directors in their capacity as such, the DLP Independent Directors in their capacity as such, and David F. Chavenson in his capacity as a former member of the Special Committee, shall not have any of their respective privileged and confidential documents, communications or information transferred (or deemed transferred) to the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, the Litigation Trust, the Litigation Trustee, any liquidation trust that may be formed or its trustee or board, or any related party of any of the foregoing Entities, or any other person or Entity,

without the prior written consent of the Independent Directors or the DLP Independent Directors, as applicable.

As of the Effective Date, the Wind Down Trustee shall act as the Wind Down Debtors' sole officer, director, and manager, as applicable, with respect to the Wind Down Debtors' affairs, other than with respect to the Litigation Trust or Portfolio Co., as set forth herein. On the Effective Date, any remaining officers, managers, or managing members of any Debtor shall be dismissed without further action required on the part of any such Debtor or any other party.

O.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Wind Down Trust and the Wind Down Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the New WDT Interests issued pursuant to this Plan, without the need for any approvals, authorizations, or consents, except for those expressly set forth in and required pursuant to this Plan. On and after the Effective Date, except as otherwise provided herein, the Wind Down Trust and the Litigation Trust, as applicable, may engage in activities as set forth herein and may use, acquire, or dispose of property and pursue, compromise, or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court (except as otherwise provided herein) and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

P.    *Vesting of Assets.*

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in this Plan, on the Effective Date, all property in each Debtor's Estate, all claims, rights, defenses, and Retained Causes of Action, and any property acquired by the Wind Down Trust, Litigation Trust, or Wind Down Debtors under or in connection with this Plan shall vest in the Wind Down Trust, Litigation Trust, or each of the Wind Down Debtors, as applicable, free and clear of all Liens, Claims, charges, or other encumbrances (except for those Liens, Claims, charges, or other encumbrances arising from or related to the Vida Exit Financing Facility), for subsequent or deemed transfer by each such party, pursuant to the provisions of this Plan.

Q.    *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the applicable Petition Date, including without limitation any Causes of Action specifically enumerated in the schedule of Retained Causes of Action included in the Plan Supplement and the Litigation Trust's right to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, Causes of Action that are or were settled, released, waived, exculpated, or transferred pursuant to the Plan or any order of the Bankruptcy Court entered in these Chapter 11 Cases (as the same may be amended, modified, or supplemented from time to time by the Debtors), shall not constitute Retained Causes of Action.

The Litigation Trust may pursue such Retained Causes of Action, as appropriate and in accordance with the Litigation Trust Agreement. **No Entity may rely on the absence of a specific reference in this Plan, the Litigation Trust Agreement, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind Down Debtors, the Wind Down Trust, or the Litigation Trust, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Wind Down Debtors, the Wind Down Trust, or the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, including Article VIII of this Plan.** Unless any Causes of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Bankruptcy Court order, the Wind Down Debtors expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation of this Plan.

The Litigation Trust reserves and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall be deemed transferred to and vest in the Litigation Trust except as otherwise expressly provided in this Plan. The Litigation Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all Retained Causes of Action. The Litigation Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgement any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court; *provided*, that the entry into any settlement of any Claim, Cause of Action, or other dispute with an economic value of $5 million or more (in the Litigation Trustee's good faith determination) as of the date of the consummation, settlement, or resolution of such transaction or dispute shall require the approval of the Bankruptcy Court after notice and an opportunity for a hearing.

Notwithstanding anything contained herein to the contrary (including the Debtor Release described in Article VIII.C hereof), to the extent the Debtors are releasing or have previously released certain claims and Causes of Action against a party, including pursuant to this Plan or any Final Order of the Bankruptcy Court entered in these Chapter 11 Cases on or before the Effective Date, nothing in this Plan shall be construed to revive such released claims and Causes of Action against such party or be construed to impair or otherwise limit the releases provided thereunder.

R.      *Continuing Effectiveness of Final Orders.*

Payment authorization granted to the Debtors under any prior Final Order entered by the Bankruptcy Court shall continue in effect after the Effective Date. Accordingly, the Debtors, the Wind Down Debtors, the Wind Down Trustee, and the Litigation Trustee, as applicable, may pay or otherwise satisfy any Claim to the extent permitted by, and subject to, the applicable Final Order without regard to the treatment that would otherwise be applicable to such Claim under this Plan.

S.     *D&O Liability Insurance Policies.*

Notwithstanding anything in this Plan to the contrary, all of the Debtors' D&O Liability Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under this Plan.  On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtors shall be deemed to have assumed all D&O Liability Insurance Policies and any agreements, documents, and instruments related thereto (including tail coverage liability insurance).  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies.  After the Effective Date, the Wind Down Debtors and the Litigation Trust, as applicable, shall not terminate or otherwise reduce, modify, or restrict in any way the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, including with respect to conduct occurring on or prior to April 20, 2022, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan and who are covered by any such policy shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.  Without limiting the generality of the other provisions of this Plan, and following such assumption, all right, title, and interest of the Debtors (and of the Wind Down Debtors and the Litigation Trust, as applicable) in and to any D&O Liability Insurance Policy (including any such tail coverage liability insurance) in effect as of the Effective Date covering claims relating to conduct occurring on or prior to April 20, 2022 shall be deemed assigned and fully transferred on the Effective Date to the Litigation Trust and shall constitute Initial Litigation Trust Assets for all purposes.

T.     *Payment of Certain Fees.*

On the Effective Date, the Debtors or the Wind Down Debtors, as applicable, shall pay in full in Cash the Indenture Fee and Expense Claim incurred at any time prior to and through the Effective Date from the Portfolio Proceeds up to the amount:  (1) agreed to by the Debtors, the Indenture Trustee, and the Creditor Proponents, without the need for the Indenture Trustee to File any Proof of Claim, request for payment of Administrative Claim, fee application, itemized time details, or any other pleading or document in the Chapter 11 Cases, and without reduction to recoveries on account of any of the Allowed Bond Claims; or (2) as determined by the Bankruptcy Court, in the event that the amount is not resolved pursuant to mediation.  From and after the Effective Date, the Wind Down Debtors shall pay in full in Cash the Indenture Fee and Expense Claim incurred in connection with distributions, communications to Holders, responses to Holder inquiries, or the cancellation and discharge of the Indenture Documents, without any requirement for the Indenture Trustee to File any Proof of Claim, request for payment of Administrative Claim, fee application, or any other pleading or documents in the Chapter 11 Cases, or to provide itemized time details, and without reduction to recoveries on account of any of the Allowed Bond Claims.  In the event the Portfolio Proceeds are insufficient to provide such payment (after taking into account the full amounts of the Initial Litigation Trust Funding Amount and the Wind Down Amount), the Indenture Trustee shall be issued New Series A1 WDT Interests on account of any unpaid amount of such Claim, and such unpaid amount of such Claim shall be satisfied via Cash distributions pursuant to the priority of payment waterfalls described in Article IV.H and

<u>Article VI.C</u> on account of the New Series A1 WDT Interests issued to the Indenture Trustee in respect of such unpaid amount pursuant to this Plan.

If the Debtors or Wind Down Debtors, as applicable, dispute any requested Indenture Fee and Expense Claims, the Debtors or the Wind Down Debtors, as applicable, shall: (a) pay the undisputed portion of the Indenture Fee and Expense Claims in accordance with this Plan; and (b) notify the Indenture Trustee and the Creditor Proponents of such dispute within two Business Days after presentment of summary invoices by the Indenture Trustee to the Debtors or the Wind Down Trustee, as applicable, and the Creditor Proponents.  Upon such notification, the Indenture Trustee may submit such dispute for resolution by the Bankruptcy Court; *provided*, *however*, that the Bankruptcy Court's review shall be limited to a determination that such amounts are compensable under the Indenture Documents.  Nothing herein shall in any way affect or diminish the right of the Indenture Trustee to exercise its Indenture Trustee Charging Lien against distributions on account of Claims under the Indenture Documents with respect to any Indenture Fee and Expense Claims that are not paid pursuant to this <u>Article IV.T</u>.  The Indenture Trustee shall provide notice of any intent to exercise its Indenture Trustee Charging Lien against distributions on account of Claims under the Indenture Documents with respect to any unpaid Indenture Fee and Expense Claims to the Debtors or the Wind Down Trustee, as applicable, and the Creditor Proponents, and such parties shall have five (5) Business Days from service of such notice to File an objection with the Bankruptcy Court; *provided*, *however*, that the Bankruptcy Court's review shall be limited to a determination that such amounts are compensable under the Indenture Documents.

U.    *Beneficient SPAC Transaction Consents.*

For the avoidance of doubt, prior to the Effective Date, any consents necessary in connection with approval of a special purpose acquisition company (SPAC) transaction of Beneficient shall require the consent of the Debtors and the Special Committee and shall be subject to Bankruptcy Court approval.  For the avoidance of doubt, the required Bankruptcy Court approval may be contained in an order approving a proposed settlement with Beneficient.  After the Effective Date, any such consents shall require the consent of the Wind Down Trustee and shall be subject to Bankruptcy Court approval.  For the avoidance of doubt, after the Effective Date, such consent (and request for Bankruptcy Court approval by the Wind Down Trustee) may not include any releases or compromises of any Retained Causes of Action that are transferred to the Litigation Trust on the Effective Date without the consent of the Litigation Trustee.

V.    *Termination of Any Continuing Business Relationship With Beneficient.*

For the avoidance of doubt, on and after the Effective Date, it is expected, whether as the result of the rejection of the Shared Services Agreement or a consensual resolution and termination thereof, that there will be no continuing or other business relationship between the Wind Down Debtors, Wind Down Trust, or Litigation Trust, on the one hand, and Beneficient, on the other, of any nature or type whatsoever, other than the Wind Down Trust's ownership of interests in Beneficient constituting the Wind Down Assets, except as may be necessary or advisable to effectuate a smooth transition of shared services from Beneficient to Portfolio Co. or the Wind Down Trust.  The terms of any continued relationship with Beneficient, including any amounts

proposed to be paid to Beneficient, necessary to effect such transition shall be subject to the Proponents' Consent Right.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (1) those that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) those that have been previously assumed, assumed and assigned, or rejected by a Final Order; (3) those that are the subject of a motion to assume, assume and assign, or reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (4) those that are subject to a motion to assume, assume and assign, or reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such assumption, assumption and assignment, or rejection is after the Effective Date; or (5) those Executory Contracts and Unexpired Leases that expired pursuant to the terms thereof before the applicable Petition Date.

Entry of the Confirmation Order shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as provided under this Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to this Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by (a) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (b) any Debtor's or Wind Down Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease, or (c) the Confirmation or Consummation of this Plan, then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by the Confirmation of this Plan.

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of any preexisting obligations owed to the Debtors or Wind Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

*B.*     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, the Litigation Trust, or property of the foregoing parties, without the need for any objection by such parties and without the need for any further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything to the contrary in the Schedules or a Proof of Claim.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims in Class 4(a) or a GUC Convenience Claim in Class 4(b), depending on the amount of the Allowed Claim (or, to the extent the counterparty to the rejected Executory Contract or Unexpired Lease is one of the DLP Entities, Class 5), and shall be treated in accordance with <u>Article III</u> and <u>Article IV.H</u> of this Plan, as applicable.

*C.*     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Executory Contract and Unexpired Lease, as reflected on the Schedule of Assumed Executory Contracts and Unexpired Leases, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the Cure Amount, (2) the ability of the Wind Down Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

In any case, if the Bankruptcy Court determines that the Allowed Cure Amount with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors or the Wind Down Debtors, as applicable, will have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory

Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

Any objection regarding the ability of the Wind Down Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) must have been Filed with the Bankruptcy Court by the deadline set by the Bankruptcy Court for objecting to Confirmation of the Plan. To the extent any such objection is not determined by the Bankruptcy Court at the Confirmation Hearing, such objection may be heard and determined at a subsequent hearing.  Any counterparty to an Executory Contract or Unexpired Lease of the Debtors that does not timely object to such "adequate assurance of future performance" by such deadline will be deemed to have forever released and waived any such objection.

D.      *Insurance Policies.*

Notwithstanding anything herein to the contrary, the Debtors shall retain the ability to supplement any D&O Liability Insurance Policies as the Debtors deem necessary, including purchasing any tail coverage.  For the avoidance of doubt, prior to the Effective Date, the Debtors shall obtain additional director and officer liability tail insurance coverage for the period from April 20, 2022 to the Effective Date, which insurance coverage must not terminate or otherwise reduce the coverage set forth in the existing D&O Liability Insurance Policies.  On and after the Effective Date, Portfolio Co., the Wind Down Trust, and the Litigation Trust, as applicable, shall be authorized to obtain additional director and officer or similar liability coverage for Portfolio Co., the Wind Down Trustee and the Litigation Trustee, as applicable, for the period following the Effective Date.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.

G.      *Non-occurrence of the Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in this Plan or the Confirmation Order (and except with respect to Cash distributions from the Wind Down Trust or the Litigation Trust), on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim entitled to a Cash distribution on the Effective Date shall receive the full amount of the distributions that the Plan provides for such Allowed Claim as set forth in Article III hereof.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to Article VII (or, with respect to LBM, Article VI.C) hereof.  Except as otherwise expressly provided in this Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Distributing Parties.*

After the Effective Date, all distributions under this Plan shall be made by or at the direction of the Wind Down Trustee on behalf of the Debtors or the Wind Down Trust, as applicable.  The Wind Down Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

Subject to the terms of this Plan, the Wind Down Trustee shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Wind Down Debtors or the Wind Down Trustee, as applicable, by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Wind Down Trustee to be necessary and proper to implement the provisions of hereof.

C.      *Delivery of Distributions Related to the Litigation Trust.*

All distributions of the net proceeds realized by the Litigation Trust shall be made by the Wind Down Trustee (or by the Litigation Trustee, at the direction of the Wind Down Trustee) pursuant to the terms of this Plan and governed by the Litigation Trust Agreement.

Distributions of net proceeds realized by the Litigation Trust shall be made by the Wind Down Trustee, or by the Litigation Trustee at the direction of the Wind Down Trustee, in the following order of priority (with no distributions to junior classes until each senior class is paid in full):

1.      to holders of New Series A1 WDT Interests (subject to prior payment in full of Indenture Fee and Expense Claims) on account of the Indenture Diminution Claims, up to the Allowed amount of such Claims;

2.      on a *pari passu* pro rata basis (a) holders of the New Series A1 WDT Interests and the New Series A2 WDT Interests (subject to the prior payment in full of the Indenture Fee and Expense Claims and recognizing the intercreditor arrangements described in Article IV.H.1 through H.4 hereof vis-à-vis the New Series A1 WDT Interests and the New Series A2 WDT Interests), on the one hand, and (b) holders of New Series B WDT Interests on the other hand, up to the aggregate outstanding prepetition amounts of Allowed Bondholder Claims and Allowed LBM Subordinated Claims in Class 3, and Allowed Class 4(a) General Unsecured Claims, calculated in accordance with Article IV.H hereof;

3.      on a *pari passu* pro rata basis (a) holders of the New Series A1 WDT Interests and the New Series A2 WDT Interests (subject to recognizing the intercreditor arrangements described in Article IV.H.1 through H.4 hereof vis-à-vis the New Series A1 WDT Interests and the New Series A2 WDT Interests), on the one hand, and (b) holders of New Series B WDT Interests on the other hand, up to the amount of interest accrued on such New Series A1 WDT Interests and New Series A2 WDT Interests as set forth in the New WDT Documents, and Allowed Class 4(a) General Unsecured Claims, calculated in accordance with Article IV.H hereof;

4.      holders of New Series C WDT Interests and New Series D WDT Interests on a *pari passu* pro rata basis, per liquidation rights under the New WDT Documents and applicable law, up to the outstanding Allowed aggregate amount of the Class 8 Series 1 Preferred Interests and Class 9 Series 2 Preferred Interests (based on each Series 1 Preferred Interest and each Series 2 Preferred Interest having an initial stated value of $1,000.00 per share); and

5.      holders of the New Series E WDT Interests.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      **Record Date for Distributions.**

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Accordingly, any party responsible for making distributions will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim listed on the Claims Register that occurs after the close of business on the Distribution Record Date.

2.      **Delivery of Distributions in General.**

Except as otherwise provided herein, the Wind Down Trustee shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Wind Down Trustee; *provided, further,* that the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Interest Filed by that Holder pursuant to Bankruptcy Rule 3001.  If a Holder holds more than one Claim or Interest in any one Class, all Claims or Interests, as applicable, of the Holder will be aggregated into one Claim or Interest and one distribution will be made with respect to the aggregated Claim (to the extent possible).  The Indenture Trustee Charging Lien shall attach to any distributions made to the Holders of Claims under the Indenture Documents in the same manner as if such distributions were made through the Indenture Trustee.

Notwithstanding any policies, practices, or procedures of DTC, DTC shall cooperate with and take all actions reasonably requested by the Wind Down Trustee or the Indenture Trustee to facilitate distributions to Holders of Allowed Bond Claims without requiring that such distributions be characterized as repayments of principal or interest.  Neither the Wind Down Trustee nor the Indenture Trustee shall be required to provide indemnification or other security to DTC in connection with any distributions to Holders of Allowed Bond Claims through the facilities of DTC.  The Indenture Trustee shall not incur any liability whatsoever on account of any distributions under this Plan.

3.      **Minimum Distributions.**

Notwithstanding anything to the contrary herein, no Cash payment of less than $100.00, in the reasonable discretion of the Wind Down Trustee, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest.  Each such Claim or Interest to which this limitation applies shall be discharged pursuant to Article VIII of this Plan, and its Holder shall be forever barred pursuant to Article III hereof from asserting that Claim against or Interest in the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, or the Litigation Trust, or any property of the foregoing.

No fractional interests of New WDT Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on

account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of New WDT Interests that is not a whole number, the actual distribution of New WDT Interests shall be rounded as follows:  (a) fractions of one-half (1/2) or greater shall be rounded to the next higher whole number; and (b) fractions of less than one-half (1/2) shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized New WDT Interests to be distributed to Holders of Allowed Claims and Allowed Interests shall be adjusted as necessary to account for the foregoing rounding.

### 4.        Undeliverable Distributions and Unclaimed Property.

In the event that either (a) a distribution to any Holder is returned as undeliverable or (b) the Holder of an Allowed Claim or Allowed Interest does not timely respond to a request by the Debtors or the Wind Down Trustee for information necessary to facilitate a particular distribution, no distribution to such Holder shall be made unless and until the Wind Down Trustee is notified in writing of the then-current address of such Holder or the Wind Down Trustee has received the necessary information with sufficient time to facilitate a particular distribution, at which time such distribution shall be made to such Holder without interest, dividends, or other accruals of any kind; *provided*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date that is six months after the later of (x) the Effective Date and (y) the date of the distribution; *provided*, *further*, that the Wind Down Trustee shall use commercially reasonable efforts to accurately determine the address or other contact information for any Holder (or holder, as applicable) that does not hold Class 3 Bond Claims or New WDT Interests through DTC or by other indirect means before such distribution may be deemed unclaimed property.  After such date, all unclaimed property or interests in property shall revert to the Wind Down Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder to such property or interest in property shall be discharged and forever barred.  For the avoidance of doubt, any unclaimed property in the form of Cash shall be distributed in accordance with Article III, Article IV.H, and Article VI.C of this Plan to Holders of Claims within the same Class to which the unclaimed property was to be distributed.

### 5.        Manner of Payment Pursuant to the Plan.

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Wind Down Trustee by check or by wire transfer, at the sole and exclusive discretion of the Wind Down Trustee.

### E.        *Single Satisfaction of Claims and Interests.*

In no case shall the aggregate value of all property received or retained under this Plan on account of each Allowed Claim or Allowed Interest exceed 100% of the underlying Allowed Claim or Allowed Interest (plus any applicable interest).

### F.        *No Postpetition Interest On Claims.*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or Final Order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law

(including, without limitation, as required pursuant to section 506(b) and section 511 of the Bankruptcy Code), postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the applicable Petition Date on any such prepetition Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, until such Disputed Claim becomes an Allowed Claim.

G.     *Compliance with Tax Requirements/Allocations.*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Debtors, the Wind Down Debtors, Wind Down Trustee, the Wind Down Trust, the Litigation Trust, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall (1) be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate ,and (2) shall reasonably cooperate with the relevant recipients to minimize any such withholding to the extent permitted by applicable law.  The Debtors, the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, and the Litigation Trust each reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.     *Setoffs.*

Except as otherwise expressly provided for herein, the Wind Down Trustee, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may exercise setoff rights against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Wind Down Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise);  *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Wind Down Trustee of any such claims, rights, and Causes of Action that the Wind Down Trustee may possess against such Holder;  *provided*, *further*, that such Holder may contest any such set off by the Wind Down Trustee in the Bankruptcy Court or any other court of

competent jurisdiction.  For the avoidance of doubt, any such right of setoff may be preserved by timely Filing a Proof of Claim related to such right of setoff.

I.      *Allocation of Plan Distributions between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for U.S. federal income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

J.      *Claims Paid or Payable by Third Parties.*

**1.      Claims Paid by Third Parties.**

The Debtors or the Wind Down Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Wind Down Trustee.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Wind Down Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Wind Down Trustee annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

**2.      Claims Payable by Third Parties.**

Other than with respect to Class 3, no distributions under the Plan shall be made on account of a Claim that is payable by a third party (including by an Entity that is jointly and severally liable on such Claim and/or by one or more of the Debtors' insurers pursuant to one of the Debtors' insurance policies) until the Holder of such Claim has exhausted all rights and remedies with respect to such third party (including adjudicating any liability of any Entity that is jointly and severally liable on such Claim and/or adjudicating its rights under any applicable insurance policy). To the extent that any third party (including one or more of the Debtors' insurers) agrees to satisfy in full or in part a Claim or such Claim is adjudicated by the Bankruptcy Court or another court of competent jurisdiction, the applicable portion of such Claim shall be automatically expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**3.      Applicability of Insurance Policies.**

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity

may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims.*

After the Effective Date, and subject to the terms of this Plan and the Confirmation Order, the Wind Down Trustee shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. No Claim shall become an Allowed Claim prior to the Claim Objection Bar Date unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases Allowing such Claim.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, but not later than the Claims Objection Bar Date, the Wind Down Trustee shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests (other than Claims or Interests deemed to be Allowed in this Plan); (2) to settle, compromise, or resolve any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided*, that, notwithstanding the foregoing, the Litigation Trustee shall have the sole authority to, on or before the Claims Objection Bar Date, File, withdraw, or litigate to judgment objections to Litigation Trust Reconciliation Claims, including any such Claims that are Disputed Claims or Interests. Notwithstanding the foregoing, the entry into any settlement of any Claim, settlement, or dispute with an economic value of $5 million or more shall (on an individual basis) require the approval of the Bankruptcy Court after notice and an opportunity for a hearing. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Wind Down Trustee and the Litigation Trustee, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest.

C.      *Estimation of Claims.*

Before or after the Effective Date, the Debtors or Wind Down Debtors may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim or contingent or unliquidated Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any

such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Debtors or the Wind Down Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 7 days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest, any Claim or Interest that is substantiated by an invoice that is invalid, previously rejected, or otherwise deemed erroneous by the Debtors, or any Claim or Interest that has been paid, satisfied, amended, or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Wind Down Trustee, as applicable, without the Debtors or the Wind Down Trustee, as applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims and Interests.*

All Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors, the Wind Down Trust, or the Litigation Trust, as applicable, allege is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind Down Trustee.  All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to this Plan, without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, for the avoidance of doubt, no indemnification obligations of the Debtors to any former directors, officers, or employees of the Debtors or any other indemnification obligations of the Debtors arising from or relating to the prepetition period shall be assumed (provided, however, that nothing

contained herein is intended to adversely affect any such director's, officer's, or employee's rights to an interest in Side A coverage under such policies).

**Except as otherwise provided herein, if a party Files a Proof of Claim and the Debtors or the Wind Down Trustee, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Plan. Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the applicable Claims Bar Date shall be deemed disallowed and forever barred, estopped, and enjoined from assertion and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

F.      *Disputed Claims Reserve.*

On or before the Effective Date, the Debtors or the Wind Down Trustee, as applicable, shall deposit in the Disputed Claims Reserve the Disputed Claims Reserve Amount to the extent applicable and to the extent of Cash available or realized for distribution.  The Wind Down Trustee shall administer the Disputed Claims Reserve and shall distribute amounts held in the Disputed Claims Reserve (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Disputed Claims as such amounts would have been distributable had such Disputed Claims been Allowed Claims as of the Effective Date solely to the extent of the amounts available in the applicable reserves.  For the avoidance of doubt, any Cash held in the Disputed Claims Reserve on account of a Disputed Class 3 Bond Claim is ultimately disallowed by a Final Order or otherwise resolved between the Holder of the Disputed Claim and the Wind Down Debtors shall be distributed to other Holders of Class 3 Bond Claims in Accordance with Article III and Article IV.H of the Plan.  The Wind Down Trustee (1) may timely elect to treat any Wind Down Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Wind Down Trustee and New WDT Interests holders) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

G.      *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors or the Wind Down Debtors, as applicable, or the Bankruptcy Court, and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

H.      *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in <u>Article VII</u> of this Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or any portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, unless otherwise determined by the Debtors or the Wind Down Trustee.

I.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of this Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Wind Down Trustee shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided in <u>Article III.B</u> of this Plan.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Release of Claims and Interests.*

Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, including any interest accrued on Claims or Interests from and after the applicable Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination that the holders of Claims, Interests, and Causes of Action shall be limited to the distributions, if any, under this Plan for the satisfaction of such Claims, Interests, and Causes of Action against the Debtors and that, subject to the occurrence

of the Effective Date, the distributions hereunder shall be in complete satisfaction of such Claims, Interests and Causes of Action insofar as the satisfaction of such Claims, Interests, and Causes of Action from any asset of the Debtors shall be concerned.

B.      *Release of Liens.*

**Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to or in connection with the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns (including the Wind Down Debtors, Wind Down Trust, and/or the Litigation Trust, as applicable).  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Wind Down Trust, to release any collateral or other property of any Debtor or their successors and assigns (including the Wind Down Debtors, Wind Down Trust, and/or the Litigation Trust, as applicable), including any cash collateral and possessory collateral, held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind Down Trust to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

C.      *Releases by the Debtors.*

**Pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party (but no Non-Released Party) is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Wind Down Debtors, and their Estates, and any person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through or for the Debtors or their Estates, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort or otherwise, except for any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, intentional breach of fiduciary duty, or gross negligence, that the Debtors, the Wind Down Debtors, or their Estates, including any successors to the**

Debtors or any Estates representative appointed or selected pursuant to section 1123(b) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership or operation thereof), the business or contractual arrangement between the Debtors and any Released Party, any Securities issued by the Debtors and the ownership thereof, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Vida DIP Financing Facility, the Vida Exit Financing Facility, or any Wind Down Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Vida Exit Financing Facility Documents, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or upon any related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date related or relating to the foregoing including all relief obtained by the Debtors in the Chapter 11 Cases.  For the avoidance of doubt, (1) the LBM Released Parties, to the extent that LBM has not withdrawn from the settlement described in **Article IV.I** of this Plan; and (2) the Broker Dealers that timely submit a Broker Dealer Settlement Election Notice and Broker Dealer Settlement Payment by the Broker Dealer Settlement Deadline, shall constitute Released Parties with respect to this Debtor Release.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Wind Down Transaction, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Vida Exit Financing Facility Documents, or any Claim or obligation arising under the Plan; (2) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (3) the Retained Causes of Action; (4) any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, intentional breach of fiduciary duty, or gross negligence; (5) the Debtors' prepetition legal counsel solely with respect to claims or causes of action arising from such counsel's prepetition advice to the Debtors and/or any former directors or officers of the Debtors other than advice directly relating to the preparation and filing of the Chapter 11 Cases (it being understood any prepetition advice to the Debtors relating to prepetition transactions between the Debtors and Beneficient shall not constitute advice directly relating to the preparation and filing of the Chapter 11 Cases); or (6) any Non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Wind Down Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Wind Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.      *[RESERVED.]*

        [RESERVED.]

E.      *Exculpation.*

        Except as otherwise expressly stated in this Plan or the Confirmation Order, as of the Effective Date, each Exculpated Party shall be deemed to be released and exculpated from any claim, obligation, Cause of Action, or liability for any Exculpated Claim, except for claims related to any act or omission that is determined in a Final Order to have constituted intentional breach of fiduciary duty, actual fraud, willful misconduct, or gross negligence, but in all respects each Debtor and each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon the Consummation of the Plan, shall be deemed to have, participated in good faith and in compliance with applicable law with regard to the restructuring of Claims and Interests in the Chapter 11 Cases and in connection with the Wind Down Transactions, the negotiation, formulation, or preparation of the Wind Down Documents or related agreements, instruments, or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Plan, and the solicitation of the Plan and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, except for claims related to any act or omission that is determined in a Final Order to have constituted intentional breach of fiduciary duty, actual fraud, willful misconduct, or gross negligence.  The Debtors and the Creditor Proponents agree that (1) neither the act itself of Filing or prosecuting a motion to approve a settlement of any Estate Causes of Action with Beneficient, any of its Affiliates or related parties, and/or any other Non-Released Party nor the act itself of Filing or prosecuting any objection to any such settlement in and of itself constitutes an intentional breach of fiduciary duty, and (2) any claims that the Debtors or the Creditor Proponents may seek to bring against any Exculpated Party shall be limited to any actions of such Exculpated Party solely after the date of

execution of the Mediation Agreement; *provided* that any such claims must be Filed exclusively in the Bankruptcy Court and in accordance with the Federal Rules of Civil Procedures, and such claims shall be pled with specificity with respect to the who, what, when, where, and how of the alleged wrongful conduct.

F.      *Protections Against Discriminatory Treatment after the Effective Date.*

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Wind Down Debtor, or any Entity with which a Wind Down Debtor has been or is associated (including the Wind Down Trustee), solely because such Wind Down Debtor was a Debtor under Chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.  For the avoidance of doubt, 28 U.S.C. § 959(b) shall apply.

G.      *Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims that have been released pursuant to <u>Article VIII</u> hereof are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any of the claims or interests released hereunder; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account or in connection with or with respect to any claims or interests released hereunder; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account or in connection with or with respect to any claims or interests released hereunder; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account or in connection with or with respect to any claims or interests released hereunder, unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any claims or interests released or settled pursuant to this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under this Plan shall be deemed to have consented to the injunction provisions set forth herein.

H.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors, the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, or the Litigation Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

I.      *Subordination Rights.*

The classification and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and may only be modified upon entry of a Final Order approving or directing the settlement, compromise, release, and/or other alteration of any such rights.

K      *Document Retention.*

On and after the Effective Date, the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, and the Litigation Trust, as applicable, may maintain documents in accordance with the Wind Down Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind Down Debtors, Wind Down Trust, Wind Down Trustee, or the Litigation Trust, as applicable.

J.      *Ipso Facto and Similar Provisions Ineffective.*

To the extent permitted by applicable law, any term of any prepetition policy, contract, or other obligation applicable to the Debtors shall be void and of no further force or effect to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation as a result of, or gives rise to a right of any Entity based on: (1) the insolvency or financial condition of a Debtor; (2) the commencement of any of the Chapter 11 Cases; (3) either the Confirmation or Consummation of the Plan; or (4) any of the Wind Down Transactions.

K.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date.*

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, subject to the Proponents' Consent Right, and such order shall have become a Final Order that has not been stayed, modified, or vacated on appeal, subject to the Debtors' right to waive any appeal period (with the reasonable consent of the Creditor Proponents);

(b)    the Debtors shall have assumed the D&O Liability Insurance Policies, which shall include, for the avoidance of doubt, policies that provide coverage for periods and were purchased prior to April 20, 2022;

(c)    the Debtors shall have obtained additional director and officer liability tail insurance coverage for the period from April 20, 2022 to the Effective Date, which insurance coverage must not terminate or otherwise reduce the coverage set forth in the existing D&O Liability Insurance Policies , the form and substance of which being subject to the Proponents' Consent Right;

(d)    the Vida Exit Financing Facility Documents shall have been executed, delivered, be in full force and effect (with all conditions precedent thereto having been satisfied or waived), and any amendments, modifications or supplements to the Vida Exit Financing Facility Documents that were Filed at Docket No. 975 shall be in form and substance subject to the Proponents' Consent Right;

(e)    the Investigations Committee shall have completed its independent investigation with respect to any releases granted pursuant to this Plan;

(f)    the Wind Down Trust Agreement shall have been executed and shall be in form and substance subject to the Proponents' Consent Right;

(g)    the Wind Down Budget shall have been delivered to the Creditor Proponents and shall be in form and substance subject to the Proponents' Consent Right;

(h)    the Wind Down Trust Assets shall have been transferred to the Wind Down Trust;

(i)    the Wind Down Trustee shall have accepted the appointment;

(j)     the Litigation Trust Agreement shall have been executed and shall be in form and substance subject to the Proponents' Consent Right;

(k)     the Litigation Trustee shall have been appointed and have accepted the appointment;

(l)     the Initial Litigation Trust Assets shall have been transferred to the Litigation Trust;

(m)    the New WDT Interests shall have been issued

(n)     the New WDT Documents shall be in form and substance subject to the Proponents' Consent Right;

(o)     any Plan Supplement documents, including any exhibits, schedules, amendments, modifications, or supplements thereto, not otherwise identified above in this Article IX.A, shall have been Filed and shall be in form and substance subject to the Proponents' Consent Right;

(p)     all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; *provided*, it being understood that any 1940 Act matters in connection with the Wind Down Trust shall be addressed as set forth in Article IV.A herein;

(q)     the Professional Fee Escrow Account shall have been funded with Cash in the amount of the aggregate Professional Fee Escrow Amount for all Professionals;

(r)     to the extent of Cash distributions would apply to any such Disputed Claims, and to the extent that Cash is available, the Disputed Claims Reserve shall have been established and funded; and

(s)     any other corporate or related actions necessary or advisable in the reasonable business judgment of the Debtors and subject to the Proponents' Consent Right for the Plan to become effective shall have been taken.

B.     *Effect of Non-Occurrence of Conditions Precedent to Consummation.*

If the Effective Date does not occur, then:  (1) this Plan will be null and void in all respects; and (2) nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by an Entity, (b) prejudice in any manner the rights of any Debtor or any other Entity, (c) constitute an admission, acknowledgment, offer, or

undertaking of any sort by any Debtor or any other Entity, or (d) constitute an Allowance of any Claim or Interest.

C.      *Waiver of Conditions Precedent.*

        The conditions to Confirmation and Consummation set forth in Article IX of this Plan, other than the condition that the Confirmation Order has been entered by the Bankruptcy Court, may be waived only by prior written consent of the Debtors and the Creditor Proponents (subject to the Proponents' Consent Rights), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article IX of this Plan, the Debtor shall immediately declare the Effective Date.  The failure of the Debtors, the Wind Down Debtors, the Wind Down Trustee, or the Creditor Proponents, as applicable, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

# ARTICLE X.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

        Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify this Plan subject to the Proponents' Consent Right or whether materially or immaterially, and seek Confirmation, in each instance, to the extent permitted under the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, subject to the Proponents' Consent Right, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court, subject to the Proponents' Consent Right, to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan. Notwithstanding the foregoing and for the avoidance of doubt, any such modification or amendments pursuant to this Article X.A shall be consistent in all material respects with the Mediation Agreement.  Any such modification or supplement shall be considered a modification of this Plan and shall be made in accordance with Article X of this Plan.

B.      *Effect of Confirmation on Modifications.*

        Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan.*

        The Debtors reserve the right, with the consent of the Creditor Proponents, to revoke or withdraw the Plan with respect to one or more of the Debtors before the Confirmation Date or the

Effective Date and to File subsequent plans under chapter 11 of the Bankruptcy Code.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then: (1) the Plan with respect to such Debtor shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with respect to such Debtor, shall be deemed null and void; and (3) nothing contained in the Plan with respect to such Debtor shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

Notwithstanding any provision of this Article X or otherwise in this Plan to the contrary, the Debtors and any of the Debtors' directors, managers, and officers shall maintain the right to exercise their fiduciary duties in accordance with applicable law.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105 and 1142 of the Bankruptcy Code, including jurisdiction to:

1.	allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.	decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.	resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to the Retained Causes of Action;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enforce any order for the sale of property pursuant to sections 361, 1123, or 1146(a) of the Bankruptcy Code;

9.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

10.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.E of this Plan;

14.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Wind Down Trust Agreement, the Litigation Trust Agreement, the Vida Exit Financing Facility Documents, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     decide and resolve all matters related to the issuance of New WDT Interests;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine matters concerning section 1145 of the Bankruptcy Code;

22.     hear and determine all disputes involving the existence, nature, or scope of the Debtor Release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

23.     enforce all orders previously entered by the Bankruptcy Court;

24.     hear any other matter not inconsistent with the Bankruptcy Code;

25.     enter an order concluding or closing the Chapter 11 Cases; and

26.     Enforce the injunction, release, and exculpation provisions set forth in <u>Article VIII</u> hereof.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to <u>Article IX</u> of this Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims against and Interests in the Debtors shall be fixed, adjusted, or

compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

B.    *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees.*

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtors or Wind Down Debtors.  Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law and the Debtors and Wind Down Debtors shall continue to file reports to show the calculation of such fees for the Debtors' Estates until the Chapter 11 Cases are closed under section 350 of the Bankruptcy Code.  Each and every one of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

D.    *Dissolution of the Bondholder Committee.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases (including the Bondholder Committee) shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; *provided, however,* that following the Effective Date, the Bondholder Committee will continue in existence and have standing and a right to be heard for the following limited purposes: (1) adjudication of any final fee applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with the Plan; and (2) any (a) appeals of the Confirmation Order, and (b) any appeals, prosecution, or defense of any Causes of Action or proceedings with respect to which the Bondholder Committee is a party as of the Effective Date.  Following the completion of the Bondholder Committee's remaining duties set forth above, the Bondholder Committee will be dissolved, and the retention or employment of the Bondholder Committee's respective attorneys, accountants and other agents will terminate without further notice to, or action by, any Entity. The Wind Down Debtors shall be responsible for fees incurred in connection with the foregoing purposes only and shall be paid in the ordinary course from the Professional Fee Escrow Account without need for Bankruptcy Court approval.

E.    *Reservation of Rights.*

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor, any Wind Down Debtor, the Wind Down Trustee, the Wind Down Trust, or the Litigation Trust with respect to the Plan or any other Wind Down

Document shall be or shall be deemed to be an admission or waiver of any rights of any such parties with respect to the Holders of Claims or Interests before the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

> GWG Holdings, Inc.
> Attn.: Jeffrey S. Stein
> 325 N. St. Paul Street, Suite 2650
> Dallas, Texas 7520
> E-mail address: jstein@steinadvisorsllc.com
>
> with copies to:
>
> Jackson Walker LLP
> 1401 McKinney Street, Suite 1900
> Houston, Texas 77010
> Attention:  Kristhy M. Peguero and Matthew D. Cavenaugh
> Email addresses:  kpeguero@jw.com, mcavenaugh@jw.com
>
> -and-
>
> Mayer Brown LLP
> 700 Louisiana Street, Suite 3400
> Houston, Texas 77002-3000
> Attention:  Charles S. Kelley
> Email address:  ckelley@mayerbrown.com
>
> -and-
>
> Mayer Brown LLP
> 71 South Wacker Drive
> Chicago, Illinois 60606
> Attention:  Thomas S. Kiriakos and Louis Chiappetta
> Email addresses:  tkiriakos@mayerbrown.com, lchiappetta@mayerbrown.com
>
> -and-

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Attention:  Adam Paul and Lucy Kweskin
Email addresses:  apaul@mayerbrown.com, lkweskin@mayerbrown.com

After the Effective Date, the Wind Down Debtors and the Wind Down Trustee have authority to send a notice to Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Wind Down Debtors and the Wind Down Trustee are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.    *Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors, the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, and the Litigation Trust, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan.

I.    *Term of Injunctions or Stays.*

**Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order (including the injunction set forth in <u>Article VIII.G</u> of this Plan) shall remain in full force and effect in accordance with their terms.**

J.    *Entire Agreement.*

Except as specifically set forth herein, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations made in these Chapter 11 Cases, all of which have become merged and integrated into the Plan.

K.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Wind Down Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan and any previous plan.

L.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://www.donlinrecano.com/clients/gwg or the Bankruptcy Court's website at www.txsb.uscourts.gov.

M.      *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

N.      *Closing of Chapter 11 Cases.*

The Wind Down Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided* that, following the Effective Date, the Wind Down Trustee may seek to close certain of the Chapter 11 Cases that have been fully administered, notwithstanding the fact that the reconciliation of Claims is ongoing.

O.      *Creditor Default.*

An act or omission by a Holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan and upon such an event of default, the Wind Down Trust may pursue any appropriate remedies under applicable law.

P.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

Houston, Texas
March 27, 2023

Respectfully Submitted,

*/s/  Jeffrey S. Stein*
Jeffrey S. Stein as Chief Restructuring Officer,
President, Chief Executive Officer and
Independent Director of GWG Holdings, Inc.

*/s/ Kade Baird*
Kade Baird, as designated representative of Bank
of Utah, as Indenture Trustee and solely in its
capacity as Chair of the Official Committee of
Bondholders of GWG Holdings, Inc., *et al.*

*/s/ Richard S. Schmidt*
Richard S. Schmidt, as Restructuring Manager of
L Bond Management, LLC

**JACKSON WALKER LLP**

Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Email:          kpeguero@jw.com
                    mcavenaugh@jw.com

*Co-Counsel for the Debtors and Debtors in
Possession*

**MAYER BROWN LLP**

Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:    (713) 238-3000
Email:          ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
Jamie R. Netznik (admitted *pro hac vice*)
Lisa Holl Chang
Joshua R. Gross (admitted *pro hac vice*)
Jade Edwards
71 S. Wacker Drive
Chicago, IL 60606
Telephone:    (312) 782-0600
Email:          tkiriakos@mayerbrown.com
                    lchiappetta@mayerbrown.com
                    jnetznik@mayerbrown.com
                    lhollchang@mayerbrown.com
                    jgross@mayerbrown.com
                    jmedwards@mayerbrown.com

-and-

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
Ashley Anglade
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:    (212) 506-2500
Email:          apaul@mayerbrown.com
                    lkweskin@mayerbrown.com
                    aanglade@mayerbrown.com

*Counsel for the Debtors and Debtors in
Possession*

**PORTER HEDGES LLP**

Eric M. English (TX Bar No. 24062714)
M. Shane Johnson (TX Bar No. 24083263)
1000 Main Street, 36th Floor
Houston, Texas 77002-2764
Telephone:  (713) 226-6000
Facsimile:  (713) 226-6248
eenglish@porterhedges.com
sjohnson@porterhedges.com

*Counsel to Creditor Proponent, the Official
Committee of Bondholders of GWG Holdings,
Inc., et al.*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Lacy M. Lawrence
State Bar No. 24055913; S.D. Tex. No. 995675
2300 N. Field St., Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email:    llawrence@akingump.com

-and-

Michael S. Stamer (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Jason P. Rubin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Email:    mstamer@akingump.com
          aqureshi@akingump.com
          jrubin@akingump.com

-and-

Scott L. Alberino (admitted *pro hac vice*)
Benjamin L. Taylor (admitted *pro hac vice*)
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
Phone:  (202) 887-4000
Fax:  (202) 887-4288
Email:    salberino@akingump.com
          taylorb@akingump.com

*Counsel to Creditor Proponent, the Official
Committee of Bondholders of GWG Holdings,
Inc., et al.*

**OKIN ADAMS LLP**

Matthew S. Okin (TX Bar No. 00784695)
David L. Curry, Jr. (TX Bar No. 24065107)
Edward A. Clarkson, III (TX Bar No. 24059118)
1113 Vine Street, Suite 240
Houston, Texas  77002
Tel: (713) 228-4100
Fax: (346) 247-7158
Email:  mokin@okinadams.com
   dcurry@okinadams.com
   eclarkson@okinadams.com

*Counsel to Creditor Proponent, L Bond*
*Management, LLC*

**KATTEN MUCHIN ROSENMAN LLP**

Steven J. Reisman (*pro hac vice*)
Cindi M. Giglio (*pro hac vice*)
Marc B. Roitman (*pro hac vice*)
Jerry L. Hall (*pro hac vice*)
50 Rockefeller Plaza
New York, NY 10020
Telephone: (212) 940-8800
Email: sreisman@katten.com
        cgiglio@katten.com
        marc.roitman@katten.com
        jerry.hall@katten.com

-and-

Daniel Barnowski (*pro hac vice*)
2900 K Street NW, Suite 200
Washington, DC 20007
Telephone: (202) 625-3500
Email: dan.barnowski@katten.com

*Counsel to Jeffrey S. Stein and Anthony R.*
*Horton, in their capacity as members of the*
*Investigations Committee and Special*
*Committee of the Board of Directors of*
*GWG Holdings, Inc.*