IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GWG Holdings, Inc., *et al.*,[1] | ) ) ) | Case No. 22-90032 (MI) |
| Debtors. | ) ) | Jointly Administered |

## NOTICE OF FILING OF PLAN SUPPLEMENT

On April 21, 2023, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order, as well as a supplemental order with minor modifications [Dkt. Nos. 1681, 1692] (collectively, the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted By the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents* [Dkt. No. 1678] (the "Plan");[2] (b) approving the *Disclosure Statement for the Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted By the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents* [Dkt. No. 1682] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) scheduling certain dates with respect thereto.

As contemplated by the Plan and the Disclosure Statement Order, the Debtors hereby file this Plan Supplement, which includes a draft of the following documents (each as defined in the Plan, and certain of which continue to be negotiated and will be filed in substantially final form prior to the Effective Date), as may be modified, amended, or supplemented from time to time:[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (none); and GWG DLP Funding Holdings VI, LLC (none).  The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201.  Further information regarding the Debtors and these Chapter 11 Cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

[2] Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

[3] Note that the form of New WDT Documents are intentionally omitted because the key provisions are instead set forth in the form Wind Down Trust Agreement.  Accordingly, please refer to Exhibit A, the form of Wind Down Trust Agreement, for the relevant information.

| Exhibit | Description |
|---------|-------------|
| A | Form of Wind Down Trust Agreement (which includes the identity of the Wind Down Trustee and the Wind Down Amount) |
| B | Form of Litigation Trust Agreement[4] (which includes the identity of the Litigation Trustee) |
| C | Schedule of Retained Causes of Action |
| D | Schedule of Assumed Executory Contracts and Unexpired Leases |
| E | Form of Notice of Effective Date |

**Notwithstanding the foregoing, prior to the Effective Date and in accordance with the terms of the Plan (and subject to the Proponents' Consent Right), the Debtors may modify, amend, supplement, restate, or withdraw any portion of the Plan Supplement. To the extent any material changes are made, the Debtors may File revised versions of the attached Plan Supplement documents prior to the Effective Date.**

The deadline for filing objections to the Plan is **May 31, 2023 at 11:59 p.m., prevailing Central Time** (the "Plan Objection Deadline"). Any objection to the Plan *must:* (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state the name, address, phone number, and e-mail address of the objecting party and the amount and nature of the Claim or Interest of such Entity, if any; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (e) be Filed with the Court and served upon the applicable notice parties so as to be *actually received* on or before the Plan Objection Deadline.

**A hearing to consider confirmation of the Plan and any objections thereto (the "Confirmation Hearing") will be held on June 15, 2023 at 1:30 p.m. (prevailing Central Time) before Marvin Isgur, United States Bankruptcy Judge, in Courtroom 404, 4th floor, 515 Rusk, Houston, TX 77002.**

The Plan, the Disclosure Statement, the Plan Supplement, as well as further information regarding these Chapter 11 Cases are available free of charge at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

---

[4] The Litigation Trust Agreement is the form agreed upon by the Debtors and the Bondholder Committee. The Debtors understand that LBM may file an additional version of the Litigation Trust Agreement pursuant to the dispute resolution mechanism set forth in Article I.G of the Plan.

Houston, Texas
May 24, 2023

*/s/ Kristhy M. Peguero*_____

**JACKSON WALKER LLP**
Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   (713) 752-4200
Email: kpeguero@jw.com
Email: mcavenaugh@jw.com


*Co-Counsel to the Debtors and*
*Debtors in Possession*

**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 2400
Houston, TX 77002-2730
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

-- and --

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-0600
Email: tkiriakos@mayerbrown.com
Email: lchiappetta@mayerbrown.com

-- and --

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500
Email: apaul@mayerbrown.com
Email: lkweskin@mayerbrown.com

*Counsel for the Debtors and*
*Debtors in Possession*

753986522.2

**<u>Certificate of Service</u>**

I certify that on May 24, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kristhy M. Peguero*
Kristhy M. Peguero

753986522.2

## **EXHIBIT A**

**Form of Wind Down Trust Agreement**

[FORM AGREEMENT]

**WIND DOWN TRUST AGREEMENT OF**

**[GWG WIND DOWN TRUST][1]**

**DATED AS OF [●], 2023**

**BY AND AMONG**

**ELIZABETH C. FREEMAN, AS WIND DOWN TRUSTEE, and**

**THE DEBTOR PARTIES HERETO**

---

[1] Note to Draft: Name of trust to be determined.

## TABLE OF CONTENTS

**Page**

ARTICLE I DECLARATION OF TRUST .................................................................. 2

1.1    Creation of Trust ................................................................................. 2

1.2    Purpose of Wind Down Trust ............................................................ 2

1.3    Transfer of Wind Down Trust Assets ................................................ 2

1.4    Appointment and Acceptance of Wind Down Trustee ...................... 3

1.5    Liquidation of Wind Down Trust Assets ........................................... 4

1.6    No Reversion to Debtors .................................................................... 4

1.7    Incidents of Ownership ...................................................................... 4

1.8    Privileges ............................................................................................ 4

1.9    Litigation Trust .................................................................................. 6

ARTICLE II WIND DOWN TRUST BENEFICIARIES ....................................... 7

2.1    Rights of Wind Down Trust Beneficiaries ....................................... 7

2.2    New WDT Interests ............................................................................ 8

2.3    Evidence of New WDT Interests ....................................................... 9

2.4    Transfers of New WDT Interests ....................................................... 9

2.5    Limited Liability .............................................................................. 11

2.6    Conflicting Claims ........................................................................... 11

2.7    Requirement of Undertaking ............................................................ 11

2.8    Negative Covenants ......................................................................... 12

2.9    Separate Legal Entity. ...................................................................... 13

ARTICLE III DURATION AND TERMINATION OF WIND DOWN TRUST ..................... 14

3.1    Duration ........................................................................................... 14

3.2    Dissolution of the Wind Down Trust ............................................... 14

3.3    Continuance of Wind Down Trust for Winding Up ......................... 15

ARTICLE IV ADMINISTRATION OF THE WIND DOWN TRUST ......................... 15

4.1    Payment of Claims, Expenses and Liabilities ................................. 15

4.2    Distributions ..................................................................................... 15

4.3    Compliance with Laws .................................................................... 22

4.4    Fiscal Year ....................................................................................... 22

4.5    Cash Payments. ................................................................................ 22

## TABLE OF CONTENTS
(continued)

**Page**

| 4.6 | Insurance | 23 |
| 4.7 | Reports | 23 |
| ARTICLE V TAX MATTERS | | 24 |
| 5.1 | Wind Down Trustee's Tax Power for Debtors | 24 |
| 5.2 | Wind Down Trust Assets Treated as Owned by Wind Down Trust Beneficiaries | 24 |
| 5.3 | Wind Down Trust Tax Status | 25 |
| 5.4 | Tax Reporting | 25 |
| 5.5 | Tax Withholdings by Wind Down Trustee | 27 |
| ARTICLE VI POWERS OF AND LIMITATIONS ON THE WIND DOWN TRUSTEE | | 27 |
| 6.1 | Wind Down Trustee | 27 |
| 6.2 | Powers and Duties of the Wind Down Trustee | 28 |
| 6.3 | Limitations on Wind Down Trustee | 30 |
| 6.4 | Compensation and Expenses of the Wind Down Trustee | 31 |
| 6.5 | Actions Taken on Other Than a Business Day | 31 |
| 6.6 | Agents, Employees and Professionals | 31 |
| 6.7 | Investment of Wind Down Trust Monies | 31 |
| 6.8 | Termination | 32 |
| ARTICLE VII SUCCESSOR WIND DOWN TRUSTEE | | 32 |
| 7.1 | Resignation | 32 |
| 7.2 | Removal | 32 |
| 7.3 | Effect of Resignation or Removal | 33 |
| 7.4 | Appointment of Successor | 33 |
| 7.5 | Acceptance of Appointment by Successor Wind Down Trustee | 33 |
| ARTICLE VIII RELIANCE, LIABILITY AND INDEMNIFICATION | | 34 |
| 8.1 | Reliance by the Wind Down Trustee | 34 |
| 8.2 | Liability to Third Persons | 34 |
| 8.3 | Nonliability of Wind Down Trustee for Acts of Others | 34 |
| 8.4 | Exculpation | 35 |
| 8.5 | Limitation of Liability | 35 |

## TABLE OF CONTENTS
### (continued)

**Page**

| | | |
|---|---|---|
| 8.6 | Indemnity | 35 |
| ARTICLE IX | MISCELLANEOUS PROVISIONS | 36 |
| 9.1 | Governing Law | 36 |
| 9.2 | Jurisdiction | 36 |
| 9.3 | Severability | 36 |
| 9.4 | Notices | 36 |
| 9.5 | Headings | 37 |
| 9.6 | Controlling Document | 37 |
| 9.7 | Entire Agreement | 37 |
| 9.8 | Amendment | 37 |
| 9.9 | Confidentiality | 37 |
| 9.10 | Meanings of Other Terms | 37 |
| 9.11 | Counterparts | 37 |
| 9.12 | Intention of Parties to Establish Wind Down Trust | 37 |
| 9.13 | Waiver of Jury Trial | 38 |

753518146.17

### WIND DOWN TRUST AGREEMENT OF [GWG WIND DOWN TRUST]

THIS WIND DOWN TRUST AGREEMENT OF [GWG WIND DOWN TRUST], dated as of [●], 2023 (this "Agreement"), is by and among GWG Holdings, Inc., GWG Life, LLC, GWG Life USA, LLC, GWG DLP Funding IV, LLC, GWG DLP Funding VI, LLC, and GWG DLP Funding Holdings VI, LLC (collectively, the "Debtors"), as debtors and debtors-in-possession, and Elizabeth C. Freeman, solely in her capacity as trustee (together with any successor or additional trustee appointed under the terms of this Agreement, the "Wind Down Trustee") of the [GWG Wind Down Trust] established hereby and pursuant to the Plan (the "Wind Down Trust"). Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the *Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted By the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents*, dated April 20, 2023 [Dkt. No. 1678], as confirmed (including all exhibits thereto, as the same may be further amended, modified or supplemented from time to time, the "Plan").

A.     The Debtors are debtors in jointly administered cases under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

B.     On April 20, 2023, the Debtors filed the Plan [Dkt. No. 1678], and filed the Disclosure Statement relating to the Plan [Dkt. No. 1698] on April 24, 2023 with the Bankruptcy Court (as the same was and may be further amended, modified or supplemented thereafter in accordance with its terms and applicable law);

C.     On [●], 2023, the Bankruptcy Court entered an order confirming the Plan [Dkt. No. [●]] (the "Confirmation Order");

D.     The Plan provides for, among other things, the creation of a trust on the Effective Date for the sole purpose of liquidating the Wind Down Trust Assets and making distributions contemplated under the Plan, with no objective or authority to continue or engage in the conduct of any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wind Down Trust and the Plan;

E.     This Agreement is entered into to establish the Wind Down Trust pursuant to the Confirmation Order and the Plan;

F.     The Wind Down Trust is intended to qualify as a "liquidating trust" under section 301.7701-4(d) of the regulations promulgated under the United States federal income tax code (the "Treasury Regulations") and to generally be in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and as such, as a "grantor trust" for United States federal income tax purposes with the holders of New WDT Interests treated as the grantors and owners of the Wind Down Trust;

G.     The Wind Down Trust was established for the benefit of the holders of New WDT Interests (collectively, the "Wind Down Trust Beneficiaries"); and

H.     The duties and powers of the Wind Down Trustee shall include all powers necessary to implement the Plan and to liquidate and monetize the Wind Down Trust Assets, including, without limitation, the duties and powers listed in the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, the parties hereto hereby agree as follows:

# ARTICLE I

## DECLARATION OF TRUST

1.1     Creation of Trust. The Debtors and the Wind Down Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code, hereby create the Wind Down Trust, which shall bear the name "GWG Wind Down Trust." In connection with the exercise of the Wind Down Trustee's power hereunder, the Wind Down Trustee may use this name or such variation thereof as the Wind Down Trustee sees fit.

1.2     Purpose of Wind Down Trust. The sole purpose of the Wind Down Trust is to liquidate the Wind Down Trust Assets with a view towards maximizing the value of such assets for the benefit of Wind Down Trust Beneficiaries, and promptly distributing such liquidation proceeds in accordance with the terms of this Agreement, the Confirmation Order and the Plan, with no objective to continue or engage in the conduct of a trade or business or to make any investments other than those permitted under Section 6.8. The Wind Down Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth in the Plan, the Confirmation Order or this Agreement. The Wind Down Trust is: (a) intended to qualify as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations; (b) to be exempt from the registration requirements of the Investment Company Act of 1940, as amended (the "Investment Company Act"); and (c) (subject to Section 2.4(a) hereof) not be subject to the registration requirements of the Securities and Exchange Act of 1934, as amended (the "Exchange Act") . The Wind Down Trust shall be held out as a trust that is engaged in the activities referenced in this Section 1.2 in furtherance of liquidation and not as an "investment company" under the Investment Company Act or any other similar investment vehicle.

1.3     Transfer of Wind Down Trust Assets.

(a)     On the Effective Date, and in accordance with the Bankruptcy Code and pursuant to the terms of the Plan and the Confirmation Order, except as otherwise provided in the Confirmation Order, all title and interest in all of the Wind Down Trust Assets (including the Policy Portfolio Equity Interests) shall irrevocably and automatically vest in the Wind Down Trust, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances for the benefit of the Wind Down Trust Beneficiaries, except for those Liens, Claims, charges, or other encumbrances arising from or related to the Vida Exit Financing Facility. Upon the transfer of the Wind Down Trust Assets to the Wind Down Trust, the Debtors shall have no interest in or with respect to the Wind Down Trust Assets. Upon delivery of the Wind Down Trust Assets to the Wind Down Trust, the Debtors and their predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Wind Down Trust Assets or the Wind Down Trust in accordance with the Plan.

(b)     On the Effective Date, the Wind Down Amount, in the estimated amount of $14,000,000.00,[2] shall be transferred to the Wind Down Trust to initially fund expenses related to the Wind Down Transactions and the other activities to be undertaken by the Wind Down Trust pursuant to this Agreement, the Confirmation Order, and the Plan.  The Wind Down Trustee shall be entitled to use, and shall use, the Wind Down Amount and, subject to Section 1.9(b), any subsequent monetization proceeds from the Wind Down Trust (collectively, the "Funding") to fund the payment of all expenses related to the Wind Down Trust, including in the performance of the Wind Down Trustee's duties in connection therewith; provided, that the Wind Down Trustee shall use reasonable commercial efforts to use the Funding in accordance with the Wind Down Budget; provided, further, that, notwithstanding the foregoing, the Wind Down Trustee may use the Funding as the Wind Down Trustee deems necessary, in its sole and reasonable discretion, not in accordance with the Wind Down Budget but otherwise in accordance with this Agreement, including, without limitation, to fund the payment of expenses relating to the Wind Down Trustee having taken action to modify or remove any contractual restrictions on transferability of the New WDT Interests under Section 2.4(a) hereof.[3]

(c)     The transfer of the Wind Down Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(d)     The Debtors, the Wind Down Trustee and any party under the control of such parties hereby agree to execute any documents or other instruments and shall take all other steps as necessary or advisable to cause all right, title and interest to the Wind Down Trust Assets to be transferred to the Wind Down Trust in accordance with the Plan, the Confirmation Order and this Agreement.

1.4     Appointment and Acceptance of Wind Down Trustee. As set forth in the Plan and the Confirmation Order, the Wind Down Trustee is hereby appointed as the Wind Down Trustee to serve as the initial Wind Down Trustee under the Plan, the Confirmation Order and this Agreement. The Wind Down Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The Wind Down Trustee accepts the Wind Down Trust created by this Agreement in accordance with the terms of the Plan, the Confirmation Order and this Agreement and the grant, assignment, transfer, conveyance and delivery to the Wind Down Trust, on behalf, and for the benefit, of the Wind Down Trust Beneficiaries, by the Debtors of all of their respective right, title and interest in the Wind Down Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan and in the Confirmation Order. The Wind Down Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Wind Down Trust and not otherwise. The Wind Down Trustee shall have the authority to bind the Wind Down Trust within the limitations set forth in this Agreement, the Confirmation Order and the Plan. For all purposes hereunder, the Wind Down Trustee shall be acting in her capacity as Wind Down Trustee, and not individually or otherwise. The Wind Down

---

[2] Note to Draft:  The Wind Down Amount is estimated at assumed exit from Chapter 11 (June 15, 2023).  The actual amount is dependent on several variables including, but not limited to, the Debtors' actual operating disbursements and the Vida DIP Financing Facility funding prior to exit from Chapter 11.

[3] Note to Draft:  This Section 1.3(b) remains subject to ongoing discussions between the Creditor Proponents and the Debtors with respect to the Wind Down Amount and the Wind Down Budget.

3

Trustee shall have no liability hereunder in her individual capacity, subject to Section 8.4 of this Agreement.

1.5     Liquidation of Wind Down Trust Assets. The Wind Down Trustee shall, in a commercially reasonable manner and in the exercise of its reasonable business judgment and subject to the terms of the Plan, the Confirmation Order and this Agreement, liquidate and covert to Cash all of the Wind Down Trust Assets and make timely distributions of Cash to the Wind Down Trust Beneficiaries pursuant to the terms of this Agreement. The Wind Down Trustee shall, in the exercise of her reasonable business judgment, liquidate the Wind Down Trust Assets in an effort to maximize the value of the Wind Down Trust Assets and the Wind Down Trustee shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations. In furtherance of the foregoing objectives, but subject to this Agreement, the Confirmation Order and the Plan, the Wind Down Trustee, on behalf of the Wind Down Trust and in the exercise of her reasonable judgment, shall have the discretion to enter into, consummate, settle, or otherwise resolve or make all determinations with respect to the liquidation and monetization of all of the Wind Down Trust Assets. The Wind Down Trustee may incur any reasonable expenses in connection with the liquidation of the Wind Down Trust Assets in connection with the administration of the Wind Down Trust and, to the extent that any Funding is available, such expenses shall be deducted from the Funding; provided, however, that to the extent that the Funding is insufficient, such expenses shall be deducted from the Wind Down Trust Assets.

1.6     No Reversion to Debtors. In no event shall any part of the Wind Down Trust Assets revert or be distributed to any Debtor.

1.7     Incidents of Ownership. The Wind Down Trust Beneficiaries shall be the sole beneficiaries of the Wind Down Trust, and the Wind Down Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including those powers set forth in Section 6.2.

1.8     Privileges.

(a)     Subject to the terms of the Plan and the Confirmation Order, all attorney-client privileges and other privileges, immunities or protections from disclosure to the extent belonging to the Debtors related in any way to the Wind Down Trust Assets and the purpose of the Wind Down Trust (the "Privileges," and such information, the "Transferred Privileged Information") are hereby transferred and assigned to the Wind Down Trust. The Transferred Privileged Information shall include documents and information of all manner, whether oral, written or digital, and whether or not previously disclosed or discussed. For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest or similar agreement. The Wind Down Trust's receipt of such Privileges shall not operate as a waiver of any other privileges or immunities possessed or retained by the Debtors, the Wind Down Debtors, or the Litigation Trust, as applicable.

(b)     The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information in the Wind Down Trust, consistent with

4

sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Wind Down Trust and the Wind Down Trust Beneficiaries, subject to and in accordance with the Plan and the Confirmation Order. The Wind Down Trust shall have the authority and discretion, in conjunction with the Litigation Trust, to maintain the Privileges and keep the Transferred Privileged Information confidential, or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Transferred Privileged Information, subject to and in accordance with the Plan and the Confirmation Order. [Notwithstanding the foregoing, to the extent the Wind Down Trust and the Litigation Trust disagrees with respect to waiving any Privileges, the [●]'s view shall control.][4]

(c)      The Debtors and the Wind Down Debtors, as applicable, agree to take all necessary actions to effectuate the transfer of such Privileges, and to provide to the Wind Down Trust without the necessity of a subpoena all Transferred Privileged Information in their respective possession, custody or control. The Wind Down Trust is further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Transferred Privileged Information from any persons, including attorneys, professionals, consultants and experts, and no such person may object to the production to the Wind Down Trust of such Transferred Privileged Information on the basis of a Privilege to the extent of the assertion of any rights of the Debtors. For the avoidance of doubt, this Subsection is subject in all respects to Section 1.8(a).

(d)      Pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Wind Down Trust or any of its respective employees, professionals or representatives, or by disclosure of such Transferred Privileged Information between the Debtors, on the one hand, and the Wind Down Trust, on the other hand, or any of their respective employees, professionals or representatives.

(e)      If a Debtor, a Wind Down Debtor, the Wind Down Trust, the Litigation Trust, or any of the foregoing parties' respective employees, professionals or representatives or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information. In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Wind Down Trust of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

(f)      As provided in the Plan and for the avoidance of doubt, notwithstanding any language to the contrary herein, solely with respect to communications that occurred on or after April 20, 2022, each of the Independent Directors in their capacity as such, the DLP Independent Directors in their capacity as such, and David F. Chavenson in his capacity as a former member of the Special Committee, shall not have any of their respective privileged and confidential documents, communications or information transferred (or

---

[4] [Note to Draft]:  Process for resolving conflicts between the Wind Down Trust and Litigation Trust with respect to privilege waiver subject to ongoing discussion.

753518146.17

deemed transferred) to the Wind Down Debtors, the Wind Down Trustee, the Wind Down Trust, the Litigation Trust, the Litigation Trustee, any liquidation trust that may be formed or its trustee or board, or any related party of any of the foregoing Entities, or any other person or Entity. Further, none of the forgoing documents, communications or information shall be, or be deemed, Transferred Privileged Information.

1.9     Litigation Trust.

(a)     For the avoidance of doubt, notwithstanding any provision to the contrary in this Agreement, on the Effective Date, in accordance with the Bankruptcy Code and pursuant to the terms of the Plan and the Confirmation Order, as set forth in and subject to the terms and conditions of the Litigation Trust Agreement, all title and interest in all of the Initial Litigation Trust Assets (as defined in the Litigation Trust Agreement) shall automatically vest in the Litigation Trust, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  The Initial Litigation Trust Assets shall not be, and shall not be deemed, Wind Down Trust Assets, subject to Section 4.2 regarding distribution of Litigation Trust Amounts. The act of transferring the Initial Litigation Trust Assets to the Litigation Trust shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right.

(b)     The Wind Down Trust (or the Wind Down Trustee on behalf of the Wind Down Trust, to the extent required by applicable law) shall be the sole beneficiary of the Litigation Trust. In accordance with the Plan and the Confirmation Order, all proceeds of the Litigation Trust received by the Wind Down Trust from the Litigation Trust (the "Litigation Trust Amounts") shall be used solely to make the distributions contemplated by Section 4.2(c) and the Litigation Trust Amounts may not be used for any other purpose without the approval of the Bankruptcy Court or the written consent of the Litigation Trustee (which consent may not be unreasonably withheld, conditioned or delayed).

(c)     Subject to and in accordance with the Plan and the Confirmation Order, at any time after the Effective Date, upon reasonable request of the Litigation Trustee, the Wind Down Trustee shall provide the Litigation Trustee with any of the Debtors' or the Wind Down Debtors' books, records, and files in the Wind Down Trust's or Wind Down Trustee's possession, custody, or control, and the Wind Down Trustee [shall], in good faith, provide such Transferred Privilege Information of the Debtors as is in the Wind Down Trustee's possession that relates to the Litigation Trustee's evaluation and prosecution of the Retained Causes of Action. The Wind Down Trustee shall use commercially reasonable efforts to respond to such requests as soon as reasonably practicable. The Wind Down Trustee, at such reasonable times and upon such reasonable notice, shall be available to confer with the Litigation Trustee with respect to the commencement of any litigation with respect to the Retained Causes of Action, it being understood that the ultimate decision as to whether to commence any such litigation shall be in the sole discretion of the Litigation Trustee.

## ARTICLE II

## WIND DOWN TRUST BENEFICIARIES

2.1     Rights of Wind Down Trust Beneficiaries.

(a)     The Wind Down Trust Beneficiaries shall be all current holders of the New WDT Interests. Each Wind Down Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Wind Down Trust Beneficiary hereunder according to the terms of its New WDT Interests as set forth in this Agreement, the Confirmation Order and the Plan. The New WDT Interests shall not have consent or voting rights or otherwise confer on the Wind Down Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Wind Down Trustee in connection with the Wind Down Trust. The interests of a Wind Down Trust Beneficiary are hereby declared and shall be in all respects personal property. A Wind Down Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Wind Down Trust or the Wind Down Trust Assets or to any right to call for a partition or division of such assets or to require an accounting. No surviving spouse, heir or devisee of any deceased Wind Down Trust Beneficiary shall have any right of dower, homestead or inheritance, or of partition, or any other right, statutory or otherwise, in the Wind Down Trust Assets, but the whole title to the Wind Down Trust Assets shall be vested exclusively in the Wind Down Trust and the sole interest of the Wind Down Trust Beneficiaries shall be the rights and benefits given to such person under this Agreement, the Confirmation Order and the Plan.

(b)     The Debtors and the Wind Down Debtors, as applicable, shall provide the Wind Down Trustee with any books and records associated with ownership of the L Bonds held through DTC as well as outside of DTC including, without limitation, to permit the Wind Down Trustee to make distributions and provide notifications to the Wind Down Trust Beneficiaries as contemplated by this Agreement or to permit the Wind Down Trustee to fulfill the duties and obligations contemplated in this Agreement.  If deemed reasonably appropriate by the Wind Down Trustee, to assist the Wind Down Trustee in determining the actual names and addresses of the Wind Down Trust Beneficiaries to the extent necessary or desirable and in addition to information made available in the books and records of the Debtors and Wind Down Debtors associated with the ownership of the L Bonds, the Wind Down Trustee may (but shall not be required to) deliver a notice to the Wind Down Trust Beneficiaries seeking additional information as deemed reasonably necessary or desirable by the Wind Down Trustee. Such notice may include a form for a Wind Down Trust Beneficiary to complete in order to be registered as a Wind Down Trust Beneficiary and to receive distributions under the Wind Down Trust, provided, that the Wind Down Trustee shall not seek information from Wind Down Trust Beneficiaries that as of the Effective Date held L Bonds in "street name" through DTC if distributions and notifications can be made by the Wind Down Trustee to such Wind Down Trust Beneficiaries through DTC. Such form may request the Wind Down Trust Beneficiary's federal taxpayer identification number or social security number, or other tax information, if the Wind Down Trustee determines that such information is necessary to fulfill the Wind Down Trust's tax reporting and withholding obligations. A Wind Down Trust Beneficiary

7

may, after the Effective Date, select an alternative mailing address by notifying the Wind Down Trustee in writing of such alternative distribution address. Absent receipt of such notice, the Trustee may not be obligated to recognize any such change of address. Such notification shall be effective only upon receipt by the Wind Down Trustee.

2.2     <u>New WDT Interests</u>.

(a)     In accordance with the Confirmation Order and the Plan, the Wind Down Trust shall establish the following classes of beneficial interests in the Wind Down Trust and issue them to the Wind Down Trust Beneficiaries as follows:

(i)     "<u>New Series A1 WDT Interests</u>" shall be issued to the Holders of Allowed Class 3 Bond Claims (other than LBM Subordinated Claims), in an amount equal to the aggregate dollar amount of the outstanding Allowed Bond Claims (less the amount of the Allowed LBM Subordinated Claims) as of the Petition Date;

(ii)     "<u>New Series A2 WDT Interests</u>" shall be issued to the Holders of Allowed LBM Subordinated Claims in Class 3 in an amount equal to the aggregate dollar amount of the Allowed LBM Subordinated Claims;

(iii)     "<u>New Series B WDT Interests</u>" shall be issued to the Holders of Class 4(a) Allowed General Unsecured Claims, in an amount equal to the aggregate dollar amount of Allowed Class 4(a) General Unsecured Claims as of the Effective Date;

(iv)     "<u>New Series C WDT Interests</u>" shall be issued to the Holders of Allowed Class 8 Series 1 Preferred Interests, in an amount equal to the aggregate dollar amount of Allowed Class 8 Series 1 Preferred Interests (based on each Series 1 Preferred Interest having an initial stated value of $1,000.00 per share);

(v)     "<u>New Series D WDT Interests</u>" shall be issued to the Holders of Allowed Class 9 Series 2 Preferred Interests, in an amount equal to the aggregate dollar amount of Allowed Class 9 Series 2 Preferred Interests (based on each Series 2 Preferred Interest having an initial stated value of $1,000.00 per share); and

(vi)     "<u>New Series E WDT Interests</u>" shall be issued to the Holders of Allowed Class 10 Existing Common Stock, in a number equal to the aggregate number of shares of Allowed Class 10 Existing Common Stock.

(b)     The New Series A1 WDT Interests and the New Series A2 WDT Interests shall accrue interest on the outstanding amounts thereof at a rate of 9.00% per annum, which outstanding amounts shall be reduced to the extent principal payments have been distributed pursuant to <u>Section 4.2(b)(i)</u>, <u>(ii)</u> or <u>(iii)</u> or <u>Section 4.2(c)(i)</u>, <u>(ii)</u> or <u>(iii)(I)</u>, as the case may be. The New Series B WDT Interests shall accrue interest on the outstanding amount thereof at the Federal Judgment Rate (in effect as of the Effective Date) pursuant to 28 U.S.C. section 1961, which outstanding amounts shall be reduced to the extent principal payments have been distributed pursuant to <u>Section 4.2(b)(v)</u> or

753518146.17

Section 4.2(c)(iii)(II). Interest on the New Series A1 WDT Interests, the New Series A2 WDT Interests and the New Series B Interests (collectively, the "Interest Bearing WDT Interests") shall be payable only at the times set forth in and otherwise in accordance with Section 4.2.   Interest on the Interest Bearing WDT Interests shall accrue from and including April 20, 2022. Interest shall be computed on the basis of a 360-day year comprised of 30-day months. All dollar amounts resulting from this calculation shall be rounded to the nearest cent. Interest shall not compound and there shall be no interest that accrues on accrued and unpaid interest.

(c)     The New WDT Interests shall be issued in book-entry form in accordance with Section 2.3 in denominations of $1 and integral multiples of $1 in excess thereof; provided, however, that notwithstanding the foregoing, New Series E WDT Interests shall be issued 1-to-1 for each share of Allowed Class 10 Existing Common Stock. No fractional interests of New WDT Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of New WDT Interests that is not a whole number, the actual distribution of New WDT Interests shall be rounded as follows: (a) fractions of one-half (1/2) or greater shall be rounded to the next higher whole number; and (b) fractions of less than one-half (1/2) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized New WDT Interests to be distributed to Holders of Allowed Claims and Allowed Interests shall be adjusted as necessary to account for the foregoing rounding.

(d)     Each class of New WDT Interests shall remain outstanding until all New WDT Interests in such class shall have been either (i) repurchased by the Wind Down Trust or (ii) repaid in full including accrued interest, if applicable, in accordance with Section 4.2.  Following either of the events set forth in clauses (i) or (ii) of the preceding sentence with respect to a class of New WDT Interests, all New WDT Interests in such class shall be cancelled.

2.3     Evidence of New WDT Interests. The record holders of New WDT Interests will be evidenced by the recording of such ownership in an electronic book-entry system (the "Book Entry System") maintained either by the Wind Down Trustee or its agent. A Wind Down Trust Beneficiary shall be deemed the "holder of record" (hereinafter "holder") of such Wind Down Trust Beneficiary's New WDT Interests for purposes of all applicable United States federal and state laws, rules and regulations. The Wind Down Trustee shall, upon the written request of a holder, provide reasonably adequate documentary evidence of such holder's New WDT Interests, as indicated in the Book Entry System. The expense of providing such documentation shall be borne by the requesting holder. For the avoidance of doubt, ownership of a New WDT Interest will not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except the Book Entry System.

2.4     Transfers of New WDT Interests.

(a)     Transferability; Permitted Transferees. It is understood and agreed that the New WDT Interests shall be non-transferable and non-assignable, and may not be

Transferred (as defined below), during the term of this Agreement other than if Transferred by will, intestate succession, or otherwise by operation of law.  Any such permitted Transfer shall not be effective until appropriate notification and proof thereof is submitted to the Wind Down Trustee, and the Wind Down Trustee may continue to cause the Wind Down Trust to pay all amounts to or for the benefit of the assigning Wind Down Trust Beneficiaries until receipt of proper notification and proof of such Transfer. The Wind Down Trustee may rely upon such proof without the requirement of any further investigation. Notwithstanding the foregoing, no such permitted Transfer shall be effective if (i) such transfer or assignment would not comply with any federal or state securities laws, (ii) such transfer or assignment would subject the Wind Down Trust to additional regulatory requirements (including those under the Exchange, and the Investment Company Act) or (iii) such transfer or assignment would cause the Wind Down Trust to become a publicly traded partnership within the meaning of Section 7704(b) of the Internal Revenue Code or otherwise become an association taxable as a corporation. For purposes of this Agreement, "Transfer" means, with respect to any New WDT Interest, the transfer, sale, pledge, assignment, conveyance, gift, bequest, inheritance, grant, distribution, hypothecation or other disposition of or creation or a security interest in such New WDT Interest. Notwithstanding the foregoing, the Wind Down Trustee shall be permitted to determine in its sole discretion to take such actions that are necessary or reasonably advisable (including, without limitation, completing a registration under the Exchange Act) to modify or remove any contractual restrictions on transferability of the New WDT Interests, with any such determination by the Wind Down Trustee, and all costs associated therewith, to be deemed a determination with respect to the monetization of the Wind Down Trust Assets subject to Bankruptcy Court approval to the extent provided pursuant to Article IV.A.3 of the Plan and to be evaluated solely under a reasonable business judgment standard.   Subject to Section 9.8 hereof, the Wind Down Trustee shall be permitted to enter into amendments to this Agreement and take such actions as are necessary to effectuate any such modifications or removal of such contractual restrictions contemplated by the preceding sentence.

(b)     Book Entry System. Pursuant to the Book Entry System, the Wind Down Trustee shall maintain, or cause an agent of the Wind Down Trust to maintain, a register (which may be electronic) setting forth the names and addresses of the Wind Down Trust Beneficiaries, and the amount and class of their New WDT Interests and the interest accrued thereon from time to time and update such register when, among other things, distributions are made pursuant to Section 4.2. Any transfer or assignment of a New WDT Interest by will, intestate succession or otherwise by operation of law shall not be effective against or binding upon the Wind Down Trust unless and until such transfer or assignment is recorded in the Book Entry System, which shall be completed as promptly as practicable. The entries in the Book Entry System shall be conclusive absent manifest error, and the Wind Down Trust and the Wind Down Trustee shall treat each person whose name is recorded in the Book Entry System pursuant to the terms of this Agreement as the owner of New WDT Interests indicated therein for all purposes of this Agreement, notwithstanding notice to the contrary.

(c)     Registration. The Wind Down Trustee intends that the rights of the Wind Down Trust Beneficiaries arising under this Agreement shall not be "securities" under

applicable laws, but the Wind Down Trustee does not represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities law. If such rights constitute securities, the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws shall apply to their issuance under the Plan.

(d)     Further Limitations on Transfer. Notwithstanding any other provision in this Agreement to the contrary, the Wind Down Trustee may disregard any purported transfer or assignment of New WDT Interests by will, intestate succession or otherwise by operation of law if sufficient necessary information (as reasonably determined by the Wind Down Trustee), including applicable tax-related information, is not provided by such purported transferee or assignee to the Wind Down Trustee.

2.5     Limited Liability. No provision of this Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Wind Down Trust Beneficiary, shall give rise to any liability of such Wind Down Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, creditors, successors, representatives, employees, or equity interest holders of any Debtor, or by any other person. Wind Down Trust Beneficiaries are deemed to receive the New WDT Interests in accordance with the provisions of this Agreement, the Plan and the Confirmation Order in exchange for their Allowed Claims without further obligation or liability of any kind, but subject to the provisions of this Agreement.

2.6     Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a New WDT Interest, the Wind Down Trustee shall be entitled to refuse to comply with any such conflicting claims or demands. In so refusing, the Wind Down Trustee may elect to make no payment or distribution with respect to the New WDT Interest subject to the claims or demands involved, or any part thereof, and the Wind Down Trustee shall promptly refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Wind Down Trustee shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands. The Wind Down Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (b) all differences have been resolved by a written agreement among all of such parties and the Wind Down Trustee, which agreement shall include a complete release of the Wind Down Trust and the Wind Down Trustee and its employees, professionals and representatives (the occurrence of either (a) or (b) in this Section 2.6 being referred to as a "Dispute Resolution"). Promptly after a Dispute Resolution is reached, the Wind Down Trustee shall transfer the payments and distributions, if any, in accordance with the terms of such Dispute Resolution. Any payment of any interest or income should be net of any taxes attributable thereto in accordance with Section 5.5.

2.7     Requirement of Undertaking. The Wind Down Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Wind Down Trustee or the Wind Down Trust for any action taken or omitted by as the Wind Down Trust or the Wind Down Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any

753518146.17

party litigant in such suit; provided, however, that the provisions of this Section 2.7 shall not apply to any suit by the Wind Down Trustee or the Wind Down Trust. Without limiting the generality of the foregoing, and notwithstanding anything else to the contrary in this Agreement, no provision of this Agreement shall be deemed to waive the protections in favor of the Wind Down Trustee or the requirements of the doctrine set forth in *Barton v. Barbour*, 104 U.S. 126 (1881), and as recognized by subsequent Fifth Circuit law, including *In re Highland Capital Management, L.P.*, 48 F.4th 419, 439 (5th Cir. 2022) (the "Barton Doctrine"), and the Wind Down Trustee shall be entitled to assert all rights in connection therewith.

2.8    Negative Covenants. From the Effective Date until the time the holders of Series A1 WDT Interests and Series A2 WDT Interests are no longer entitled to receive any distributions pursuant to this Agreement, the Plan or the Confirmation Order and all such Series A1 WDT Interests and Series A2 WDT Interests have been cancelled in accordance with the last sentence of Section 2.2(d), except as expressly contemplated, required or permitted by this Agreement, the Plan, the Confirmation Order or any other order of the Bankruptcy Court, the Wind Down Trust shall not, and the Wind Down Trustee shall not permit the Wind Down Trust to, take any of the following actions:

(a)    issue, purchase, sell or otherwise permit to become outstanding, or split, combine, reclassify, cancel, repurchase or redeem, any New WDT Interests or other beneficial interests of any kind in the Wind Down Trust;

(b)    except in connection with Portfolio Co. (or any related entities), incur, assume, endorse, guarantee or otherwise become liable for any indebtedness for borrowed money (or any related obligations) or issue or sell any debt securities or any rights to acquire any debt securities;

(c)    directly or indirectly sell, lease, swap, exchange, license, abandon, mortgage or encumber or subject to any Lien or otherwise dispose, in whole or in part, of any of the Wind Down Trust Assets or Litigation Trust Assets except as expressly provided in this Agreement, the Plan, or the Confirmation Order or as may arise from or relate to the Vida Exit Financing Facility;

(d)    acquire or agree to acquire any assets of any kind except equipment or other assets to be used in connection with the operations, including the day-to-day operations, of the Wind Down Trust;

(e)    make any loan, advance or capital contribution to or investment in any person;

(f)    adopt a plan of merger, consolidation, complete or partial liquidation, dissolution, restructuring, recapitalization or other reorganization of the Wind Down Trust except as expressly provided in this Agreement, the Plan, or the Confirmation Order; or

(g)    enter into any transaction with the Wind Down Trustee, the Debtors, Beneficient or any of their respective affiliates of the Wind Down Trustee that is not in accordance with Section 6.2(c) hereof.

2.9     <u>Separate Legal Entity</u>.  The Wind Down Trust shall take all reasonable steps to continue the Wind Down Trust's identity as a separate legal entity and to make it apparent that the Wind Down Trust is an entity with assets and liabilities distinct from any other person.  Without limiting the generality of the foregoing and in addition to and consistent with the covenants set forth herein, the Wind Down Trust shall take such actions as shall be required in order that:

(a)     the Wind Down Trust will allocate and charge fairly and reasonably overhead expenses shared with Portfolio Co.;

(b)     the Wind Down Trust's operating expenses will not be paid by any other person, except as permitted under the terms of this Agreement, the Plan or the Confirmation Order;

(c)     the Wind Down Trust will main books and records separate from any other Entity;

(d)     the Wind Down Trust will maintain its assets separately from the assets of any other Entity (including through the maintenance of a separate bank account, if necessary) in a manner that is not costly or difficult to segregate, identify or ascertain such assets, except as explicitly permitted by this Agreement, the Plan or the Confirmation Order;

(e)     the Wind Down Trust will strictly observe appropriate formalities in its dealings with all other Entities, and funds or other assets of the Wind Down Trust will not be commingled with those of any other Entity, other than temporary commingling to the extent explicitly permitted by this Agreement, the Plan or the Confirmation Order;

(f)     the Wind Down Trust will conduct all business correspondence of the Wind Down Trust and other communications in the Wind Down Trust's own name;

(g)     the Wind Down Trust will file its own tax returns separate from those of any other person, except to the extent that it is treated as a "disregarded entity" for tax purposes and is not required to file tax returns under applicable law, and paying any taxes required to be paid under applicable law; and

(h)     the Wind Down Trust will hold itself out to the public as a legal entity separate and distinct from any other Entity and conducting its business solely in its own name in order to not (A) to mislead others as to the identity with which such other party is transacting business, or (B) to suggest that it is responsible for the debts of any third party (including any of its beneficial owners or affiliates).

753518146.17

# ARTICLE III

## DURATION AND TERMINATION OF WIND DOWN TRUST

3.1 <u>Duration</u>. This Agreement shall remain and continue in full force and effect until the Wind Down Trust is terminated in accordance with the terms of this Agreement and the Plan.

3.2 <u>Dissolution of the Wind Down Trust</u>.

(a) The Wind Down Trust shall be dissolved at such time as (i) all of the Wind Down Trust Assets and the Litigation Trust Assets have been distributed pursuant to the Plan and this Agreement, or (ii) the Wind Down Trustee determines that the administration of any remaining Wind Down Trust Assets is not likely to yield sufficient additional Wind Down Trust proceeds to justify further pursuit and the Litigation Trust has been terminated in accordance with the terms of the Litigation Trust Agreement and the Plan; <u>provided</u>, that in no event shall the Wind Down Trust be dissolved later than third (3rd) anniversary of the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to such third (3rd) anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made before the end of the preceding extension), determines that a fixed period extension (each such extension not to exceed two (2) years) is necessary to facilitate or complete the recovery and liquidation of the Wind Down Trust Assets and/or the Litigation Trust Assets, in each case subject to reasonable due consideration being given to implications of tax law and other applicable law of any such further extension. The Wind Down Trust may not be terminated or otherwise dissolved at any time by the Wind Down Trust Beneficiaries. In connection with the termination of the Wind Down Trust, notwithstanding other provisions hereof, any remaining Wind Down Trust Assets that are of inconsequential value or otherwise insufficient to support the cost of a distribution may be transferred by the Wind Down Trustee to a non-profit charitable organization qualifying under section 501(c)(3) of the Tax Code.

(b) Notwithstanding anything in this <u>Section 3.2</u> to the contrary, in no event shall the Wind Down Trust be terminated and dissolved unless and until the Litigation Trust has been terminated and dissolved and the Litigation Trust has distributed all Litigation Trust Assets to the Wind Down Trust in accordance with the Litigation Trust Agreement and the Plan. The Wind Down Trustee and the Litigation Trustee will cooperate and confer to ensure that the Wind Down Trust does not terminate prior to the termination and dissolution of the Litigation Trust.

(c) Notwithstanding any other section of the Plan or this Agreement (including this <u>Section 3.2</u>), it is the express intent that the Wind Down Trust shall survive until each of the conditions listed in <u>Section 3.2(a)</u> hereof have either occurred or be determined to be impracticable or impossible by the Wind Down Trustee (in her sole discretion). To the extent that the Wind Down Trust shall be deemed terminated pursuant to applicable law at any time prior to the occurrence of each of the conditions listed in <u>Section 3.2(a)</u>, the Wind Down Trustee shall have such "wind-up" powers, both express and implied, as are necessary to achieve all outstanding conditions listed in <u>Section 3.2(a)</u> and <u>Section 3.3</u> hereof.

753518146.17

3.3     Continuance of Wind Down Trust for Winding Up. After the dissolution of the Wind Down Trust and solely for the purpose of liquidating and winding up the affairs of the Wind Down Trust, the Wind Down Trustee shall continue to act as such until its duties have been fully performed. Upon distribution of all the Wind Down Trust Assets, the Wind Down Trustee shall retain for a period of two (2) years the books, records, Wind Down Trust Beneficiary lists and files that shall have been delivered to or created by the Wind Down Trustee. At the Wind Down Trustee's discretion, all of such records and documents may be destroyed at any time following the date that is two (2) years after the final distribution of the Wind Down Trust Assets, subject to any joint prosecution and common interest agreement(s) to which the Wind Down Trustee or the Wind Down Trust may be party. Upon the dissolution of the Wind Down Trust and the completion of the winding up of the assets, liabilities and affairs of the Wind Down Trust, the Wind Down Trustee shall notify the Wind Down Trust Beneficiaries, with all costs thereof to be paid from such proceeds of any Funding as are available and, to the extent that the Funding is insufficient, from the Wind Down Trust Assets.

# ARTICLE IV

## ADMINISTRATION OF THE WIND DOWN TRUST

4.1     Payment of Claims, Expenses and Liabilities. Except as otherwise expressly provided herein, the Wind Down Trustee shall use the Wind Down Trust Assets (a) to pay reasonable costs and expenses of the Wind Down Trust that are incurred (including any taxes imposed on the Wind Down Trust, the actual reasonable out-of-pocket fees and expenses incurred by Trust Professionals in connection with the administration and liquidation of the Wind Down Trust Assets, as provided in Section 6.7, and the preservation of books and records of the Wind Down Trust); provided, however, that such costs and expenses shall first be deducted from the Funding, (b) to satisfy other obligations or other liabilities incurred or assumed by the Wind Down Trust (or to which the Wind Down Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order or this Agreement, including fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Wind Down Trust Assets and the costs of investigating, prosecuting, resolving and/or settling any Claims, (c) as reasonably necessary to meet contingent liabilities and to maintain the value of the Wind Down Trust Assets or (d) to satisfy any other obligations of the Wind Down Trust (clauses (a) through (d), collectively, the "Trust Expenses").

4.2     Distributions.

(a)     Generally.

(i)     On or after the Effective Date, the Wind Down Trust shall make distributions only in accordance with the terms of the Plan, the Confirmation Order, and this Section 4.2 to holders of New WDT Interests and as otherwise required by the Plan and the Confirmation Order.

(ii)     The Wind Down Trustee shall distribute to the holders of New WDT Interests in accordance with Section 4.2(b) all Distributable Cash[5] then available (A) within 60 days following the Effective Date, (B) within 60 days following the end of the second fiscal quarter of the Wind Down Trust, (C) within 60 days following the end of the fiscal year of the Wind Down Trust, and (D) at any time the Wind Down Trustee may determine in its sole discretion.

(iii)     Notwithstanding Section 4.2(a)(ii), the Wind Down Trustee shall distribute in accordance with Section 4.2(c) all Litigation Trust Amounts then available (A) within 60 days following the end of the second fiscal quarter of the Wind Down Trust, (B) within 60 days following the end of the fiscal year of the Wind Down Trust, and (C) at any time the Wind Down Trustee may determine in its sole discretion. For the avoidance of doubt, when determining the amount of, or making distributions of, Litigation Trust Amounts to the holders of New WDT Interests pursuant to Section 4.2(c), consistent with Section 1.9(b), the Wind Down Trustee may not deduct any Trust Expenses from such Litigation Trust Amounts without the approval of the Bankruptcy Court or the written consent of the Litigation Trustee (which consent may not be unreasonably withheld, conditioned or delayed).

(iv)     Notwithstanding the foregoing, the Wind Down Trustee shall not be required to make any distribution pursuant to Section 4.2(b) or Section 4.2(c) unless the aggregate Distributable Cash and Litigation Trust Amounts then held by the Wind Down Trustee is equal to or greater than $15,000,000.00.  On a quarterly basis, the Wind Down Trustee shall make a determination of the amount of Distributable Cash. In calculating Distributable Cash, Distributable Cash shall be rounded down to the nearest penny and DTC shall be considered a single holder for rounding and distribution purposes.

(b)     Payment of Distributions of Distributable Cash from the Wind Down Trust Assets. All distributions that the Wind Down Trustee may make to the holders of New WDT Interests pursuant to the Plan, the Confirmation Order and this Agreement, other than with respect to Litigation Trust Amounts (which shall be governed by Section 4.2(c)), shall be divided among such holders as follows:

(i)     first, until distributions made under this Section 4.2(b)(i) and Section 4.2(c)(i) equal the aggregate Indenture Fee and Expense Claims, 100% to the New Series A1 WDT Interests held by the Indenture Trustee on account of such Indenture Fee and Expense Claims (such interests, the "Indenture Trustee Interests");

---

[5] For purposes of this Agreement, "Distributable Cash" means (a) the Net Cash Proceeds, minus (b) the anticipated Trust Expenses as reasonably determined by the Wind Down Trustee in good faith, or as otherwise approved by separate order of the Bankruptcy Court.

(ii)     second, until distributions made under this <u>Section 4.2(b)(ii)</u>, <u>Section 4.2(c)(ii)</u>, and <u>Section 4.2(c)(iii)(I)</u> to Wind Down Trust Beneficiaries holding New Series A1 Interests (excluding the Indenture Trustee Interests) equal the aggregate amount of New Series A1 WDT Interests (but excluding the Indenture Trustee Interests), 100% to the Wind Down Trust Beneficiaries holding the New Series A1 WDT Interests (but excluding the Indenture Trustee Interests) pro rata based on their respective portion of the outstanding New Series A1 WDT Interests (other than the Indenture Trustee Interests);

(iii)     third, until distributions made under this <u>Section 4.2(b)(iii)</u> and <u>Section 4.2(c)(iii)(II)</u> to Wind Down Trust Beneficiaries holding New Series A2 Interests equal the aggregate amount of New Series A2 WDT Interests, 100% to the Wind Down Trust Beneficiaries holding the New Series A2 WDT Interests pro rata based on their respective portion of the New Series A2 WDT Interests;

(iv)     fourth, until distributions made under this <u>Section 4.2(b)(iv)</u> and <u>Section 4.2(c)(iv)(I)</u> equal the Series A1/A2 Unpaid Accrued Interest,[6] 100% to the Wind Down Trust Beneficiaries holding the New Series A1 WDT Interests and the New Series A2 WDT Interests pro rata based on their respective remaining Series A1/A2 Unpaid Accrued Interest;

(v)     fifth, until distributions made under this <u>Section 4.2(b)(v)</u> and <u>Section 4.2(c)(iii)(II)</u> equal the aggregate amount of New Series B WDT Interests, 100% to the Wind Down Trust Beneficiaries holding the New Series B WDT Interests pro rata based on their respective portion of the New Series B WDT Interests;

(vi)     sixth, until distributions made under this <u>Section 4.2(b)(vi)</u> and <u>Section 4.2(c)(iv)(II)</u> equal the Series B Unpaid Accrued Interest, 100% to the Wind Down Trust Beneficiaries holding the New Series B WDT Interests pro rata based on their respective remaining Series B Unpaid Accrued Interest;

(vii)     seventh, until distributions made under this <u>Section 4.2(b)(vii)</u> and <u>Section 4.2(c)(v)</u> equal the aggregate New Series C WDT Interests and New Series D WDT Interests, 100% to the Wind Down Trust Beneficiaries holding the New Series C WDT Interests and New Series D WDT Interests pro rata based on their respective portion of the New Series C WDT Interests and New Series D WDT Interests, collectively; and

---

[6] For purposes of this Agreement, (a) "<u>Series A1/A2 Unpaid Accrued Interest</u>" means the amount of accrued and unpaid interest with respect to the New Series A1 WDT Interests and the New Series A2 WDT Interests from April 20, 2022 to, but excluding, the date a particular distribution is paid pursuant to this <u>Section 4.2</u>, and (b) the "<u>Series B Unpaid Accrued Interest</u>" means, the amount of accrued and unpaid interest with respect to the New Series B WDT Interests from April 20, 2022 to, but excluding, the date a particular distribution is paid pursuant to this <u>Section 4.2</u>.

753518146.17

(viii) thereafter, 100% to the Wind Down Trust Beneficiaries holding the New Series E WDT Interests pro rata based on the percentage of New Series E WDT Interests held by them.

(c) <u>Payment of Distributions from Litigation Trust Amounts</u>. All distributions that the Wind Down Trustee may make to the holders of New WDT Interests pursuant to the Plan, the Confirmation Order and this Agreement with respect to Litigation Trust Amounts shall be divided among such holders as follows:

(i) first, until distributions made under <u>Section 4.2(b)(i)</u> and this <u>Section 4.2(c)(i)</u> equal the aggregate Indenture Fee and Expense Claims, 100% to the New Series A1 WDT Interests held by the Indenture Trustee;

(ii) second, until either (x) distributions made under this <u>Section 4.2(c)(ii)</u> equal the aggregate amount of the Allowed Indenture Diminution Claims as set forth in the Confirmation Order or (y) distributions made under <u>Section 4.2(b)(ii)</u> and this <u>Section 4.2(c)(ii)</u> equal the aggregate amount of New Series A1 WDT Interests (but excluding the Indenture Trustee Interests), 100% to the Wind Down Trust Beneficiaries holding the New Series A1 WDT Interests (but excluding the Indenture Trustee Interests) pro rata based on their respective portion of the outstanding New Series A1 WDT Interests (other than the Indenture Trustee Interests);

(iii) third, on a *pari passu* basis: (1) until distributions made under <u>Section 4.2(b)(ii)</u>, Section 4.2(c)(ii) and <u>Section 4.2(c)(iii)(I)</u> to Wind Down Trust Beneficiaries holding New Series A1 Interests (excluding the Indenture Trustee Interests) equal the aggregate amount of New Series A1 WDT Interests (but excluding the Indenture Trustee Interests); (2) until distributions made under <u>Section 4.2(b)(iii)</u> and  <u>Section 4.2(c)(iii)(I)</u> to Wind Down Trust Beneficiaries holding New Series A2 Interests equal the aggregate amount of New Series A2 WDT Interests; and (3) until distributions made under <u>Section 4.2(b)(v)</u> and <u>Section 4.2(c)(iii)(II)</u> equal the aggregate amount of New Series B WDT Interests, 100% to the Wind Down Trust Beneficiaries holding (I) the New Series A1 WDT Interests (other than the Indenture Trustee Interests) and New Series A2 WDT Interests (it being understood that no funds shall be distributed to holders of New Series A2 WDT Interests pursuant to this <u>Section 4.2(c)(iii)</u> until the limit in <u>Section 4.2(c)(iii)(1)</u> has been reached), on the one hand; and (II) New Series B WDT Interests, on the other hand, pro rata based on their respective portion of the New Series A1 WDT Interests (other than the Indenture Trustee Interests), New Series A2 WDT Interests and New Series B WDT Interests, collectively;

(iv) fourth, on a *pari passu* basis: (1) until distributions made under <u>Section 4.2(b)(iv)</u> and <u>Section 4.2(c)(iv)(I)</u> equal the aggregate amount of the Series A1/A2 Unpaid Accrued Interest; and (2) until distributions made under  <u>Section 4.2(b)(vi)</u> and <u>Section 4.2(c)(iv)(II)</u> equal the aggregate amount of  the Series B Unpaid Accrued Interest, 100% to the Wind Down Trust Beneficiaries holding (I) the New Series A1 WDT Interests and New Series A2 WDT Interests (it being

understood that no funds shall be distributed to holders of New Series A2 WDT Interests pursuant to this <u>Section 4.2(c)(iv)</u> until all accrued and unpaid interest on the New Series A1 Interests has been paid), on the one hand; and (II) New Series B WDT Interests pro rata based on their respective remaining Series A1/A2 Unpaid Accrued Interest and Series B Unpaid Accrued Interest;

(v)     fifth, until distributions made under <u>Section 4.2(b)(vii)</u> and this <u>Section 4.2(c)(v)</u> equal the aggregate New Series C WDT Interests and New Series D WDT Interests, 100% to the Wind Down Trust Beneficiaries holding the New Series C WDT Interests and New Series D WDT Interests pro rata based on their respective portion of the New Series C WDT Interests and New Series D WDT Interests, collectively; and

(vi)     thereafter, 100% to the Wind Down Trust Beneficiaries holding the New Series E WDT Interests pro rata based on the percentage of New Series E WDT Interests held by them.

(d)     <u>Provisions Governing Distributions and Disputed Claims</u>. All distributions to be made under this Agreement shall be made, and resolution of all Disputed Claims shall be done, in accordance with the Plan and the Confirmation Order, the relevant provisions of which are incorporated herein by this reference.

(e)     <u>Delivery of Distributions</u>.  Except as provided in the Confirmation Order or the Plan, the Wind Down Trustee shall make distributions to Holders of Allowed Claims and Allowed Interests at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; <u>provided</u>, that the manner of such distributions shall be determined at the discretion of the Wind Down Trustee. For the avoidance of doubt, the Wind Down Trustee may direct the transfer of distributions to holders of New WDT Interests through the facilities of the Depository Trust Company ("<u>DTC</u>") in accordance with the procedures of DTC to the extent such New WDT Interests are held via DTC. In the event that any distribution to any Holder or permitted designee is returned as undeliverable, no further distributions shall be made to such Holder or such permitted designee unless and until, subject to <u>Section 4.2(j)</u>, the Wind Down Trust is notified in writing of such Holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest, dividends, or other accruals of any kind. Nothing herein shall require the Wind Down Trust to attempt to locate Holders or permitted designees, as applicable, of undeliverable distributions or, if located, assist such Holders or permitted designees, as applicable, in complying the Plan.

(f)     <u>Disbursing Agent</u>. The Wind Down Trustee shall have the authority to enter into agreements with one or more third parties (such third parties, "<u>Disbursing Agents</u>") to facilitate the distributions required under the Plan, the Confirmation Order and this Agreement. The Wind Down Trustee may pay to the Disbursing Agent all reasonable and documented fees and expenses of the Disbursing Agent without the need for other approvals, authorizations, actions or consents. For the avoidance of doubt, the reasonable and documented fees of the Disbursing Agent will be paid by the Wind Down Trustee and

will not be deducted from distributions to be made under the Plan to Holders of Allowed Claims receiving distributions from the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. The Wind Down Trustee shall use commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtors' books and records. The Disbursing Agent shall cooperate in good faith with the Wind Down Trustee to comply with the reporting, withholding, and any other obligations of the Wind Down Trustee in this Agreement, the Confirmation Order, or the Plan.  Notwithstanding any provisions in the Plan or this Agreement to the contrary, all distributions required to be made under this Agreement, the Plan or the Confirmation Order shall be deemed completed, and the obligations of the Wind Down Trust to make such distributions shall be deemed satisfied, when made to the Disbursing Agent by the Wind Down Trust.

(g)     Professional Claims.

(i)     On and after the Effective Date, the Wind Down Trustee shall pay all Allowed amounts of Accrued Professional Compensation Claims, as determined by the Bankruptcy Court by a Final Order and in accordance with the Plan and Confirmation Order, from funds held in the Professional Fee Escrow Account.  The Wind Down Trust shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Escrow Account.

(ii)     In accordance with the Confirmation Order and the Plan, the Wind Down Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the actual, reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors or the Bondholder Committee from and after the Confirmation Date. To the extent there is any unresolved dispute between the Wind Down Trustee and any Entity seeking reimbursement or payment of such fees and expenses, the Bankruptcy Court will resolve such dispute in accordance with the Confirmation Order and the Plan.

(iii)     On and after the Effective Date, the Wind Down Trustee may employ and pay any Professional or Ordinary Course Professional for fees incurred or accrued after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

(h)     No Postpetition Interest on Claims. Except as otherwise provided in the Plan, the Confirmation Order, or other Final Order of the Bankruptcy Court or required by the Bankruptcy Code or non-bankruptcy law (including, without limitation, as required pursuant to sections 506(b) and section 511 of the Bankruptcy Code), interest shall not accrue or be paid on any prepetition Claims against the Debtors on or after the applicable Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the

date a final distribution is made on account of such Disputed Claim, until such Disputed Claim becomes an Allowed Claim.

(i)     <u>Distributions After the Effective Date</u>. Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.  Additionally, in the event that any payment or distribution under this Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date and no additional interest on any Interest Bearing WDT Interests shall accrue as a result of the delay in payment.

(j)     <u>Unclaimed Property</u>. Undeliverable distributions or unclaimed distributions shall remain in the possession of the Wind Down Trust until such time as a distribution becomes deliverable or the holder (or Holder, as applicable) entitled thereto accepts such distribution, or such distribution reverts to the Wind Down Trust, as applicable, and shall not be supplemented with any interest, dividends or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited on the date that is six months after the later of (x) the Effective Date, and (y) the date of the distribution. After such date all unclaimed property or interest in property shall automatically revert to the Wind Down Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan, the Confirmation Order and this Agreement, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

(k)     <u>Time Bar to Cash Payments</u>. Checks issued by the Wind Down Trust (or the Disbursing Agent, as applicable) in respect of Allowed Claims shall be null and void if not negotiated within six months after the later of (x) the Effective Date, and (y) the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Wind Down Trust, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the Wind Down Trust (or the Disbursing Agent, as applicable) by the Holder of the Allowed Claim to whom such check was originally issued.

(l)     <u>Manner of Payment under Plan</u>. Except as otherwise specifically provided in the Plan, at the option of the Wind Down Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

(m)     <u>Satisfaction of Claims</u>. Except as otherwise specifically provided in the Plan, distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

(n)      Setoffs and Recoupments. The Wind Down Trust or its designee (including the Disbursing Agent) may, but shall not be required to, setoff or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Wind Down Trust may have against the Holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or the Wind Down Trust or its successor of any claims, rights, or Causes of Action that a Debtor or the Wind Down Trust or its successor or assign may possess against the Holder of such Claim.

(o)      Distributions Free and Clear. Except as otherwise provided herein, any distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including the Debtors or the Wind Down Trust shall have any interest, legal, beneficial or otherwise, in Wind Down Trust Assets transferred pursuant to the Plan.

(p)      Limit on Recoveries. Holders of the New WDT Interests cannot recover more than the full amounts owed on account of such New WDT Interests unless such recovery is: (i) permissible under applicable law; and (ii) from third-party sources other than the Debtors, the Wind Down Trust or the Litigation Trust, as provided for under the Plan.  Subject to the express limitation set forth in the final sentence of this Section 4.2(p), the Wind Down Trustee shall retain (but shall have the sole discretion in exercising) any and all rights, powers, and remedies in connection therewith. The Wind Down Trustee may (but shall not be required to) inquire or otherwise attempt to determine whether any Holders of the New WDT Interests stand to recover more than the full amounts owed on account of such New WDT Interests from any such third party sources and, upon receiving or obtaining reasonably credible evidence of any such third party payments, may (but shall not be required to) seek Bankruptcy Court authorization to suspend any further distributions to any such Holders, solely on the basis that such distributions would result in a recovery for such Holders that is not permissible under applicable law.  For the avoidance of doubt, the Wind Down Trust shall not suspend any distributions to any Holder of New WDT Interests absent a prior order of the Bankruptcy Court.

4.3      Compliance with Laws. Any and all distributions of the Wind Down Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

4.4      Fiscal Year. Except for the first and last years of the term of the Wind Down Trust, the fiscal year of the Wind Down Trust shall be the calendar year. For the first and last years of the term of the Wind Down Trust, the fiscal year of the Wind Down Trust shall be such portion of the calendar year that the Wind Down Trust is in existence.

4.5      Cash Payments. All distributions required to be made to Holders of Claims under the Plan or the Confirmation Order, or to the Wind Down Trust Beneficiaries shall be made in Cash denominated in United States dollars by checks drawn on a domestic bank approved by the Wind Down Trustee or by wire transfer from a domestic bank approved by the Wind Down Trustee; provided, however, that Cash payments to foreign holders of Wind Down Trust Interests

22

may be made, at the option of the Wind Down Trustee , in such funds, at such exchange rates, and by such means as are necessary or customary in a particular foreign jurisdiction.

4.6     Insurance. The Wind Down Trust may maintain customary insurance coverage for the protection of the Wind Down Trustee, employees and any such other persons serving as administrators and overseers of the Wind Down Trust on and after the Effective Date. The Wind Down Trust also may obtain insurance coverage it deems necessary and appropriate with respect to the  Wind Down Trust Assets.

4.7     Reports.

(a)     Subject in all respects to Section 4.7(b), following the Effective Date, and during the existence of the Wind Down Trust, the Wind Down Trust shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to this Agreement), within 90 days after the end of each calendar year during the term of the Wind Down Trust, and within 45 days after the end of each calendar quarter during the term of the Wind Down Trust (other than the fourth quarter) and as soon as practicable upon termination of the Wind Down Trust, the Wind Down Trustee shall make available on its website, a written report including: (a) the balance sheet, income statement and statement of cash flows of the Wind Down Trust (the "Financial Statements") for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Wind Down Trustee) reflecting the result of such agreed-upon procedures relating to the administration of the Wind Down Trust as proposed by the Wind Down Trustee; (b) a summary description of any action taken by the Wind Down Trust which, in the judgment of the Wind Down Trustee, materially affects the Wind Down Trust; (c) a description of the progress of liquidating the Wind Down Trust Assets and making distributions to the holders of the New WDT Interests, which description shall include a written report detailing, among other things, the status of the equity interests in Beneficient and FOXO that are held by the Wind Down Trust, the status of Portfolio Co., the status of the Litigation Trust, the proceeds recovered as of the relevant date with respect to assets of the Wind Down Trust or any of the foregoing, and the distributions made by the Wind Down Trust as of the relevant date; and (d) any other material or significant information relating to the Wind Down Trust Assets and the administration of the Wind Down Trust deemed appropriate to be disclosed by the Wind Down Trustee. In addition, the Wind Down Trust shall provide unaudited Financial Statements to each holder of the New WDT Interests on a quarterly basis (which may be quarterly operating reports Filed with the Bankruptcy Court). The Wind Down Trustee may post any such report on a website maintained by or on behalf of the Wind Down Trustee and electronically File it with the Bankruptcy Court in lieu of actual notice to each holder of New WDT Interests (unless required by law).

(b)     Notwithstanding the foregoing, in the event that the Wind Down Trustee causes the Wind Down Trust to register under the Exchange Act in accordance with Section 2.4(a) hereof, and as a result the Wind Down Trust becomes a filer of periodic reports with the SEC, then for so long as the Wind Down Trust files periodic reports with the SEC pursuant to Section 13(a) or Section 15(d) of the Exchange Act, the Wind Down Trustee shall be deemed to have satisfied its obligations set forth in Section 4.7(a) by filing

23

such periodic reports with the SEC, posting a copy of such reports on a website maintained by or on behalf of the Wind Down Trust, and Filing a copy of such reports with the Bankruptcy Court.

## ARTICLE V

## TAX MATTERS

5.1     <u>Wind Down Trustee's Tax Power for Debtors</u>.

(a)     For all taxable periods ended on or before the dissolution of the Debtors, the Wind Down Trustee shall have full and exclusive authority and responsibility in respect of all taxes of the Debtors (including as the common parent or other agent of any consolidated, combined or unitary tax group of which the Debtors were the agent), to the same extent as if the Wind Down Trustee were the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Wind Down Trustee to correspond with any tax authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer tax payments and tax returns.

(b)     In furtherance of the transfer of the Wind Down Trust Assets to the Wind Down Trust on the Effective Date, the Wind Down Trust shall be entitled to all tax refunds of the Debtors (and the Wind Down Trust shall bear responsibility for all tax liabilities of the Debtors for taxable periods ended on or before the dissolution of the Debtors, to the extent not discharged by the Plan or provided for payment or otherwise satisfied in the Plan).

(c)     Following the Effective Date, the Wind Down Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all tax returns required to be filed or that the Wind Down Trustee otherwise deems appropriate, including the filing of amended tax returns or requests for refunds for all taxable periods ended on or before the dissolution of the Debtors.

5.2     <u>Wind Down Trust Assets Treated as Owned by Wind Down Trust Beneficiaries</u>. For all United States federal income tax purposes, all parties (including the Debtors, the Wind Down Trustee, and the Wind Down Trust Beneficiaries) shall treat the transfer of the Wind Down Trust Assets to the Wind Down Trust as (a) a transfer of the Wind Down Trust Assets (subject to any obligations relating to those assets) directly to the Wind Down Trust Beneficiaries and, to the extent Wind Down Trust Assets are allocable to the Disputed Ownership Fund (as defined below), if any, to the Disputed Claims Reserve, followed by (b) the transfer by such beneficiaries to the Wind Down Trust of the Wind Down Trust Assets (other than the Wind Down Trust Assets allocable to the Disputed Ownership Fund, if any) in exchange for New WDT Interests. Accordingly, the Wind Down Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Wind Down Trust Assets (other than the Wind Down Trust Assets allocable to the Disputed Ownership Fund, if any); provided that if any Wind Down Trust Beneficiaries are not considered to receive any Wind Down Trust Assets on the Effective Date based on the fair market value of such assets on such date as determined under <u>Section 5.4(b)</u>, such beneficiaries, to the extent permitted by law, shall not be

24

treated as current beneficiaries for United States federal income tax purposes until such time as they are allocated Wind Down Trust taxable income pursuant to Section 5.4(c). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. To the extent that any Allowed Claim that is treated as receiving a deemed transfer of Wind Down Trust Assets, as described above, is comprised of indebtedness and accrued but unpaid interest thereon, such transfer shall, to the extent permitted by applicable law, be allocated for U.S. federal income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest. For purposes of this Agreement, "Disputed Ownership Fund" means any Wind Down Trust Assets allocable to Disputed Claims elected to be treated as a "disputed ownership fund" governed by section 1.468B-9 of the Treasury Regulations.

5.3     Wind Down Trust Tax Status. For United States federal income tax purposes (and for tax purposes of all state, local and other jurisdictions to the extent applicable), the Wind Down Trust is intended to be treated as a "liquidating trust" under Treasury Regulations section 301.7701-4(d) and, thus, as a grantor trust pursuant to sections 671-677 of the Tax Code, or any successor provisions thereof of which the Wind Down Trust Beneficiaries shall be treated as the grantors and owners (other than in respect of the Disputed Ownership Fund, if any). The Wind Down Trust shall at all times be administered so as to constitute a domestic trust for United States federal income tax purposes.

5.4     Tax Reporting.

(a)     The Wind Down Trustee shall file tax returns for the Wind Down Trust treating the Wind Down Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Article V. The Wind Down Trustee also will annually send to each holder of a New WDT Interest that is a current beneficiary for United States federal income tax purposes a separate statement regarding the receipts and expenditures of the Wind Down Trust as relevant for United States federal income tax purposes and will instruct all such holders to use such information in preparing their United States federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their United States federal income tax returns. To the extent permitted by law, the statements described in the foregoing sentence may be posted on a publicly available website instead of being sent to all relevant holders. The Wind Down Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Wind Down Trust that is required by any governmental unit.

(b)     As soon as reasonably practicable after Wind Down Trust Assets are transferred to the Wind Down Trust, but in no event later than 180 days thereafter, the Wind Down Trust shall make a good faith valuation, as of the Effective Date, of Wind Down Trust Assets and the Wind Down Trustee shall apprise, in writing, the Wind Down Trust Beneficiaries of such valuation. In connection with the preparation of the valuation contemplated hereby and by the Plan, the Wind Down Trust shall be entitled to retain such professionals and advisors as the Wind Down Trust shall determine to be appropriate or necessary, and the Wind Down Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary. Such valuation shall be used

25

consistently by all parties (including the Debtors, the Wind Down Trustee and the Wind Down Trust Beneficiaries) for all United States federal income tax purposes, including for determining tax basis and gain or loss. The Wind Down Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any professionals retained by the Wind Down Trustee in connection therewith.

(c)     Allocations of Wind Down Trust taxable income among the Wind Down Trust Beneficiaries (other than taxable income allocable to, or retained on account of, the Disputed Ownership Fund, if any) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Wind Down Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Ownership Fund, if any) to the holders of the New WDT Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Wind Down Trust. Similarly, taxable loss of the Wind Down Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Wind Down Trust Assets. The tax book value of the Wind Down Trust Assets for purposes of this Section 5.4(c) shall equal their fair market value on the Effective Date, or, if later, the date such assets were acquired by the Wind Down Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(d)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Wind Down Trustee of a private letter ruling if the Wind Down Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Wind Down Trustee), the Wind Down Trustee (i) may timely elect to treat the Disputed Claim Reserve as a Disputed Ownership Fund, and file such tax returns and pay such taxes as may be required consistent with such treatment, and (ii) to the extent permitted by applicable law, shall report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Wind Down Trustee and the Wind Down Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)     The Wind Down Trustee shall be responsible for payment, out of the Wind Down Trust Assets, of any taxes imposed on the Wind Down Trust or its assets, including the Disputed Claims Reserve. More particularly, any taxes imposed on any Disputed Claim Reserve or its assets will be paid out of the assets of the Disputed Claim Reserve (including any Wind Down Trust Assets allocable to Disputed Claims), and netted against any subsequent distributions in respect of the allowance or disallowance of such Claims. In the event, and to the extent, any Cash in any Disputed Claim Reserve is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the Disputed Claim Reserve (including any income that may arise upon an actual or constructive distribution of the assets of the reserve in respect of the resolution of Disputed Claims),

assets of the Disputed Claim Reserve (including those otherwise distributable) may be sold to pay such taxes.

(f)     The Wind Down Trustee may request an expedited determination of taxes of the Wind Down Trust, or the Debtors under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Wind Down Trust or the Debtors for all taxable periods through the dissolution of the Wind Down Trust and for all taxable periods of the Debtors ending on or after the Petition Date.

5.5     <u>Tax Withholdings by Wind Down Trustee</u>. The Wind Down Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of New WDT Interests. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders of New WDT Interests for all purposes of this Agreement. The Wind Down Trustee shall be authorized to collect such tax information from the holders of New WDT Interests (including social security numbers or other tax identification numbers) as in its sole discretion the Wind Down Trustee deems necessary to effectuate the Plan, the Confirmation Order, and this Agreement. In order to receive distributions under the Plan, all holders of New WDT Interests shall be required to identify themselves to the Wind Down Trustee and provide tax information and the specifics of their holdings, to the extent the Wind Down Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Wind Down Trustee for these purposes. This identification requirement generally applies to all holders, including those who hold their Claims in "street name." The Wind Down Trustee may refuse to make a distribution to any holder of a New WDT Interests that fails to furnish such information in a timely fashion, and until such information is delivered may treat such holder's New WDT Interests as disputed; <u>provided</u>, <u>however</u>, that, upon the delivery of such information by a holder of a New WDT Interest, the Wind Down Trustee shall make such distribution to which the holder of the New WDT Interest is entitled, without additional interest occasioned by such holder's delay in providing tax information; <u>provided</u>, <u>further</u>, that, if such information is not furnished to the Wind Down Trustee within twelve (12) months of the original request to furnish such information, no further distributions shall be made to the holder of such New WDT Interest; <u>provided, further</u>, that, if the Wind Down Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Wind Down Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Wind Down Trustee for such liability (to the extent such amounts were actually distributed to such holder).

## ARTICLE VI

## POWERS OF AND LIMITATIONS ON THE WIND DOWN TRUSTEE

6.1     <u>Wind Down Trustee</u>.

(a)     The Wind Down Trustee means Elizabeth C. Freeman so long as she continues in office, and all other individuals who have been duly elected and qualify as Wind Down Trustee of the Wind Down Trust hereunder pursuant to <u>Section 1.4</u> or <u>Article VII</u>. Subject to <u>Article VII</u>, the Wind Down Trustee shall hold office until the termination

27

of the Wind Down Trust in accordance with the terms set forth in this Agreement. References herein to the Wind Down Trustee shall refer to the person or persons serving as the Wind Down Trustee solely in its or their capacity as trustees hereunder.

(b)     The Wind Down Trustee will serve on and after the Effective Date in accordance with this Agreement, the Confirmation Order and the Plan. The Wind Down Trustee shall be appointed as the representative of each of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code, subject to the terms of the Plan, the Confirmation Order and this Agreement.

(c)     Subject to Section 6.1(a) and the other express limitations set forth herein, any actions of the Wind Down Trustee contemplated by this Agreement shall be decided and conducted by the Wind Down Trustee.

6.2     Powers and Duties of the Wind Down Trustee.

(a)     The Wind Down Trustee shall administer the Wind Down Trust in accordance with this Agreement. The Wind Down Trustee, in the exercise of her reasonable business judgment, shall in an orderly manner liquidate and convert to Cash the Wind Down Trust Assets and make distributions in accordance with the Confirmation Order and the Plan. Except as specifically set forth in the Confirmation Order or the Plan and subject to compliance with any applicable lock-up agreement or securities law requirement, the Wind Down Trustee shall have all power to take any and all actions as, in the sole discretion of the Wind Down Trustee, are necessary, advisable, or appropriate to implement the Plan, administer and monetize the Wind Down Trust Assets, and effectuate the purpose of the Wind Down Trust, including but not limited to:

(i)     making or facilitating distributions to Holders of Claims and Wind Down Trust Beneficiaries in accordance with the Plan and this Agreement;

(ii)     receiving for distribution, or directing the distribution of, the proceeds from the realization of the Initial Litigation Trust Assets pursuant to the provisions of the Plan and this Agreement;

(iii)     overseeing and making all decisions with respect to the wind down, dissolution, and liquidation of the Wind Down Debtors and the Wind Down Trust after the Effective Date, including, without limitation, the monetization of the Debtors' Assets (other than Initial Litigation Trust Assets);

(iv)     subject to the other provisions of this Agreement (including Section 1.2 and Section 6.3), taking all appropriate actions to maximize the value of and monetize the Wind Down Trust Assets for the benefit of stakeholders, whether by accepting, preserving, receiving, collecting, administering, selling, liquidating, or transferring, as applicable, the Wind Down Trust Assets;

(v)     subject to Section 6.2(c), conducting sales or liquidations of Wind Down Trust Assets on any terms it deems reasonable;

(vi)    negotiating, executing, performing and consummating, and taking any other action necessary or advisable in connection with, the Wind Down Transactions or the maintenance or operation of the Wind Down Trust in the ordinary course of business;

(vii)    creating additional sub-trusts within (or other subsidiary Entities under) the Wind Down Trust, which may have a separate legal existence, but which shall be considered sub-trusts (or other subsidiary Entities under, as applicable) of the Wind Down Trust;

(viii)    abandoning any Wind Down Trust Assets that the Wind Down Trustee determines in her reasonable discretion to be of *de minimis value* or burdensome to the Wind Down Trust;

(ix)    hiring, managing, directing, terminating and paying professionals, including but not limited to, general or special Wind Down Trust counsel or litigation counsel, experts, consultants, accountants, and financial advisors, pursuant to and in accordance with Section 6.7;

(x)    taking actions necessary or advisable to undertake and comply with the various responsibilities and duties imposed on the Wind Down Trustee under the Plan;

(xi)    placing Cash constituting Wind Down Trust Assets in certain cash management instruments as provided in Section 6.8 and to cause such instruments, or any part thereof, to be registered and held by the Wind Down Trustee, on behalf of the Wind Down Trust;

(xii)    administering each Debtor's tax obligations, including (A) filing tax returns, reports, and statements and paying tax obligations, (B) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under section 505(b) of the Bankruptcy Code for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (C) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including any claims, defense, action, suit, proceeding or audit;

(xiii)    administering the Wind Down Trust's tax obligations, including (A) filing tax returns and paying tax obligations, (B) requesting, if necessary, an expedited determination of any unpaid tax liability of the Wind Down Trust for all taxable periods of the Wind Down Trust through the dissolution of the Liquidating Trust as determined under applicable tax laws, and (C) representing the interest and account of the Wind Down Trust before any taxing authority in all matters including any claim, defense, action, suit, proceeding or audit;

(xiv)    obtaining insurance coverage with respect to its liabilities and obligations as Wind Down Trustee under this Agreement (in the form of an errors and omissions policy or otherwise); and

753518146.17

(xv)    exercising such other powers as may be vested in or assumed by the Wind Down Trustee pursuant to this Agreement and applicable law as may be necessary and desirable to carry out the provisions of the Plan, this Agreement and applicable law.

(b)    The Wind Down Trustee shall have the power (but shall not be required by virtue of the provisions of this Agreement) to determine, in her reasonable good faith discretion, the value of the Wind Down Trust Assets following the Effective Date. The Wind Down Trustee shall be authorized in her sole, reasonable discretion to select and retain appraisers, valuation counselors, or other professionals, at the expense of the Wind Down Trust, to assist in determining such value.

(c)    The Wind Down Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder (except as otherwise provided in this Agreement), or account to the Bankruptcy Court; provided, however, that, notwithstanding anything in this Agreement to the contrary (including Section 6.2(a)), the Wind Down Trustee shall be required to obtain the prior approval of the Bankruptcy Court for any transaction, disposition, settlement or compromise of any Wind Down Trust Assets with an economic value of $5,000,000 or more (in the Wind Down Trustee's good faith determination) for such transaction, disposition, settlement or compromise.

(d)    Except as otherwise provided in this Agreement, the Wind Down Trustee will not be required to obtain the order or approval of the Bankruptcy Court, or any other court of competent jurisdiction in, or account to the Bankruptcy Court or any other court of competent jurisdiction for, the exercise of any right, power or privilege conferred hereunder. Pursuant to the Plan, the Bankruptcy Court has retained jurisdiction for such purposes and may approve or disapprove any such proposed action upon motion by the Wind Down Trustee.

(e)    Following the Effective Date, the Wind Down Trustee shall be deemed a party in interest with standing to appear in the Chapter 11 Cases and object to any pleading Filed thereafter; provided, however, that such standing and right to object does not alter the respective rights or responsibilities of the Wind Down Trustee or the Litigation Trustee under the Plan, this Agreement or the Litigation Trust Agreement, alter any governing approval standard under applicable law, or otherwise limit the ability of any party with standing to respond to pleadings Filed, or objections raised, by the Wind Down Trustee.

6.3    Limitations on Wind Down Trustee. The Wind Down Trustee shall, on behalf of the Wind Down Trust, hold the Wind Down Trust out as a trust in the process of liquidation and not as an investment company. The Wind Down Trustee shall be restricted to the liquidation of the Wind Down Trust Assets on behalf, and for the benefit, of the Wind Down Trust Beneficiaries and the distribution and application of the Wind Down Trust Assets for the purposes set forth in, and the conservation and protection of the Wind Down Trust Assets and the administration thereof in accordance with, the provisions of this Agreement, the Plan and the Confirmation Order, and shall not take any action which will cause the Wind Down Trust to fail to qualify as a "liquidating trust" for the United States federal income tax purposes or that would require the Trust to register

under the Exchange Act (except as otherwise determined by the Wind Down Trustee in accordance with Section 2.4(a)) or as an investment company under the Investment Company Act or would otherwise be inconsistent with the exemption from registration under the Investment Company Act for companies whose activities are merely incidental to their dissolution.  The foregoing shall not limit the Wind Down Trustee's ability to make determinations and take actions regarding compliance with tax withholding requirements (including remittances).

6.4     Compensation and Expenses of the Wind Down Trustee. The Wind Down Trustee shall receive reasonable compensation at market rates and expense reimbursement related to her duties under this Agreement.

6.5     Actions Taken on Other Than a Business Day. In the event that any act under the Plan or this Agreement is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.6     Agents, Employees and Professionals. The Wind Down Trustee, on behalf of the Wind Down Trust, may employ, without further order of the Bankruptcy Court, agents, professionals (including professionals previously engaged in the Chapter 11 Cases), employees, or other independent contractors ("Trust Professionals") to assist in carrying out her duties under the Plan, including this Agreement, and may compensate and reimburse the expenses of these professionals, employees, or other independent contractors based upon the nature of the work performed by such parties without further order of the Bankruptcy Court. All payments to Trust Professionals shall be paid out of the Funding or as otherwise determined by the Wind Down Trustee.

6.7     Investment of Wind Down Trust Monies. The Wind Down Trustee shall be under no obligation to generate or produce, or have any liability for, interest or other income on any monies received by the Trust and held for distribution or payment to the Wind Down Trust Beneficiaries, except as such interest or income shall be actually received by the Wind Down Trustee.  The Wind Down Trustee may place Cash (including any earnings thereon or proceeds therefrom) held by the Wind Down Trust temporarily, pending use for payment of expenses or distribution to Wind Down Trust Beneficiaries, in cash management instruments; provided, that such instruments are (a) instruments permitted to be held by a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings or other controlling authorities and (b) limited to demand and time deposits, such as short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills. All monies and other assets received by the Wind Down Trustee as Wind Down Trust Assets (including the proceeds thereof as a result of the placement of Cash into cash management instruments in accordance with this Section 6.7) shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Wind Down Trust Beneficiaries, and shall not be segregated from other Wind Down Trust Assets, unless and to the extent required by the Plan. Once Cash is placed in one or more cash management instruments, the Trustee shall not sell, dispose of or otherwise liquidate the instrument until such time as such funds are (1) needed to pay expenses incurred in administering the Wind Down Trust, or (2) available to be distributed pursuant to this Agreement; provided, however, that the Wind Down Trustee may do so if the Wind Down Trustee determines in her

753518146.17

discretion that doing so is necessary to protect the Wind Down Trust from loss on the amounts held in cash management instruments. Notwithstanding the foregoing, the Wind Down Trust shall not receive or retain cash or cash equivalents in excess of a reasonable amount necessary to meet claims and contingent liabilities (including Disputed Claims), to pay expenses of maintaining and administering the Wind Down Trust, or to maintain the value of the Wind Down Trust Assets during liquidation.

6.8     Termination. The duties, responsibilities and powers of the Wind Down Trustee shall terminate on the date the Wind Down Trust is wound up and dissolved pursuant to Section 3.2, under applicable law, in accordance with the Plan, by an order of the Bankruptcy Court; provided, that Article VIII, Article IX and the applicable defined terms set forth in this Agreement and the Plan referenced therein shall survive such termination, dissolution and entry.

## ARTICLE VII

## SUCCESSOR WIND DOWN TRUSTEE

7.1     Resignation. The Wind Down Trustee may resign from the Wind Down Trust by filing on the docket of the Chapter 11 Cases a written notice at least sixty (60) days prior to the expected date of resignation. Such resignation shall become effective on the later to occur of (a) the date specified in such written notice and (b) the effective date of the appointment of a successor Wind Down Trustee in accordance with Section 7.4 and such successor's acceptance of such appointment in accordance with Section 7.5. Without limiting any other reporting or accounting obligations under the Plan or this Agreement, in the event of a resignation, the resigning Wind Down Trustee shall file with the Bankruptcy Court a full and complete written accounting of monies and Wind Down Trust Assets received, disbursed, and held during the term of office of the resigning Wind Down Trustee. Notwithstanding the resignation of the Wind Down Trustee pursuant to this Section 7.1, the rights of the resigning Trustee under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Trustee following the effectiveness of such resignation.

7.2     Removal. The Wind Down Trustee may be removed at any time for Cause,[7] after notice and a hearing, by: (a) the Bankruptcy Court on its own initiative; or (b) [●] or more Wind Down Trust Beneficiaries, then holding at least $[●] in face value of New WDT Interests in the aggregate.  Without limiting the generality of the foregoing, and notwithstanding anything else to the contrary in this Agreement, the Wind Down Trustee does not waive any protections in its favor, including the requirements of the Barton Doctrine, and the Wind Down Trustee shall be entitled to assert all rights in connection therewith.  Such removal shall become effective on the date specified in order approval removal by the Bankruptcy Court. Notwithstanding the removal of the Wind Down Trustee pursuant to this Section 7.2, the rights of the resigning Wind Down Trustee under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such

---

[7] "Cause" shall mean: (i) the Wind Down Trustee's willful failure to perform his/her/its material duties hereunder, which is not remedied within 30 days of notice; (ii) the Wind Down Trustee's commission of an act of fraud, theft or embezzlement during the performance of his/her/its duties hereunder; (iii) the Wind Down Trustee's conviction of a felony; or (iv) the Wind Down Trustee's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder.

removal will continue for the benefit of such resigning Wind Down Trustee following the effectiveness of such resignation.

       7.3    <u>Effect of Resignation or Removal</u>. The resignation, removal, incompetency, bankruptcy or insolvency of the Wind Down Trustee shall not operate to terminate the Wind Down Trust or to revoke any existing agency created pursuant to the terms of this Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by the Wind Down Trustee. All fees and expenses properly incurred by the Wind Down Trustee prior to the resignation, incompetency or removal of the Wind Down Trustee shall be paid as set forth in this Agreement and the Plan, unless such fees and expenses are disputed by any Wind Down Trust Beneficiary, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Wind Down Trustee that are subsequently allowed by the Bankruptcy Court shall be paid as set forth in this Agreement and the Plan. In the event of the resignation or removal of the Wind Down Trustee, such Wind Down Trustee shall: (x) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Wind Down Trustee or directed by the Bankruptcy Court to effect the termination of such Wind Down Trustee's capacity under this Agreement, (y) promptly deliver to the successor Wind Down Trustee all material documents, instruments, records and other writings related to the Wind Down Trust as may be in the possession of such Wind Down Trustee and (z) otherwise assist and cooperate in effecting the assumption of her obligations and functions by such successor Wind Down Trustee.

       7.4    <u>Appointment of Successor</u>. Upon the resignation or dissolution of the Wind Down Trustee, the Bankruptcy Court shall appoint a successor Wind Down Trustee. In the event of the death, resignation, removal, bankruptcy or insolvency of the Wind Down Trustee, the Bankruptcy Court upon request or on its motion shall appoint a successor Wind Down Trustee on an interim or permanent basis.

       7.5    <u>Acceptance of Appointment by Successor Wind Down Trustee</u>. Any successor Wind Down Trustee appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing and, in case of the Wind Down Trustee's resignation, to the resigning Wind Down Trustee. Thereupon, such successor Wind Down Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Wind Down Trust with like effect as if originally named Wind Down Trustee and shall be deemed appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The resigning or removed Wind Down Trustee shall duly assign, transfer and deliver to such successor Wind Down Trustee all property and money held by such resigning or removed Wind Down Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Wind Down Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Wind Down Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Wind Down Trustee.

753518146.17

## ARTICLE VIII

## RELIANCE, LIABILITY AND INDEMNIFICATION

8.1     Reliance by the Wind Down Trustee. Except as otherwise provided in this Agreement, the Plan or the Confirmation Order, the Wind Down Trustee may rely and shall be protected in acting upon or in any manner consisted with any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Wind Down Trustee to be genuine and to have been signed or presented by the proper party or parties.  Without limiting the generality of the preceding sentence, the Wind Down Trustee may rely and shall be protected in acting upon or in any manner consistent with any Order entered by the Bankruptcy Court, including, without limitation, any Order entered by the Bankruptcy Court on and after the Effective Date.

8.2     Liability to Third Persons. The Wind Down Trustee shall not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Wind Down Trust Assets or the affairs of the Wind Down Trust and shall not be liable with respect to any action taken or omitted to be taken in good faith, except for actions and omissions determined by a final order of the Bankruptcy Court to be due to their respective gross negligence, intentional fraud, criminal conduct or willful misconduct, and all such persons shall look solely to the Wind Down Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the Wind Down Trust. Other than as set forth in the Plan or in the Confirmation Order, nothing in this Section 8.2 shall be deemed to release any Wind Down Trust Beneficiary from any actions or omissions occurring prior to the Effective Date.

8.3     Nonliability of Wind Down Trustee for Acts of Others. Except as expressly provided herein, nothing contained in this Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the Wind Down Trustee or the Trust Professionals of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the Wind Down Trustee to assume or accept any such liability, obligation or duty, and none of the Wind Down Trustee or the Trust Professionals has assumed or will assume, as a result of this Agreement or otherwise, any such liability, obligation or duty. Any successor Wind Down Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Wind Down Trustee hereunder, and any statement or representation made as to the assets comprising the Wind Down Trust Assets or as to any other fact bearing upon the prior administration of the Wind Down Trust, so long as it has a good faith basis to do so. The Wind Down Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. The Wind Down Trustee or any successor Wind Down Trustee shall not be liable for any act or omission of any predecessor Wind Down Trustee, nor have a duty to enforce any claims against any predecessor Wind Down Trustee on account of any such act or omission. No provision of this Agreement shall require the Wind Down Trustee to expend or risk her personal funds or otherwise incur any financial liability in the performance of her rights or powers hereunder if the Wind Down Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it.

34

8.4     <u>Exculpation</u>. From and after the Effective Date, the Wind Down Trust, the Wind Down Trustee and the Trust Professionals shall be and hereby are exculpated by the Wind Down Trust Beneficiaries from any and all claims, causes of action and other assertions of liability arising out of or related to the discharge of their respective powers and duties conferred by the Plan, this Agreement or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law or otherwise, except for actions or omissions to act that are determined by Final Order of the Bankruptcy Court to have arisen out of their own respective intentional fraud, criminal conduct, gross negligence or willful misconduct. No Wind Down Trust Beneficiary shall have or be permitted to pursue any claim or cause of action against the Wind Down Trustee, the Wind Down Trust, the employees, professionals or representatives of either the Wind Down Trustee or the Wind Down Trust (including the Trust Professionals), for making payments in accordance with, or for implementing, the provisions of the Plan, the Confirmation Order or this Agreement. Any action taken or omitted to be taken with the express approval of the Bankruptcy Court shall conclusively be deemed not to constitute gross negligence or willful misconduct.

8.5     <u>Limitation of Liability</u>. The Wind Down Trustee and the Trust Professionals will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement or any other matter relating to this Agreement under any circumstances. Any liability of the Wind Down Trustee or any of the Trust Professionals under this Agreement shall be limited to an amount equal to the fees actually paid to the Wind Down Trustee or any Trust Professional as of the date of any determination.

8.6     <u>Indemnity</u>. The Wind Down Trustee (including the individual(s) serving as or comprising the Wind Down Trustee), the employees of the Wind Down Trust and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "<u>Indemnified Parties</u>") shall be indemnified by the Wind Down Trust solely from the Wind Down Trust Assets for any losses, claims, damages, liabilities and expenses occurring after the Effective Date, including reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against one or more of the Indemnified Parties on account of the acts or omissions in their capacity as, or on behalf of, the Wind Down Trustee; <u>provided</u>, <u>however</u>, that the Wind Down Trust shall not be liable to indemnify any Indemnified Party for any act or omission arising out of such Indemnified Party's respective gross negligence, fraud or willful misconduct as determined by a Final Order of the Bankruptcy Court. Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Wind Down Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such, except for any actions or omissions arising from their own respective willful misconduct, fraud or gross negligence; <u>provided</u>, <u>however</u>, that the Indemnified Parties receiving such advances shall repay the amounts so advanced, without interest, to the Wind Down Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this <u>Section 8.6</u>. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1     <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Agreement shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Texas, without giving effect to principles of conflicts of laws.

9.2     <u>Jurisdiction</u>. Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Wind Down Trust and the Wind Down Trustee, including the administration and activities of the Wind Down Trust and the Wind Down Trustee, and, pursuant to the Plan, the Bankruptcy Court has retained such jurisdiction; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the Wind Down Trustee shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any Claims or Causes of Action assigned to, or arising from or suffered by, the Wind Down Trust.

9.3     <u>Severability</u>. In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

9.4     <u>Notices</u>. Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email (with receipt acknowledged), or sent by nationally recognized overnight delivery service (with delivery receipt provided):

(i)     if to the Wind Down Trust, to:

[Wind Down Trustee]
[●]

with a copy to:

[●]

(ii)     if to any Wind Down Trust Beneficiary, to the last known address of such Wind Down Trust Beneficiary according to the Debtors' records, such Wind Down Trust Beneficiary's proof of claim or the lists of record holders provided to the Wind Down Trustee.

753518146.17

9.5     Headings. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision of this Agreement.

9.6     Controlling Document. With respect to any conflict or inconsistency between the Plan and this Agreement, this Agreement shall govern.  With respect to any conflict or inconsistency between the Plan and the Plan Supplement (including this Agreement) on the one hand, and the Confirmation Order on the other hand, the Confirmation Order shall govern.

9.7     Entire Agreement. This Agreement, the Plan and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Agreement.

9.8     Amendment. The Wind Down Trustee may, from time to time, modify, supplement, or amend this Agreement but only to clarify any ambiguity or inconsistency, or render this Agreement in compliance with its stated purposes (including as provided in Section 2.4(a) hereof), and only if such amendment does not materially and adversely affect the interests, rights, treatment, or distributions of any Wind Down Trust Beneficiary and is not inconsistent with the Plan. The Wind Down Trustee, with the approval of the Bankruptcy Court may, from time to time, modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

9.9     Confidentiality. Except as required in the performance of her duties, the Wind Down Trustee shall, while serving as Wind Down Trustee under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Wind Down Trust Assets relate or of which he has become aware in her capacity as Wind Down Trustee.

9.10    Meanings of Other Terms. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. The words herein and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement. The term "including" shall mean "including, without limitation."

9.11    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

9.12    Intention of Parties to Establish Wind Down Trust. This Agreement is intended to create a Wind Down Trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively.

9.13    <u>Waiver of Jury Trial</u>. Each of the parties hereto acknowledges and agrees that any controversy that may be connected with, arise out of or otherwise relate to this Agreement, any instrument or other document delivered pursuant to this Agreement or the transactions contemplated hereby is expected to involve complicated and difficult issues, and therefore each party irrevocably and unconditionally waives to the fullest extent permitted by applicable Law any right it may have to a trial by jury with respect to any claim, action, litigation or other proceeding ("<u>Proceeding</u>"), directly or indirectly, connected with, arising out of or otherwise relating to this Agreement, any instrument or other document delivered pursuant to this Agreement, or the transactions contemplated by this Agreement.  Each party hereto hereby acknowledges and certifies that (a) no representative of the other parties has represented, expressly or otherwise, that such other parties would not, in the event of any Proceeding, seek to enforce the foregoing waiver, (b) it understands and has considered the implications of this waiver, (c) it makes this waiver voluntarily, and (iv) it has been induced to enter into this Agreement by, among other things, the mutual waivers, acknowledgments and certifications set forth in this <u>Section 9.13</u>.

[Signature Pages Follow]

38

**IN WITNESS WHEREOF**; the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**GWG Holdings, Inc.**

By:_____
Name:
Title:

**GWG Life, LLC**

By:_____
Name:
Title:

**GWG Life USA, LLC**

By:_____
Name:
Title:

**GWG DLP Funding IV, LLC**

By:_____
Name:
Title:

**GWG DLP Funding VI, LLC**

By:_____
Name:
Title:

**GWG DLP Funding Holdings**

By:_____
Name:
Title:

753518146.17

**ELIZABETH C. FREEMAN, solely in her capacity as Wind Down Trustee and not in any individual capacity**


By:_____

Name:

Title:

## **EXHIBIT B**

**Form of Litigation Trust Agreement**

**[FORM AGREEMENT]**

## LITIGATION TRUST AGREEMENT

This LITIGATION TRUST AGREEMENT is made this [●]th day of [●], 2023 (this "Agreement"), by and among GWG Holdings, Inc.; GWG Life, LLC; GWG Life USA, LLC; GWG DLP Funding IV, LLC; GWG DLP Funding VI, LLC; and GWG DLP Funding Holdings VI, LLC, as debtors and debtors-in-possession (collectively, the "Debtors"), Elizabeth C. Freeman, as trustee for the Wind Down Trust (in such capacity, the "Wind Down Trustee"), and Michael I. Goldberg, as trustee of the Litigation Trust referred to herein (in such capacity, the "Litigation Trustee"). This Agreement creates and establishes the Litigation Trust (the "Litigation Trust") referenced herein in order to facilitate the implementation of the *Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted by the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Propopents*, dated [●], 2023 (as confirmed, and as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof, the "Plan").[1] Each Debtor and the Litigation Trustee are sometimes referred to herein individually as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, each of the Debtors filed a voluntary petition for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on April 20, 2022 (the "Petition Date") in the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, on May 9, 2022, the United States Trustee for the Southern District of Texas appointed an official committee of bondholders (as may be reconstituted from time to time, the "Bondholder Committee") in the Chapter 11 Cases;

WHEREAS, on May 2, 2022, L Bond Management LLC entered an appearance in the Chapter 11 Cases as the agent for twenty-four holders of Seller Trust L Bonds, who collectively hold bonds with a face-value of $366.9 million, and is a special purpose entity formed under Delaware law that is charged with maximizing recoveries on these bonds;

WHEREAS, on April 20, 2023, the Debtors filed the *Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted by the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Propopents* (Docket No. 1678);

WHEREAS, on [●], 2023, the Bankruptcy Court entered its order confirming the Plan (Docket No. [●]) (the "Confirmation Order");

WHEREAS, this Litigation Trust is established pursuant to the Plan as a liquidating trust and treated for U.S. federal income tax purposes as a liquidating trust described in Treasury Regulation section 301.7701-4(d) and generally in compliance with Revenue Procedure 94-45,

---

[1] For all purposes of this Agreement, references to the Plan shall mean the version of the Plan approved and confirmed through the Confirmation Order that is entered by the Bankruptcy Court (each, as defined below). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan and the Confirmation Order.

1

1994-2 C.B. 684; accordingly, for U.S. federal income tax purposes, the Litigation Trust is intended to qualify as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code of 1986, as amended (the "Tax Code") with the holders of the New WDT Interests (such holders, "Wind Down Trust Beneficiaries") treated solely for U.S. federal income tax purposes as grantors and owners of the Litigation Trust (other than with respect to any assets allocable to, or retained on account of, disputed claims as a "disputed ownership fund", within the meaning of Treasury Regulation section 1.468B-9);

WHEREAS, other than as described above for U.S. federal income tax purposes, it is intended for purposes of U.S. securities law and all other applicable law that the Litigation Trust be established with the Wind Down Trust as the sole beneficiary of the Litigation Trust and the Wind Down Trust Beneficiaries as the beneficiaries of the Wind Down Trust and the holders of the New WDT Interests;

WHEREAS, the sole purpose of the Litigation Trust is to hold and liquidate the Litigation Trust Assets in a manner consistent with the Plan and the terms of this Agreement and making distributions contemplated under the Plan and with the primary objective of maximizing the value of the Litigation Trust Assets for the benefit of the Wind Down Trust and with no objective or authority to continue or engage in the conduct of any trade or business or make any investments, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust and the Plan;

WHEREAS, the Litigation Trust is intended to be exempt from the registration requirements of the Investment Company Act of 1940, as amended (the "1940 Act");

WHEREAS, the Litigation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in this Agreement, the Plan, or the Confirmation Order; and

WHEREAS, the Litigation Trustee shall have all powers necessary to implement the provisions of this Agreement and administer the Litigation Trust as provided herein, in the Plan and the Confirmation Order, and under applicable non-bankruptcy law.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE I
## ESTABLISHMENT OF THE LITIGATION TRUST

1.1     **Establishment of the Litigation Trust and Appointment of the Litigation Trustee.**

(a)     The Debtors and the Litigation Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code and other applicable law, hereby establish a trust which shall be known as the Litigation Trust, on the

2

terms set forth herein. In connection with the exercise of the Litigation Trustee's powers hereunder, the Litigation Trustee may use this name or such variation thereof as the Litigation Trustee sees fit.

(b)     The Litigation Trustee is hereby appointed as trustee of the Litigation Trust as of the Effective Date. Subject to the terms of this Agreement, any decision or action by the Litigation Trustee with respect to the Litigation Trust Assets shall be exercised by the Litigation Trustee at its sole discretion and subject to the Litigation Trustee's duties imposed thereon by this Agreement, the Plan, and the Confirmation Order, and such decisions shall be binding and conclusive.

(c)     The sole beneficiary of the Litigation Trust shall be the Wind Down Trust, and all beneficial and reversionary interests in the Litigation Trust Assets shall be held by the Wind Down Trust. All proceeds distributed to the Wind Down Trust on account of such interests shall be used and distributed in accordance with the Wind Down Trust Agreement and the Plan; *provided*, *however*, that such proceeds may be otherwise retained and used by the Wind Down Trust only with the consent of the Litigation Trustee or by order of the Bankruptcy Court.

(d)     The Litigation Trustee shall be, a "United States person" as such term is defined in Section 7701(a)(30) of the Tax Code.

1.2     **Transfer of Initial Assets Into the Litigation Trust.** Pursuant to the Plan and the Confirmation Order, upon the Effective Date, the Initial Litigation Trust Assets (together with assets and Causes of Action subsequently acquired, received, transferred or assigned to or possessed by the Litigation Trust, including all proceeds of the Initial Litigation Trust Assets, the "Litigation Trust Assets") shall be deemed transferred to the Litigation Trust by the Debtors and title to such Litigation Trust Assets shall vest in the Litigation Trust free and clear of all liens, claims, interests, and encumbrances. The act of transferring the Initial Litigation Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Litigation Trust as if the asset or right was still held by the applicable Debtor. Any Causes of Action that have been commenced by the Investigations Committee, and are not released pursuant to the Plan, shall be included in the Retained Causes of Action and transferred to the Litigation Trust on the Effective Date. Notwithstanding anything to the contrary herein, the Litigation Trust may abandon to creditors or otherwise not accept any Retained Causes of Action that the Litigation Trustee believes, in good faith, have no value to the Litigation Trust; *provided* that creditors shall be deemed to assign to the Litigation Trust any such Retained Causes of Action so abandoned to creditors and such Retained Causes of Action shall be Litigation Trust Assets.

1.3     **Initial Litigation Trust Funding.** The Litigation Trust shall be funded with the Initial Litigation Trust Funding Amount, together with the other Initial Litigation Trust Assets, on the Effective Date of the Plan and as a condition to the Effective Date of the Plan.

1.4     **Title to the Litigation Trust Assets.** Upon the assignment and/or transfer of the Initial Litigation Trust Assets to the Litigation Trust, the Litigation Trust shall succeed to all of the Debtors' rights, title and interest in the Initial Litigation Trust Assets for the benefit of the Wind Down Trust subject to the terms of the Plan, and no other Entity shall have any interest,

3

legal, beneficial or otherwise, in the Initial Litigation Trust Assets upon such assignment and transfer to the Litigation Trust (other than as provided in the Plan, the Confirmation Order or this Agreement). The Litigation Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Wind Down Trust Beneficiaries (as set forth in the Plan and the Wind Down Trust Agreement), and then by the Wind Down Trust Beneficiaries to the Wind Down Trust in exchange for New WDT Interests, and then by the Wind Down Trust on behalf of such Wind Down Trust Beneficiaries to the Litigation Trust.

      1.5    **Nature and Purpose of the Litigation Trust.**

      (a)    **Purpose.** The Litigation Trust is established as a trust, subject to the terms and conditions contained herein and in the Plan, solely for the purpose of holding and liquidating the Litigation Trust Assets in a manner consistent with the Plan and with the primary objective of maximizing the value of the Litigation Trust Assets for the ultimate benefit of the Wind Down Trust. The Litigation Trustee shall confer with the Wind Down Trustee with respect to the commencement of any litigation in connection with the Retained Causes of Action or any other Causes of Action subsequently acquired, received, transferred or assigned to the Litigation Trust and the potential recoveries to Wind Down Trust Beneficiaries resulting therefrom; *provided* that the ultimate decision with respect to whether to commence any litigation shall be in the sole discretion of the Litigation Trustee. For the avoidance of doubt, in exercising such sole discretion, the Litigation Trustee shall consider and may take such actions in connection with the exercise of such sole discretion that promote the greatest recovery to Wind Down Trust Beneficiaries. The Litigation Trust shall not engage, and shall not have the intention of engaging, in any trade or business and shall operate with no objective or authority to continue or engage in the conduct of any trade or business or make any investments, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust and the Plan. The Litigation Trust shall not be held out to others as a trust that is engaged in the above activities in furtherance of liquidation and not as an "investment company" under the 1940 Act or any other similar investment vehicle.

      (b)    **Relationship to and Incorporation of the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions thereof by reference. To that end and subject to the provisions of the Plan and the Confirmation Order, the Litigation Trustee shall have full power and authority to take any action consistent with the provisions of the Plan and the Confirmation Order, to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan that directly affect the interests of the Litigation Trust, and to seek any orders from the Bankruptcy Court as may be required in furtherance of this Agreement. In the event of any conflict or inconsistency between the Plan and this Agreement, this Agreement (in the form executed on or before the Effective Date) shall govern. With respect to any conflict or inconsistency between the Plan and this Agreement on the one hand, and the Confirmation Order on the other hand, the Confirmation Order shall govern.

      1.6    **Privileges and Access to Debtors' Books and Records.**

      (a)    The Litigation Trustee, on behalf of the Litigation Trust, shall step into the shoes of: (i) the Debtors as it relates to either communications that occurred prior to, or documents

4

prepared before, April 20, 2022 with respect to Debtors' right to assert attorney-client privilege or any other privilege or immunity Debtor possesses, if any, and the Litigation Trustee shall be entitled to preserve, assert, access, or waive such privilege or immunity of the Debtors as it relates to such documents or communications, and (ii) the Bondholder Committee (together with the Debtors, the "Privilege Transfer Parties") with regard to attorney-client privilege or any other privilege or immunity in respect of all communications documents created by or in the possession of the Bondholder Committee related to the analysis or prosecution of any Retained Causes of Action, and the Litigation Trustee shall be entitled to preserve, assert, access, or waive such privilege or immunity of the Bondholder Committee as it relates to such communications and documents (subsections (i) and (ii) collectively, the "Privileges" and such communications and documents the "Transferred Privileged Information"). The Transferred Privileged Information is hereby transferred and assigned to, and vested in, the Litigation Trust and its authorized representatives. The Transferred Privileged Information shall include documents and information of all manner, whether oral, written, or digital, and whether or not previously disclosed or discussed.

(b)      The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information exclusively in the Litigation Trust, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Trust. The Litigation Trust and the Litigation Trustee (on behalf of the Litigation Trust) shall have the exclusive authority and sole discretion to maintain the Privileges and keep the Transferred Privileged Information confidential or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Transferred Privileged Information.

(c)      The Privilege Transfer Parties agree to take all necessary or appropriate actions to effectuate the transfer of such Privileges, and to provide to the Litigation Trust without the necessity of a subpoena all Transferred Privileged Information in their respective possession, custody, or control. The Litigation Trust is further expressly authorized to formally or informally request or subpoena documents, testimony, or other information that would constitute Transferred Privileged Information from any persons, including former directors or officers of any of the Debtors, attorneys, professionals, consultants, and experts, and no such person may object to the production to the Litigation Trust of such Transferred Privileged Information on the basis of a Privilege. Until and unless the Litigation Trust makes a determination to expressly waive any Privilege, Transferred Privileged Information shall be produced solely to the Litigation Trust.

(d)      Pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Litigation Trust or any of its respective employees, professionals, or representatives, or by disclosure of such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Litigation Trust, on the other hand, or any of their respective employees, professionals, or representatives.

(e)      If a Privilege Transfer Party, the Litigation Trust, any of their respective employees, professionals, or representatives, or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information. In such circumstances, the disclosing party

shall promptly upon discovery of the production notify the Litigation Trust of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

(f)     On the Effective Date, the Litigation Trustee shall have the power, right and responsibility to access or take possession of all books, files and records of the Debtors or Wind Down Debtors, as applicable, for purposes of carrying out the purpose of the Litigation Trust. At any time after the Effective Date, upon reasonable request of the Litigation Trustee, the Wind Down Trustee shall provide the Litigation Trustee with any of the Debtors' or the Wind Down Debtors' books, records, and files in the Wind Down Trust's or Wind Down Trustee's possession, custody or control, including such Transferred Privileged Information of the Debtors as is in the Wind Down Trustee's possession, custody or control that relate to the evaluation and prosecution of the Retained Causes of Action, and the Wind Down Trustee shall, in good faith, provide such Privileged information of the Debtors as is in the Wind Down Trustee's possession, custody or control that relates to the evaluation and prosecution of the Retained Causes of Action; *provided*, that notwithstanding the foregoing, the privilege of the Independent Directors in their capacity as such, the DLP Independent Directors in their capacity as such, and David F. Chavenson in his personal capacity as a former member of the Special Committee, in each case, is hereby recognized and shall remain in full force and effect and shall not be waived, nor shall any such privileged documents be turned over to the Litigation Trust without the consent of all Independent Directors or all DLP Independent Directors, as applicable. The Wind Down Trustee shall make reasonable efforts to respond to such requests within five (5) business days following any such request by the Litigation Trustee, or as soon thereafter as reasonably practicable.

## ARTICLE II
## TRUST RELATIONSHIP

2.1     **Trust Relationship.** Subject to the terms of the Plan and this Agreement, the ownership of the beneficial interests in the Litigation Trust shall be beneficial only and shall be for the purpose of enabling the Wind Down Trust to make distributions to the Wind Down Trust Beneficiaries issued by the Wind Down Trust using the proceeds of the Litigation Trust Assets. The relationship of the Wind Down Trust, as sole beneficiary, to the Litigation Trust and the Litigation Trustee shall be solely that of a beneficiary of a trust and shall not be deemed a principal or agency relationship, and the rights of the Wind Down Trust in such capacity shall be limited to those conferred upon the Wind Down Trust by this Agreement, the Plan and/or the Confirmation Order and, to the extent not inconsistent with the foregoing, applicable non-bankruptcy law. The Wind Down Trustee and the Litigation Trustee shall communicate on a regular basis, confer and coordinate efforts to maximize the ultimate recovery by the Wind Down Trust Beneficiaries from distributions from the Wind Down Trust, including anticipated transactions involving Wind Down Trust Assets and initiation of litigation/settlements involving Litigation Trust Assets. Nothing herein is intended to create a consent or other right with respect to decisions made by the Wind Down Trustee or the Litigation Trustee with respect to their respective trusts.

## ARTICLE III
## RIGHTS, POWERS, AND DUTIES OF LITIGATION TRUSTEE

6

3.1 **Role of the Litigation Trustee.** In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order and this Agreement, the Litigation Trustee shall have the sole authority to make decisions and take action with respect to the Litigation Trust Assets.

3.2 **Authority to Prosecute and Settle Litigation Claims.**

(a) Subject to express provisions of this Agreement, the Plan, and the Confirmation Order, the Litigation Trustee shall, in its sole discretion, prosecute, pursue, object, reconcile, compromise, settle, or abandon any and all Retained Causes of Action and any other Causes of Action subsequently acquired, received, transferred or assigned to the Litigation Trust that have not already been resolved as of the Effective Date; *provided*, that the entry into any settlement of any Claim, Cause of Action, or other dispute, or any other transaction with an economic value of $5 million or more (in the Litigation Trustee's good faith determination) as of the date of the consummation, settlement, or resolution of such settlement or transaction shall require the approval of the Bankruptcy Court after notice and an opportunity for a hearing; *provided*, *further*, *however*, for the avoidance of doubt, the foregoing shall not apply to the retention of any counsel or other professionals by the Litigation Trust or the payment of the fees or expenses of any such counsel or professionals. The Litigation Trustee shall have the sole and absolute right to pursue, not pursue, release, abandon, and/or settle, and otherwise make all decisions with respect to, any and all Retained Causes of Action and any other Causes of Action subsequently acquired, received, transferred or assigned to the Litigation Trust (including any counterclaims asserted against the Litigation Trust) as the Litigation Trustee determines is in the best interests of the Litigation Trust, and consistent with the purposes of the Litigation Trust and the Litigation Trustee's duty to maximize the value of the Litigation Trust Assets in accordance with the terms of this Agreement, and shall have no liability for the outcome of its decision except for any damages caused by fraud, willful misconduct, self-dealing or gross negligence.

(b) To the extent that any action has been taken prior to the Effective Date to prosecute, adjudicate or otherwise resolve any of the Retained Causes of Action and any other Causes of Action assigned to the Litigation Trust, the Litigation Trustee or Litigation Trust shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the litigation by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Litigation Trust: "[Name of Trustee], as Trustee for the GWG Litigation Trust v. [Defendant]" or "GWG Litigation Trust v. [Defendant]." Without limiting the foregoing, the Litigation Trustee may take any and all actions necessary or prudent to intervene as plaintiff, movant, or additional party, as appropriate, with respect to any applicable Retained Causes of Action and any other Causes of Action assigned or otherwise transferred to the Litigation Trust, provided, however, that the Litigation Trustee shall have absolute discretion to pursue, not pursue, settle, or abandon such previously commenced litigation. For purposes of exercising its powers, the Litigation Trustee shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(c) Any determinations by the Litigation Trustee with regard to the amount or timing of settlement or other disposition of any Retained Causes of Action and any other Causes of Action assigned or otherwise transferred to the Litigation Trust settled in accordance with the

7

terms of this Agreement shall be conclusive and binding on the Litigation Trust and all other parties in interest upon the entry of an order of a court of competent jurisdiction (including a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

(d)    The Litigation Trustee shall have the sole authority to, on or before the Claims Objection Bar Date, file, withdraw, compromise, settle or litigate to judgment objections to Litigation Trust Reconciliation Claims, including any such Claims that are Disputed Claims or Interests.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Litigation Trustee, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest.

3.3    **Liquidation of Litigation Trust Assets.**  The Litigation Trustee shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement, liquidate and convert to Cash the Litigation Trust Assets, and timely transfer such Cash to the Wind Down Trust for distribution to the Wind Down Trust Beneficiaries in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  The Litigation Trustee shall be entitled to take into consideration the risks, timing, anticipated duration, and costs of potential actions in making determinations as to the methodologies to be employed to liquidate the Litigation Trust Assets.   Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment, or dismissal of any or all of the Retained Causes of Action and any other Causes of Action assigned or otherwise transferred to the Litigation Trust or otherwise or through the sale or other disposition of the Litigation Trust Assets (in whole or in combination).  The Litigation Trustee may incur any reasonable and necessary expenses in connection with the liquidation of the Litigation Trust Assets.

3.4    **Distributions.**  At such time as the Litigation Trustee determines the Litigation Trust has (i) resolved, settled, compromised, or otherwise liquidated the Retained Causes of Action and any other Causes of Action assigned or otherwise transferred to the Litigation Trust from time to time in accordance with the terms of the Plan and this Agreement, and (ii) paid all expenses related to the Litigation Trust's rights and duties in accordance with this Agreement (including in connection with the winding up and dissolution of the Litigation Trust), the Litigation Trustee shall transfer the Litigation Trust Assets to the Wind Down Trust for distribution in accordance with the terms of the Plan and the Confirmation Order; *provided*, that the Litigation Trustee shall be required to transfer the Distributable Cash (as defined below) to the Wind Down Trust for distribution to the Wind Down Trust Beneficiaries at such time that the Distributable Cash then held by the Litigation Trust is equal to or greater than $15,000,000.  Notwithstanding the foregoing, and for the avoidance of doubt, the Litigation Trustee may make interim transfers of Cash (or other consideration) realized by the Litigation Trust to the Wind Down Trust for distribution to the Wind Down Trust Beneficiaries in accordance with the Plan and the Confirmation Order, in such amounts as determined in the reasonable discretion of the Litigation Trustee taking into consideration, among other things, accrued and reasonably anticipated

8

expenses relating to the Litigation Trust's rights and duties in accordance with this Agreement (such amounts, "<u>Distributable Cash</u>").

3.5 **<u>Retention of Counsel and Other Professionals</u>.** Without any further notice to any party or action, order, or approval of the Bankruptcy Court, the Litigation Trustee, on behalf of the Litigation Trust, may employ and pay in the ordinary course of business, any professional, including legal counsel, for services rendered or expenses incurred on and after the Effective Date, in accordance with the terms of any agreement entered into between the Litigation Trust and such professional in the discretion of the Litigation Trustee that are necessary or appropriate to assist the Litigation Trustee in the performance of the Litigation Trustee's duties under the Plan, the Confirmation Order, and this Agreement.

3.6 **<u>Fees and Expenses of the Litigation Trust</u>.** From and after the Effective Date, reasonable fees and out-of-pocket expenses of the Litigation Trust and its employed professionals related to the performance of the Litigation Trustee's duties under this Agreement shall be paid in the ordinary course of business from the Initial Litigation Trust Funding Amount, and after such amount is exhausted, from proceeds received in connection with monetizing the Retained Causes of Action, in accordance with the Plan, the Confirmation Order, and this Agreement.

3.7 **<u>Agreements</u>.** Pursuant to the Plan, the Confirmation Order, and the other provisions of this Agreement, the Litigation Trustee may enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order, or this Agreement and perform all of the Litigation Trust's obligations thereunder.

3.8 **<u>Powers of the Litigation Trustee</u>.** The Litigation Trustee is hereby empowered, subject to the terms and conditions set forth in this Agreement, the Plan, and/or the Confirmation Order, to take any and all actions to effectuate the purpose and objectives of the Litigation Trust. Without limiting the generality of the previous sentence, the Litigation Trustee shall have the power to:

(a) conduct investigations of Retained Causes of Action and any other Causes of Action assigned or otherwise transferred to the Litigation Trust, including pursuant to Bankruptcy Rule 2004;

(b) perform all actions and execute all agreements, instruments, and other documents necessary to effectuate the purposes of the Litigation Trust;

(c) open, establish, maintain and administer bank accounts on behalf of or in the name of the Litigation Trust, which shall be segregated to the extent appropriate in accordance with the Plan and this Agreement;

(d) hold legal title to any and all Litigation Trust Assets;

(e) manage, liquidate, supervise, prosecute, and protect, as applicable, the Initial Litigation Trust Assets and any other Litigation Trust Assets;

(f) file, withdraw, settle, or litigate to judgment objections to Litigation Trust Reconciliation Claims, including any such Claims that are Disputed Claims or Interests;

9

(g)     settle Claims that are Litigation Trust Assets, including the Retained Causes of Action and any other Causes of Action assigned or otherwise transferred to the Litigation Trust;

(h)     pursue, prosecute, abandon, or otherwise resolve the Retained Causes of Action and any other Causes of Action assigned or otherwise transferred to the Litigation Trust;

(i)     commence any or all proceedings with respect to the Retained Causes of Action and any Causes of Action assigned or otherwise transferred to the Litigation Trust that may be or could have been commenced, and take all actions that may be or could have been taken, by any officer, director, shareholder or other party acting in the name of the Debtors or their Estates with like effect as if duly authorized, exercised and taken by unanimous action of such officers, directors and shareholders or other party;

(j)     engage in, intervene in, join, compromise, adjust, release, mediate, arbitrate, sue on or defend, counterclaim, setoff, recoup, pursue, prosecute, abandon, or otherwise address and settle any actions, suits, proceedings, disputes, claims, controversies, demands, causes of action, or other litigation in favor of or against the Litigation Trust, enter into agreements relating to the foregoing, whether or not any suit is commenced or claim accrued or asserted and, in advance of any controversy, enter into agreements regarding arbitration, adjudication or settlement thereof, all in the name of the Litigation Trust if necessary or appropriate, and institute or continue actions that were or could have been commenced by any of the Debtors prior to the Effective Date that is a Litigation Trust Asset, and prosecute or defend all related litigation or appeals, and, when appropriate, settle such actions and claims;

(k)     enforce, waive, assign or release rights, privileges or immunities of any kind (subject to the provisions of this Agreement, the Confirmation Order, or the Plan);

(l)     seek any relief from, or resolution of any disputes by, the Bankruptcy Court or other court of competent jurisdiction;

(m)     enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement and perform all duties and obligations thereunder;

(n)     obtain reasonable insurance coverage with respect to the liabilities and obligations of the Litigation Trustee under this Agreement (in the form of an errors and omissions policy or otherwise), if the Litigation Trustee determines that such insurance coverage is appropriate;

(o)     retain, compensate and employ professionals to advise and/or represent the Litigation Trust, whether such professionals are to be compensated on an hourly, fixed fee, contingency fee, or other basis;

(p)     pay all valid and lawful expenses, debts, charges, taxes and liabilities of the Litigation Trust;

(q)     receive, manage, supervise, protect, and liquidate the Litigation Trust Assets (including, for the avoidance of doubt, holding stocks or securities for a limited time or

10

holding Cash in his/her/its law firm's trust account), withdraw and make distributions from and pay taxes and other obligations owed by the Litigation Trust from funds held by the Litigation Trustee and/or the Litigation Trust as long as such actions are consistent with the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and are merely incidental to its liquidation and dissolution;

(r)     prepare, or have prepared, and file, if necessary, with the appropriate governmental entity any and all tax returns, information returns, and other required documents with respect to the Litigation Trust (including, without limitation, U.S. federal, state, local, or foreign tax or information returns required to be filed by the Litigation Trust) and pay taxes properly payable by the Litigation Trust, if any, and cause all taxes payable by the Litigation Trust, if any, to be paid exclusively out of the Litigation Trust Assets;

(s)     request any appropriate tax determination with respect to the Litigation Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(t)     make tax elections by and on behalf of the Litigation Trust, which are deemed by the Litigation Trustee, either independently or with the advice of professionals employed by the Litigation Trust, to be in the best interest of maximizing the liquidation value of the Litigation Trust Assets, in light of the Litigation Trustee's duty to maximize the value of the Litigation Trust Assets;

(u)     take such other actions as the Litigation Trustee deems necessary or appropriate to fulfill his duties under this Agreement and to further the objectives of the Litigation Trust; and

(v)     dissolve the Litigation Trust in accordance with the terms of this Agreement.

3.9     **Management of the Litigation Trust Assets.** Except as otherwise provided in the Plan, the Confirmation Order, or this Agreement, and subject to Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Litigation Trustee may in its sole discretion control and exercise authority over the Litigation Trust Assets, over the management and disposition thereof, and over the management and conduct of the Litigation Trust, in each case, as necessary or desirable to enable the Litigation Trustee to fulfill the intents and purposes of this Agreement. No Entity dealing with the Litigation Trust will be obligated to inquire into the authority of the Litigation Trustee in connection with the acquisition, management, or disposition of the Litigation Trust Assets. For the avoidance of doubt, subject to the terms of this Agreement, all decisions or actions contemplated or authorized by this Agreement are to be decided by the Litigation Trustee in its sole discretion.

3.10    **Limitations on Power and Authority of the Litigation Trustee.** Notwithstanding anything in this Agreement to the contrary, the Litigation Trustee shall not have the authority to do any of the following on behalf of the Litigation Trust:

11

(a)     take any action in contravention of the Plan, the Confirmation Order or this Agreement;

(b)     take any action that would make it impossible to carry on the activities of the Litigation Trust;

(c)     possess property of the Litigation Trust or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein;

(d)     cause or permit the Litigation Trust to engage in any trade or business;

(e)     receive transfers of any listed stocks or securities, any readily-marketable assets or any operating assets of a going business, except as is absolutely necessary to carry out the purposes of the Litigation Trust; *provided, however*, that the Litigation Trust may receive readily-marketable securities as consideration for the settlement or compromise of any Retained Causes of Action so long as the Litigation Trustee causes such readily marketable securities to be reduced to Cash as soon as reasonably practicable; *provided, further*, that in no event shall the Litigation Trustee receive any such investment that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes or would be inconsistent with the exemption from registration under the 1940 Act for companies whose activities are merely incidental to their dissolution;

(f)     receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or 50% or more of the stock of a corporation with operating assets; *provided, however*, that in no event shall the Litigation Trustee receive or retain any such asset or interest that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d) or any successor provision thereof, or take any other action or engage in any investments or activities that would jeopardize treatment of the Litigation Trust as a liquidating trust for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof or would be inconsistent with the exemption from registration under the 1940 Act for companies whose activities are merely incidental to their dissolution; or

(g)     take any action the objective intent or purpose of which is to frustrate the primary objective of the Litigation Trust.

3.11     **Books and Records.**  The Litigation Trustee shall maintain books and records relating to the Litigation Trust Assets, the proceeds realized from such assets, and the payment of, costs and expenses of, and liabilities of claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be necessary to enable him/her/it to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax and other reporting requirements of the Litigation Trust, including with respect to Section 3.12 of this Agreement. Unless explicitly noted, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Litigation Trust Assets, except as may otherwise be set forth in the Plan or the Confirmation Order.

12

3.12   **Reports.**

(a)   **Financial and Status Reports.**  The fiscal year of the Litigation Trust shall be the calendar year.  Following the Effective Date, and unless otherwise ordered by the Bankruptcy Court upon motion by the Litigation Trustee, and during the existence of the Litigation Trust, the Litigation Trust shall File with the Bankruptcy Court and post to the website to be established and maintained by the Litigation Trust, which may be the same website established and maintained by or on behalf of the Wind Down Trust, within 90 days after the end of each calendar year during the term of the Litigation Trust, and within 45 days after the end of each calendar quarter during the term of the Litigation Trust (other than the fourth quarter), a quarterly report regarding the administration of property subject to its ownership and control pursuant to the Plan, receipts, distributions made by it, an update regarding the status of the Retained Causes of Action being prosecuted by the Litigation Trust, and a summary of all major activities during the period.

(b)   The first report shall be due following the first full quarter after the establishment of the Litigation Trust.  The Litigation Trustee may post any such report on a website maintained by or on behalf of the Litigation Trust and/or electronically File it with the Bankruptcy Court in lieu of actual notice.

## ARTICLE IV
## THE LITIGATION TRUSTEE GENERALLY

4.1   **Independent Litigation Trustee.**  The Litigation Trustee shall be an independent, third-party fiduciary, and shall be a professional natural person or financial institution with experience administering other litigation trusts.  For the avoidance of doubt, the Litigation Trustee (including any successor thereto) shall have no affiliation with any Bondholder Committee member and must not own (or have owned as of the Confirmation Date) any Public L Bonds, New WDT Interests, or other Interests in or Securities issued by any of the Debtors.  As of the date of this Agreement, the Litigation Trustee shall be Michael I. Goldberg.

4.2   **Term of Service.**  The Litigation Trustee shall serve until the earlier to occur of (a) the termination of the Litigation Trust in accordance with this Agreement and the Plan or (b) the Litigation Trustee's death, resignation or removal.

4.3   **Litigation Trustee's Compensation and Reimbursement.**

(a)   **Compensation.**  The Litigation Trustee shall receive compensation from the Litigation Trust pursuant to the attached Schedule A ("Litigation Trustee Compensation").

(b)   **Expenses.**  The Litigation Trustee shall use the Initial Litigation Trust Funding Amount to fund all reasonable and documented expenses related to the Litigation Trustee's duties under the Plan and this Agreement including but not limited to the payment of expenses related to accountants, contingency counsel, the retention of experts or any investigation or litigation initiated by the Litigation Trustee.  Thereafter, the Litigation Trust and the Litigation Trustee may use proceeds from monetizing the Retained Causes of Action to fund the reasonable and customary out-of-pocket expenses incurred by the Litigation Trust and Litigation Trustee.

Beginning on the Effective Date, the Litigation Trustee shall have the power to employ employees or other independent contractors to assist in carrying out its duties under the Plan, including this Agreement, and may compensate and reimburse the expenses of these employees or other independent contractors based upon the nature of the work performed by such parties without further order of the Bankruptcy Court, subject to any limitations and procedures established by this Agreement. The Litigation Trust will reimburse the Litigation Trustee for all actual, reasonable and documented out-of-pocket expenses, including reasonable travel expenses necessary for discharge of the Litigation Trustee's duties, incurred by the Litigation Trustee in connection with the performance of the duties of the Litigation Trustee hereunder or under the Confirmation Order or the Plan (collectively, the "Litigation Trustee Expenses" and, together with the Litigation Trustee Compensation, the "Litigation Trustee Fees").

(c)     **Payment.**   The Litigation Trustee Fees shall be paid to the Litigation Trustee without necessity for review or approval by the Bankruptcy Court or any other Entity. Payment of the Litigation Trustee Fees shall be payable out of the Litigation Trust Assets as set forth herein. The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute regarding the Litigation Trustee Fees.

4.4     **Resignation.**   The Litigation Trustee may resign as such by executing and delivering an instrument in writing to the Wind Down Trustee; *provided, however*, that the Litigation Trustee shall continue to serve as Litigation Trustee after his/her/its resignation until the earlier of (a) the time when appointment of a successor Litigation Trustee shall become effective in accordance with Section 4.6 and (b) forty-five (45) days after his/her/its resignation.

4.5     **Removal.**   The Bankruptcy Court, on its own initiative or upon application of the Wind Down Trustee, may for Cause (as defined herein), and after notice and a hearing, remove the Litigation Trustee. Notwithstanding the removal of the Litigation Trustee pursuant to this Section 4.5, the rights of the removed Litigation Trustee under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such removed Litigation Trustee following the effectiveness of such resignation, subject to any Bankruptcy Court order removing the Litigation Trustee. "Cause" shall mean (i) the Litigation Trustee's willful failure to perform his/her/its material duties hereunder, which is not remedied within 30 days of notice; (ii) the Litigation Trustee's commission of an act of fraud, theft or embezzlement during the performance of his/her/its duties hereunder; (iii) the Litigation Trustee's conviction of a felony; or (iv) the Litigation Trustee's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder.

4.6     **Appointment of Successor Litigation Trustee.**

(a)     In the event of the death or disability (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation, incompetency, or removal of the Litigation Trustee, the Wind Down Trustee, subject to Bankruptcy Court approval, or the Bankruptcy Court shall designate a successor Litigation Trustee satisfying the requirements set forth in Section 4.1 hereof. Prior to its resignation, the Litigation Trustee may recommend a successor. Such appointment of a successor shall specify the date on which such appointment shall be effective. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge and deliver to the Wind Down Trustee an

14

instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Trustee hereto, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Litigation Trustee and the successor Litigation Trustee shall not be personally liable for any act or omission of the predecessor Litigation Trustee; *provided, however*, that a predecessor Litigation Trustee shall, nevertheless, when reasonably requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee under the Litigation Trust all the estates, properties, rights, powers and trusts of such predecessor Litigation Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Trustee, in effectuating the assumption by the successor Litigation Trustee of his/her/its obligations and functions hereunder.

4.7   **Effect of Resignation or Removal.**   The death, disability, dissolution, bankruptcy, resignation, incompetency, incapacity, or removal of the Litigation Trustee, as applicable, shall not operate to terminate the Litigation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Trustee or any prior Litigation Trustee.  In the event of the resignation or removal of the Litigation Trustee, such Litigation Trustee will promptly (a) execute and deliver such documents, instruments, and other writings as may be ordered by the Bankruptcy Court or reasonably requested by the successor Litigation Trustee or the Wind Down Trustee to effect the termination of such Litigation Trustee's capacity under this Agreement; (b) deliver to the Bankruptcy Court (if required) and/or the successor Litigation Trustee all documents, instruments, records and other writings related to the Litigation Trust as may be in the possession of such Litigation Trustee, but may retain a copy at his/her/its election; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

4.8   **Confidentiality.**   The Litigation Trustee, during the period that the Litigation Trustee serves as Litigation Trustee under this Agreement and for a period of two (2) years following the later of the termination of this Agreement or such Litigation Trustee's removal or resignation hereunder, and all employees, professionals and representatives engaged, retained or employed by the Litigation Trust or the Litigation Trustee, for a period of two (2) years following the termination of this Agreement, shall hold strictly confidential and not use for personal gain or for the gain of any Entity for whom such Litigation Trustee or any of such employees, professionals or representatives may be employed any non-public information of or pertaining to any of the Litigation Trust Assets or of which the Litigation Trustee un his, her or its capacity as Litigation Trustee, or any of such employees, professionals, or representatives in their respective capacities a such, has become aware, until (a) such information is made public other than by disclosure by the Litigation Trust, the Litigation Trustee, or any of the Litigation Trust's employees, professionals, or representatives in violation of this Agreement; (b) the Litigation Trust is required by law to disclose such information (in which case the Litigation Trust shall provide the relevant Entity reasonable advance notice and an opportunity to protect his, her, or its rights); or (c) the Litigation Trust obtains a waiver of confidentiality from the applicable Entity.  However, nothing in this paragraph shall limit the Litigation Trustee's ability to exercise the authority and perform the obligations provided in the Plan, the Confirmation Order, and this Agreement, including, but not limited to, the prosecution, pursuit, compromise, or settlement of any and all

15

Retained Causes of Action and all other Causes of Action assigned or otherwise transferred to the Litigation Trust.

## ARTICLE V
## LIABILITY AND INDEMNIFICATION

5.1    **Parties Dealing With the Litigation Trustee.**  In the absence of actual knowledge to the contrary, any Entity dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Litigation Trust and the Litigation Trust Assets.  No Entity that may deal with the Litigation Trustee shall have any obligation to inquire into the validity or expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

5.2    **Exculpation and Indemnification of the Litigation Trustee.**

(a)    Neither the Litigation Trustee, nor any affiliate, employee, professional, successors, assigns, agent, or representative of the Litigation Trustee (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or administering or enforcing this Agreement (including these exculpation provisions), as and when imposed on the Litigation Trustee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Litigation Trustee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Agreement, the Plan, or the Confirmation Order, or as may arise by reason of any action, omission or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to any such Losses that are determined by a Final Order of the Bankruptcy Court to have been caused by the fraud, willful misconduct, gross negligence, self-dealing or the intentional disregard of the requirements of this Agreement by such Exculpated Party. Every act taken or omitted, power exercised or obligation assumed by the Litigation Trust or any other Exculpated Party pursuant to the provisions of this Agreement, the Plan, or the Confirmation Order shall be held to be taken or omitted, exercised or assumed, as the case may be, by the Litigation Trust or any Exculpated Party acting for and on behalf of the Litigation Trust and not otherwise; *provided, however*, that none of the foregoing Entities are deemed to be responsible for any other such Entities' actions or inactions. Except as provided in the first proviso of the first sentence of this Section 5.2(a), every Entity contracting or otherwise dealing with or having any relationship with the Litigation Trust or any Exculpated Party shall have recourse only to the Litigation Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships, and the Litigation Trust and the Exculpated Parties shall not be individually liable therefor. In no event shall the Litigation Trustee or any other Exculpated Party be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Litigation Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Any liability of the Litigation Trustee or any other Exculpated Party under this Agreement shall

16

be limited to an amount equal to the fees actually paid to the Litigation Trustee or any Exculpated Party as of the date of any determination.

(b)   The Litigation Trust shall indemnify the Litigation Trustee and any professionals, employees, or independent consultants engaged by or on behalf of the Litigation Trustee or the Litigation Trust for, and shall hold each of them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred other than directly as a result of fraud, gross negligence, or willful misconduct on the part of such indemnified person(s) in any of their capacity as such (which fraud, gross negligence, or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Litigation Trustee and each of such other indemnified person(s) in connection with the acceptance, administration, exercise, and performance of its duties under the Plan, the Confirmation Order, or this Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence, or willful misconduct.  In addition, the Litigation Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Litigation Trustee and each of such other indemnified person(s), in each of their respective capacities as such, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to the Litigation Trust or the implementation or administration of the Plan if the Litigation Trustee or such other indemnified person(s) acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Litigation Trust.  To the extent the Litigation Trust indemnifies and holds the Litigation Trustee or such other indemnified person(s) harmless as provided above, the reasonable legal fees and related costs incurred by counsel to the Litigation Trustee or such other indemnified person(s) in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Litigation Trustee Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Section 5.2(a) shall be paid by the Litigation Trust.  The Litigation Trustee shall not be personally liable for the payment of any Litigation Trust expense or claim or other liability of the Litigation Trust, and no Entity shall look to the Litigation Trustee personally for the payment of any such expense or liability.  This provision shall survive the termination of this Agreement and the death, dissolution, liquidation, resignation, replacement, or removal of the Litigation Trustee.

(c)   The Litigation Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Litigation Trust's sole expense, for the Litigation Trust, the Litigation Trustee, and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the Litigation Trustee, which insurance coverage may, at the sole option of the Litigation Trustee, be extended for a reasonable period after the termination of this Agreement.

5.3   **Limitation of Liability.**  The Litigation Trustee, including any professionals, employees, or independent consultants engaged by or on behalf of the Litigation Trustee or the Litigation Trust will not be liable for punitive, exemplary, consequential, special, or other damages for a breach of this Agreement under any circumstances in connection with the Litigation Trust, whether such claims are brought in contract or tort, except for damages arising from specific actions or omissions resulting from fraud, willful misconduct, gross negligence, self-dealing or the

17

intentional disregard of the requirements of this Agreement.  The Litigation Trustee may, in connection with the performance of the Litigation Trustee's functions, in the Litigation Trustee's sole and absolute discretion, consult with its, his or her attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing.  Notwithstanding such authority, the Litigation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not, in and of itself, result in the imposition of liability on the Litigation Trustee.  Any Entity dealing with the Litigation Trustee shall look only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee to such person in carrying out the terms of this Agreement, and the Litigation Trustee shall have no personal obligation to satisfy such liability.  Notwithstanding anything else to the contrary in this Agreement, no provision of this Agreement shall be deemed to waive the protections in favor of the Litigation Trustee or the requirements of the *Barton Doctrine* (or similar applicable doctrine), and the Litigation Trustee shall be entitled to assert all rights in connection therewith.

5.4    **No Liability for Good Faith Error of Judgment.**  The Litigation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order that the Litigation Trustee was grossly negligent in ascertaining the pertinent facts.

5.5    **Survival.** The provisions of this Article V shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Litigation Trustee.

## ARTICLE VI
## TAX MATTERS

6.1    **Tax Treatment; No Successor in Interest.**  The Litigation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust described in Treasury Regulation section 301.7701-4(d).  For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Litigation Trust will be treated as the transfer of assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Litigation Trust Assets, as applicable, subject to any liabilities of the Debtors or the Litigation Trust payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the Litigation Trust in exchange for the beneficial interests in the Litigation Trust.  For all U.S. federal income tax purposes, all parties (including the Debtors, the Litigation Trustee, and the Wind Down Trustee) shall treat the transfer of the Initial Litigation Trust Assets by the Debtors to the Litigation Trust in the manner set forth above as a transfer of such assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Litigation Trust Assets, followed by a transfer by such holders to the Litigation Trust.

6.2    **Liquidation Purpose of the Litigation Trust.**  The Litigation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  Accordingly, the Litigation Trustee shall, in an expeditious but orderly manner and in conformity with the Plan, liquidate and convert

18

to Cash the Initial Litigation Trust Assets, make timely distributions to the Wind Down Trust. The Litigation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan or this Agreement.

6.3 **Cash Investments.** The right and power of the Litigation Trustee to invest the Litigation Trust Assets, the proceeds thereof or any income earned by the Litigation Trust, shall be limited to (a) the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, including Revenue Procedure 94-45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code and (b) demand and time deposits, such as short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills. The Litigation Trustee may retain any Litigation Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets, and the Litigation Trustee may expend the Litigation Trust Assets: (i) as reasonably necessary to meet contingent liabilities and realize or maintain the value of the Litigation Trust Assets during liquidation; (ii) to pay reasonable and documented administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust or reasonable fees and expenses in connection with liquidating the Litigation Trust Assets); and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the Litigation Trust Assets are otherwise subject) in accordance with the Plan or this Agreement.

6.4 **Litigation Trust as Grantor Trust.** The Litigation Trust is intended to qualify as a "grantor trust" under the Tax Code with the Wind Down Trust Beneficiaries treated as grantors and owners solely for U.S. federal income tax purposes. For all U.S. federal income tax purposes, all parties (including the Debtors, the Litigation Trustee and the Wind Down Trustee) shall treat the transfer of the Initial Litigation Trust Assets to the Litigation Trust, as set forth in this Agreement, as a transfer of such assets by the Wind Down Trust to the Litigation Trust. Thus, the Wind Down Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

6.5 **Tax Reporting and Tax Payments.**

(a) The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Litigation Trustee also shall annually send or otherwise provide to the Wind Down Trust a separate statement regarding the receipts and expenditures of the Litigation Trust as relevant for U.S. federal income tax purposes for the purpose of providing such tax reporting information to Wind Down Trust Beneficiaries and will instruct the Wind Down Trust to forward the appropriate information to the Wind Down Trust Beneficiaries with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b) As soon as practicable after the Effective Date, the Litigation Trustee shall make a good faith determination of the fair market value of the Initial Litigation Trust Assets as of the Effective Date. This valuation shall be made available to the parties from time to time as relevant and shall be used consistently by all parties for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Litigation Trust Assets.

19

(c)    The Litigation Trust shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets.

(d)    The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

6.6    **Withholding of Taxes.**

(a)    The Litigation Trustee shall deduct and withhold and pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the Tax Code or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution by the Litigation Trust to the Wind Down Trust.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental authority, including income, withholding and other tax obligations, on account of such distribution.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to the Wind Down Trust on behalf of the Wind Down Trust Beneficiaries for all purposes of this Agreement.

(b)    The Litigation Trustee shall be authorized to collect such tax information from the Wind Down Trust and the Wind Down Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers of the Wind Down Trust Beneficiaries) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  As a condition to receive distributions under the Plan, the Wind Down Trust and Wind Down Trust Beneficiaries, as applicable, may be required to identify themselves to the Litigation Trustee and provide tax information and the specifics of its holdings, to the extent the Litigation Trustee deems appropriate, including an IRS Form W-9 or, if the such holder is not a United States person for federal income tax purposes, certification of foreign status on an applicable IRS Form W-8 unless such Entity is exempt under the Tax Code and provides the Litigation Trustee with the appropriate documentation, satisfactory to the Litigation Trustee, establishing such exemption.  The Litigation Trustee may refuse to make a distribution to the Wind Down Trust on behalf of any Wind Down Trust Beneficiary if such Wind Down Trust Beneficiary fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by such Wind Down Trust Beneficiary within 150 days of the initial request by the Litigation Trustee, the Litigation Trustee shall make such distribution to which such Wind Down Trust Beneficiary is entitled to the Wind Down Trust, without interest.  If such request is made by the Litigation Trustee or such other Entity designated by the Litigation Trustee and the beneficiary fails to comply before the date that is 150 days after the request is made, the amount of such distribution shall irrevocably revert to the Litigation Trust or Wind Down Trust, as applicable, and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.  If the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such beneficiary and the Litigation Trustee is later held liable for the amount of such withholding, such beneficiary shall reimburse the Litigation Trustee for such liability.

20

(c)     The identification requirements in this <u>Section 6.6</u> may, in certain cases, extend to Wind Down Trust Beneficiaries who held their Public L Bonds, Seller Trust L Bonds, Series 1 Preferred Interests, Series 2 Preferred Interests or Existing Common Stock of GWGH in street name.

6.7     **Tax Returns and Books and Records Upon Dissolution.**  Upon the dissolution of the Litigation Trust, the Litigation Trustee shall transfer all tax returns and filings and other books and records of the Litigation Trust related to taxes to the Wind Down Trust.

6.8     **Exemption from Certain Transfer Taxes.**  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code, or similar filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate federal, state, provincial, or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

# ARTICLE VII
# INITIAL TERM AND DISSOLUTION

7.1     **Term of the Litigation Trust.**  The initial term ("<u>Initial Term</u>") of the Litigation Trust shall be the lesser of: (1) three years; (2) the date that all Retained Causes of Action have been fully resolved, as reasonably determined by the Litigation Trustee in its sole determination; and (3) the date all holders of New Series A1 WDT Interests and New Series A2 WDT Interests are distributed the full amount to which they are entitled to pursuant to the Plan, *provided, however,* that, subject to applicable law, the Litigation Trustee may extend the term of the Litigation Trust by filing a motion with the Bankruptcy Court prior to the expiration of the initial term and obtaining court approval of such extension, with a maximum extension of two (2) years per request (subject, in each instance, to reasonable consideration being given to implications of tax law and other applicable law of a proposed extension of the term of the Litigation Trust).  The Wind Down Trustee and the Litigation Trustee will cooperate and confer to ensure that the Wind Down Trust does not terminate prior to the Litigation Trust.

7.2     **Dissolution.**  Following the expiration of the Initial Term, as it may be extended pursuant to <u>Section 7.1</u> above, the Litigation Trust shall terminate and be dissolved as follows:

(a)     If termination occurs as a result of conditions (1) or (2) set forth in <u>Section 7.1</u>, termination and dissolution of the Litigation Trust shall be effective upon the date on which all of the following events (each, a "<u>Termination Condition</u>," and, collectively, the "Termination

Conditions") have occurred: (i) the Litigation Trust Assets, including Retained Causes of Action transferred and assigned to the Litigation Trust, are fully resolved, abandoned or liquidated in accordance with the Plan and this Agreement; (ii) all Cash has been completely distributed in accordance with the Plan, the Confirmation Order, and this Agreement; (iii) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities; and (iv) entry of a Final order of the Bankruptcy Court terminating the Litigation Trust or Final Decree.

Except as provided in paragraph (b) below, it is the express intent that the Litigation Trust shall survive until each of the Termination Conditions have either occurred or be determined to be impracticable or impossible. To the extent that the Litigation Trust shall be deemed terminated as a result of the occurrence of conditions (1) or (2) of Section 7.1 at any time prior to the occurrence of each Termination Condition, the Litigation Trustee shall not be discharged, but shall have such "wind-up" powers, both express and implied, as are necessary to achieve all outstanding Termination Conditions, including, but, not limited to the authority to: (i) continue prosecuting any Causes of Action belonging to the Litigation Trust; and (ii) distribute the Cash proceeds of the Litigation Trust Assets to the Wind Down Trust. For the avoidance of doubt, in no event shall the Wind Down Trust Beneficiaries be entitled to receive in-kind distributions of the Litigation Trust Assets.

(b)     If termination occurs as a result of condition (3) set forth in Section 7.1, the Litigation Trust shall terminate and dissolve as soon as practicable after the requirements set forth in Section 7.2(a) have been satisfied without the need for any further action by any party or the Court.

7.3     **Discharge of Trustee.** At such time as termination and dissolution of the Litigation Trust shall become effective, the duties, responsibilities and powers of the Litigation Trustee shall terminate, and the Litigation Trustee shall be discharged. For the avoidance of doubt, no later than the termination of the Litigation Trust, the Litigation Trustee shall transfer all of the Litigation Trust's remaining assets, including any Retained Causes of Action and net proceeds realized therefrom, to the Wind Down Trust.

## ARTICLE VIII
## AMENDMENT AND WAIVER

8.1     The Litigation Trustee, upon notice and the opportunity to object, may seek Bankruptcy Court approval of any amendment, supplement, or waiver with respect to any provision of this Agreement so long as such amendment, supplement or waiver is not inconsistent with the Plan or the Confirmation Order.

8.2     No failure by the Litigation Trust or the Litigation Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver of such right, power or privilege of the Litigation Trustee or the Litigation Trust, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.1     **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction).

9.2     **Jurisdiction.**  Subject to the proviso below, the Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Litigation Trust and the Litigation Trustee, including, without limitation, the administration and activities of the Litigation Trust and the Litigation Trustee to the fullest extent permitted by law; *provided*, *however*, that notwithstanding the foregoing, the Litigation Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Causes of Action constituting Litigation Trust Assets and pursue any recoveries in respect of any such Causes of Action.  Each Party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought in either a state or federal court of competent jurisdiction in the State of New York (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement).  Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

9.3     **Severability.**  In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  With regard to any such severable provision, the Wind Down Trustee and the Litigation Trustee shall negotiate, in good faith, to supplement this Agreement within thirty (30) days of such provisions being severed, with replacement provisions that achieve or accomplish, as closely as possible without invalidating the purpose or intent of such provisions so severed, subject to approval by the Bankruptcy Court.

9.4     **Notices.**  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail.  The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party; (b) the date of personal delivery (or refusal upon presentation for delivery); (c) the date of the transmission

753647135.8

confirmation; or (d) three Business Days after service by first-class mail, to the receiving party's below address(es):

<div align="center">

**(i)**  ***if to the Litigation Trustee, to:***

</div>

Michael I. Goldberg
Akerman LLP
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Phone: (954) 468-2444
Email: michael.goldberg@akerman.com

<div align="center">

**(ii)**  ***if to the Wind Down Trustee, to:***

</div>

Elizabeth C. Freeman
[●]
[●]
[●]
[●]
[●]

9.5   **Headings.**  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

9.6   **Entire Agreement.**  This Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

9.7   **Cumulative Rights and Remedies.**  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

9.8   **Meanings of Other Terms.**  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neutral, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations, and other entities.  All references herein to Articles, Sections, and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute, or regulation, refer to the corresponding Articles, Sections, and other subdivisions of this Agreement and the words "herein," "hereof," "herewith," and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

<div align="center">24</div>

9.9    **Successors in Interest.**  This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the Parties (including, but not limited to, the Debtors), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof.  For the avoidance of doubt, in the event that any Entity becomes a successor in interest to a Party, the claims, privileges, books, and records and directors, officers, employees, agents, and professionals of such Entity, to the extent not otherwise subject to the provisions and requirements of this Agreement prior to such Entity becoming a successor in interest to the applicable Party, shall not become subject to the provisions and requirements of this Agreement solely because such Entity becomes a successor in interest to the applicable Party.

9.10    **Limitations.**  Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement and notwithstanding anything in this Agreement, the Parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies, or treatment (including any releases, exculpation, indemnification, or otherwise as may be contained herein) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

9.11    **Further Assurances.**  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

9.12    **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

9.13    **Authority.**  Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder, and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party of this Agreement, the performance by such Party of its obligations hereunder have been duly authorized by all requisite corporate action on the part of such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution, and delivery by the other Parties hereto) this Agreement constitutes a legal, valid, and binding obligation of such Party enforceable against such Party in accordance with its terms.

*[Remainder of the page intentionally left blank.  Signature pages follow.]*

25

753647135.8

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives, or agents, effective as of the date first above written.

<div style="margin-left: 40%;">

MICHAEL I. GOLDBERG, AS TRUSTEE OF THE GWG LITIGATION TRUST

By: _____
Name:
Title:


GWG HOLDINGS, INC., ON BEHALF OF THE DEBTORS

By: _____
Name:
Title:

</div>

<u>Schedule A</u>
Litigation Trustee Compensation

The Liquidation Trustee will receive (i) base compensation of $[32,500] per month and (ii) a success fee equal to [2]% of the gross proceeds actually received by the Litigation Trust, whether arising from a final judgment or settlement (the "Success Fee"); provided, however, that at the time of payment of any Success Fee, [50]% of all Monthly Compensation paid or payable to the Litigation Trustee shall be credited against any Success Fee.

**<u>EXHIBIT C</u>**

**Schedule of Retained Causes of Action**

**Non-Exclusive Schedule of Retained Causes of Action**[1]

This non-exclusive schedule identifies claims and causes of action to be transferred to, retained by and vest in the Litigation Trust in connection with the Plan. The Debtors expressly reserve the right to alter, modify, amend, remove, augment or supplement this schedule at any time in accordance with the Plan.

Subject to Articles IV and VIII of the Plan (including, without limitation, the releases in favor of the Released Parties referenced therein) and except as expressly provided in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, on and after the Effective Date, the Litigation Trust (or the Litigation Trustee on its behalf) shall have the sole right to enforce and/or prosecute any claims, demands, rights and Causes of Action (including any Avoidance Actions) that any of the Debtors or their Estates may hold against any Entity, to the extent not released under the Plan and in accordance with the Litigation Trust Agreement. The Litigation Trust (or Litigation Trustee on its behalf), to the extent provided in the Plan and the Litigation Trust Agreement, may pursue or not pursue such claims, demands, rights or Causes of Action, as the Litigation Trustee may deem appropriate in its sole discretion in accordance with the Litigation Trust Agreement.

All rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Litigation Trust's (or the Litigation Trustee's) rights to commence, prosecute or settle such Causes of Action, to the extent provided in the Plan, shall be preserved for the sole benefit of the Litigation Trust, notwithstanding the occurrence of the Effective Date.

The Debtors' inclusion or failure to include any right of action or claim on this schedule shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that any of the Debtors, the Estates, or the Litigation Trust may hold against any Entity. In addition, no Entity may rely on the absence of a specific reference in the Plan, this schedule, any other Plan Supplement document, the Disclosure Statement, or any other document entered into in connection with the Plan to any Cause of Action as any indication that the Litigation Trust (to the extent provided in the Plan and the Litigation Trust Agreement) shall or will not pursue any and all available Causes of Action.

**Retained Causes of Action**

In particular, the Causes of Actions that will be retained by the Debtors or their Estates and, on the Effective Date, transferred to and vest in the Litigation Trust, shall include, without limitation, any and all Causes of Action the Estates may have against the Non-Released Parties, which means any Entities that are not Released Parties, which Entities shall include, without limitation, Beneficient, its current and former directors and officers (including, without limitation, Bradley K. Heppner, Thomas O. Hicks, Bruce W. Schnitzer, Dennis P. Lockhart, and Peter T.

---

[1] Capitalized terms used but not defined herein have the meanings assigned to them in the Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted By The Debtors, The Bondholder Committee, And L Bond Management, LLC As Co-Proponents [Docket No. 1698] (as may be further amended, modified and/or supplemented, the "Plan").

Cangany), HCLP Nominees, L.L.C., the Debtors' former directors and officers (including, without limitation, Murray Holland and Timothy Evans) in their capacity or capacities as such, and any Entities affiliated with or otherwise related to the foregoing, and the Debtors' prepetition legal counsel. Such Causes of Action include, but are not limited to, all causes of action and relief available under sections 105(a), 510(c), 542 through 551, and 553 of the Bankruptcy Code, and analogous state and common law, including, without limitation, Avoidance Actions and claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unlawful dividend, and unjust enrichment.

Examples of the Retained Causes of Action include, among others:

    i.    Causes of Action arising from or relating to the series of transactions between the Debtors and Beneficient resulting in the separation of the Debtors from Beneficient, effective as of November 29, 2021, including the Claims described in the Disclosure Statement, at pages 11-12;

    ii.    Causes of Action arising from or relating to the Company's investments in, loans to, or other advances to Beneficient, including the Claims described in the Disclosure Statement, at pages 12-13;

    iii.    Causes of Action arising from or relating to the subordination of the Debtors' Preferred Series C interests in Beneficient Company Holdings, L.P., including the Claims described in the Disclosure Statement, at pages 13-14;

    iv.    Causes of Action arising from or relating to the Current Report on Form 8-K, filed by GWGH on March 11, 2021, including the Claims described in the Disclosure Statement, at page 14;

    v.    Causes of Action arising from or relating to the Current Report on Form 8-K, filed by GWGH on October 21, 2019, including the Claims described in the Disclosure Statement, at pages 14-15;

    vi.    Causes of Action arising from or relating to the special dividend issued by GWGH to its shareholders on or about December 28, 2018, including Jon R. Sabes and Steven F. Sabes, including the Claims described in the Disclosure Statement, at page 15;

    vii.    Causes of Action based on allegations that GWGH's business model had the hallmarks of a Ponzi scheme, including the Claims described in the Disclosure Statement, at pages 15-16;

    viii.    Causes of Action arising from or relating to the Debtors' payments of commissions and other transfers to certain Broker Dealer(s), including the Claims described in the Disclosure Statement, at pages 15-16;

    ix.    Causes of Action against the Debtors' prepetition legal counsel solely to the extent arising from such counsel's prepetition advice to the Debtors and/or any former

directors or officers of the Debtors other than advice directly relating to the preparation and filing of the Chapter 11 Cases;

    x.    Causes of Action asserting that any transfer of an interest of the Debtors in property, or any obligation incurred by the Debtors, constitutes an actual or constructive fraudulent transfer; and

    xi.    Causes of Action asserting that some or all of the Non-Released Parties breached their fiduciary duties to the Debtors, or aided and abetted such breaches.

For the avoidance of doubt, notwithstanding anything to the contrary herein, including the foregoing, any and all Causes of Action released, exculpated, or enjoined pursuant to the Plan shall not be retained by the Debtors or Wind Down Debtors or vest in the Litigation Trust or any other Entity on the Effective Date.

**No Entity may rely on the absence of a specific reference in this Plan, the Litigation Trust Agreement, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Litigation Trust, as applicable, will not pursue any and all available Causes of Action against it. The Litigation Trust, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless a Retained Cause of Action against an Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors and the Litigation Trust expressly reserve such Retained Cause of Action for determination by the Litigation Trust (including, without limitation, Retained Causes of Action not specifically identified or described in this Schedule or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or the Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Retained Causes of Action have been explicitly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article VIII.C of the Plan), or any other Final Order (including the Confirmation Order). In addition, the Debtors and the Litigation Trust expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

**<u>EXHIBIT D</u>**

**Schedule of Assumed Executory Contracts and Unexpired Leases**

*In re GWG Holdings, Inc., et al.*
Case No. 22-90032

**Assumption of Executory Contracts and Unexpired Leases Schedule**
**As of 5.23.2023**

| # | COUNTERPARTY | ADDRESS | DEBTOR | DESCRIPTION | EFFECTIVE DATE | CURE AMOUNT |
|---|---|---|---|---|---|---|
| 1 | ACE AMERICAN INSURANCE COMPANY | 436 WALNUT ST PHILADELPHIA, PA 19106 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. G46772040002 | 4/14/2022 | $0 |
| 2 | ACE AMERICAN INSURANCE COMPANY | 436 WALNUT ST PHILADELPHIA, PA 19106 | GWG HOLDINGS, INC | D&O/E&O 1ST LAYER EXTENSION, POLICY NO. G46772040002 | 4/26/2021 | $0 |
| 3 | ALLIANZ GLOBAL RISKS US INSURANCE CO | 225 W WASHINGTON ST STE 1800 CHICAGO, IL 60606-3484 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. USF00296120 | 4/14/2022 | $0 |
| 4 | ALLIANZ GLOBAL RISKS US INSURANCE CO | 225 W WASHINGTON ST STE 1800 CHICAGO, IL 60606-3484 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. USF00296320 | 4/14/2022 | $0 |
| 5 | ALLIANZ GLOBAL RISKS US INSURANCE CO | 225 W WASHINGTON ST STE 1800 CHICAGO, IL 60606-3484 | GWG HOLDINGS, INC | D&O/E&O 4TH LAYER EXTENSION, POLICY NO. USF00296120 | 4/26/2021 | $0 |
| 6 | ALLIANZ GLOBAL RISKS US INSURANCE CO | 225 W WASHINGTON ST STE 1800 CHICAGO, IL 60606-3484 | GWG HOLDINGS, INC | D&O/E&O 20TH LAYER EXTENSION, POLICY NO. USF00296320 | 4/26/2021 | $0 |
| 7 | ALLIED WORLD NATIONAL ASSURANCE CO | 199 WATER ST 24TH FLOOR NEW YORK, NY 10038 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. 03118353 | 4/14/2022 | $0 |
| 8 | ALLIED WORLD NATIONAL ASSURANCE CO | 199 WATER ST 24TH FLOOR NEW YORK, NY 10038 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. 03118354 | 4/14/2022 | $0 |
| 9 | ALLIED WORLD NATIONAL ASSURANCE CO | 199 WATER ST 24TH FLOOR NEW YORK, NY 10038 | GWG HOLDINGS, INC | D&O/E&O 3RD LAYER EXTENSION, POLICY NO. 03118353 | 4/26/2021 | $0 |
| 10 | ALLIED WORLD NATIONAL ASSURANCE CO | 199 WATER ST 24TH FLOOR NEW YORK, NY 10038 | GWG HOLDINGS, INC | D&O/E&O 25TH LAYER EXTENSION, POLICY NO. 03118354 | 4/26/2021 | $0 |
| 11 | ALLIED WORLD SPECIALTY INSURANCE CO | 15601 DALLAS PARKWAY, ADDISON, TX 75001 USA | GWG HOLDINGS, INC | CYBER LIABILITY-EXCESS, POLICY NO. 03127147 | 4/26/2023 | $0 |
| 12 | ALLIED WORLD SPECIALTY INSURANCE CO | 15601 DALLAS PARKWAY, ADDISON, TX 75001 USA | GWG HOLDINGS, INC | CYBER LIABILITY-EXCESS, POLICY NO. 03127147 | 4/26/2022 | $0 |
| 13 | ALLIED WORLD SPECIALTY INSURANCE CO | 15601 DALLAS PARKWAY, ADDISON, TX 75001 USA | GWG HOLDINGS, INC | CYBER LIABILITY-EXCESS, POLICY NO. 03127147 | 1/12/2021 | $0 |
| 14 | ARGONAUT INSURANCE CO | 10101 REUNION PL STE 500 SAN ANTONIO, TX 78216 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. MLX42438321 | 4/14/2022 | $0 |
| 15 | ARGONAUT INSURANCE CO | 10101 REUNION PL STE 500 SAN ANTONIO, TX 78216 | GWG HOLDINGS, INC | D&O/E&O 8TH LAYER EXTENSION, POLICY NO. MLX42438321 | 4/26/2021 | $0 |
| 16 | ASCOT INSURANCE CO | 55 W 46TH ST 26 FL NEW YORK, NY 10036 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. FIXS201000001201 | 4/14/2022 | $0 |
| 17 | ASCOT INSURANCE CO | 55 W 46TH ST 26 FL NEW YORK, NY 10036 | GWG HOLDINGS, INC | D&O/E&O 15TH LAYER EXTENSION, POLICY NO. FIXS201000001201 | 4/26/2021 | $0 |
| 18 | ASSOCIATED INDUSTRIES INS. CO INC | 903 NORTHWEST 65TH ST BOCA RATON, FL 33487 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. ANV131462A | 4/14/2022 | $0 |
| 19 | ASSOCIATED INDUSTRIES INS. CO INC | 903 NORTHWEST 65TH ST BOCA RATON, FL 33487 | GWG HOLDINGS, INC | D&O/E&O 14TH LAYER EXTENSION, POLICY NO. ANV131462A | 4/26/2021 | $0 |
| 20 | ATLANTIC SPECIALTY INSURANCE CO | 605 HIGHWAY 169 NORTH STE 800 PLYMOUTH, MN 55441 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. FIN0005390001 | 4/14/2022 | $0 |
| 21 | ATLANTIC SPECIALTY INSURANCE CO | 605 HIGHWAY 169 NORTH STE 800 PLYMOUTH, MN 55441 | GWG HOLDINGS, INC | D&O/E&O 18TH LAYER EXTENSION, POLICY NO. FIN0005390001 | 4/26/2021 | $0 |
| 22 | BERKLEY INSURANCE CO | 475 STEAMBOAT RD 1ST FL GREENWICH, CT 06830-7144 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. BPRO8050233 | 4/14/2022 | $0 |
| 23 | BERKLEY INSURANCE CO | 475 STEAMBOAT RD 1ST FL GREENWICH, CT 06830-7144 | GWG HOLDINGS, INC | D&O/E&O 5TH LAYER EXTENSION, POLICY NO. BPRO8050233 | 4/26/2021 | $0 |
| 24 | BERKSHIRE HATHAWAY SPECIALTY INS COMPANY | 1 LINCOLN ST 23RD FL BOSTON, MA 02111 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. 47EPF30764702 | 4/14/2022 | $0 |
| 25 | BERKSHIRE HATHAWAY SPECIALTY INS COMPANY | 1 LINCOLN ST 23RD FL BOSTON, MA 02111 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO . 47EPF30764802 | 4/14/2022 | $0 |
| 26 | BERKSHIRE HATHAWAY SPECIALTY INS COMPANY | 1 LINCOLN ST 23RD FL BOSTON, MA 02111 | GWG HOLDINGS, INC | D&O/E&O 22ND LAYER EXTENSION, POLICY NO. 47EPF30764702 | 4/26/2021 | $0 |
| 27 | BERKSHIRE HATHAWAY SPECIALTY INS COMPANY | 1 LINCOLN ST 23RD FL BOSTON, MA 02111 | GWG HOLDINGS, INC | D&O/E&O 2ND LAYER EXTENSION, POLICY NO. 47EPF30764802 | 4/26/2021 | $0 |
| 28 | CERTAIN UNDERWRITERS AT LLOYDS | 181 W MADISON ST STE 3870 CHICAGO, IL 60602 | GWG HOLDINGS, INC | D&O 1ST LAYER EXCESS LAYER, POLICY NO. B0507F12201700 | 4/14/2023 | $0 |

Assumption of Executory Contracts and Unexpired Leases Schedule
As of 5.23.2023

| # | COUNTERPARTY | ADDRESS | DEBTOR | DESCRIPTION | EFFECTIVE DATE | CURE AMOUNT |
|---|---|---|---|---|---|---|
| 29 | CERTAIN UNDERWRITERS AT LLOYDS | 181 W MADISON ST STE 3870 CHICAGO, IL 60602 | GWG HOLDINGS, INC | D&O 2ND LAYER EXCESS LAYER, POLICY NO. B0507F12201701 | 4/14/2023 | $0 |
| 30 | CERTAIN UNDERWRITERS AT LLOYDS | 181 W MADISON ST STE 3870 CHICAGO, IL 60602 | GWG HOLDINGS, INC | D&O 1ST LAYER EXCESS LAYER, POLICY NO. B0507F12201700 | 4/14/2022 | $0 |
| 31 | CERTAIN UNDERWRITERS AT LLOYDS | 181 W MADISON ST STE 3870 CHICAGO, IL 60602 | GWG HOLDINGS, INC | D&O 2ND LAYER EXCESS LAYER, POLICY NO. B0507F12201701 | 4/14/2022 | $0 |
| 32 | CERTAIN UNDERWRITERS AT LLOYDS | 181 W MADISON ST STE 3870 CHICAGO, IL 60602 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. B0507FI2000805 | 4/14/2022 | $0 |
| 33 | CERTAIN UNDERWRITERS AT LLOYDS | 181 W MADISON ST STE 3870 CHICAGO, IL 60602 | GWG HOLDINGS, INC | D&O/E&O 17TH LAYER EXTENSION, POLICY NO. B0507FI2000805 | 4/26/2021 | $0 |
| 34 | CONTINENTAL CASUALTY CO | 151 N FRANKLIN ST  CHICAGO, IL 60606 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. 652105526 | 4/14/2022 | $0 |
| 35 | CONTINENTAL CASUALTY CO | 151 N FRANKLIN ST  CHICAGO, IL 60606 | GWG HOLDINGS, INC | D&O/E&O 24TH LAYER EXTENSION, POLICY NO. 652105526 | 4/26/2021 | $0 |
| 36 | CRUM AND FORSTER SPECIALTY INSURANCE CO | 305 MADISON AVE MORRISTOWN, NJ 07962 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. EPC100596 | 4/14/2022 | $0 |
| 37 | CRUM AND FORSTER SPECIALTY INSURANCE CO | 305 MADISON AVE MORRISTOWN, NJ 07962 | GWG HOLDINGS, INC | D&O/E&O 11TH LAYER EXTENSION, POLICY NO. EPC100596 | 4/26/2021 | $0 |
| 38 | ENDURANCE AMERICAN INSURANCE CO | 4 MANHATTANVILLE RD PURCHASE, NY 10577-2139 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. FIX300001058101 | 4/14/2022 | $0 |
| 39 | ENDURANCE AMERICAN INSURANCE CO | 4 MANHATTANVILLE RD PURCHASE, NY 10577-2139 | GWG HOLDINGS, INC | D&O/E&O 23RD LAYER EXTENSION, POLICY NO. FIX300001058101 | 4/26/2021 | $0 |
| 40 | ENDURANCE RISK SOLUTIONS ASSURANCE CO | 4 MANHATTANVILLE RD PURCHASE, NY 10577-2139 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. FIX30001065901 | 4/14/2022 | $0 |
| 41 | ENDURANCE RISK SOLUTIONS ASSURANCE CO | 4 MANHATTANVILLE RD PURCHASE, NY 10577-2139 | GWG HOLDINGS, INC | D&O/E&O 6TH LAYER EXTENSION, POLICY NO. FIX30001065901 | 4/26/2021 | $0 |
| 42 | FREEDOM SPECIALTY INSURANCE CO | 7 WORLD TRADE CTR 250 GREENWICH ST 7TH FLOOR NEW YORK, NY 10007 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. XMF2009029 | 4/14/2022 | $0 |
| 43 | FREEDOM SPECIALTY INSURANCE CO | 7 WORLD TRADE CTR 250 GREENWICH ST 7TH FLOOR NEW YORK, NY 10007 | GWG HOLDINGS, INC | D&O/E&O 13TH LAYER EXTENSION, POLICY NO. XMF2009029 | 4/26/2021 | $0 |
| 44 | GREAT AMERICAN INSURANCE COMPANY | 301 E 4TH ST FL 10 CINCINNATI, OH 45202 | GWG HOLDINGS, INC | FINANCIAL INSTITUTION CRIME BOND, POLICY NO. FSE7969760100 | 4/26/2023 | $0 |
| 45 | GREAT AMERICAN INSURANCE COMPANY | 301 E 4TH ST FL 10 CINCINNATI, OH 45202 | GWG HOLDINGS, INC | FINANCIAL INSTITUTION CRIME BOND, POLICY NO. FSE7969760100 | 4/26/2022 | $0 |
| 46 | GREAT AMERICAN LIFE INSURANCE COMPANY | 301 E 4TH ST FL 10 CINCINNATI, OH 45202 | GWG HOLDINGS, INC | FINANCIAL INSTITUTION CRIME BOND, POLICY NO. FSE7969760000 | 11/29/2021 | $0 |
| 47 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | D&O PRIMARY LAYER, POLICY NO. ELU182114-22 | 4/14/2023 | $0 |
| 48 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | FINANCIAL SERVICES LIABILITY, POLICY NO. ELU182115-22 | 4/14/2023 | $0 |
| 49 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. ELU16713420 | 4/14/2022 | $0 |
| 50 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. ELU16713520 | 4/14/2022 | $0 |
| 51 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | D&O PRIMARY LAYER, POLICY NO. ELU182114-22 | 4/14/2022 | $0 |
| 52 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | FINANCIAL SERVICES LIABILITY, POLICY NO. ELU182115-22 | 4/14/2022 | $0 |
| 53 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | 2021 PRIMARY D&O/E&O EXTENSION, POLICY NO. ELU16713420 | 4/26/2021 | $0 |
| 54 | INDIAN HARBOR INSURANCE COMPANY | 70 SEAVIEW AVE, STAMFORD, CT 06902-6040 | GWG HOLDINGS, INC | D&O PRIMARY LAYER, POLICY NO. ELU16713520 | 4/26/2021 | $0 |
| 55 | LLOYDS SYNDICATE 2623 (BEAZLEY FURLONG) | 30 BATTERSON PARK ROAD, FARMINGTON, CT 06032 | GWG HOLDINGS, INC | CYBER LIABILITY, POLICY NO. W2DD38230301 | 1/12/2021 | $0 |
| 56 | LLOYDS SYNDICATE 2623 (BEAZLEY FURLONG) | 30 BATTERSON PARK ROAD, FARMINGTON, CT 06032 | GWG HOLDINGS, INC | CYBER LIABILITY, POLICY NO. W2DD38230301 | 4/26/2023 | $0 |
| 57 | LLOYD'S SYNDICATE 2623 (BEAZLEY FURLONG) | 30 BATTERSON PARK ROAD, FARMINGTON, CT 06032 | GWG HOLDINGS, INC | CYBER LIABILITY, POLICY NO. W2DD38230301 | 4/26/2022 | $0 |
| 58 | MARKEL AMERICAN INSURANCE CO | 4521 HIGHWOODS PKWY  GLEN ALLEN, VA 23068 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. MKLM6EL0005435 | 4/14/2022 | $0 |
| 59 | MARKEL AMERICAN INSURANCE CO | 4521 HIGHWOODS PKWY  GLEN ALLEN, VA 23068 | GWG HOLDINGS, INC | D&O/E&O 27TH LAYER EXTENSION, POLICY NO. MKLM6EL0005435 | 4/26/2021 | $0 |

Assumption of Executory Contracts and Unexpired Leases Schedule
As of 5.23.2023

| # | COUNTERPARTY | ADDRESS | DEBTOR | DESCRIPTION | EFFECTIVE DATE | CURE AMOUNT |
|---|---|---|---|---|---|---|
| 60 | NATIONAL UNION FIRE INS PITTSBURGH PA | 175 WATER ST  NEW YORK, NY 10038 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. 013096983 | 4/14/2022 | $0 |
| 61 | NATIONAL UNION FIRE INS PITTSBURGH PA | 175 WATER ST  NEW YORK, NY 10038 | GWG HOLDINGS, INC | D&O/E&O 19TH LAYER EXTENSION, POLICY NO. 013096983 | 4/26/2021 | $0 |
| 62 | OLD REPUBLIC INSURANCE CO | 70 PINE ST 50TH FLOOR NEW YORK, NY 10005 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. ORPRO44323 | 4/14/2022 | $0 |
| 63 | OLD REPUBLIC INSURANCE CO | 70 PINE ST 50TH FLOOR NEW YORK, NY 10005 | GWG HOLDINGS, INC | D&O/E&O 28TH LAYER EXTENSION, POLICY NO. ORPRO44323 | 4/26/2021 | $0 |
| 64 | QBE INSURANCE CORP | 55 WATER ST 19TH FLOOR NEW YORK, NY 10041 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. QPL1326899 | 4/14/2022 | $0 |
| 65 | QBE INSURANCE CORP | 55 WATER ST 19TH FLOOR NEW YORK, NY 10041 | GWG HOLDINGS, INC | D&O/E&O 7TH LAYER EXTENSION, POLICY NO. QPL1326899 | 4/26/2021 | $0 |
| 66 | RSUI INDEMNITY CO | 945 EAST PACES FERRY RD NE STE 1800 ATLANTA, GA 30326 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. NHS686778 | 4/14/2022 | $0 |
| 67 | RSUI INDEMNITY CO | 945 EAST PACES FERRY RD NE STE 1800 ATLANTA, GA 30326 | GWG HOLDINGS, INC | D&O/E&O 10TH LAYER EXTENSION, POLICY NO. NHS686778 | 4/26/2021 | $0 |
| 68 | STRATFORD INSURANCE CO | 300 KIMBALL DR STE 500 PARSIPPANY, NJ 07054 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. FIP0000471 | 4/14/2022 | $0 |
| 69 | STRATFORD INSURANCE CO | 300 KIMBALL DR STE 500 PARSIPPANY, NJ 07054 | GWG HOLDINGS, INC | D&O/E&O 9TH LAYER EXTENSION, POLICY NO. FIP0000471 | 4/26/2021 | $0 |
| 70 | TWIN CITY FIRE INSURANCE CO | 1 HARTFORD PLAZA STE 1685 HARTFORD, CT 06155 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. 61DA035074820 | 4/14/2022 | $0 |
| 71 | TWIN CITY FIRE INSURANCE CO | 1 HARTFORD PLAZA STE 1685 HARTFORD, CT 06155 | GWG HOLDINGS, INC | D&O/E&O 16TH LAYER EXTENSION, POLICY NO. 61DA035074820 | 4/26/2021 | $0 |
| 72 | US SPECIALTY INSURANCE CO | 5601 GRANITE PKWY STE 1100 PLANO, TX 75024 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. 14MGU20A49192 | 4/14/2022 | $0 |
| 73 | US SPECIALTY INSURANCE CO | 5601 GRANITE PKWY STE 1100 PLANO, TX 75024 | GWG HOLDINGS, INC | D&O/E&O 12TH LAYER EXTENSION, POLICY NO. 14MGU20A49192 | 4/26/2021 | $0 |
| 74 | WESTCHESTER FIRE INSURANCE CO | 436 WALNUT ST PHILADELPHIA, PA 19106 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. G71519983002 | 4/14/2022 | $0 |
| 75 | WESTCHESTER FIRE INSURANCE CO | 436 WALNUT ST PHILADELPHIA, PA 19106 | GWG HOLDINGS, INC | D&O/E&O 26TH LAYER EXTENSION, POLICY NO. G71519983002 | 4/26/2021 | $0 |
| 76 | XL SPECIALTY INSURANCE CO | 70 SEAVIEW AVE STE 500 STAMFORD, CT 06902 | GWG HOLDINGS, INC | RUN-OFF ENDORSEMENT, POLICY NO. ELU16720520 | 4/14/2022 | $0 |
| 77 | XL SPECIALTY INSURANCE CO | 70 SEAVIEW AVE STE 500 STAMFORD, CT 06902 | GWG HOLDINGS, INC | D&O/E&O 21ST LAYER EXTENSION, POLICY NO. ELU16720520 | 4/26/2021 | $0 |
| 78 | AMAZON WEB SERVICES INC | 410 TERRY AVE NORTH SEATTLE , WA 98109 | GWG HOLDINGS, INC | WEB SERVICES | N/A | $0 |
| 79 | ATOMIC DATA LLC | 615 NORTH 3RD STREET MINNEAPOLIS, MN 55401 | GWG HOLDINGS, INC | MASTER SERVICES AGREEMENT (I) | 1/22/2016 | $64,841 |
| 80 | ATOMIC DATA LLC | 615 NORTH 3RD STREET MINNEAPOLIS, MN 55401 | GWG HOLDINGS, INC | MASTER SERVICES AGREEMENT (II) MANAGED PROFESSIONAL SERVICES | 10/5/2015 | INCLUDED IN LINE ABOVE |
| 81 | BOX INC | 900 JEFFERSON AVE REDWOOD, CA 94063 | GWG LIFE, LLC | SERVICE AGREEMENT | 10/7/2019 | $0 |
| 82 | BOX INC | 900 JEFFERSON AVE REDWOOD, CA 94063 | GWG LIFE, LLC | EXPANSION SERVICE ORDER | 10/7/2019 | $0 |
| 83 | CLEARLIFE LIMITED | PILGRIMS COURT SYDENHAM RD  GUILDFORD,  GU1 3RX UNITED KINGDOM | GWG LIFE, LLC | SUBSCRIPTION AGREEMENT | 3/1/2018 | $6,650 |
| 84 | DIGITALOCEAN.COM | 101 6TH AVE, NEW YORK, NY 10013 | GWG HOLDINGS, INC | SOFTWARE SERVICES | N/A | $0 |
| 85 | GITHUB | 88 COLIN P KELLY JR. STREET, SAN FRANCISCO, CA | GWG HOLDINGS, INC | SOFTWARE SERVICES | N/A | $0 |
| 86 | GODADDY | 2155 E. GODADDY WAY, TEMPE, AZ 85284 | GWG HOLDINGS, INC | SITE AND PRODUCT SERVICES | N/A | $0 |
| 87 | KLDISCOVERY ONTRACK, LLC | 8201 GREENSBORO DRIVE SUITE 300, MCLEAN, VA 22102 | GWG HOLDINGS, INC | MASTER AGREEMENT | 11/30/2020 | $178,264 |
| 88 | OWNBACKUP, INC | 400 KELBY ST 17 TH FLOOR, FORT LEE, NJ 07024 | GWG HOLDINGS, INC | SUBSCRIPTION SERVICES AGREEMENT | 12/4/2018 | $0 |
| 89 | ROBERT HALF LEGAL | 13727 NOEL RD STE 800 DALLAS, TX 75240 | GWG HOLDINGS, INC | FEE SCHEDULE & GUARANTEE | 10/7/2019 | $0 |
| 90 | ROBERT HALF LEGAL | 800 NICOLLET MALL STE 2700 MINNEAPOLIS, MN 55402 | GWG HOLDINGS, INC | GENERAL CONDITIONS OF ASSIGNMENT AND TERMS OF PAYMENT | 5/31/2019 | $0 |

**Assumption of Executory Contracts and Unexpired Leases Schedule**
**As of 5.23.2023**

| # | COUNTERPARTY | ADDRESS | DEBTOR | DESCRIPTION | EFFECTIVE DATE | CURE AMOUNT |
|---|---|---|---|---|---|---|
| 91 | SAGE INTACCT, INC | 17250 DALLAS PARKWAY, SUITE 225 DALLAS, TX 75248 | GWG HOLDINGS, INC | SUBSCRIPTION ORDER SCHEDULE | 8/23/2022 | $0 |
| 92 | SALESFORCE | 415 MISSION STREET, 3rd FL, SALESFORCE TOWER, SAN FRANCISCO, CA 94105 | GWG HOLDINGS, INC | ORDER FORM | 7/27/2022 | $0 |
| 93 | SALESFORCE | 415 MISSION STREET, 3rd FL, SALESFORCE TOWER, SAN FRANCISCO, CA 94105 | GWG HOLDINGS, INC | MASTER SUBSCRIPTION AGREEMENT | 9/1/2019 | $0 |
| 94 | TIME WARNER CABLE | 4145 S. FALKENBURG RD, RIVERVIEW, FL 33578-8652 | GWG LIFE, LLC | BUSINESS SERVICES AGREEMENT | N/A | $93 |

## EXHIBIT E

**Form of Notice of Effective Date**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GWG Holdings, Inc., *et al.*,[1] | ) | Case No. 22-90032 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER
## (II) OCCURRENCE OF THE EFFECTIVE DATE, AND (III) RELATED BAR DATES

**PLEASE TAKE NOTICE** that, on June [●], 2023, the United States Bankruptcy Court for the Southern District of Texas (the "Court"), entered the *Order (I) Confirming the Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted By the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents, and (II) Granting Related Relief* [Dkt. No. [[●]] (the "Confirmation Order"), confirming the *Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted By the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents* [Dkt. No. 1678] (the "Plan") (attached as **Exhibit A** to the Confirmation Order).[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **[●], 2023**. Each of the conditions precedent to consummation of the Plan enumerated in Article IX of the Plan have been satisfied or waived in accordance with the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Confirmation Order, the settlement, release, injunction, and exculpation provisions in Article VIII of the Plan are now in full force and effect.

**PLEASE TAKE FURTHER NOTICE** that unless otherwise provided by the Plan, the Confirmation Order, any other applicable order of the Court, or agreed to by the Holder of an Allowed Administrative Claim and the Debtors (prior to the Effective Date) or the Wind Down Trustee (after the Effective Date), all requests for payment of Administrative Claims, other than Accrued Professional Compensation Claims or Administrative Claims that have been Allowed on or prior to the Effective Date, must be filed and served on the Debtors or the Wind Down Trustee, as applicable, no later than the first Business Day that is **[●], 2023, which is thirty (30) days after the Effective Date** (the "Administrative Claims Bar Date"). **Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not file and serve such a request on or before the Administrative Claims Bar Date shall be forever barred,**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (none); and GWG DLP Funding Holdings VI, LLC (none).  The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201.  Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Confirmation Order, as applicable.

estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Wind Down Debtors, the Wind Down Trust, the Litigation Trust, or their respective property, and such Administrative Claims shall be discharged and released as of the Effective Date and all such Claims shall be subject to the permanent injunction set forth in Article VIII.  If for any reason any such Administrative Claim is incapable of being forever barred and disallowed, then the Holder of such Claim shall in no event have recourse to any property to be distributed pursuant to the Plan.

PLEASE TAKE FURTHER NOTICE that pursuant to the Plan, the deadline to file final requests for payment of Accrued Professional Compensation Fee Claims is the date that is **[●], 2023, which is sixty (60) days after entry of the Confirmation Order**.  All Professionals must file final requests for payment of Accrued Professional Compensation Claims by no later than this date to receive final approval of the fees and expenses incurred in the Chapter 11 Cases.

PLEASE TAKE FURTHER NOTICE that unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan, if any, must be filed within **thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection**. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan not filed within such time shall be disallowed, forever barred, estopped, and enjoined from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Wind-Down Debtors, the Wind Down Trust, the Litigation Trust or property of any of the foregoing, without the need for any objection by such parties and without the need for any further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be classified as General Unsecured Claims in Class 4(a) or a GUC Convenience Claim in Class 4(b), depending on the amount of the Allowed Claim (or, to the extent the counterparty to the rejected Executory Contract or Unexpired Lease is one of the DLP Entities, Class 5), and shall be treated in accordance with Article III and Article IV.H of the Plan.**

PLEASE TAKE FURTHER NOTICE that the Plan and its provisions are binding on the Debtors, the Wind Down Debtors, the Wind Down Trust, the Litigation Trust, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, and all other parties in interest and Entities, and their respective successors and assigns.

PLEASE TAKE FURTHER NOTICE that copies of the Confirmation Order, the Plan, and all documents filed in the Chapter 11 Cases are available free of charge on the Debtors' case website at https://www.donlinrecano.com/Clients/gwg/Index, or for a fee via PACER at http://www.txs.uscourts.gov. You may also request electronic copies of such materials by (a); (b) calling (888) 508-2507 (toll free) and requesting to speak with a member of the Solicitation Group; or (c) emailing gwginfo@donlinrecano.com.

Houston, Texas
[●], 2023

Respectfully Submitted,


*/s/  [DRAFT]*

**JACKSON WALKER LLP**
Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:     (713) 752-4200
Email:           kpeguero@jw.com
                   mcavenaugh@jw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:     (713) 238-3000
Email:           ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:     (312) 701-0600
Email:           tkiriakos@mayerbrown.com
                   lchiappetta@mayerbrown.com

-and-

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:     (212) 506-2500
Email:           apaul@mayerbrown.com
                   lkweskin@mayerbrown.com

*Counsel for the Debtors and Debtors in Possession*