IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| GWG Holdings, Inc., *et al.*,[1] | § | Case No. 22-90032 |
| | § | |
| | § | **Chapter 11** |
| Debtors. | § | |
| | § | (Jointly Administered) |

**L BOND MANAGEMENT, LLC'S EMERGENCY MOTION TO (I) CONSIDER THE
CONFLICTING LITIGATION TRUST AGREEMENTS, AND
(II) EXTEND THE VOTING DEADLINE**
[Related ECF #'s 1815, 1816]

L Bond Management, LLC ("LBM"), a creditor and party-in-interest in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of GWG Holdings, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, files this *Emergency Motion to (I) Consider the Conflicting Litigation Trust Agreements, and (II) Extend the Voting Deadline* (the "Motion").[2]

**RELIEF REQUESTED**

1.      LBM, respectfully, requests that this Court set an emergency hearing to (i) consider and resolve a dispute amongst the Plan Proponents related to the form of trust agreement to govern the Litigation Trust that will be established upon confirmation of the Debtors' Plan , and (ii) extend the Voting Deadline, which is May 31, 2023, to allow bondholders time to review the final version of approved litigation trust agreement and take appropriate action.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); and GWG Life USA, LLC (5538). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' proposed claims and noticing agent: https://donlinrecano.com/gwg.

[2] Any capitalized term not defined herein shall have its meaning ascribed in the *Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted by the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents* (solicitation version) [ECF 1698] (the "Plan").

## CONFLICTING LITIGATION TRUST AGREEMENTS

**Relevant Background Facts**

2.       On May 24, 2023, the Debtors filed the *Notice of Filing of Plan Supplement* [ECF # 1815] (the "Debtors' Notice").  While the Debtors' Notice attached five (5) documents that make up the plan supplement, the two trust documents listed below are at issue.

- ➢ Exhibit A - Form of Wind Down Trust Agreement (which includes the identity of the Wind Down Trustee and the Wind Down Amount) (the "Form of Wind Down Trust Agreement")[3]

- ➢ Exhibit B - Form of Litigation Trust Agreement (which includes the identity of the Litigation Trustee) (the "Debtors and Committee Proposed Litigation Trust Agreement")

3.       The Debtors and Committee Proposed Litigation Trust Agreement is noted by footnote 4 in the Debtors' Notice stating "[t]he Litigation Trust Agreement is the form agreed upon by the Debtors and the Bondholder Committee. The Debtors understand that LBM may file an additional version of the Litigation Trust Agreement pursuant to the dispute resolution mechanism set forth in Article I.G of the Plan."  Notice, at pg. 2 fn. 4.

4.       On May 24, 2023, LBM filed its *Notice of Filing the Proposed Litigation Trust Agreement* [ECF # 1816] ("LBM's Notice") pursuant to Article 1.G. of the Plan.  Attached as Exhibit 1 to LBM's Notice is the mediator-proposed litigation trust agreement (the "LBM Proposed Litigation Trust Agreement" and collectively with the Debtors and Committee Proposed Litigation Trust Agreement, the "Conflicting Litigation Trust Agreements").  As indicated in LBM's Notice, the LBM Proposed Litigation Trust Agreement, although a compromise from LBM's preferred form of agreement, represents a version of the litigation trust agreement that LBM would adopt and support on a final basis.

---

[3] The Debtors and Creditor Proponents are closer to agreeing to a Form of Wind Down Trust Agreement with the issues being narrowed to, among other things, which trustee controls the privilege to certain documents.

5. Accordingly, there are two conflicting proposed litigation trust agreements, the Debtors and Committee Proposed Litigation Trust Agreement and the LBM Proposed Litigation Trust Agreement. The Plan provides that in the event of disputed documents "the final form of any such disputed document will be subsequently resolved through either mediation with Judge Jones or by order of the Bankruptcy Court." Plan, at § I.G. The Debtors and the Creditor Proponents are continuing to work with the Mediator, but it is clear that only an order from this Court will resolve the conflict between the Conflicting Litigation Trust Agreements. Accordingly, LBM, respectfully, requests that the Court set a hearing to determine which of the Conflicting Litigation Trust Agreements should govern. For the Court's convenience, attached hereto as **Exhibit A** is the LBM Proposed Litigation Trust Agreement, and attached hereto as **Exhibit B** is a redline of the LBM Proposed Litigation Trust Agreement as the original against the Debtors and Committee Proposed Litigation Trust Agreement.

A.  **Key Conflicting Provisions**

6. While the Conflicting Litigation Trust Agreements differ in numerous instances,[4] the following table summarizes the fundamental differences between the two documents.

| Key Provision | LBM Proposed Litigation Trust Agreement's Position | Debtors and Committee Proposed Litigation Trust Agreement's Position |
|---|---|---|
| The Fiduciary Duties of the Litigation Trustee | - The Litigation Trust's purpose is to liquidate the Litigation Trust Assets <u>with the primary objective of maximizing the ultimate recovery by the Wind Down Trust Beneficiaries from distributions from the Wind Down Trust</u>. | - The Litigation Trust's sole purpose is to liquidate the Litigation Trust Assets with the primary objective of maximizing the value of the Litigation Trust Assets for the ultimate benefit of the Wind Down Trust.<br><br>- The Litigation Trustee shall confer with the Wind |

---

[4] By providing the below summary of key issues, LBM expressly reserves and does not waive any rights, arguments, or issues pertaining to the litigation trust agreement. The key issue summary is by no means exhaustive of the differences and issues between the Conflicting Litigation Trust Agreements.

| | | |
|---|---|---|
| | LBM Proposed Litigation Trust Agreement, Exhibit A at § 1.5(a) (emphasis added). | Down Trustee, but the ultimate decision with respect to whether to commence litigation remains with the Litigation Trustee.<br><br>- The Litigation Trustee <u>shall</u> consider and <u>may</u> take such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the Wind Down Trust Beneficiaries.<br><br>Debtors and Committee Proposed Litigation Trust Agreement, Exhibit B at § 1.5(a) (emphasis added). |
| Compensation of the Litigation Trustee | The Litigation Trustee will receive compensation in the amount of $[40,000] per month.<br><br>Exhibit A to the LBM Proposed Litigation Trust Agreement. | The Liquidation Trustee will receive (i) base compensation of $[32,500] per month and (ii) a success fee equal to [2]% of the gross proceeds actually received by the Litigation Trust, whether arising from a final judgment or settlement (the "Success Fee"); provided, however, that at the time of payment of any Success Fee, [50]% of all Monthly Compensation paid or payable to the Litigation Trustee shall be credited against any Success Fee.<br><br>Exhibit A to the Debtors and Committee proposed Litigation Trust Agreement |
| Governing Law | Texas<br><br>LBM Proposed Litigation Trust Agreement, at | New York<br><br>Debtors and Committee Proposed Litigation Trust |

4

|  | Litigation Trust Agreement, at § 9.1 | Agreement, at Litigation Trust Agreement, at § 9.1 |
|---|---|---|

**B.     Fiduciary Duties of the Litigation Trustee**

7.      The fiduciary duty of the Litigation Trustee and the Litigation Trust's primary purposes are the most significant issues between the Conflicting Litigation Trust Agreements. A close reading comparing Section 1.5(a) in the Conflicting Litigation Trust Agreements illustrates the dispute as to the fiduciary duties to be owed by the Litigation Trustee.[5]

8.      In the LBM Proposed Litigation Trust Agreement, the Litigation Trustee has a fiduciary duty to his sole beneficiary, the Wind Down Trustee whose purpose is to liquidate the Litigation Trust Assets in a way <u>that maximizes the ultimate return for the Wind Down Trust Beneficiaries</u>, i.e., to all estate creditors, including L Bondholders. Demonstrating the potential issue and the LBM Proposed Litigation Trust Agreement's solution, there could potentially be a scenario where the Litigation Trustee could bring a lawsuit to "maximize the return on the Litigation Trust Assets," but because the Retained Causes of Action included in the Litigation Trust Assets, may be brought against officers and directors of The Beneficient Company Group, L.P. ("<u>Ben</u>"), it may affect the value of the Debtors' equity interests in Ben.[6] The Debtors' equity interests in Ben and their ability to liquidate those interests once the Ben Transaction is consummated represents the greatest potential to maximize recovery for all L Bondholders.[7] Under the LBM Proposed

---

[5] There are other instances throughout the Conflicting Litigating Trust Agreements where the fiduciary duty issue arises, but Section 1.5(a) of the Conflicting Litigating Trust Agreements serves as a representative example of the issue.

[6] The Securities and Exchange Commission has approved the public disclosures regarding the pending de-SPAC transaction (the "<u>Ben Transaction</u>") between Ben and Avalon Acquisition Inc.

[7] Jeff Stein, the chief restructuring officer of the Debtors, stated at the December 2, 2022 hearing that the Debtors' interests in Ben, and the ability to liquidate such interests as a result of the Ben Transaction, represent "the only asset [of the Debtors' estates] that has the potential to generate full recoveries for our L Bond holders and prospectively for our existing preferred and common stockholders." Hr'g Transcript, December 1, 2022, at 23: 4-22.

Litigation Trust Agreement, the Litigation Trustee must (i) analyze the impact of bringing such litigation on the Debtors' equity interests in Ben and its ability to liquidate such interests as it relates to the total recovery for all L Bondholders, and (ii) exercise his sole discretion to bring certain Retained Causes of Action consistent with the Litigation Trustee's primary objective of maximizing the total recovery for the Wind Down Trust Beneficiaries, not just maximize the return on the Litigation Trust Assets.

9. The Debtors and Committee Proposed Litigation Trust Agreement does not mandate that the Litigation Trustee **shall** "take such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the Wind Down Trust Beneficiaries" only that it "**may** take such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the Wind Down Trust Beneficiaries."  Debtors and Committee Proposed Litigation Trust Agreement, at § 1.5(a)(emphasis added).

10. The Debtors and Committee Proposed Litigation Trust Agreement merely requires that the Litigation Trustee consider the effect on the ultimate recovery of the L Bondholders. It does not mandate that the Litigation Trustee **shall** take actions consistent with maximizing the ultimate recovery of all L Bondholders.  Put simply, the Debtors and Committee Proposed Litigation Trust Agreement sets up a situation where the Litigation Trustee may seek to maximize the Litigation Trust Assets by bringing certain Retained Causes of Action, but because such action could ultimately diminish the value of the Debtors' equity interest in Ben, the overall return to all L Bondholders may be diminished.  This is inconsistent with the fundamental principles of bankruptcy law.  It is axiomatic that any governing trust structure established in connection with a confirmed chapter 11 plan of reorganization shall seek to maximize the total return to all creditors and not lose value due to gamesmanship with respect to the flow of fiduciary duties or the primary purpose of the trusts.

### B. Compensation of the Litigation Trustee

11. The second key issue is the compensation of the Litigation Trustee. The Debtors and Committee Proposed Litigation Agreement compensation provisions incentivizes the Litigation Trustee to simply bring certain Retained Causes of Action regardless of the overall effect on the recovery of all L Bondholders by tying the Litigation Trustee's compensation to recoveries on Retained Causes of Action. This compensation structure further highlights the fundamental disagreement regarding the duties that should be owed by the Litigation Trustee. By tying the Litigation Trustee's success fee to litigation recoveries only, the Litigation Trustee is incentivized to pursue litigation regardless of the overall impact of such actions upon the potential recoveries of the Wind Down Trust Beneficiaries. LBM asserts that this misalignment of incentives would place the Litigation Trustee in conflict with his sole beneficiary and is untenable. This is especially true when the trust agreement itself does not impose a clear duty on the Litigation Trustee to work to maximize the overall recovery of the creditors.

12. The LBM Proposed Litigation Trust Agreement proposes to compensate the Litigation Trustee based upon a reasonable flat monthly fee with no success fee. This flat fee structure will remove the potential conflict between the Litigation Trustee and his beneficiary by removing any financial incentive to pursue litigation at the expense of overall recoveries to the Wind Down Trust Beneficiaries.

### C. Governing Law

13. Perplexingly, the Debtors and Committee Proposed Litigation Trust Agreement is governed by New York law despite the fact that there is no connection to New York. The Debtors are a Delaware company with headquarters in Dallas, Texas. The Litigation Trust will be administered in Texas under the supervision of this Court. Further, the Form Wind Down Trust Agreement proposes to be governed by Texas law. Given the lack of any connection to New York,

such choice of law makes little sense, and it is questionable whether any such provision may even be enforceable. Texas law should govern the litigation trust agreement.

## EXTENDING THE VOTING DEADLINE

14. Given the significant role that each of the proposed post-confirmation trusts shall have in implementing the Debtors' Plan, creditors should not be required to vote on the Plan without knowing which agreement will govern. Because the Voting Deadline of May 31, 2023, is imminent, LBM requests that the deadline be extended in order to provide: (1) the Court time to determine which of the Conflicting Trust Agreements will govern, (2) L Bondholders time to review the governing litigation trust agreement, and (3) take appropriate action in light of reviewing the governing litigation trust agreement. Notably, issue of the Litigation Trustee's fiduciary duty and its effect on overall L Bondholder recoveries has the potential to (i) change the way L Bondholders will vote, (ii) cause an L Bondholder who has already voted to change their vote, and/or (iii) lead additional L Bondholders to prefer a chapter 7 liquidation rather than the Plan.[8]

## EMERGENCY RELIEF

15. Emergency consideration of the Conflicting Trust Agreements is warranted under the circumstances. Under the dispute resolution provisions of the Plan, LBM was not able to seek relief before now. The deadline to vote on the Plan is May 31, 2023, with such time further shortened by the upcoming Memorial Day holiday. By addressing which of the Conflicting Trust Agreements governs as soon as possible will allow L Bondholders the longest opportunity to review such litigation trust agreement and take appropriate action. Accordingly, it is appropriate for the Court to address the issues previewed in this Motion as soon as possible.

---

[8] While LBM is not advocating for conversion of this case at this time, it is possible that L Bondholders might prefer a chapter 7 trustee with a clear duty to maximize their recovery to two trustees with conflicting duties.

**CONCLUSION**

16.     Against significant headwinds, these Chapter 11 Cases may succeed in increasing and maximizing the return for L Bondholders.  By choosing the LBM Proposed Litigation Trust Agreement, the Court ensures that all fiduciaries will be working toward one goal  "to recover as much as humanly possible for the L Bondholders.  That is the—again, the North Star [  ] is maximizing value for the benefit of the L Bondholders."  Hr'g Transcript, December 16, 2022 at 29:6-9 (Michael Stamer).  Extending the Voting Deadline gives the Court time to select the appropriate proposed trust agreement and then gives L Bondholders time to review that agreement and vote as they see fit.

Respectfully submitted on the 26th day of May, 2023.

**OKIN ADAMS LLP**

By:   /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
David L. Curry, Jr.
Texas Bar No. 24065107
Email: dcurry@okinadams.com
Edward A. Clarkson, III
Texas Bar No. 24059118
Email: eclarkson@okinadams.com
1113 Vine Street, Suite 240
Houston, Texas  77002
Tel: (713) 228-4100
Fax: (346) 247-7158

**ATTORNEYS FOR L BOND MANAGEMENT**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2023, a copy of the foregoing was served on the parties or counsel listed below *via* the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Matthew S. Okin
Matthew S. Okin