**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GWG Holdings, Inc., *et al.*,[1] | ) | Case No. 22-90032 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' REPLY
(I) IN SUPPORT OF CONFIRMATION OF THE
DEBTORS' FURTHER MODIFIED SECOND AMENDED JOINT
CHAPTER 11 PLAN AND (II) IN RESPONSE TO OBJECTIONS THERETO**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases submit the following reply (this "Reply"): (1) in support of the *Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted by the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents* [Dkt. No. 1678] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan");[2] and (2) to set forth the consensual resolutions of the filed objections thereto. In support of confirmation, the Debtors respectfully represent as follows:

**REPLY**

1.      The Debtors are seeking confirmation of the Plan, which the Debtors are pleased to report is unopposed and enjoys overwhelming support from its key constituencies, including the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (none); and GWG DLP Funding Holdings VI, LLC (none). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these Chapter 11 Cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

[2]      Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

Bondholder Committee, LBM, and all voting Classes.  Specifically, the aggregate voting results (as noted and further described in the Voting Report (as defined below)), are summarized as follows:

| Class | Accept | | Reject | | Result |
|---|---|---|---|---|---|
| | Amount (% of Amount Voted) | Number (% of Number Voted) | Amount (% of Amount Voted) | Number (% of Number Voted) | |
| Class 3 (Bond Claims) | $1,030,143,996.19 (99.43%) | 11,646 (99.19%) | $5,922,611.06 (0.57%) | 95 (0.81%) | ACCEPT |
| Class 4(a) (General Unsecured Claims) | $307,230.63 (100.00%) | 4 (80.00%) | $1.00 (0.00%) | 1 (20.00%) | ACCEPT |
| Class 8 (Series 1 Preferred Interests) | 13,638.99 shares (98.24%) | 392 (98.00%) | 245 shares (1.76%) | 8 (2.00%) | ACCEPT |
| Class 9 (Series 2 Preferred Interests) | 29,416.09 shares (92.33%) | 579 (97.80%) | 2,445 shares (7.67%) | 13 (2.20%) | ACCEPT |
| Class 10 (Existing Common Interests) | 2,051,757.00 shares (97.68%) | 255 (94.80%) | 48,698.00 shares (2.32%) | 14 (5.20%) | ACCEPT[3] |

2.    The widespread support of the Plan by the Debtors' capital structures and the key parties in these cases, and the fact that the Plan is unopposed, speaks to the good faith and extensive efforts that culminated in the Plan, and its fairness and overall compliance with the Bankruptcy Code, and is a testament to the widespread consensus that the Debtors worked so hard to build in

---

[3]    The acceptance and rejection figures for Class 10 in this chart reflect the agreement from Beneficient to abstain from voting its Class 10 Existing Common Interests, which is subject to Court approval.  As set forth in the Voting Report, Beneficient previously voted to reject its Class 10 Existing Common Interests, which originally resulted in a rejecting Class.

these cases.

3.    While the Plan represents a comprehensive and the best possible outcome for the Debtors' constituents given the circumstances, the path to confirmation was long and hard-fought. The Debtors filed these Chapter 11 Cases nearly fourteen months ago, facing a gauntlet of challenges, including having virtually no cash on hand to support their operations as well as a highly-fractured and contentious creditor base.  Following securing no less than three debtor-in-possession financing facilities, enhancing their governance structure by appointing a CRO and two new independent directors, forming two new board committees, enduring over nine months of investigations (which resulted in the resignation of the initial CEO and board that was in existence at the outset of these cases), and undertaking several rounds of successful mediation of a settlement that is supported by the Debtors, the Bondholder Committee, and LBM, the Debtors now find themselves in the position that would have been unfathomable only a few months ago – seeking confirmation of an overwhelmingly-supported Plan.

4.    In support of this Reply and confirmation, the Debtors respectfully refer the Court to the following declarations, which are being filed contemporaneously herewith (unless otherwise noted):

- the *Declaration of John Burlacu of Donlin, Recano & Company, Inc. Regarding the Solicitation and Tabulation of Votes Cast On the Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted By the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents* (the "Voting Report") [Dkt. No. 1893];

- the *Declaration of Jeffrey S. Stein In Support of Confirmation of the Debtors' Further Modified Second Amended Joint Chapter 11 Plan*

(the "<u>Stein Declaration</u>"), which addresses the satisfaction of the requirements under section 1129 of the Bankruptcy Code, and the formulation of the Plan generally;

- the *Declaration of Peter Laurinaitis In Support of Confirmation of the Debtors' Further Modified Second Amended Joint Chapter 11 Plan* (the "<u>Laurinaitis Declaration</u>"), which addresses valuation generally and the Vida Exit Financing Facility;

- the *Declaration of Michael A. Tucker In Support of the Debtors' Further Modified Second Amended Joint Chapter 11 Plan, Submitted by the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents* (the "Tucker Declaration"), which addresses the Debtors' liquidation analysis (attached to the Disclosure Statement), feasibility, and the best interests test (the "<u>Tucker Declaration</u>");

- the *Declaration of Dewey Imhoff In Support of Confirmation of the Debtors' Further Modified Second Amended Joint Chapter 11 Plan*, which addresses the compensation for messrs. Jeffrey S. Stein and Anthony R. Horton; and

- the *Declaration of Mark Venn In Support of Confirmation of the Debtors' Further Modified Second Amended Joint Chapter 11 Plan*, which addresses the valuation of the Debtors' Policy Portfolio.

5.      The Debtors have worked constructively with the handful of parties that filed formal confirmation objections or replies (collectively, the "<u>Objections</u>") to narrow issues and, have reached consensual resolutions with respect to all of the Objections, including through the addition of provisions in the proposed Confirmation Order.  The Objections, resolutions, and the

Debtors' responses thereto are summarized in the chart attached hereto as **Exhibit A** (the "Response Chart").  In addition, the Debtors addressed informal comments from the U.S. Trustee and the Texas Comptroller of Public Accounts through certain modifications to the Plan and/or proposed Confirmation Order.[4]  The fact that the Debtors have resolved every Objection to the Plan consensually is a testament to the Debtors' commitment to obtaining the best result for their constituents.

## CONCLUSION

6.     For the reasons set forth herein and as the uncontroverted evidence will show, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.  Given the consensual nature of the Plan, which  that will monetize the Debtors' assets and maximized value for all creditors, and the clear satisfaction of the statutory confirmation requirements, the Debtors respectfully request that the Court confirm the Plan, overrule any objections (to the extent any arise at the confirmation hearing), and grant such other and further relief as is just and appropriate.

*[Remainder of page intentionally left blank.]*

---

[4]    Notwithstanding the foregoing, the Debtors' extended the deadline for the U.S. Trustee to object to the Plan, solely with respect to any additional revisions or modifications.

5

Houston, Texas
June 14, 2023

/s/ *Kristhy M. Peguero*

**JACKSON WALKER LLP**
Kristhy M. Peguero (TX Bar No. 24102776)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Email:        kpeguero@jw.com
              mcavenaugh@jw.com

Co-Counsel for the Debtors and Debtors in
Possession

**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone:    (713) 238-3000
Email:        ckelley@mayerbrown.com

-and-

Thomas S. Kiriakos (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
71 S. Wacker Drive
Chicago, IL 60606
Telephone:    (312) 701-0600
Email:        tkiriakos@mayerbrown.com
              lchiappetta@mayerbrown.com

-and-

Adam C. Paul (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:    (212) 506-2500
Email:        apaul@mayerbrown.com
              lkweskin@mayerbrown.com

*Counsel for the Debtors and Debtors in
Possession*

753789158.6

**<u>Certificate of Service</u>**

 I certify that on June 14, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Kristhy M. Peguero*
Kristhy M. Peguero

753789158.6

**Exhibit A**

**Response Chart**

*In re GWG Holdings, Inc., et al.*
Ch. 11 Case No. 22-90032 (MI)

**Summary Chart of Confirmation Objections[1]**

| No. | Dkt. No. | Objecting Party | Summary of Objection | Status and Debtors' Response |
|-----|----------|-----------------|----------------------|------------------------------|
| 1 | 1843 | Fifth Season Investment LLC ("Fifth Season") | Fifth Season filed a limited Objection to the Plan to the extent the Plan does not include a funded reserve of at least $20 million to account for Fifth Seasons' asserted Administrative Claim, which is the subject of a pending adversary proceeding (Adv. No. 23-03088). | **Resolved.** The Debtors have resolved this Objection with the addition of paragraph 62 of the proposed Confirmation Order:<br><br>Any confirmation objection of Fifth Season shall be fully resolved as set forth in this paragraph. Notwithstanding anything to the contrary in the Plan, the Wind Down Trust Agreement, or this Confirmation Order, in connection with the adversary proceeding pending in front of this Court as Adversary No. 23-03088, styled as *GWG Holdings, Inc., and GWG Life, LLC v. Fifth Season Investments, LLC* (the "Fifth Season Adversary"), on the Effective Date, the Wind Down Trust shall set aside and reserve New Beneficient Shares having a value, on the Effective Date, of $40,000,000 (the "Fifth Season Reserve") with such value determined based upon the 10-trading-day (or, if New Beneficient Shares have been trading for fewer than 10 trading days, all such trading days) volume-weighted average trading price of such shares on the Nasdaq stock exchange under the symbol "BENF" (a "10- |

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the *Debtors' Reply (I) In Support of Confirmation of the Debtors' Further Modified Second Amended Joint Chapter 11 Plan and (II) In Response to Objections Thereto* (to which this exhibit is attached) or the Plan, as applicable.

This chart summarizes certain key issues raised in the Objections. To the extent that an Objection or a specific point raised in an Objection is not addressed herein or the Reply, the Debtors reserve the right to respond to such Objection

The Debtors have also addressed informal comments from the U.S. Trustee and the Texas Comptroller of Public Accounts through certain modifications to the Plan and/or proposed Confirmation Order.

| | | | | day VWAP") as of the Effective Date; provided that (a) the Debtors or Wind Down Trust, as applicable, may elect (except as provided in the following two provisos (b) and (c), in which event such election shall be mandatory) at any time prior to the entry of a Final Order resolving the Fifth Season Adversary to replace New Beneficient Shares with Net Cash Proceeds at a rate of $1 in cash for every $2.00 of New Beneficient Shares (calculated based upon 10-day VWAP), it being understood that at no time shall the Fifth Season Reserve be required to hold (i) cash in excess of $20,000,000 or (ii) New Beneficient Shares valued (calculated based upon 10-day VWAP) in excess of 2.0x the difference between $20,000,000 and the amount of cash held in the Fifth Season Reserve; (b) the Debtors, on the Effective Date, shall replace New Beneficient Shares with the Net Cash Proceeds of any sales of New Beneficient Shares prior to the Effective Date at a rate of $1 in cash for every $2.00 of New Beneficient Shares (calculated based upon 10-day VWAP); and (c) upon the entry of any Final Order resolving the Fifth Season Adversary, or any settlement approval order under Bankruptcy Rule 9019, in either case that provides for a payment by the Debtors (or the Wind Down Trust) to Fifth Season, the Wind Down Trustee promptly shall seek approval on an expedited basis from the Bankruptcy Court pursuant to Section 6.2(c) of the Wind Down Trust Agreement (to the extent such approval has not already been obtained) to sell a number of New Beneficient Shares so that the Net Cash Proceeds of such sale shall be sufficient to replace the remaining New Beneficent Shares in the Fifth Season Reserve so that only cash in the amount of the judgment set forth in such Final Order (or settlement amount specified in such settlement order) then constitutes the Fifth Season Reserve, it being understood and agreed that, if the amount of New Beneficient Shares then held in the Fifth |
|---|---|---|---|---|

|  |  |  |  | Season Reserve is insufficient to cover the amount of such judgment or settlement amount, the Wind Down Trustee shall be required to sell additional New Beneficial Shares in order to satisfy the full amount thereof.  The Fifth Season Reserve shall remain in place pending a Final Order of this Court resolving the Fifth Season Adversary.  No liens or other interests shall attach, or be deemed to attach, to the Fifth Season Reserve, which shall be deemed to be free and clear of all liens, claims, encumbrances, or other interests at all times.  For avoidance of doubt, the Fifth Season Reserve or any other New Beneficial Shares sold to satisfy the Fifth Season Adversary shall be deemed to constitute reasonably-anticipated "Trust Expenses" for all purposes under the Wind Down Trust Agreement, including Section 4.2 thereof.  Nothing in this Confirmation Order shall be construed as a cap on (or an admission by the Debtors of any right to) recovery of Fifth Season's asserted administrative expense claim, including any recovery of or claim for attorneys' fees and costs (the "Fifth Season Claim").   This Confirmation Order expressly provides that any request for the allowance and/or payment of the Fifth Season Claim under section 503(b) of the Bankruptcy Code shall be timely filed if filed within 30 days of the Effective Date, which request for allowance and/or payment setting forth the factual and legal bases for the alleged entitlement may be set forth instead in Fifth Season's answer filed in the Fifth Season Adversary (for which service of the summons  on May 19th is acknowledged, and subject to whatever rights of supplementation and/or amendment are available to Fifth Season, and Debtors' rights to object or oppose) and which claim will be consolidated for all purposes with the Fifth Season Adversary for adjudication and resolution.  Similarly, Fifth Season's answer in the Fifth Season Adversary will be deemed timely filed if filed within |
|--|--|--|--|--|

753789158.6

| | | | | 30 days of the Effective Date. This Confirmation Order shall be deemed to constitute a complete withdrawal of the *Debtors' Motion for Estimation and Fixing Maximum Amount of Assert Administrative Claim of Fifth Season Investments LLC.* |
|---|---|---|---|---|
| 2 | 1851 | Wells Fargo Bank, N.A. ("Wells Fargo") | Wells Fargo, which acts as the securities intermediary for the Debtors' Policy Portfolio, filed a reservation of rights based on its uncertainty of whether it would continue as the securities intermediary. Specifically, Wells Fargo reserves its rights with respect to its Claims and its exposure related to its legal title to policies on behalf of the Debtors (including sufficient indemnification). | **Resolved.** The Debtors have resolved this Objection with the addition of language in paragraphs 15, 16, and 60 of the proposed Confirmation Order. |
| 3 | 1858 | Joel Nazareno | Mr. Nazareno filed an Objection to the Plan based on his currently-pending counterclaims in a lawsuit filed by a non-Debtor affiliate, GWG MCA Capital, Inc. (the "MCA Capital Proceeding"). Specifically, Mr. Nazareno asserts that he filed an unopposed motion for judgment on the pleadings that he expects the judge in that matter to grant, and would "want that judgement to be weighed in consideration of his Proof of Claim, and the plan as a whole, as a creditor pursuant to | **Resolved.** The Debtors have resolved Mr. Nazareno's Objection, which Mr. Nazareno formally withdrew at [Dkt. No. 1914]. |

4

| | | | 11 U.S.C. 1325(a)(4)." Nazareno Obj., ¶ 2. | |
|---|---|---|---|---|
| 4 | 1882 | Beneficient Company Holdings, L.P. and The Beneficient Company Group, L.P. (together, "<u>Beneficient</u>") | Beneficient filed a limited Objection and asserted that:<br><br>A. because the Debtors and the Creditor Proponents have not finalized the Wind Down Trust Agreement or the Litigation Trust Agreement, the Debtors have not provided adequate information necessary to determine whether to vote in favor of the Plan, or a meaningful notice and opportunity to object on an informed basis;<br><br>B. based on the unfinalized material filed by the Debtors to date, "the Debtors have not met their burden of proof to show that they meet the requirements of confirmation," including whether the Plan is feasible and in the best interests of creditors; and<br><br>C. Beneficient's members, managers, directors, and officers that are insured | <u>**Resolved.**</u>  The Debtors have resolved this Objection with the following modification to Section 3.8(t) of the Litigation Trust Agreement (filed at [Dkt. No. 1910], and language included in and certain modifications to paragraphs A, K, and 27 of the proposed Confirmation Order.<br><br>Litigation Trust Agreement:<br><br>". . . make tax elections by and on behalf of the Litigation Trust, which are deemed by the Litigation Trustee, either independently or with the advice of professionals employed by the Litigation Trust, to be in the best interest of maximizing the liquidation value of the Litigation Trust Assets, in light of the Litigation Trustee's duty to maximize the value of the Litigation Trust Assets ~~in light of the Litigation Trustee's duty to maximize the value of the Litigation Trust Assets~~;" |

| | | | under the D&O Liability Insurance Policies, and language should be added to the Confirmation Order to make clear that Beneficient's rights and interests in the D&O Liability Insurance Policies are reserved and otherwise not affected by the terms of the Plan. | |

\*     \*     \*