# EXHIBIT 1

*EXECUTION COPY*

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into as of March 11, 2025 (the "**Effective Date**") by and between Michael I. Goldberg, as the Trustee of the GWG Litigation Trust ("**Trust**," "**Trustee**," or "**Claimant**"), on the one hand, and Mayer Brown LLP ("**Mayer Brown**" or the "**Firm**"), on the other hand. The Claimant and the Firm are referred to herein as the "**Parties**" and individually as a "**Party**."

WHEREAS, the Firm provided legal services to GWG Holdings, Inc., GWG Life Settlements, LLC, and their affiliates, parents, subsidiaries, and other entities under common control including GWG DLP Funding IV, LLC; GWG DLP Funding VI, LLC; and GWG DLP Funding Holdings VI, LLC (collectively, "**GWG**" or the "**Debtors**")[1] (the "**Representation**");

WHEREAS, the Debtors filed for Chapter 11 bankruptcy on April 20, 2022 and October 31, 2022 (together, the "**Petition Date**"), in the case styled, *In re GWG Holdings, Inc.*, No. 22-90032 (the "**Bankruptcy Case**"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (as the court having jurisdiction over the Bankruptcy Case, the "**Bankruptcy Court**");

WHEREAS, the Bankruptcy Court entered an order confirming the Debtors' Chapter 11 Plan on June 20, 2023, Dkt. No. 1952, which became effective on August 1, 2023, Dkt. No. 2079, (the "**Confirmed Chapter 11 Plan**");

WHEREAS, Claimant asserts an entitlement to pursue claims against the Firm under the Debtors' Confirmed Chapter 11 Plan and contends that the Firm violated duties owed to GWG in connection with the Representation, and committed other alleged injurious acts during the course of the Representation (the "**Disputed Matter**");

WHEREAS, the Firm denies any negligence, wrongdoing, or liability of any kind;

WHEREAS, the Parties to this Agreement participated in settlement communications, including but not limited to a mediation on December 18, 2024, and shared written and oral communications for settlement purposes, including settlement offers and demands, with the mediator and each other in connection with those discussions (the "**Compromise Communications**"); and,

WHEREAS, to avoid the time, cost, distraction, and uncertainty of litigation, and for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties accordingly agree as follows:

**1.     Conditional Settlement.** This Agreement is contingent upon, subject to, and will become effective only upon: (a) approval of this settlement and entry of an order by the Bankruptcy Court that grants the Rule 9019 Motion (defined below in Section 4); and (b) that order becoming "**Final**" meaning following the conclusion or expiration of any right or time period of any person

---

[1] The Debtors in the Bankruptcy Case were GWG Holdings, Inc.; GWG Life, LLC; GWG Life USA, LLC; GWG DLP Funding IV, LLC; GWG DLP Funding VI, LLC; and GWG DLP Funding Holdings VI, LLC.

*EXECUTION COPY*

or party to object or to appeal or seek to rehear, reconsider, or modify the approved order in whole or in part. Should the Bankruptcy Court deny the Rule 9019 Motion or not enter an order approving this settlement as required by the preceding sentence, or if for any reason the Bankruptcy Court's approval does not become Final or is reversed, modified, or vacated in subsequent proceedings or appeals, this Agreement shall become null and void.

**2.       Payment and Terms of Payment.** Pursuant to the timing and terms in this Section, the Firm will transfer or cause to be transferred a total of $30,000,000 United States dollars (U.S. $30,000,000.00) (the "**Settlement Amount**") to an account designated by the Claimant or his counsel, with such designation to occur no later than five (5) business days following the Bankruptcy Court's entry of order approving the Rule 9019 Motion (as defined in paragraph 4 below).

The Settlement Amount shall be made in two payments. The first payment shall be $21,000,000 United States dollars (U.S. $21,000,000.00) (the "**First Settlement Payment**"). The second and final payment shall be $9,000,000 United States dollars (U.S. $9,000,000) (the "**Second Settlement Payment**"). The Firm shall transfer or cause to be transferred the First Settlement Payment on or before (a) the 30th day after the order approving the settlement and granting the Rule 9019 Motion becomes Final, or (b) July 1, 2025, whichever date is later. The Firm shall transfer or cause to be transferred the Second Settlement Payment on or before the 187th day after the Firm transfers or causes to be transferred the First Settlement Payment.

The payment of the Settlement Amount and making of the Second Settlement Payment will satisfy completely any alleged legal, contractual, or other liability to Claimant by the Firm (and any Mayer Brown Released Party as defined herein). The payment of the Settlement Amount is not, and is not to be represented as, an admission of liability by the Firm or any Mayer Brown Released Party.

**3.       Releases, Covenant Not to Sue, Prohibited Assignments.**

3.1     <u>Release of Mayer Brown</u>. Claimant—on behalf of the Trustee, the Trust, the Debtors, and the Debtors' bankruptcy estate (collectively, the "**GWG Litigation Trust Releasors**")—irrevocably releases, acquits, and forever discharges Mayer Brown and its past, present and future direct and indirect parents, insurers, subsidiaries, affiliates, and other entities under common control, divisions, predecessors, successors, and assigns, and their respective current and former officers, directors, partners, associates, shareholders, members, representatives, attorneys, agents and employees, in their official and individual capacities (collectively, "**Mayer Brown Released Parties**" and each a "**Mayer Brown Released Party**") from any and all claims, that were or can be alleged, can be or are owned or assertable by, or that were or are assigned to, Claimant and/or the GWG Litigation Trust Releasors, known or unknown, of any nature whatsoever, that arose from the beginning of time through the Effective Date, including but not limited to, any claim arising out of or relating to the Disputed Matter, GWG, the Debtors, the Representation, the Firm's representation of any and all directors or officers of GWG, the Bankruptcy Case, and the Firm's representation of The

2

*EXECUTION COPY*

Beneficient Company Group, L.P., including any affiliates, parents, subsidiaries, past, present and future officers, directors, employees, or agents of The Beneficient Company Group, L.P. ("**BEN**").

3.2    <u>Covenant Not to Sue</u>. Claimant and the GWG Litigation Trust Releasors covenant not to sue, commence, or prosecute any proceeding against, or seek to recover damages or equitable relief from any Mayer Brown Released Party based on any claims released in Section 3.1 of this Agreement and/or any claim that was or is assignable to the Trust.

3.3    <u>Prohibition on Assignments</u>. Claimant and the GWG Litigation Trust Releasors covenant not to solicit, accept, take, or receive any assignment of any claims against any Mayer Brown Released Party.

3.4    <u>Acknowledgement by GWG Wind Down Trustee</u>. Claimant will obtain a signed acknowledgement from Elizabeth C. Freeman, as Trustee of the GWG Wind Down Trust, stating that the GWG Wind Down Trust does not own claims of any kind against Mayer Brown Released Parties arising out of or relating to the Disputed Matter, GWG, the Debtors, the Representation, the Firm's representation of any and all directors or officers of GWG, the Bankruptcy Case, and the Firm's representation—prior to the effective date of the Plan—of BEN. Claimant shall provide the signed acknowledgement to the Firm contemporaneously with the signing of this Agreement.

3.5    <u>Release of Claimant</u>. The Firm irrevocably releases, acquits, and forever discharges Claimant and the GWG Litigation Trust Releasors and any of their past, present and future direct and indirect parents, insurers, subsidiaries, affiliates, and other entities under common control, divisions, predecessors, successors, and assigns, and their respective current and former officers, directors, partners, associates, shareholders, members, representatives, attorneys, agents and employees, in their official and individual capacities from any and all claims, known or unknown, relating to or arising from the Representation, that arose from the beginning of time through the Effective Date.

4.    **Bankruptcy Court Approval.** In accordance with the terms of the Confirmed Chapter 11 Plan, this settlement is subject to approval by the Bankruptcy Court. The Parties will cooperate and work in good faith to seek Bankruptcy Court approval pursuant to Federal Rule of Bankruptcy Procedure 9019, including filing a motion to approve the settlement. Claimant will seek approval by filing the motion attached to this Agreement as <u>Exhibit A</u> (the "**Rule 9019 Motion**"). The Rule 9019 Motion asks the Bankruptcy Court to (a) grant the releases described in Section 3.1, (b) prevent and preclude Claimant and the GWG Litigation Trust Releasors from pursuing any Retained Cause of Action (as defined in the Confirmed Chapter 11 Plan) or any and all other claims that belong to the bankruptcy estate including any and all claims that were assigned to the Trust as of the date of the entry of the Bankruptcy Court approval order as described in Section 3.2, and (c) bar Claimant and the GWG Litigation Trust Releasors from taking any assignment of any other claims against any Mayer Brown Released Party as described in Section

*EXECUTION COPY*

3.3. The Parties warrant and represent that they have read, reviewed, contributed to, and hereby give their respective approvals for, the Rule 9019 Motion to be filed with the Bankruptcy Court. Claimant shall file the Rule 9019 Motion no later than seven (7) days after the Effective Date. Claimant will not oppose the Firm seeking an appropriate protective order.

**5.      Acknowledgement.** The Parties acknowledge that this settlement and payment of the Settlement Amount resolves alleged claims with alleged injuries sustained by GWG and the Debtors, including alleged damages, in and among the years 2018, 2019, 2020, 2021, 2022, and 2023. The Parties acknowledge that the Settlement Amount resolves claims for damages and separate injuries allegedly suffered by the Debtors among the foregoing years, but the Firm denies both liability and damages alleged by Claimant. For the avoidance of doubt, this Section is not, and should not be represented as, an agreement, concession, or admission by the Firm as to any alleged harm, damages, or liability.

**6.      Non-Discovery.** Neither Claimant nor any GWG Litigation Trust Releasors will seek, through subpoena, Rule 2004 request, or otherwise, discovery, documents, or testimony from any Mayer Brown Released Party related to, arising from, or in any way concerning GWG, the Representation, the Firm's representation of any and all directors or officers of GWG, the Bankruptcy Case, and/or the Firm's representation of BEN, except in a proceeding to enforce the terms of this Agreement; provided, however, that: (a) the Trustee shall be entitled to cross-notice depositions or otherwise seek testimony from a Mayer Brown Released Party if, and only within the scope and extent that, any third party in any other litigation or proceeding in which the Litigation Trust is a party notices a deposition of a Mayer Brown Released Party or calls a Mayer Brown Released Party at trial; and (b) the Trustee may seek to depose a Mayer Brown Released Party if, and only to the extent that, any defendant to claims asserted by the Trustee in any other litigation or proceeding raises an advice-of-counsel defense (based on advice provided by the Firm) in defense of the Trustee's claims against that party. Notwithstanding anything to the contrary in this Section, Mayer Brown Released Parties reserve all rights regarding, and are entitled to assert any and all defenses and objections to, any discovery sought by any party or the Trustee pursuant to the preceding sentence, and should the Trustee seek testimony from a Mayer Brown Released Parties pursuant to subsection (b) in the preceding sentence, he shall only do so in the event that the testimony being sought cannot be obtained from any other entity or person. The GWG Litigation Trust Releasors shall not affirmatively seek any corporate representative testimony or discovery from the Firm or any Mayer Brown Released Party through Federal Rule of Bankruptcy Procedure 2004, Federal Rule of Bankruptcy Procedure 7030, Federal Rule of Civil Procedure 30(b)(6), or any equivalent rule in state court or arbitration, and may only seek any such testimony to the extent that a third party obtains such representative testimony in any litigation or arbitration in which the Litigation Trust is a party as articulated in subsection (a) of this Section.

**7.      Protective Order.** Claimant will not oppose the Firm seeking an appropriate protective order that would apply prospectively to Claimant in producing to any third-party documents previously supplied by the Firm to Claimant. To the extent such a protective order is entered, Claimant shall treat and mark documents previously supplied by the Firm as confidential under such protective order, as if the Firm had designated such documents confidential.

*EXECUTION COPY*

8. **Confidentiality.**

8.1 <u>Non-Disclosure and Confidentiality</u>. The Parties shall treat everything about this Agreement, including the negotiation, terms, and existence of this Agreement, and every Compromise Communication, as confidential, and shall not disclose the same to anyone, or authorize such a disclosure by the Parties' attorneys or agents; <u>provided</u>, <u>however</u>, that disclosure may be made:

    (a)    by the Parties to the extent necessary to seek approval of this settlement by the Bankruptcy Court as required by the Confirmed Chapter 11 Plan;

    (b)    by Claimant to the extent necessary to address a dispute involving a third party in which the third party claims a settlement credit from this settlement;

    (c)    to comply with a court order, legal obligation, or subpoena; and,

    (d)    by the Parties to their respective past, present and future directors, officers, partners, members, employees, attorneys, accountants, auditors, insurers, managers, and other representatives of each Party as reasonably necessary for the disclosing Party to conduct its business or affairs; <u>provided</u>, <u>however</u>, that those persons to whom a Party discloses under this subsection are obligated to keep any information disclosed by the disclosing Party confidential.

In the event of a disclosure pursuant to subsections (b) or (c) in the preceding sentence, before disclosing any information, the disclosing Party shall seek a protective order covering such disclosure and the information disclosed shall be treated as confidential to the fullest extent possible under any such protective order to the extent approved by the Bankruptcy Court or any other court or tribunal in which the Trustee prosecutes its claims against any third party, or that issues the court order, legal obligation, or subpoena.

8.2 <u>Statements by Parties and Parties' Agents or Attorneys</u>. No Party, nor any Party's agent or attorney, will make any statement to the press, on the internet, or in any non-privileged forum (other than in seeking Bankruptcy Court approval of the settlement) about the settlement, this Agreement, Compromise Communications, or the Disputed Matter resolved by this Agreement. If a Party or its attorney or agent receives any inquiry about the topics in the preceding sentence, the response shall be that there is no current dispute between the Parties and the person or entity has no further comment, or words to that effect; <u>provided</u>, <u>however</u>, that in response to any such inquiry, it shall not be breach of this Section for a Party or its attorney to direct the inquiring party to any filings or orders in the Bankruptcy Court.

*EXECUTION COPY*

9. **Non-Disparagement.** Claimant and GWG Litigation Trust Releasors shall not, directly or indirectly, take any action, encourage others to take any action, or authorize, direct, or condone any statement to, disparage or criticize the Firm or any Mayer Brown Released Party; provided, however, that this Section shall not prevent the Trustee from fully litigating other claims in which the Firm's legal advice to and representation of GWG, BEN, or any former directors or officers of GWG, are at issue or raised in the course of litigating such claims, including to the extent necessary for the Trustee to respond to any advice-of-counsel defense (based on advice provided by the Firm) raised by a third party in defense of the Trustee's claims against that third party. Any such response by the Trustee based on the Firm's advice will be subject to a protective order, if approved, in a similar fashion as the procedure described in Section 8.1.

10. **Representations and Warranties.**

10.1    Claimant and the GWG Litigation Trust Releasors warrant and represent that they are the sole and lawful owners of all right, title, and interest in the claims they released herein, and that they have the power to enter into this Agreement. Claimant represents that it has not assigned to any other entity any claim released herein.

10.2    Each person who signs this Agreement on behalf of a Party (a "**Signatory**") represents and warrants that he or she has actual and express authority to sign this Agreement on behalf of the Party for whom such Signatory has signed this Agreement, and that this Agreement constitutes a valid and binding agreement of such Party, enforceable in accordance with its terms.

10.3    Each Party warrants and represents that neither it nor its counsel on or before the Effective Date disclosed to any entity other than the mediator, the GWG Litigation Trust Releasors, the GWG Wind Down Trustee, the Mayer Brown Released Parties, and the Bankruptcy Court, a Party's insurer, a Party's counsel, or a Party's personnel any term proposed for possible inclusion in the agreement that is embodied in this Agreement.

10.4    The Trustee represents that he has consulted with the GWG Wind Down Trustee as contemplated in the Confirmed Chapter 11 Plan in entering into this Agreement and represents that the GWG Wind Down Trust is not the owner of nor does the GWG Wind Down Trust have any right, title, and/or interest in any claim released herein.

11. **General Provisions.**

11.1    Interpretation. For this Agreement, unless the context requires otherwise:

(a)    Headings and subheadings are for convenience of reference only and do not affect interpretation.

*EXECUTION COPY*

(b)     Nothing is to be interpreted against a Party solely on the ground that the Party drafted or put forward this Agreement or a relevant part of it.

(c)     The singular includes the plural and vice versa.

(d)     The word "its" will mean "his," "her," or "their," and "it" will mean "he," "she," or "them," as appropriate in context.

(e)     Each of the words "entity" and "person" will include both organizations and natural persons.

(f)     The words "and" and "or" will each mean "and/or."

(g)     Where a word or phrase is defined, its other grammatical forms have a meaning corresponding to the definition.

(h)     The use of "includes" or "including" is not to be taken as limiting the meaning of the words preceding or following it.

(i)     Any reference to a Party includes the Party's successors, substitutes, and assigns (and, where applicable, the Party's legal representatives), and will be binding on and inure to the benefit of such entities.

(j)     A reference to an agreement or document (including a reference to this Agreement) is to the agreement or document as amended, supplemented, novated, or replaced, except to the extent prohibited by this Agreement or that other agreement or document, and includes the recitals, schedules, and annexures to that agreement or document.

(k)     A reference to a law includes a modification or re-enactment of it, a law substituted for it, and a regulation or statutory instrument issued under it.

(l)     An agreement, promise, covenant, undertaking, representation, or warranty on the part of two or more persons binds them jointly and severally.

11.2     <u>Authorship</u>. The Parties have negotiated all of the terms and conditions of this Agreement at arms' length. Neither Claimant nor the Firm, nor either of their counsel, shall be considered to be the sole drafter of this Agreement or any of its provisions (except as provided for in Section 5) for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement. This Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against any of them by reason of authorship. This Agreement shall not

*EXECUTION COPY*

be construed strictly against any Party, but only in accordance with its language and express purpose.

11.3    <u>Acknowledgements</u>. Each Party acknowledges that:

(a) it has read this Agreement and understands its terms and legal effect;

(b) it has received legal advice of counsel independently of the Firm in the negotiation of this Agreement, and it had the opportunity to ask its counsel questions about the terms of this Agreement;

(c) the Firm did not represent Claimant in connection with the negotiation of this Agreement;

(d) it had adequate time and opportunity to make whatever investigation or inquiry it considered necessary and desirable;

(e) the terms of this Agreement are fair and reasonable;

(f) it is entering into this Agreement voluntarily, and without any duress or undue influence; and

(g) it may discover facts different from or in addition to the facts it now knows or believes to be true with respect to the subject matter of this Agreement, and it understands that such discovery will not void or invalidate, or be grounds for noncompliance with, any term of this Agreement.

11.4    <u>Entire Agreement</u>. This Agreement constitutes the complete understanding between the Parties and supersedes any and all prior agreements, promises, representations, memoranda, or inducements concerning the subjects it addresses.

11.5    <u>Non-Reliance</u>. In deciding to enter this Agreement, the Parties have not relied upon any promise, statement, or agreement other than those expressly set forth in this Agreement, and each Party expressly disclaims any such reliance, and each Party has carefully read and understands the contents of this Agreement.

11.6    <u>No Duties</u>. The Parties are not in any fiduciary, confidential, or other special relationship with one another and owe no duty of disclosure to one another in entering into this Agreement.

11.7    <u>Governing Law</u>. The validity, interpretation, and performance of this Agreement will be governed by the laws of Texas without giving effect to any principles of conflicts of laws that would result in the application of the law of any other jurisdiction.

*EXECUTION COPY*

11.8    <u>Disputes</u>. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, will be determined by arbitration before a single arbitrator or by the Bankruptcy Court to the extent that it retains exclusive jurisdiction over the settlement.

11.8.1   If, and to the extent, the Bankruptcy Court permits disputes to be resolved through arbitration, the Parties will maintain the confidential nature of the arbitration proceeding and the award, except as may be necessary for the Trustee to resolve any settlement credit disputes with third parties as described in Section 8.1(b) above, except as may be necessary to prepare for or conduct the arbitration on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

11.8.2   In any arbitration arising out of or related to this Agreement, the arbitrator will award to the prevailing party, if any, the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration. If the arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrator may award the prevailing party an appropriate percentage of the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration.

11.8.3   In any arbitration arising out of or related to this Agreement, the arbitrator may not award any incidental, indirect, or consequential damages, including damages for lost profits, or any punitive or exemplary damages.

11.8.4   In any arbitration arising out of or related to this Agreement, the arbitrator is not empowered to award punitive or exemplary damages, except where permitted by statute, and the parties waive any right to recover any such damages.

11.9    <u>Waiver</u>. Any failure by a Party to exercise any right under this Agreement does not operate as a waiver of any right, and the single or partial exercise of any right by that Party does not preclude any other or further exercise of that or any other right by that Party. A waiver is not valid or binding on the Party granting that waiver unless made in writing.

11.10   <u>Severability</u>. If any provision of this Agreement is ruled invalid, unenforceable, or void by any arbitrator, tribunal, or court, this will not affect the enforceability of the other provisions of this Agreement, which will remain in full force and effect; <u>provided</u>, <u>however</u>, that if for any reason Claimant seeks an order

*EXECUTION COPY*

from a court or tribunal to render the Releases or terms in Section 3 invalid, unenforceable, or void, and the court or tribunal enters an order declaring those terms invalid, unenforceable, or void, then the Firm's obligations in Section 2 regarding payment of the Settlement Amount shall also be invalid, unenforceable, or void, and to the extent the Firm has already complied with its obligations in Section 2 at the time the court or tribunal enters the order, the amount of the Settlement Amount that has been transferred to Claimant shall be paid back to the Firm by Claimant. All provisions of this Agreement will be effective to the maximum extent permitted by law.

11.11   Counterparts. This Agreement may be signed in any number of counterparts, all of which together are deemed to constitute one and the same document. PDF images of signed counterparts transmitted by email to a Party's counsel will be considered original signed counterparts, provided that receipt of the copies is confirmed by email.

**12.    Terms Necessary for Settlement.** For the avoidance of doubt, the Parties represent and warrant that entry of the terms, including all specified releases, restraints, and injunctions, that are set out in this Agreement, including but not limited to, Sections 3, 6, 10.1, and 10.4, is a necessary condition of their settlement. In particular, the Firm is not willing to agree to the settlement or this Agreement (including its requirement for the payment of the Settlement Amount) without the assurance of "total peace" in relation to any and all claims assertable by Claimant and the GWG Litigation Trust Releasors related to, arising from, or in any way concerning GWG, the Representation, the Firm's representation of any and all directors or officers of GWG, the Bankruptcy Case, and/or the Firm's representation of BEN. The terms of this Agreement are necessary to provide the Firm and Mayer Brown Released Parties such "total peace."

**13.    Contribution.** In the event Claimant obtains a final judgment against a non-Party and that non-Party successfully asserts a contribution or third-party claim against any Mayer Brown Released Party related to or arising from the subject matter of the Disputed Matter, GWG, the Debtors, the Representation, the Firm's representation of any and all directors or officers of GWG, the Bankruptcy Case, and the Firm's representation of BEN, and a court, arbitrator, or any other tribunal determines that Delaware law applies to such contribution or third-party claim, then Claimant agrees under 10 Del. C. § 6304 to reduce the amount of the judgment for the same injury against any non-Party joint tortfeasors (provided that Mayer Brown Released Parties are determined to be joint tortfeasors for such injury) by the greater of (a) the settlement amount determined in the Claimant's action against the non-Party to be allocable to the respective alleged injury or (b) the Mayer Brown Released Parties' pro rata or equitable share of the responsibility, if any, for such injury or damages.

**14.    Notices.** Except as otherwise provided herein, any notice, demand, or request of any kind to any Party in connection with this Agreement must be sent by, and will only be deemed to have been duly provided if sent by, prepaid certified U.S. Mail, return receipt requested, addressed as follows:

*EXECUTION COPY*

If to Claimant:

Michael Goldberg
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, Florida 33301
michael.goldberg@akerman.com

With a copy, not constituting notice, by email to all of:

William T. Reid, IV
1301 S. Capital of Texas Hwy, Suite C300
Austin, Texas 78746
512.647.6105
wreid@reidcollins.com

Nathaniel J. Palmer
1301 S. Capital of Texas Hwy, Suite C300
Austin, Texas 78746
512.647.6107
npalmer@reidcollins.com

If to the Firm:

Andrew S. Marovitz
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
312.701.7116
amarovitz@mayerbrown.com

Lauren R. Noll
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
312.701.8253
lfnoll@mayerbrown.com

With a copy, not constituting notice, by email to all of:

Chris Reynolds
REYNOLDS FRIZZELL LLP
1100 Louisiana Street, Suite 3500
Houston, Texas 77002
713.485.7202
creynolds@reynoldsfrizzell.com

*EXECUTION COPY*

>Brandon Allen
>REYNOLDS FRIZZELL LLP
>1100 Louisiana Street, Suite 3500
>Houston, Texas 77002
>713.485.7206
>ballen@reynoldsfrizzell.com

**15.** **Effective Date.** The Effective Date of this Agreement shall be the first date listed above. Upon signing this Agreement, the Parties are hereby bound and this Agreement shall only be voided, terminated, or nonbinding if (and on the date) the Bankruptcy Court enters an order denying the Rule 9019 Motion and disapproves of this settlement, or if for any reason the Bankruptcy Court order approving of this settlement does not become Final.

**UNDERSTOOD AND AGREED:**

**MICHAEL I. GOLDBERG, AS TRUSTEE**          **MAYER BROWN LLP:**
**FOR THE GWG LITIGATION TRUST:**

By: Michael I. Goldberg                                     By: Andrew S. Marovitz
Title: Trustee                                                    Title: General Counsel

*EXECUTION COPY*

Brandon Allen
REYNOLDS FRIZZELL LLP
1100 Louisiana Street, Suite 3500
Houston, Texas 77002
713.485.7206
ballen@reynoldsfrizzell.com

**15.** **Effective Date.** The Effective Date of this Agreement shall be the first date listed above. Upon signing this Agreement, the Parties are hereby bound and this Agreement shall only be voided, terminated, or nonbinding if (and on the date) the Bankruptcy Court enters an order denying the Rule 9019 Motion and disapproves of this settlement, or if for any reason the Bankruptcy Court order approving of this settlement does not become Final.

**UNDERSTOOD AND AGREED:**

**MICHAEL I. GOLDBERG, AS TRUSTEE**        **MAYER BROWN LLP:**
**FOR THE GWG LITIGATION TRUST:**

By: Michael I. Goldberg                    By: Andrew S. Marovitz
Title: Trustee                             Title: General Counsel

# EXHIBIT A

*DRAFT*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>GWG HOLDINGS, INC., *et al.*[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-90032 (MI) (Jointly Administered) |

### GWG LITIGATION TRUSTEE'S MOTION FOR ENTRY
### OF AN ORDER APPROVING SETTLEMENT AGREEMENT
### <u>WITH MAYER BROWN LLP</u>

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

**A hearing will be conducted on this matter on _____, at __:__ (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the following URL: https://www.gotomeet.me/JudgeIsgur .**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (6955); and GWG DLP Funding Holdings VI, LLC (6955). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and these chapter 11 cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

1

*DRAFT*

Michael I. Goldberg, in his capacity as the Trustee of the GWG Litigation Trust, (the "Litigation Trustee") files this motion requesting entry of an order approving the Settlement Agreement, attached as **Exhibit A** (the "Proposed Settlement") by and among the Trustee and Mayer Brown LLP ("Mayer Brown") and in support, states as follows.

## PRELIMINARY STATEMENT

1.       The Litigation Trustee seeks the Court's approval of the Proposed Settlement, which resolves all claims the GWG Litigation Trust (the "Litigation Trust") has against Mayer Brown related to both its pre-petition and post-petition representation of the Debtors in exchange for $30.0 million.  The Proposed Settlement was the product of lengthy, hard-fought settlement negotiations and mediation efforts before Miles Ruthberg of Phillips ADR Enterprises.  After careful consideration, the Litigation Trustee believes that the Proposed Settlement is in the best interests of the Litigation Trust and its ultimate beneficiaries.  Although the background to the settlement and the Litigation Trustee's reasons are described in detail below, the Litigation Trustee believes it is important to highlight at the outset several considerations that led him to that conclusion.

2.       First, most of the Litigation Trust's potential pre-petition claims against Mayer Brown arise out of transactions that also form the basis for claims against third parties, meaning that the Litigation Trustee's potential recovery against Mayer Brown could be substantially reduced by the proportionate responsibility of other culpable actors.  For instance, the Litigation Trustee has already asserted claims against former GWG directors and officers (the "D&Os") arising out of the same transactions in the adversary proceeding styled *Goldberg v. Heppner, et al.*, Adv. Pro. No. 24-03090 (the "D&O Adversary Proceeding").  The Litigation Trustee has also initiated an adversary proceeding against Foley & Lardner LLP ("Foley"), styled *Goldberg v. Foley*

2

*& Lardner LLP*, Adv. Pro. No. 24-03199 (the "Foley Adversary Proceeding") for its significant role in several of those same transactions.  Crowding the picture further still, several other professional firms were involved too (and remain in the Litigation Trust's crosshairs).  Given the multitude of culpable parties involved in bringing about the relevant injuries, the Litigation Trustee faces litigation risk that the amount of recoverable damages against Mayer Brown for those same injuries could be materially reduced under Chapter 33 of the Texas Civil Practice and Remedies Code (to the extent it applies), even if the Litigation Trustee were to prevail in establishing liability.

3.      Second, and relatedly, Mayer Brown has and continues to vigorously deny any liability whatsoever with respect to the claims at issue, and in any event, also has strongly contended that the role of other responsible parties in the pre-petition transactions at issue will make it difficult for the Litigation Trustee to establish the causation required to prevail on any legal malpractice claims.  Specifically, the relevant transactions in 2019 and 2020 were approved by Special Committees of GWG's board of directors, each of which was represented by its own counsel (*e.g.,* Foley for the 2019 transactions).  Although the Litigation Trustee believes that such causation defenses would not relieve Mayer Brown from liability on claims that it aided and abetted GWG fiduciaries' breaches of their fiduciary duties in those transactions, this Court recently held that such claims are not viable under Delaware law (which may apply).  *See Austin v. Baker Hostetler, LLP (In re Uplift RX, LLC)*, No. 17-32186, 2024 WL 5086012, at *9 (Bankr. S.D. Tex. Dec. 11, 2024).  Thus, in addition to other Delaware law arguments Mayer Brown would make, with which the Litigation Trustee also disagrees, this Court's recent *Uplift* decision creates additional litigation risk.[2]

---

[2] As discussed more fully below, this Court's decision in *Uplift* was issued without the benefit of any briefing of possible implications of the Delaware Supreme Court's recent decision in *In re Mindbody, Inc.*, 2024 WL 4926910, at *42 (Del. Dec. 2, 2024).

4.     <u>Third</u>, while the Litigation Trustee believes that the Litigation Trust has potentially viable claims against Mayer Brown arising out of restructuring-related legal advice rendered at the outset of and/or during GWG's bankruptcy case, Mayer Brown strongly disagrees.  Moreover, any such claims face particularly significant procedural hurdles under orders previously entered by this Court.  Pursuant to the terms of the Debtors' confirmed plan and confirmation order, the Litigation Trustee would need to (a) first obtain this Court's permission to assert claims for bankruptcy-related malpractice, and (b) then could only hold Mayer Brown liable if a final judgment established that Mayer Brown acted with gross negligence or worse.  Moreover, for purposes of those and other potential post-petition claims, the Litigation Trustee may also need to successfully vacate this Court's prior orders approving Mayer Brown's interim and final fee applications—an uncertain prospect.

5.     <u>Fourth</u>, and finally, litigating against Mayer Brown would not make for a simple and straightforward case.  This case will involve complex and uncertain damages calculations, hinging largely on the value of Beneficient (formerly, The Beneficient Company Group L.P., and together with its general partner and wholly owned subsidiaries, "<u>BEN</u>") at different points in time.  Litigating this case to the bitter end will entail a battle of the experts on professional duties of care owed by outside counsel in a highly complex, unique fact pattern.  Meanwhile, Mayer Brown will be able to point the finger at other blameworthy actors, like the D&Os and other professional advisors.  And on top of all that, the Litigation Trustee would need to overcome Mayer Brown's other defenses—such as limitations and *in pari delicto*—in addition to all the hurdles flagged above and below.

6.     In the end, while the Litigation Trustee recognizes that it is possible that he could successfully navigate the minefield of potential litigation risks and obtain a larger recovery against

*DRAFT*

Mayer Brown, the Litigation Trustee respectfully submits that the Proposed Settlement is fair, reasonable, and in the best interests of the Litigation Trust and its ultimate constituents and beneficiaries.  The $30.0 million settlement amount is substantial, takes into account the litigation risk the Litigation Trustee faces, and provides an immediate return while avoiding the significant delay and costs of litigation this case the distance.  Accordingly, the Litigation Trustee asks the Court to approve the Proposed Settlement by granting this Motion and entering an order granting the requested relief.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Confirmation Order (Dkt. No. 1952). The Litigation Trustee confirms his consent to the entry of a final order by the Court in connection with this Motion. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief requested herein is section 105 of title 11 of the United States Code (the "Bankruptcy Code"), the Confirmation Order, and Federal Rule of Bankruptcy Procedure 9019.

## BACKGROUND

**A.      The Litigation Trust.**

8.      On April 20, 2022 (the "Initial Petition Date"), GWG Holdings, Inc., GWG Life, LLC and GWG Life USA, LLC (collectively, the "Initial Debtors"), and on October 31, 2022, GWG DLP Funding IV, LLC, GWG DLP Funding Holdings VI, LLC, and GWG DLP Funding VI, LLC (collectively, the "DLP Debtors", together with the Initial Debtors, the "Debtors"), commenced Chapter 11 Cases by filing voluntary petitions in the Bankruptcy Court for relief under chapter 11 of title 11 of the United States Code.

5

*DRAFT*

9.      On June 20, 2023, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Further Modified Second Amended Joint Chapter 11 Plan [Case No. 22-90032, ECF No. 1952] (the "Confirmation Order"), which confirmed the Debtors' Further Modified Second Amended Joint Chapter 11 Plan, submitted by the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents [Case No. 22-90032, ECF No. 1952] (the "Plan").

10.      The Confirmation Order established the GWG Litigation Trust, appointed Michael I. Goldberg as the Litigation Trustee, and transferred all Retained Causes of Action, among other things, to the GWG Litigation Trust. Confirmation Order at 21; *see also GWG Litigation Trust Agreement* [Case No. 22-90032, ECF No. 1910] (the "Litigation Trust Agreement"). The Plan and Litigation Trust agreement granted the Litigation Trustee the power to investigate and pursue the Retained Causes of Action. *See* Litigation Trust Agreement §§ 3.2(a), 3.8.  The Plan and Litigation Trust Agreement also empowered the Litigation Trustee to compromise and settle the Retained Causes of Action, but require the Litigation Trustee to seek approval from the Court, after notice and an opportunity for a hearing, for settlements "with an economic value of $5 million or more." Plan Art. IV(Q); Litigation Trust Agreement at § 3.2(a).

11.      While the Litigation Trust is generally empowered to pursue most Retained Causes of Action, paragraph 34 of the Confirmation Order expressly provides:

> No person or Entity may commence or pursue a Covered Claim, as applicable, of any kind against any 1125(e) Party, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Covered Claim without the Bankruptcy Court: (i) first determining, after notice and a hearing, that such Covered Claim, as applicable, represents a colorable claim of any kind; and (ii) specifically authorizing such person or Entity to bring such claim or Cause of Action or Covered Claim, as applicable, against such 1125(e) Party.

Confirmation Order ¶34; *see also* Plan Article VIII(D).  Moreover, Article VIII(D) of the Plan provides that Covered Claims may not be pursued against the 1125(e) Parties unless the

Bankruptcy Court "first determine[es]…that such claim or Cause of Action represents a colorable claim for intentional breach of fiduciary duty, actual fraud, willful misconduct, or gross negligence against any such 1125(e) Party."  Plan Art. VIII(D).   Certain of the Litigation Trust's potential bankruptcy-related claims against Mayer Brown are subject to those provision because Mayer Brown is an "1125(e) Party"[3] and the term "Covered Claim" refers to "any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases….negotiation of any document in connection with the Chapter 11 Cases…any agreement or document created or entered into in connection with the Chapter 11 Cases…and/or the Filing…of the Chapter 11 Cases."  Plan Art. I(A), ¶ 46.

12.      In addition, the Plan contains a broad release of bankruptcy-related claims against Mayer Brown.  Although the releases contained in Article VIII(C) of the Plan carve out claims arising from "counsel's prepetition advice to the Debtors," by its plain terms that carve out is for legal advice "other than advice directly relating to the preparation and filing of the Chapter 11 Cases."  Plan Art. VIII(C).  Accordingly, potential claims against Mayer Brown based on bankruptcy-related advice have been released except to the extent that any such claim is "related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, intentional breach of fiduciary duty, or gross negligence."  Plan Art. VIII(C).

**B.      The Litigation Trustee's Investigation, the Litigation Trust's Potential Claims, and Mayer Brown's Defenses.**

13.      From September 2023 through February 2024, the Litigation Trust obtained ten separate document productions from Mayer Brown, entailing over 41,500 documents and over 616,000 pages.  Thereafter, the Litigation Trustee and his counsel diligently reviewed those

---

[3] The definition of "1125(e) Parties" encompasses "any professionals retained by" any of the "Exculpated Parties."  Plan Art. I(A) ¶1.  And the term "Exculpated Party" includes "the Debtors."  Plan Art. 1(A) ¶80.

documents as well as numerous other documents available to the Litigation Trust to investigate potential claims against Mayer Brown for its pre- and post-petition representation of the Debtors.

14.     As a result of that extensive investigation, the Litigation Trustee and counsel determined that Mayer Brown was involved in several different pre- and post-petition transactions that the Litigation Trustee contends may have harmed the Debtors and the bankruptcy estate and could give rise to potential claims against Mayer Brown.

15.     In January 2024, the Litigation Trustee proposed entering into a tolling agreement with Mayer Brown to allow him to continue its investigation. As a result, the Litigation Trustee and Mayer Brown entered into a tolling agreement in February 2024, which was extended five times, to toll the statute of limitations and extend the time for the Litigation Trustee to file potential claims against Mayer Brown.

16.     Based on the Litigation Trustee's investigation, an overview of the transactions, the potential claims against Mayer Brown, and Mayer Brown's defenses are set forth below.

17.     <u>First</u>, Mayer Brown represented GWG in connection with its initial "exchange transactions" with BEN that were consummated throughout 2018. The Litigation Trustee initially determined that: (a) Mayer Brown may have been conflicted in those transactions because GWG relied on tax opinions that Mayer Brown issued to BEN; and (b) Mayer Brown may have failed to properly advise GWG in negotiating the terms of a Commercial Loan Agreement (the "<u>CLA</u>") entered into between GWG and BEN as part of those transactions. Among other defenses, Mayer Brown asserted that: (a) the anti-fracturing doctrine under applicable law would result in any breach of fiduciary duty claim being reclassified as a malpractice claim because GWG and its officers and directors knew of and consented to any alleged conflict; (b) any professional

negligence claims would be time-barred under the applicable two-year limitations periods; and (c) Mayer Brown's legal advice regarding the CLA was proper and reasonable.

18.     <u>Second</u>, the Litigation Trustee and counsel determined that Mayer Brown represented Brad Heppner ("<u>Heppner</u>") and other incoming directors, in their capacities as new GWG directors in April and May 2019.  Relatedly, the Litigation Trustee and counsel contend that Mayer Brown generally deferred to Heppner and BEN-loyal GWG officers like Murray Holland (GWG's former President and CEO) and Tim Evans (GWG's former CFO) in transactions between GWG and BEN that occurred from mid-2019 onwards. In particular, Mayer Brown was involved in documenting: (a) a $65 million loan made by GWG to trusts affiliated with BEN in May 2019; and (b) a $79 million "investment" made by GWG in exchange for BEN equity in December 2019. The Litigation Trustee contends it has claims against Mayer Brown related to such work it performed.  Those transactions, detailed at length in both the D&O Adversary Proceeding and the Foley Adversary Proceeding, were approved by GWG Special Committee represented by Foley— not Mayer Brown. Accordingly, Mayer Brown's professional duties related to those transactions were limited.

19.     Nevertheless, the Litigation Trustee and counsel contend that the Litigation Trust has a viable aiding and abetting breach of fiduciary duty claim against Mayer Brown for its role in the $65 million transaction in May 2019 and $79 million transaction in December 2019.  Based on this Court's recent *Uplift* decision, however, Mayer Brown has contended that no such claim is tenable under Delaware law as a matter of law. Mayer Brown also contends that, apart from the *Uplift* decision and its potential implications, (1) Delaware law would not permit the claim brought against it, and (2) even if such a claim exists, Mayer Brown's exposure would be limited due to

the proportionate responsibility of other culpable actors (*i.e.,* the D&Os and other professional advisors) and other defenses such as *in pari delicto*.

20.     <u>Third</u>, the Litigation Trust contends that Mayer Brown should have known that Heppner exercised *de facto* control over HCLP Nominees, LLC ("<u>HCLP</u>") and related entities, and advised GWG's relevant decision-makers accordingly.  The Litigation Trustee and counsel believe that the Litigation Trust has a viable legal malpractice claim against Mayer Brown for failing to do so based on the professional duty of care to do so as GWG's securities counsel and outside corporate counsel.  The Litigation Trustee and counsel theorize that GWG's directors would not have approved GWG transferring approximately $130.2 million to BEN (of which approximately $78.2 million was earmarked for HCLP) had they known the truth about Heppner's relationship with HCLP and its affiliates, and that the funds HCLP received would be funneled through to other Heppner-affiliated trusts and entities.

21.     In defending against this claim, Mayer Brown has, among raising other defenses: (a) disputed the extent of the professional duties of care owed by Mayer Brown and the causation element to the Litigation Trust's malpractice claim; and (b) contended that GWG's officers and directors, along with other professional firms and advisors, were as knowledgeable about HCLP as, and/or concealed information about HCLP from, Mayer Brown. Based on these defenses, for example, Mayer Brown has contended (i) it is not liable; (ii) other actors would bear any responsibility (*e.g.*, Heppner and HCLP); and (iii) statute of limitations and *in pari delicto* would serve as possible defenses.

22.     <u>Fourth</u>, the Litigation Trust's investigation revealed that Mayer Brown was involved in advising GWG at a March 4, 2021 board meeting, at which the full GWG board voted to dissolve the GWG Special Committee.  The Litigation Trust believes that (1) the three Special

Committee members resigned in protest shortly thereafter, and (2) GWG's securities filing—which Mayer Brown helped edit and reviewed as GWG's securities counsel—incorrectly stated that their resignations were not due to any disagreement with management.  The Debtors brought this issue to the Court's attention in November 2022, (D.E. 1073), and filed an amended Form 8-K with the SEC.  Thereafter, the Mayer Brown lawyer who attended the March 2021 board meeting was walled off and had no further involvement in the Debtors' bankruptcy cases.

23.    Mayer Brown disputes the Litigation Trust's conclusions with respect to the directors' resignations and securities filing, including because, according to Mayer Brown, (a) the directors received a draft of the securities filing and elected not to make changes to the discussion of their resignations, and (b) GWG's officers and directors were as knowledgeable about the matters relating to the securities filing as, and/or concealed information about those matters from, Mayer Brown.  Mayer Brown further denies liability and alleged damages related to these events because among other reasons, Mayer Brown contends the Litigation Trust has not articulated any cognizable claim of recovery and/or theory of causation.

24.    Fifth, the Litigation Trust's investigation revealed that Mayer Brown represented GWG in connection with a "Decoupling" transaction between GWG and BEN that occurred during November 2021, as described more fully in the D&O Adversary Proceeding.  As part of the Decoupling transaction, GWG: (a) gave up contractual rights to appoint a majority of BEN's board; (b) purportedly released GWG's claims against BEN and GWG fiduciaries who were also present or former BEN directors and officers (including Heppner, Holland, and Evans); (c) accepted BEN common equity units at the bottom of the capital stack in full repayment of the $208 million outstanding obligation owed by BEN to GWG under the CLA; and (d) swapped certain BEN preferred equity for inferior BEN common equity.  The Litigation Trustee and counsel believe that

Mayer Brown's involvement in this transaction gives rise to potential: (a) malpractice claims associated with failures to give proper legal advice regarding the payoff of the CLA and the release; and (b) aiding and abetting breach of fiduciary claims associated with the other components of the Decoupling.

25.     In defending against this claim, Mayer Brown has disputed the causation element to the Litigation Trust's malpractice claims, contending that GWG's board would have approved the Decoupling regardless of the legal advice rendered by Mayer Brown, *i.e.*, the issues that the Litigation Trustee complains of, accepting payment of the CLA and entering into the release, were business decisions to be made by GWG and its officers and/or directors.  Mayer Brown has likewise contended, based on this Court's *Uplift* opinion, that aiding and abetting breach of fiduciary duty is not a viable claim, and it has asserted *in pari delicto* and other defenses.  And finally, Mayer Brown again contends that even if Mayer Brown faced liability, its exposure would be limited due to the proportionate responsibility of GWG's officers and directors for harm caused in the Decoupling transaction.

26.     <u>Sixth</u>, the Litigation Trust's investigation revealed that Mayer Brown was involved in pre-petition transactions between GWG and its secured lenders.  The Litigation Trustee and counsel believe that the Litigation Trust has viable malpractice claims against Mayer Brown based on the legal advice it gave in connection with a December 2021 transaction with a secured lender, in which GWG agreed to acceleration of a "yield maintenance fee" and added $60 million to the principal balance of the loan, in exchange for a $20 million cash advance.  Mayer Brown disputes that the legal advice it gave was improper, contends that the scope of its legal advice was expressly limited by GWG and its officers, and challenges the causation element of this claim.

27.     <u>Seventh</u>, the Litigation Trustee and counsel believe that the Litigation Trust has viable claims against Mayer Brown arising out of the pre-petition legal advice it rendered—or failed to render—in March and April 2022 regarding debtor-in-possession (DIP) financing and pertaining to whether Debtors GWG DLP Funding IV, LLC; GWG DLP Funding VI, LLC; and GWG DLP Funding Holdings VI, LLC (collectively, the "<u>DLP Debtors</u>") should file for bankruptcy at the Initial Petition Date.  Mayer Brown disputes that the legal advice it gave was improper, challenges the causation element to the claims, and contends that even if its legal advice fell short, such claims were exculpated under the Plan because its conduct did not entail gross negligence or worse.

28.     <u>Eighth</u>, and finally, the Litigation Trustee and counsel believe that the estate may have claims to claw back some of the pre- and post-petition fees paid to Mayer Brown.  The Litigation Trust has potential Chapter 5 claims involving approximately $7 million in fees.  And the Litigation Trustee believes that Mayer Brown's disclosures under Rule 2014 and Rule 2016 may not have been sufficiently fulsome, and hence Mayer Brown could potentially be forced to return some portion of the $2.3 million in restructuring-related fees it received prior to the Initial Petition Date and/or the approximately $27.5 million in fees it received post-petition.  Mayer Brown contends that its disclosures were more than sufficient and that it proactively supplemented those disclosures; that the Court's prior orders approving Mayer Brown's retention application and fee applications preclude any attack on its post-petition fees; that the Litigation Trust would need to show gross negligence or worse in order for Mayer Brown's post-petition fees to be subject to a claim for disgorgement; and that any disgorgement should be minimal given Mayer Brown's role in procuring a confirmed Plan in a complex case. More generally, Mayer Brown disputes that the Litigation Trustee has any claim with respect to the legal advice that Mayer Brown provided both

*DRAFT*

pre-petition and post-petition, including representing the debtors in complicated Chapter 11 cases that ultimately resulted in an acceptance rate of over 98% of the confirmed Plan.

**C.      The Proposed Settlement.**

29.      The Proposed Settlement is the result of lengthy settlement discussions from June 2024 to February 2025.  Over the course of several months of extensive negotiations, the parties exchanged detailed analyses of the potential claims and defenses, attended an in-person mediation before Mr. Ruthberg on December 18, 2024, and exchanged numerous settlement offers.  The parties were unable to achieve a settlement on their own through that hard-fought process, and in turn Mr. Ruthberg issued a mediator's proposal, which the Litigation Trustee and Mayer Brown accepted on February 10, 2025.

30.      The Proposed Settlement includes the following key terms of the Settlement Agreement (the "Agreement"), summarized below in pertinent part:[4]

> Contingent Upon Court Approval. The Agreement is contingent upon, subject to, and will become effective only upon: (a) approval of this settlement and entry of an order by the Bankruptcy Court that grants the Rule 9019 Motion; and (b) that order becoming "Final" meaning following the conclusion or expiration of any right or time period of any person or party to object or to appeal or seek to rehear, reconsider, or modify the approved order in whole or in part. Should the Bankruptcy Court deny the Rule 9019 Motion or not enter an order approving this settlement as required by the preceding sentence, or if for any reason the Bankruptcy Court's approval does not become Final or is reversed, modified, or vacated in subsequent proceedings or appeals, this Agreement shall become null and void.

> Settlement Amount and Terms of Payment.  The total Settlement Amount is $30.0 million, payable in two payments.  The first payment shall be $21.0 million and shall be made on or before (a) the 30th day after the order approving the settlement and granting the Rule 9019 Motion becomes Final, or (b) July 1, 2025, whichever date is later.  The second payment shall be $9.0 million and shall be made on or before the 187th after the first payment is made.

---

[4] This summary is provided solely for ease of reference and is qualified in its entirety by reference to the Proposed Settlement, the actual terms of which are controlling.  Defined terms not defined elsewhere in the Motion have the same meaning as the defined terms in the Settlement Agreement attached as Exhibit A.

<u>Releases of Claims Against Mayer Brown</u>.  The Litigation Trustee on behalf of himself, the Litigation Trust, the Debtors, and the Debtors' bankruptcy estate (collectively, the "GWG Litigation Trust Releasors")—irrevocably releases, acquits, and forever discharges Mayer Brown and its past, present and future direct and indirect parents, insurers, subsidiaries, affiliates, and other entities under common control, divisions, predecessors, successors, and assigns, and their respective current and former officers, directors, partners, associates, shareholders, members, representatives, attorneys, agents and employees, in their official and individual capacities (each a "Mayer Brown Released Person") from any and all claims, that can be or are owned or assertable by, or that were or are assigned to the GWG Litigation Trust Releasors, known or unknown, of any nature whatsoever, that arose from the beginning of time through the Effective Date, including but not limited to, any claim arising out of or relating to the transactions identified by the Litigation Trustee, GWG, the Debtors, the Representation, the Firm's representation of any and all directors or officers of GWG, the Bankruptcy Case, and the Firm's representation of The Beneficient Company Group, L.P., including any affiliates, parents, subsidiaries, past, present and future officers, directors, employees, or agents of The Beneficient Company Group, L.P. ("BEN").

<u>Covenant Not to Sue</u>.  The GWG Litigation Trust Releasors covenant not to sue, commence, or prosecute any proceeding against, or seek to recover damages or equitable relief from, any Mayer Brown Released Person based on any claims released in Section 3.1 of this Agreement and/or any claim that was or is assignable to the Litigation Trust.

<u>Prohibition on Assignments</u>. The GWG Litigation Trust Releasors covenant not to solicit, accept, take, or receive any assignment of any claims against any Mayer Brown Released Person.

<u>Acknowledgement that the Settlement Resolves Multiple Alleged Injuries</u>. The Parties acknowledge that this settlement and payment of the Settlement Amount resolves alleged claims with alleged injuries sustained by GWG and the Debtors, including alleged damages, in and among the years 2018, 2019, 2020, 2021, 2022, and 2023. The Parties acknowledge that the Settlement Amount resolves claims for damages and separate injuries allegedly suffered by the Debtors among the foregoing years, but Mayer Brown denies both liability and damages alleged by the Litigation Trustee. For the avoidance of doubt, this Section is not, and should not be represented as, an agreement, concession, or admission by Mayer Brown as to any alleged harm, damages, or liability.

<u>Non-Discovery and Protection of Attorney-Client Privileged or other Confidential Information</u>.  Subject to certain narrow exceptions, the GWG Litigation Trust Releasors will not seek further discovery from Mayer Brown.  To the extent any third parties seek discovery of documents Mayer Brown has previously produced to the Litigation Trust (many of which are subject to attorney-client privilege), Mayer Brown may seek an appropriate protective order, which the Litigation Trust will not oppose (and, if entered, will apply to documents produced by Mayer

Brown).  Subject to certain narrow exceptions (including, but not limited to obtaining Court approval of the Proposed Settlement), the Parties shall treat all settlement communications and everything else about this Settlement as confidential (and seek an appropriate protective order if required to disclose such information).

## RELIEF REQUESTED

31.     Through this Motion, pursuant to the Confirmation Order, 11 U.S.C. § 105(a), and Federal Rule of Bankruptcy Procedure 9019, the Litigation Trustee respectfully requests entry of an order approving the Proposed Settlement.

## BASIS FOR RELIEF REQUESTED

32.     Pursuant to section 105(a) of the Bankruptcy Code, a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In addition, the Confirmation Order provides, "[s]ubject to Article XI of the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court retains exclusive jurisdiction with respect to all matters arising from or related to these Chapter 11 Cases, the Plan, and the implementation of this Confirmation Order, including, without limitation, those matters set forth in Article XI of the Plan." Confirmation Order ¶ 35.

33.     The confirmed Plan provides that:

The Litigation Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgement any [Retained Cause of Action] and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court; *provided*, that the entry into any settlement of any Claim, Cause of Action, or other dispute with an economic value of $5 million or more (in the Litigation Trustee's good faith determination) as of the date of the consummation, settlement, or resolution of such transaction or dispute shall require the approval of the Bankruptcy Court after notice and an opportunity for a hearing. Plan Art. IV(Q).

34.     Because the proposed settlement resolves a dispute that represents more than $5 million of economic value, the Proposed Settlement requires approval of the Bankruptcy Court

16

after notice and an opportunity for a hearing. Ex. A at § 1.  Nevertheless, it is unclear from the confirmed Plan whether Bankruptcy Rule 9019(a) applies post-effective date or whether the business judgment rule applies. The proposed settlement easily satisfies either standard.

35.     Where the "business judgment" rule applies, the decision-maker is required to articulate a "business justification" for the proposed transaction. *See, e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986). Once a valid business justification is articulated, "[t]he business judgment rule 'is a rebuttable presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'" *Asarco LLC v. Ams. Mining Corp.*, 396 B.R. 278, 405 (S.D. Tex. 2008) (citations omitted).

36.     Bankruptcy Rule 9019 authorizes the Court to approve the settlement of claims and controversies after notice and a hearing. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Refin. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).

37.     Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980). Indeed, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Approval of a compromise is within the sound discretion of the bankruptcy court. *See, e.g., United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *In re Jackson Brewing Co.*, 624 F.2d at 602–03.

38.     When evaluating a settlement, the role of the bankruptcy court is not to decide the issues in dispute. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Rather, the bankruptcy court determines whether the settlement as a whole falls within the range of reasonableness and is fair and equitable. *Id.* (*citing Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *see also In re: With Purpose, Inc.*, No. 23-30246, 2025 WL 271469, at *20 (Bankr. N.D. Tex. Jan. 22, 2025) ("The burden is on the Trustee, but he need only show that a compromise falls within the 'range of reasonable litigation alternatives.'") (quoting *In re Roquemore*, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008)); *id.* ("Rather than being forced to decide all questions of law and fact, courts have consistently held that a bankruptcy court need only 'canvas the issues [to] see whether the settlement fall[s] below the lowest point in the range of reasonableness.'") (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983)).

39.     In determining whether a settlement is fair and equitable, courts in the Fifth Circuit apply "the three-part test set out in *Jackson Brewing* with a focus on comparing 'the terms of the compromise with the likely rewards of litigation.'"  *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015) (quoting *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980)).  The three *Jackson Brewing* factors are: (a) the probabilities of success in the litigation, with due consideration for uncertainty in fact and law; (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (c) all other factors bearing on the wisdom of the compromise.  *DeepRock Venture Partners, L.P. v. Beach (In re Beach)*, 731 F. App'x. 322, 325 (5th Cir. 2018) (internal citations omitted). In addition, under the rubric of the third, catch-all provision, the Fifth Circuit has identified two additional factors that bear on the decision to approve a proposed settlement: (a) whether the compromise serves "the best interests of the creditors, with proper deference to

their reasonable views"; and (b) the extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion. *Id.*

40.     Each of these factors weigh in favor of approving the Proposed Settlement.

**A.     The Potential Claims Against Mayer Brown Involve Complex Factual and Legal Issues That Present Real Litigation Risk and Success Is Not Guaranteed.**

41.     "[I]t is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in [a] settlement." *Cajun Elec.*, 119 F.3d at 356. Instead, the Court "need only apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision." *Id.* (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)).  Here, complex factual and legal issues permeate the Litigation Trustee's half-dozen potentially viable claims against Mayer Brown, making it difficult to estimate the probability of success with any certainty.  But the complex factual and legal issues here present real litigation risk.  Put differently, there is no guarantee that any trier of fact will ultimately find for the Litigation Trustee or award damages equal to the full amount potentially at issue and sought by the Trustee and any outcome is likely to involve, even if initially favorable to the Litigation Trustee, ongoing legal challenges through the appellate process. Considering this litigation risk, balanced against the $30.0 million that the Proposed Settlement provides, the Litigation Trustee respectfully submits that the first *Jackson Brewing* factor weighs in favor of the Proposed Settlement.

42.     ***Proportionate Responsibility***.   To the extent that Texas law applies to any judgment, the Litigation Trustee would face the risk that its recoverable damages against Mayer Brown will be reduced or even eliminated due to proportionate responsibility of other responsible parties including GWG's directors and officers, the purportedly independent special committees who approved several of the challenged transactions, and the independent legal and financial

*DRAFT*

advisors who advised those special committees.  Specifically, the Litigation Trustee's claims against Mayer Brown related to: (a) the 2019 transactions; (b) funds flowing to HCLP in 2020; (c) the March 2021 transaction; and (d) the Decoupling transactions in November 2021 involve injuries at issue in the D&O Adversary Proceeding.  Similarly, the injuries GWG sustained in 2019 and 2020 are also at issue in the Foley Adversary Proceeding.  The significant culpability of Foley, the D&Os, and other third parties could serve to eliminate or reduce the amount of recoverable damages against Mayer Brown for those same injuries under Chapter 33 of the Texas Civil Practice and Remedies Code.

43.     ***Legal Uncertainty Over the Viability of the Litigation Trust's Potential Aiding and Abetting Breach of Fiduciary Duty Claims***.  Due to the involvement of GWG Special Committees represented by other counsel in the relevant transactions, the scope of the Mayer Brown's role, questions over causation, and other factors, the Litigation Trustee and counsel believed that Mayer Brown's culpability in most of the 2019 to 2021 transactions fit more squarely into aiding and abetting breaches of fiduciary duty—not professional negligence.  In essence, Mayer Brown's potential culpability in those transactions does not necessarily stem from providing incorrect legal advice, but rather, in the Litigation Trust's view, from assisting Heppner and other disloyal fiduciaries in foisting unfair transactions on GWG to benefit BEN.

44.     The Litigation Trustee and Mayer Brown disagree on several legal issues concerning the viability of the Litigation Trustee's claim under Delaware law, if it were held to apply. As one example, *in Austin v. Baker Hostetler, LLP (In re Uplift RX, LLC)*, this Court recently held that Delaware law does not recognize aiding and abetting breaches of fiduciary duty claims against lawyers because lawyers owe fiduciary duties to their clients.  No. 17-32186, 2024 WL 5086012, at *9 (Bankr. S.D. Tex. Dec. 11, 2024).  The Litigation Trustee is hopeful that this Court

*DRAFT*

would reach a different conclusion if presented with more fulsome briefing on the issue, especially in light of the logical implications of the Delaware Supreme Court's discussion of aiding and abetting claims in its recent *In re Mindbody, Inc.* decision.[5]  2024 WL 4926910, at *42 (Del. Dec. 2, 2024).  Regardless, as to this issue, Mayer Brown disputes the relevance or impact of *Mindbody*, and this Court's *Uplift* decision adds litigation risk and uncertainty to the Litigation Trust's potential claims against Mayer Brown.

45.     ***Complex Valuation and Damages Questions***.  Most of the challenged transactions from 2019 to 2021 involved transfers of GWG funds in exchange for debt or various classes of equity interests associated with BEN.  In turn, valuing the BEN-related debt and equity that GWG received in those transactions will be necessary to quantify damages.  The Litigation Trustee anticipates that such valuation issues—and, in turn, the scope of potentially recoverable damages before accounting for any settlement offsets and/or any proportionate responsibility reductions—will be hotly contested issues.

46.     Moreover, valuation and related damages issues will require extensive expert analysis into BEN's business model; its complicated structure and the competing priorities between different classes of equity at different BEN entities; management's projections and the

---

[5] In *Mindbody*, the Delaware Supreme Court addressed the question of whether inaction could satisfy the "substantial assistance" element of an aiding and abetting claim, reasoning that inaction would not give rise to liability absent some independent duty—such as a fiduciary duty—requiring the alleged aider and abettor to act.  2024 WL 4926910, at *42.  In doing so, the Delaware Supreme Court cited several from other jurisdictions recognizing that a fiduciary relationship between the aider-and-abettor and the plaintiff could give rise to aiding and abetting liability based on inaction.  *Id.* at n.137 (gathering cases).  In the Litigation Trustee's view, logic dictates that if a fiduciary relationship can give rise to aiding and abetting liability based on inaction, then a fiduciary relationship alone does not automatically bar all aiding and abetting liability.  Thus, while directors and officers may not be held liable for aiding and abetting each others' breaches of fiduciary duties (because any such conduct would automatically give rise to primary liability for breaching fiduciary duties), the Litigation Trustee respectfully posits that Delaware law does not extend this rule to other alleged aiders and abettors—like lawyers—whose fiduciary duties are not entirely coextensive and perfectly overlapping with the fiduciary duties owed by directors and officers.  As stated above, Mayer Brown disagrees as to the import and application of these cases and other Delaware law.

reliability of its statistical modeling; the underlying secondaries on which BEN's business was based; and a number of other factors (such as the appropriate discount rate applicable to BEN's projected cash flows) at multiple points in time at various stages in its development.  Given the inherent complexity involved in valuing BEN and each equity or debt instrument at different times and the failures of GWG's auditors to challenge BEN's valuation, the Litigation Trustee recognizes that valuation issues present litigation risk on potential damages associated with transactions between GWG and BEN.

47.     Similarly, the Litigation Trustee also anticipates complex factual questions and vigorous disputes over the extent of cognizable damages associated with: (a) the December 2021 transaction with GWG's secured lender; and/or (b) Mayer Brown's restructuring-related advice pertaining to DIP financing and whether the DLP Debtors.  Whether and to what extent the bankruptcy estate would have preserved value had Mayer Brown provided different legal advice is a source of litigation risk on those claims.

48.     ***Obstacles Posed by the Confirmed Plan and Other Orders in the Bankruptcy Case***.  Under the Confirmation Order and Plan, the Litigation Trustee may not pursue claims against Mayer Brown for bankruptcy-related legal advice without first obtaining permission from the Court.  Moreover, under the Plan's releases and exculpatory provisions, Mayer Brown can only be held liable for its bankruptcy-related legal advice if a final order establishes that Mayer Brown acted with gross negligence or a more culpable mental state.  Finally, orders approving Mayer Brown's interim and final fee applications and the underlying Plan and Trust documents could potentially further limit the Litigation Trustee's ability to seek relief based on Mayer Brown's post-petition acts or omissions unless the Litigation Trustee is able to vacate or otherwise set aside those orders pursuant to Rule 9024 or otherwise.  These procedural obstacles present litigation risk on

the Litigation Trustee's potential claims against Mayer Brown arising out of or relating to its post-petition acts and omissions.

49.     ***Mayer Brown's Other Defenses***.   Mayer Brown has also raised several other defenses, including statute of limitations, that its duties do not include rendering business advice about the prudence of the transactions, and *in pari delicto*.   Because the Litigation Trustee asserts claims based on conduct from as early as 2018, Mayer Brown contends that many of the Litigation Trustee's claims are barred by the applicable statute of limitations to which no exception or tolling applies. Mayer Brown relies on the anti-fracturing rule in Texas which prevents plaintiffs from turning run-of-the-mill malpractice claims with a two-year statute of limitations into breach of fiduciary duty claims with a longer statute of limitations of four years. Mayer Brown also contends that the Litigation Trustee will not be able to rely on the discovery rule and that GWG, through its officers and directors, knew or through reasonable diligence should have discovered the alleged injuries of which the Litigation Trustee now complains, relying on several authorities that it contends supports its defenses. *See Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008) ("Knowledge held by corporate officers or directors may be imputed to the corporation itself."); *Marcus& Millichap Real Estate Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 462 (Tex. 2023) (holding that "those owed a fiduciary duty are not altogether absolved of the usual obligation to use reasonable diligence to discover an injury" and that "it remains the case that 'a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs'" (citations omitted)).

50.     Mayer Brown disputes many of the Litigation Trustee's claims because it contends the Litigation Trustee conflates a lawyer's duty to provide competent legal advice with an alleged obligation to step into and steer business decisions of GWG, its officers, directors, and special

committees. Mayer Brown contends that the Litigation Trustee takes issue primarily with the prudency or sensibility of certain transactions rather than the legal advice provided by Mayer Brown. Mayer Brown contends that its role to provide competent legal advice did not include advising GWG on the prudency of transactions or decisions under what Mayer Brown contends are the applicable professional standards. *See* ILL. BAR ASSOC. ETHICS OP. 20-02 (May 20, 2020) ("[I]t is not the lawyer's role to make business decisions[,] and the lawyer generally must accept the constituent's decision . . . even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province unless the decision amounts to a crime, fraud, violation of law or violation of the constituent's legal obligation to the entity."); TEX. DISCIPLINARY R. PRO. CONDUCT 1.12 cmt. 6. Because of what it contends was a  limited role, Mayer Brown contends others are at fault, including the D&Os, the special committees, and professional advisors to the special committees, all of whom evaluated and approved the transactions that serve as the basis for the harm the Litigation Trustee alleges.

51.     Mayer Brown also contends that *in pari delicto* will bar many of the Litigation Trustee's claims. In the context of professional negligence, Mayer Brown contends the Litigation Trustee's claims will be barred by the negligence of its own officers and directors in agreeing to and approving transactions and contracts that were allegedly not in GWG's best interest. Mayer Brown also contends that while the Litigation Trustee has focused on the alleged bad acts of certain actors (*i.e.*, the D&Os), that there are many other "innocent" and informed former GWG directors and officers who evaluated, employed sound business judgment on, and approved many of the transactions with which the Litigation Trustee takes issue. Mayer Brown also disputes that any exception to *in pari delicto* will apply under the facts.

52.     The Litigation Trustee does not believe that Mayer Brown's *in pari delicto* defense is meritorious or poses a material litigation risk to the Litigation Trustee's claims under any potentially applicable law (Delaware, Illinois, or Texas), and likewise takes issue with several of Mayer Brown's other asserted defenses.  Nevertheless, because of the nature of the claims asserted against GWG's board and officers and because there are no sure things in litigation, the Litigation Trustee has taken Mayer Brown's other defenses into account in assessing whether the substantial, $30.0 million settlement amount is fair and reasonable.

53.     In sum, there are a number of complex factual and legal issues and procedural obstacles that impact the viability and value of the Litigation Trustee's claims against Mayer Brown, and it is far from certain that those issues will be decided in the Litigation Trustee's favor at trial or in any appeals that follow.  The Litigation Trustee weighed this litigation risk against the Proposed Settlement, which allows for a material distribution to the Litigation Trust's ultimate beneficiaries now (taking further into account that the Litigation Trustee still has claims against other parties—like Foley—for many of the same injuries).  The Litigation Trustee respectfully submits that the Proposed Settlement falls within the "range of reasonable litigation alternatives" given the risk inherent in litigating the complex factual and legal issues present.

**B.     Fully Litigating all of the Trustee's Claims Against Mayer Brown May Take Years, While the Proposed Settlement Provides a Distribution For the Litigation Trust's Ultimate Beneficiaries In the Near Term.**

54.     The Litigation Trustee submits that the second *Jackson Brewing* factor also weighs in favor of the Proposed Settlement.  Litigating both the pre-petition and post-petition claims against Mayer Brown to final judgment and through any appeals could take three years or more to

*DRAFT*

reach a conclusion.[6]  In 2023, the median time from filing to beginning trial was 25.5 months in

the Southern District of Texas.[7]  Any appeals to the Fifth Circuit could add another year or two to

the process, where the median time from filing an appeal to the issuance of an opinion or final

order in the 12-month period ending September 30, 2023 was 10.7 months.[8]  And those figures are

for the median case; this case will likely take longer given its complexity.

55.    The Proposed Settlement, by contrast, allows for a distribution much sooner.  The

Litigation Trustee will receive $21.0 million no later than the later of July 1, 2025 or 30 days after

an order approving the Proposed Settlement becomes final, and the remaining $9.0 million no later

than 187 days after that.  *See* Ex. A at § 2.

56.    The Litigation Trustee also considered other factors that weigh in favor of the

Proposed Settlement, such as the expense, inconvenience, and delay associated with continuing to

litigate claims against Mayer Brown.  The need for threshold evidentiary hearings to secure this

Court's permission to pursue post-petition claims and/or to vacate the Court's prior orders

approving Mayer Brown's fee applications will add delay.  Moreover, the Proposed Settlement

will allow the Litigation Trustee to avoid substantial expert testimony related fees and expenses

associated with several expert witnesses necessary to provide testimony on the professional

standard of care for: (a) corporate/deal counsel; (b) securities counsel; and (c) restructuring

counsel.  The Litigation Trustee will likewise avoid expert testimony related and fees and expenses

---

[6] While this Court could enter final judgment on post-petition claims, this Court likely could not enter final judgment—absent consent of the parties—on the Litigation Trustee's claims based on pre-petition acts and omissions unrelated to the bankruptcy case without running afoul of *Stern v. Marshall*.

[7] U.S. District Courts, Median Time From Filings To Trial For Civil Cases In Which Trials Were Completed—During the 12-Month Periods Ending December 31, 2022 and 2023, https://www.uscourts.gov/statistics/table/t-3/statistical-tables-federal-judiciary/2023/12/31

[8] U.S. Courts of Appeals, Median Time for Civil and Criminal Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2023, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2023.pdf

associated with measuring damages to the extent such damages are not at issue in other litigation (*e.g.,* alleged damages associated with the December 2021 transaction with the secured lender, and alleged damages related to Mayer Brown's bankruptcy-related legal advice).

**C.    The Proposed Settlement Is in the Best Interests of the Litigation Trust.**

57.    Based on a review and analysis of the Proposed Settlement, and after consultation with counsel, the Litigation Trustee determined in his reasoned and prudent business judgment that the Proposed Settlement is in the best interest of the Litigation Trust and those who ultimately benefit from its recoveries.  The Proposed Settlement eliminates litigation risk, expense, and delay associated with pursuing claims against Mayer Brown through trial.  Meanwhile, the Litigation Trustee has claims against third parties—like Foley—for many of the same injuries at issue in the potential claims against Mayer Brown.  In effect, settling with Mayer Brown allows the Litigation Trustee to take some chips off the table to hedge risk and ensure some recovery, while the Litigation Trustee continues to pursue additional—potentially larger—recoveries from other culpable actors involved in many of the same underlying transactions.

**D.    The Proposed Settlement Is the Product of a Good Faith, Arm's Length Negotiation.**

58.    The Proposed Settlement represents a good-faith, extensively-negotiated arm's length resolution of the Litigation Trust's claims against Mayer Brown.  As detailed above, the settlement was the product of many months of thorough investigation, extensive settlement negotiations, and intensive merits-related discussions between Mayer Brown, the Litigation Trustee, and a nationally recognized mediator on the strengths and weaknesses of the Litigation Trust's potential claims and Mayer Brown's defenses, after both parties took into account all of these factors, risks and costs of litigation.  The Litigation Trustee engaged in these discussions in good faith, and all the negotiations were at arm's length.  Further, to the best of the Litigation Trustee's knowledge, Mayer Brown acted in good faith in reaching the Proposed Settlement.

*DRAFT*

## **NOTICE**

59.     Prior to filing of this Motion, the Litigation Trustee coordinated with the Wind Down Trustee and her advisors and Stretto regarding service.  The Litigation Trustee wishes to ensure the broadest possible notice.  A Service List was created that includes all parties on the master mailing matrix, including all WDT Interest holders.  Further, the service list now includes individual indirect WDT Interest holders identified by the Wind Down Trustee during this case. Service will occur by First Class US Mail on all parties and also by e-mail whenever possible. Stretto will file an affidavit of service with the Service List attached.  Further, this Motion will be posted on the GWG Trust website.

## **PRAYER**

60.     WHEREFORE, the Litigation Trustee respectfully requests that the Court enter the Order, substantially in the form filed with this Motion, (i) granting this Motion; (ii) approving the Proposed Settlement; and (iii) granting all other relief that is appropriate under the circumstances.

*DRAFT*

**Dated**: March ___, 2025          **REID COLLINS & TSAI LLP**

By: */s/ DRAFT*
    William T. Reid, IV
    Tex. Bar No. 00788817
    S.D. Tex. Bar No. 17074
    Nathaniel J. Palmer (admitted *pro hac vice*)
    Tex. Bar No. 24065864
    Michael J. Yoder (admitted *pro hac vice*)
    Tex. Bar No. 24056572
    Joshua J. Bruckerhoff
    Tex. Bar. No. 24059504
    S.D. Tex. Bar No. 1049153
    Morgan M. Menchaca
    Tex. Bar No. 24103877
    S.D. Tex. Bar No. 3697565
    Dylan Jones (admitted *pro hac vice*)
    Tex. Bar No. 24126834
    Emma G. Culotta
    Tex. Bar No. 24132034
    S.D. Tex. Bar No. 3862661
    Taylor A. Lewis (admitted *pro hac vice*)
    Tex. Bar No. 24138317
    1301 S. Capital of Texas Hwy
    Building C, Suite 300
    Austin, Texas 78746
    (512) 647-6100
    wreid@reidcollins.com
    npalmer@reidcollins.com
    myoder@reidcollins.com
    jbruckerhoff@reidcollins.com
    mmenchaca@reidcollins.com
    djones@reidcollins.com
    eculotta@reidcollins.com
    tlewis@reidcollins.com

    Tarek F.M. Saad (admitted *pro hac vice*)
    Tex. Bar No. 00784892
    420 Lexington Avenue, Suite 2731
    New York, NY 10170
    (212) 344-5203
    tsaad@reidcollins.com

    *Counsel for the GWG Litigation Trustee*