IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GWG Holdings, Inc., *et al.*,[1] | Case No. 22-90032 (MI) |
| Debtors. | (Jointly Administered) |

## MOTION TO REMOVE ELIZABETH FREEMAN AS WIND DOWN TRUSTEE

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

1.      Come now Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1

Exchange Trust,  LT-2 Exchange Trust, LT-3 Exchange Trust,  LT-4 Exchange Trust,  LT-5

Exchange Trust,  LT-6 Exchange Trust,  LT-7 Exchange Trust, LT-8 Exchange Trust,  LT-9

Exchange Trust,  LT-12 Exchange Trust,  LT-14 Exchange Trust,  LT-15  Exchange Trust,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GWG Holdings, Inc. (2607); GWG Life, LLC (6955); GWG Life USA, LLC (5538); GWG DLP Funding IV, LLC (2589); GWG DLP Funding VI, LLC (6955); and GWG DLP Funding Holdings VI, LLC (6955). The location of Debtor GWG Holdings, Inc.'s principal place of business and the Debtors' service address is 325 N. St. Paul Street, Suite 2650 Dallas, TX 75201. Further information regarding the Debtors and t hese chapter 11 cases is available at the website of the Debtors' claims and noticing agent: https://donlinrecano.com/gwg.

LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, and LT-20 Exchange Trust, Plaintiffs (and Movants herein) in litigation brought against Defendants, David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker, LLP, and Porter Hedges, LLP (hereinafter "Defendants") in the United States District Court, Southern District of Texas and file this Motion to Remove Elizabeth Freeman as Wind Down Trustee, and in support thereof would show as follows.

**INTRODUCTION**

2.      Ms. Freeman and her former firm where she was partner, Jackson Walker, moved to appoint Judge Jones as mediator in this bankruptcy without advising the Court or anyone that Freeman and Jones were a couple who cohabitated together in a co-owned home. With Jones leading mediation, the parties arrived at a bankruptcy plan that ultimately named Ms. Freeman—at Jones' suggestion—to the lucrative position of Wind Down Trustee, starting at $100,000 per month. Ms. Freeman only assumed the role because she and Jones committed a fraud on the Court by hiding a manifest conflict of interest that would have disqualified them both. This position was arranged by former Judge Jones after Ms. Freeman's departure from Jackson Walker because of the (as of then) undisclosed relationship and the agreement between Jackson Walker, Jones, and Freeman to continue to conceal the relationship. This lucrative role was Ms. Freeman's golden parachute delivered by her domestic partner, former Judge Jones in collaboration with her former employer, Jackson Walker.

3.      As described *infra*, Ms. Freeman had a fiduciary obligation to disclose the relationship to the Court and interested parties in the bankruptcy. Over and over again she failed to do so. In fact, she continues to operate in this bankruptcy as if nothing happened. Judge Jones resigned in disgrace after the Fifth Circuit found probable cause that he engaged in

2

misconduct. There is no reason Ms. Freeman, whose misconduct is equally reprehensible, should be allowed to continue in a highly-paid, fiduciary role before this Court, which she only obtained through fraud. As described herein, for the benefit of the United States bankruptcy system and in the best interests of the Wind Down Trust Beneficiaries, Ms. Freeman must be removed for cause.

4.     Because this motion to remove Freeman concerns matters inextricably related to "the Jackson/Walker fee dispute" and "claims against former Bankruptcy Judge Jones" (Order Referring Various Matters to Judge Isgur, ECF No. 2574), it is properly before Chief Judge Alia Moses pursuant to the Court's April 9, 2025 Order withdrawing the reference. *See* Memorandum Opinion and Order, ECF No. 2572.

**R<small>ELEVANT</small> B<small>ACKGROUND</small> F<small>ACTS</small>**

5.     Movants are former bondholders, now Wind Down Trust interest holders, who filed suit against Defendants in connection with, *inter alia*, their failure to disclose the longstanding intimate, live-in relationship between resigned Bankruptcy Judge Jones and Ms. Freeman in bankruptcy matters, including the GWG bankruptcy. Pursuant to General Order No. 2023-21 and orders issued by Chief Judge Moses in April 2025 (ECF Nos. 2572, 2574), Plaintiffs filed the action in District Court before Chief Judge Moses because it is "(i) part of the Jackson/Walker fee dispute" and involves "(ii) claims against former Bankruptcy Judge Jones."[2]

6.     As described in Plaintiff's Original Complaint filed in the district court (and as well-documented elsewhere), Jones and Freeman have been in a longstanding intimate, live-in

---

[2] *See In re GWG*, No. 20-90032, ECF No. 2574; *see also id.* at ECF No. 2572.

relationship long-before and for the entirety of the GWG bankruptcy.[3] They have also co-owned at least one home together and shared living expenses from before the opening of the GWG bankruptcy and, on information and belief, through present day.[4]

7.      Ms. Freeman only came to be appointed as Wind Down Trustee in the GWG bankruptcy through a fraudulent scheme orchestrated by her, Jackson Walker, and Jones. As detailed in Movants' complaint, this consortium, sometimes with the assistance of other professionals, targeted distressed entities for their own profit. They arranged for Houston to rapidly grow into the leading forum for mega-bankruptcy filings. And they ensured that targeted cases landed before Jones—either as judge or mediator. Once in their grasp, they manipulated numerous bankruptcies, at times converting them from restructuring to liquidation, gutting entities for pennies on the dollar to ensure available cash for millions of dollars in professional fees. Ms. Freeman and Jackson Walker benefitted directly from this arrangement. Jones benefitted indirectly through his live-in girlfriend with whom he shared expenses.

8.      Following this pattern, on November 30, 2022, the day before Ms. Freeman officially left Jackson Walker, the firm filed a motion to appoint Jones as a judicial mediator. Ms. Freeman chose not to apprise the Court of her relationship with Jones in connection with the motion. Jones, Jackson Walker, and Porter Hedges (which also had knowledge of the relationship) also remained silent. In fact, Ms. Freeman, Jones and Jackson Walker decided

---

[3] *See Peterson, et al. v. Jones, et al.*, No. 25-02761, Plaintiffs' Original Complaint, ECF No. 1 (S.D. Tex.); Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvement Act of 2002, Complaint No. 05-24-90002 (5th Cir., Oct. 13, 2023).

[4] *See In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, No. 23---00645, U.S. Trustee's Witness and Exhibit List, ECF No. 600-1 at 18–20.

to hide the relationship despite multiple discussions about a possible disclosure and over the advice of Jackson Walker's specially retained ethics counsel. They decided they would disclose nothing and keep the gravy train rolling, particularly since Ms. Freeman was leaving Jackson Walker and in need of billable clients or appointments.

9.      Ms. Freeman did not sit idly by as Jackson Walker moved to appoint Jones. She appeared at the hearing and urged Judge Marvin Isgur to appoint him. Ms. Freeman explained that she took "comfort in the fact that we have [J]ones as our mediator, because I know that he is keenly aware of those issues and I think will help keep everybody within the guardrails that would be appropriate."[5] Once again, she chose to hide the critical fact that she was living with, co-owned a home, and in a longstanding intimate relationship with the proposed mediator.

10.     Judge Isgur appointed Jones mediator on January 5, 2023.[6] The mediation commenced on January 29, 2023, before Jones in New York City, with Ms. Freeman participating (and billing).[7] The parties anticipated going forward with a plan of reorganization. However, Jones quickly declared there would be no reorganization, and the company would be liquidated.[8] Jones advised that Judge Isgur was his dear friend and would do whatever he said.[9]

---

[5] *GWG*, No. 20-90032, ECF No. 1272 at 23

[6] *Id.* at ECF No. 1323 at 2.

[7] Freeman both participated and billed on behalf of the debtor. In its interim fee applications, Jackson Walker submitted billing from the Law Office of Liz Freeman, including tens of thousands of dollars to Freeman for days of mediation as well as expenses for travel to New York and hotel stays. *See GWG*, No. 20-90032, ECF No. 2158 at PDF pp. 179–80, 195.

[8] *See Peterson*, Plaintiffs' Original Complaint, ECF No. 1 at ¶ 101.

[9] *See id.*

11.     Jones also suggested that Ms. Freeman be appointed as Wind Down Trustee for the liquidating estate.[10] This kickback allowed Freeman to launch her new solo career, collecting $100,000 per month for the first six months and $50,000 per month thereafter as Wind Down Trustee.[11] Again, a golden parachute for Ms. Freeman's departure at Jackson Walker cooked up by Jones, Freeman, and Jackson Walker. Ms. Freeman accepted the appointment, again without disclosing her relationship with the mediator who oversaw the plan that placed her in the lucrative role. Ms. Freeman also failed to disclose her relationship with the mediator in connection with hundreds of thousands of dollars she collected in attorneys' fees as co-counsel for debtor leading up to her appointment as Wind Down Trustee, including for her participation in mediation before Jones.

12.     The plan was ultimately confirmed on June 20, 2023, which formally approved Ms. Freeman as Wind Down Trustee.[12]

13.     Ms. Freeman is an experienced bankruptcy professional and knows that the terms of the Wind Down Trust Agreement explicitly impose a fiduciary duty upon her.[13] Despite her fiduciary duty to the Wind Down Trust beneficiaries, Ms. Freeman never disclosed her intimate, live-in relationship with the mediator. As a result, she has collected more than $1 million as counsel for debtor and then as Wind Down Trustee. She also never corrected Jackson Walker's declaration of disinterestedness (completed while she was a partner at the firm), which in the schedule of searched parties, listed "N/A" for the section concerning

---

[10] *See id.* at ¶ 103.

[11] *See* Tom Hals, Exclusive-Law Firm Tied to Bankruptcy Judge Resignation Did Not Make Conflict Disclosures-Data Analysis, Reuters (Oct. 30, 2023), https://www.usnews.com/news/topnews/articles/2023-10-30/exclusive-law-firm-tied-to-bankruptcy-judge-resignation-did-not-makeconflict-disclosures-data-analysis, last visited Apr. 28, 2025.

[12] *GWG*, No. 22-90032, ECF No. 1952.

[13] *Id.* at ECF No. 1887 at ¶1.4.

Bankruptcy Judges for the Southern District of Texas.[14] At every step, Ms. Freeman has chosen her own financial interests over the interests of those whom she was charged with protecting.

**ARGUMENT & AUTHORITIES**

## I.   Introduction.

14.    Ms. Freeman knowingly committed serious breaches of her fiduciary duties, both as co-counsel for the debtors and in her role as Wind Down Trustee. She used her relationship with Jones to secure the financially gainful position of Wind Down Trustee, while keeping it hidden from the bondholders[15] and then Wind Down Trust beneficiaries, among others. She has collected more than $1 million in this role while deceiving those whose interests she was meant to protect. Notwithstanding the myriad lapses of judgment and violations of applicable rules of ethics and conduct, the gravy train continues for Ms. Freeman—she continues to collect fees as Wind Down Trustee despite securing the position through fraud.

15.    Ms. Freeman's blatant breaches of her fiduciary duties are ongoing. She has still not corrected the misleading declaration suggesting no conflict with a bankruptcy judge. She has not disclosed to the Court or the beneficiaries of the Wind Down Trust that she secured her position through a mediator with whom she shares a home and is in a longstanding intimate relationship. She quietly remains in place as if none of this ever happened. And the checks keep coming.

---

[14] *Id.* at ECF No. 828 at schedule 1(n) (pdf p. 20).

[15] Attorneys for the Bondholder's Committee, Porter Hedges, had knowledge of the relationship because one of their partners, Nicholas Simms, is Ms. Freeman's ex-husband and had, at all times material and relevant hereto, knowledge of the Jones-Freeman relationship. As described in Plaintiffs' Original Complaint, Porter Hedges failed to disclose the relationship.

16.     Ms. Freeman also violated the Local Rules, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Texas Disciplinary Rules of Professional Ethics. And as alleged in Movants' Complaint filed in *Peterson, et al. v. Jones, et al.*, No. 25-cv-02761, ECF No. 1 (S.D. Tex.), she committed, *inter alia*, bankruptcy fraud and violations of the Racketeer Influenced and Corrupt Organizations Act.[16]

17.     Because of her egregious misconduct that violates the integrity of the United States Bankruptcy system, and in the best interest of the Wind Down Trust Beneficiaries, Ms. Freeman must be removed as Wind Down Trustee immediately. She should also be ordered to return all fees collected in her capacity as Wind Down Trustee and as co-counsel for debtors.  This correction is long overdue.

## II.    Ms. Freeman Should be Removed for Cause.

18.     From the inception of the GWG bankruptcy continuing to the present, Ms. Freeman deliberately chose not to disclose her relationship with Jones even though the law required it. She withheld from bondholders, shareholders, and others interested in the bankruptcy that she and former Judge Jones—whom she and her firm brought in to mediate the bankruptcy plan—were in a longstanding intimate relationship, cohabitated in a co-owned home, and shared living expenses.

19.     As a result, the bondholders such as Movants, shareholders, and other interested parties were left unaware of, and unable to object to, the fact that the mediator was anything but impartial, and in fact had a pecuniary interest in Ms. Freeman's fees. They were left blindsided by the couple's scheme to work with law firms to liquidate distressed entities and make huge profits.

---

[16] *See Peterson, et al. v. Jones, et al.*, No. 25-02761, ECF No. 1 at ¶¶ 202–09.

20.     At every step, Ms. Freeman chose to conceal. She kept the relationship hidden when she and Jackson Walker (who knew about the relationship) moved to appoint Jones as mediator. And she kept it hidden when Jones' mediation led to her appointment as Wind Down Trustee.

21.     She did so for money. To date, she has collected more than *$1 million* as counsel for debtor and as Wind Down Trustee in the GWG bankruptcy alone.[17] And she kept it secret to avoid ruining Jones' career and her own.

22.     But her fiduciary duty as counsel for debtor and as Wind Down Trustee required disclosure. So did the Bankruptcy Rules and the Texas Disciplinary Rules of Professional Conduct. These rules are designed to preserve the integrity of the United States bankruptcy system and the judiciary. Ironically, Jones himself emphasized this in written opinions, observing that "due to the sheer volume of cases and the issues involved, the bankruptcy process in the Southern District of Texas is heavily dependent upon the honesty and integrity of the lawyers that participate in the process." *In re Decloutte*, No14-35557, 2018 Bankr. LEXIS 1869, *1 (Bankr. S.D. Tex. June 20, 2018) (J. Jones). As Jones noted, it is critical to "protect[] the integrity of the bankruptcy process itself against those who seek to take advantage through deception or nondisclosure." *In re Edwards*, 510 B.R. 554, 558 (Bankr. S.D. Tex. Apr. 9, 2014) (J. Jones).

23.     Notwithstanding the lip-service her live-in boyfriend and domestic partner gave to integrity and fairness, Ms. Freeman flouted the rules and participated in widespread corruption that has tarnished the Bankruptcy Court in Houston. There is simply no excuse for her remaining in and profiting from the position that she obtained through her deception.

---

[17] *See Peterson*, Plaintiffs' Original Complaint, ECF No. 1 at ¶

24.     Bankruptcy Code §324 provides that "[t]he court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." 11 U.S.C. §324(a). The Wind Down Trust Agreement likewise allows for removal of the Wind Down Trustee "at any time for Cause[.]"[18]

25.     According to the Agreement, "cause" means, among other things, "gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder." 7.2 n. 6. Consistent with this definition, the Fifth Circuit has upheld removal for cause of a trustee under § 324 for willful breach of fiduciary duty. *See In re Ifs Fin. Corp.*, 803 F.3d 195, 205–208 (5th Cir. 2015) (affirming removal for "cause" based on trustee's willful breach of fiduciary duty regardless of any injury; noting potential conflict of interest as a basis for removal in prior cases); *accord Livore v. John W. Hargrave and Assoc.*, No. 08-32423, 2010 Bankr. LEXIS 1653, 2010 WL 1849322, *2 (Bankr. D.N.J. May 6, 2010) ("[c]ause has been found to exist, *inter alia*, where the trustee . . . violates the fiduciary duty to the estate") (citation omitted). As described *infra*, Ms. Freeman committed multiple willful breaches of fiduciary duty and thus engaged in willful misconduct. And as an experienced bankruptcy professional, she committed numerous knowing violations of the law. There is indeed "cause" for terminating Ms. Freeman. And every day that passes with her remaining in the position of Wind Down Trustee is a blight on the United States Bankruptcy system.

### III.     Ms. Freeman Committed Serious and Ongoing Breaches of Fiduciary Duty, Willful Misconduct, and Knowing Violations of the Law.

26.     The Wind Down Trust was "created . . . for the benefit . . . of the Wind Down Trust Beneficiaries," and expressly imposes powers on Ms. Freeman as Wind Down Trustee "in a

---

[18] *GWG*, No. 22-90032, Wind Down Trust Agreement, ECF No. 1887 at ¶ 7.2.

**fiduciary** capacity."[19] This is consistent with law recognizing that a wind down or "liquidating trustee is a fiduciary." *In re Rocking M Media, LLC*, 2024 Bankr. LEXIS 1786, *5 (Bankr. D. Kan. Aug. 2, 2024) (citing *In re Atna Resources*, No. 15-22848-JGR, 2020 Bankr. LEXIS 2185, 2020 WL 4673836, at *2 (Bankr. D. Colo. July 10, 2020)).

27.     It is well established that "[a] fiduciary duty consists of the duty of loyalty**, the duty to make full disclosure**, and the duty to exercise a high degree of care." *Trevino v. Brookhill Capital Resources, Inc.*, 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (emphasis added). Further, "[w]here a conflict of interest exists, nothing less than full and complete disclosure is required of the [fiduciary]." *TPL Assocs. v Helmsley-Spear, Inc.*, 146 A.D.2d 468, 470, 536 N.Y.S.2d 754 (1st Dept 1989); *see also* Restatement 3d of Trusts, § 78(3) ("[w]hether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter"). Similarly, attorneys breach their fiduciary duties by failing to disclose conflicts of interest. *See e.g., Gibson v. Ellis,* 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.) ("[a]n attorney breaches his fiduciary duty . . . by, among other things, . . . failing to disclose conflicts of interest"); *Walker v. E & L Transfer, LLC*, 2018 U.S. Dist. LEXIS 246392, *3 (S.D. Tex. Jan. 28, 2018) ("[b]reach of fiduciary duty by an attorney most often involves the attorney's failure to disclose conflicts of interest").

28.     For the entirety of the bankruptcy and from the inception of the Wind Down Trust through present, Ms. Freeman has been in an intimate relationship and has co-owned a home with Jones, the mediator whom she and Jackson Walker moved to bring into the case. She chose not to disclose the relationship to those interested in the bankruptcy when Jackson

---

[19] *Id.* at ¶1.4 (emphasis added).

Walker filed a declaration of disinterestedness that disavowed conflict with any bankruptcy judge in the Southern District. She chose not to disclose it when Jackson Walker (with Freeman still a partner) moved to appoint Jones as mediator. She chose not to disclose it while she participated in mediation before Jones. She chose not to disclose it when she was appointed as Wind Down Trustee thanks to Jones. She chose not to disclose it while petitioning for and accepting fees as co-counsel for debtor, including fees for mediating before Jones. And she chose not to disclose it in connection with her fees as Wind Down Trustee, a position which she only secured because Jones oversaw the mediation.

29.    In each instance, a clear conflict of interest existed. *See infra*. And in each case, Ms. Freeman chose not to disclose it. As an experienced bankruptcy partner and former clerk to Jones, she knew the law required disclosure but decided against it so she could collect more than $1 million in fees and avoid the consequences that would come with revealing the truth.

30.    These egregious and ongoing breaches of fiduciary duty, willful misconduct, and knowing violations of the law—which harmed not only those affected by the bankruptcy, but the judicial system as a whole—require her removal as Wind Down Trustee. *See Ifs Fin. Corp.*, 803 F.3d at 205–208.

### IV.    Ms. Freeman Knowingly Violated Local Rule 16.4.I(2) by Failing to Disclose Her Relationship with Jones.

31.    Ms. Freeman knowingly violated numerous rules and laws in concealing her intimate, live-in relationship with Jones even while moving for him to be appointed mediator, mediating before him, and accepting appointment and compensation as Wind Down Trustee following the mediation. For example, Local Rule 16.4.I(2) provides that "[i]ssues concerning potential ADR provider conflicts shall be raised with the judge presiding in the case relating to the ADR proceeding."

32.     Freeman's intimate, domestic, and financial relationship with Jones posed not just a potential, but an *actual* conflict. Jones was disqualified from serving as mediator in cases involving Freeman. Mediators "are subject to disqualification pursuant to standards consistent with those set forth in 28 U.S.C. § 455 (1988)." S.D. Tex. L.R. 16.4.I(1); *see also* Fed. R. Bankr. P. 5004 (a "bankruptcy judge shall be governed by 28 U.S.C. § 455"). Section 455(a) provides that a judge shall disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a).[20] And section 455(b) mandates that a judge "shall . . . disqualify himself" if the judge's "spouse . . . is acting as a lawyer in the proceeding" or has "an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(ii), (iii).

33.     Both subsections (a) and (b) disqualified Jones as a mediator.[21] His impartiality would reasonably be questioned with his live-in girlfriend with whom he co-owned a home serving as counsel in the mediation. Further, Ms. Freeman is the equivalent of a spouse for purposes of judicial disqualification. During the mediation (and throughout the litigation) Ms. Freeman was living with Judge Jones in a house they jointly owned and had an ongoing romantic relationship.

---

[20] "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). Section 455's "overriding concern with appearances . . . stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980). In determining whether there is an appearance of partiality, a court "ought to consider how [the judge's] participation in a given case looks to the average person on the street" and "disqualification should follow if the reasonable [person], were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Id.*

[21] Notably, among the bases for finding "probable cause to believe that Judge Jones has engaged in misconduct," the Fifth Circuit specifically cited the fact that Judge Jones was a mediator in a case in which Freeman participated without disclosing the relationship. *See* Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones.

13

34.    In the Fifth Circuit opinion finding probable cause that Jones engaged in misconduct, the Court reminded that "[r]ecusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones (quoting Code of Conduct for United States Judges, Cannon 3(C)(1)); *see also* Conflicts Arising Out of a Lawyer's Personal Relationship with Opposing Counsel, ABA Comm. On Ethics & Pro. Resp., Formal Op. 494 (July 9, 2020) ("Lawyers who cohabit in an intimate relationship should be treated similarly to married couples for conflicts purposes. The same is true for couples who are engaged to be married or in exclusive intimate relationships."); ABA Model Code of Judicial Conduct, Model Rule 2.11 (requiring disqualification if a judge's "domestic partner" is "acting as lawyer in the proceeding" or "has more than a de minimis interest that could be substantially affected by the proceeding"); ABA Model Code of Judicial Conduct, Terminology (2011) (defining "domestic partner" as "a person with whom another person maintains a household and an intimate relationship, other than a person to whom he or she is legally married").

35.    Freeman's violation of Local Rule 16.4.I(2) in failing to disclose her relationship with the mediator undermined the integrity of the mediation and everything that flowed out of it, including her appointment as Wind Down Trustee. *See* Kenneth R. Feinberg, Mediation—A Preferred Method of Dispute Resolution, 16 Pepperdine L. Rev. S5, S29 (Spring, 1989) ("[T]he mediator must be perceived by the parties as completely neutral and impartial. This is necessary not only to ensure openness, but also to preserve the integrity of the mediation process").

14

### V. Ms. Freeman Also Knowingly Violated Bankruptcy Rule 2014 and the Fiduciary Duties of Estate Counsel by Failing to Disclose Facts Relevant to the Bankruptcy Court's Determination of Eligibility to be Retained under 28 U.S.C. § 327.

36.     Ms. Freeman also violated Bankruptcy Rule 2014 and her fiduciary duties as co-counsel for the debtors, which required her to disclose any facts relevant to the bankruptcy court's determination of eligibility to be retained under 11 U.S.C. § 327.

37.     Under Section 327, a bankruptcy estate may only employ "attorneys . . . or other professional persons, that do not hold or represent an interest adverse[22] to the estate, and that are disinterested[23] persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327. Once Jackson Walker (with Freeman as a partner) moved for Jones' appointment and once Jones was appointed, she was not disinterested. Further, Ms. Freeman's interest in remaining counsel for the estate—and her interest in keeping her relationship with Jones secret to avoid challenges to her compensation in cases where Jones presided as a judge or mediator—conflicted with the estate's interest in having an impartial mediator.

38.     Because Ms. Freeman's relationship with Jones was obviously relevant to whether she continued to meet Section 327's eligibility requirements if he was appointed mediator, she was obligated to disclose it under Bankruptcy Rule 2014. Indeed, "since section 327(a) is designed to limit even appearances of impropriety to the extent reasonably practicable,

---

[22] "[An adverse interest] includes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. Mar. 9, 1998) (cleaned up).

[23] The definition of "disinterested," 11 U.S.C. § 101(14), is sufficiently broad to disqualify any professional with an "interest or relationship that would even faintly color the independence and impartial attitude required by the Code." *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998) (quoting *In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991)).

doubt as to whether a particular set of facts gives rise to a disqualifying conflict of interest normally should be resolved in favor of disqualification." *Rome v. Braunstein*, 19 F.3d 54, 60 (1st Cir. 1994). "These statutory requirements—disinterestedness and no interest adverse to the estate—serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Id*. at 58. They require "an objective screening for even the appearance of impropriety." *Id*. (cleaned up).

39.     The standards for finding a conflict are "'strict'" and "attorneys engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.'" *In re W. Delta Oil Co.*, 432 F.3d 347, 355 (5th Cir. 2005) (quoting *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 & n. 6 (5th Cir. 1986)). This applies equally to bankruptcy mediations. The Bankruptcy Court for the Southern District of Texas has held that mediators are "governed by the provisions of the Code and Rules regulating employment of professional persons[,]" including § 327 and Rule 2014. *In re Smith*, 524 B.R. 689, 695 (Bankr. S.D. Tex. 2015).

40.     Ms. Freeman was not disinterested where she represented a party in a mediation before Jones. Obviously, her relationship with Jones reasonably would be expected to impact her "independence and impartial attitude[,]" *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998), in a mediation conducted by Jones. Further, because the Local Rules prohibited Jones from acting as a mediator where Ms. Freeman represented a party to the mediation, her interest

in continued employment conflicted with the estate's interest in having a disinterested mediator.

41.     The conflict extended beyond Ms. Freeman's interest in continued retention in the case. Ms. Freeman possessed an adverse economic interest in hiding her relationship with Jones. If disclosed, not only would Ms. Freeman be disqualified under Bankruptcy Rule 5002 from working on any case where Jones presided, but any fees awarded to Jackson Walker/Freeman would also be subject to challenge. Moreover, Freeman had an adverse interest in hiding the relationship to avoid tarnishing her reputation and that of her live-in boyfriend, Jones.

42.     Ms. Freeman's pecuniary interest in avoiding disclosure was adverse to the estate's interest in retaining a disinterested mediator. Other parties to the mediation would reasonably be concerned that the romantic relationship would impair the mediator's ability neutrality, creating an unlevel playing field. Ms. Freeman's pecuniary interest is particularly at issue here where the mediation led to her appointment as the Wind-Down Trustee. Presumably, as romantic partners who cohabitate, co-own property, and share expenses, the financial benefits of serving as Wind Down Trustee flowed also to Jones, who mediated the matter. For these reasons, Ms. Freeman's relationship with Judge Jones rendered her ineligible Section 327 counsel once Jones was proposed as a mediator.

43.     Regardless, for Ms. Freeman to continue to be retained, her relationship with Jones was a material fact requiring disclosure. Bankruptcy courts recognize the critical importance of attorneys providing the necessary information to ensure that only eligible professionals are retained by the estate under Section 327. *See Rome*, 19 F.3d at 59 ("[a]s with other prophylactic ethical rules constraining attorney conduct, sections 327(a) and 328(c) cannot

17

achieve their purpose unless court-appointed counsel police themselves in the first instance"); *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1255 (5th Cir. 1986) ("The numerous limitations imposed by the Bankruptcy Code upon compensation of court-appointed counsel . . . are designed to insure the highest standards of ethical conduct . . . . Vigilance is required by and among court-appointed counsel in particular to enforce the standards of the Code.").

44.     "The case law is clear that the burden of disclosure is upon the person making the statement to come forward with facts pertinent to eligibility and to make candid and complete disclosure." *In re Huddleston*, 120 B.R. 399, 400–01 (Bankr. E.D. Tex. 1990) (cleaned up). These disclosures "go[] to the heart of the integrity" of the bankruptcy system. *United States v. Gellene*, 182 F.3d 578, 588 (7th Cir. 1999); *accord In re Universal Bldg. Prod*s., 486 B.R. 650, 663 (Bankr. D. Del. 2010). Therefore, the duty of disclosure is "sacrosanct."

*In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). "[T]he omission of material information in a bankruptcy filing impedes a bankruptcy court's fulfilling of its responsibilities just as much as an explicitly false statement." *United States v. Gellene*, 182 F.3d 578, 587 (7th Cir. 1999) (cleaned up) (affirming attorney's conviction for bankruptcy fraud).

45.     Bankruptcy Rule 2014 is just one means of ensuring disclosure for Section 327 employment. It is not the full extent of an attorney's disclosure obligations. A debtor's counsel's duty to disclose "arises not solely by reason of the bankruptcy rules, but also is founded upon the fiduciary obligation owed by counsel for the debtor to the bankruptcy court." *In re Futuronics Corp.*, 655 F.2d 463, 470 (2d Cir. 1981) (cleaned up); *see also In re EWC, Inc.*, 138 B.R. 276, 279 (Bankr. W.D. Okla. 1992) ("professionals performing duties for the estate are held to high fiduciary standards, and act as officers of the court"). "An

18

attorney retained pursuant to Section 327(a) assumes a fiduciary responsibility to refrain from rendering any unauthorized service in furtherance of an interest adverse to the client he serves by court appointment." *Rome*, 19 F.3d at 62. The fiduciary duties owed by a professional also include the duty "to disclose any actual or potential conflicts of interest with the estate." *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997); *see also ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 123–24 (S.D. Tex. 2002) ("counsel of a debtor-in-possession owes certain fiduciary duties to both the client debtor-in-possession and the bankruptcy court . . . including . . . [a] duty . . . to disclose any actual or potential conflicts of interest with the estate"), *aff'd*, 324 F.3d 768 (5th Cir. 2003); *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 711 (Bankr. S.D.N.Y. 2008) ("a threshold fiduciary requirement is counsel's duty to establish its qualification as a party with no conflicts of interest and the maintenance of that qualification throughout the case").

46.     A Section 327 "applicant must disclose all connections regardless of whether they are sufficient to rise to the level of a disqualifying interest under Section 327(a)." *Am. Int'l Refinery, Inc.*, 676 F.3d at 465; *see also eToys, Inc.*, 331 B.R. at 190 ("Bankruptcy Rule 2014 requires that the attorney seeking employment disclose to the Court all connections with parties in interest in the case, rather than furnishing only those which appear to implicate 'disinterestedness' or 'adverse interest' concerns under Section 327(a)"). Thus, "professionals 'cannot pick and choose which connections are irrelevant or trivial.'" *Gellene*, 182 F.3d at 588 (quotation omitted). Deciding which facts to disclose is not up to the professional, "whose judgment may be clouded by the benefits of potential employment.'" *In re Lee*, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1988).

48.     Further, "[a]lthough [Rule 2014(a)] does not explicitly require ongoing disclosure, case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises." *In re W. Delta Oil Co.*, 432 F.3d 347, 355 (5th Cir. 2005) (cleaned up); *eToys, Inc.*, 331 B.R. at 190 ("[T]he duty to disclose is ongoing"). "Though this provision allows the fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *W. Delta Oil*, 432 F.3d at 355. Correspondingly, the retention order in this case specifically required Jackson Walker (and Ms. Freeman as its partner) "to ensure that no conflicts or other disqualifying circumstances exist or arise" and to "promptly" disclose them if they do.[24]

49.     Jackson Walker's application (submitted with Ms. Freeman as partner) stated that the firm was disinterested and had no connections to any party in interest.[25] While that may have been true when the application was first filed—since the motion to appoint Jones had not been filed—it became false when Jackson Walker/Freeman moved for his appointment. Yet, Jackson Walker did not update its disclosures, and Ms. Freeman did not correct the omission. Worse, Jackson Walker supplemented its initial disclosure (with Freeman still at the firm), to affirmatively state that no conflicts were identified with "U.S. Bankruptcy Judges (S.D. TX– Houston Division)."[26] Once Jones was appointed mediator, Ms. Freeman's decision not to correct this false supplemental disclosure was outright fraud.

---

[24] *GWG*, No. 20-90032, ECF No. 410 at 2.

[25] *See id.* at ECF No. 267 at 6; ECF No. 267-2 at 2, 5.

[26] *Id.* at ECF No. 829, Schedule 1(n).

50.     By concealing the relationship for her own benefit, Ms. Freeman deprived the parties

of the choice of an impartial mediator and counsel. And she deprived the Court of its ability

to determine their continued eligibility to be retained as counsel under Section 327.

### VI.     Ms. Freeman Also Knowingly Violated the Disciplinary Rules of Professional Conduct.

51.     Ms. Freeman also violated the Local Rules and the Disciplinary Rules by failing to

disclose her relationship with Jones when she and her firm moved for his appointment as

mediator. First, Ms. Freeman violated Disciplinary Rule 3.03, which requires candor toward

the tribunal and prohibits lawyers from knowingly making a false statement of fact. To be

sure, "[a] failure to disclose may constitute a breach of an attorney's duty of candor." *In re*

*Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014); *see also Domain Prot., L.L.C. v. Sea Wasp,*

*L.L.C.*, 23 F.4th 529, 543 (5th Cir. 2022) ("The duty of candor extends beyond not making

false statements. An omission may also violate the duty.").

52.     Again, Ms. Freeman failed to correct the disclosures submitted by her firm, Jackson

Walker, that it was disinterested and had no connections to any party in interest even after

she and her firm moved for, and obtained, Jones' appointment as mediator. And she failed to

correct the supplemental disclosure that there were no conflicts with U.S. Bankruptcy Judges

in the Southern District of Texas/Houston Division. She also failed to correct the

representation that she and Jackson Walker were eligible for employment under Section 327

once Jones was proposed as mediator. Additionally, because Jones was disqualified from

mediating a case in which Ms. Freeman represented a party, Ms. Freeman's duty of candor

required her to disclose the disqualifying relationship.

53.     Similarly, Ms. Freeman violated Disciplinary Rule 4.01 requiring truthfulness in

statements to others. Rule 4.01(a) provides, "In the course of representing a client a lawyer

shall not knowingly . . . make a false statement of material fact or law to a third person." Ms. Freeman's failure to correct the false disclosures once Jones was appointed mediator amount to false representations to those interested in the bankruptcy that there was no connection between her and Jones that would call into question either his independence or Ms. Freeman's eligibility to serve as counsel under Section 327 in cases before Jones.

54.     Ms. Freeman also violated Disciplinary Rule 8.04 by knowingly assisting Jones' violation of Local Rule 16.4.I(1). Rule 8.04(a)(6) prohibits attorneys from "knowingly assist[ing] a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." Jones was required to disqualify himself as a mediator because of his relationship with Ms. Freeman. S.D. Tex. L.R. 16.4.I(1). Jones also had to disclose "any known relationships with the parties or their counsel that may affect or give the appearance of affecting the mediator's neutrality." Ethical Guidelines for Mediators, Guideline 4;[27] *see also CEATS, Inc. v. Cont'l Airlines, Inc.*, 755 F.3d 1356, 1364 (Fed. Cir. 2014) ("[m]ediators are required to disclose not only financial interests, but all potential conflicts of interests as well."). Jones violated each of these requirements by failing to disclose his relationship with Ms. Freeman and acting as a mediator in this case. Ms. Freeman obviously knew of the relationship and assisted him in these violations by also choosing not to disclose the relationship and thereby violated Disciplinary Rule 8.04(a)(6).

### VII.    As Alleged in Plaintiffs' Complaint, Ms. Freeman Committed Bankruptcy Fraud and Violations of the Racketeer Influenced and Corrupt Organizations Act.

55.     As set forth in full detail in Plaintiffs' Complaint in *Peterson, et al. v. Jones, et al.*, No. 25-02761 (ECF No. 1 at ¶¶ 202–09), Ms. Freeman committed civil RICO violations in the

---

[27] Accessible at https://www.attorney-mediators.org/ethicalguidelines/.

GWG bankruptcy. Plaintiffs' RICO claims are based on Ms. Freeman's pattern of racketeering activity, demonstrated by her commission of "two or more predicate criminal acts[.]" *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523–24 (5th Cir. 2016). Among other predicate criminal offenses, Plaintiffs allege Ms. Freeman committed bankruptcy fraud. These allegations, ultimately requiring proof by a preponderance of the evidence, are an additional consideration and further substantiate the urgent need for Ms. Freeman's removal as Wind Down Trustee.

### VIII.   Movants Have Standing to Bring this Motion.

56.    Section 7.2 of the Wind Down Trust Agreement purports to allow removal of the Wind Down Trustee "by: (a) the Bankruptcy Court on its own initiative, or (b) the Bankruptcy Court upon a motion from 25% or more of the Wind Down Trust Beneficiaries, then holding at least 25% of then-outstanding WDT Interests in the aggregate."[28]

58.    The agreement thus contemplates the Court's *sua sponte* removal of Ms. Freeman as Wind Down Trustee. Additionally, Movants hold approximately 23% of outstanding WDT Interests and seek to represent, derivatively or as a class, 100% of the Wind Down Trust Beneficiaries in their complaint against Jones, Freeman, Freeman PLLC, Jackson Walker, and Porter Hedges.

59.    To the extent this provision purports to obstruct Movants' rights to seek Ms. Freeman's removal, this Court can *sua sponte* disregard the provision to avoid an abuse of process and a fraud on the Court by Ms. Freeman concealing her relationship with Jones. This Court can do so notwithstanding 11 U.S.C. § 1144's 180-day limitation period for revoking a confirmation order based on fraud. *See In re Thomas*, 223 Fed. Appx. 310, 313-

---

[28] *GWG*, No. 20-90032, ECF No. 1887 at 32.

14 (5th Cir. Mar. 1, 2007) (unpubl. op.). Alternatively, the Court can decline to give effect to the provision as void because it violates Movants' Fifth Amendment due process rights, since they were never provided notice of the Jones-Freeman relationship such that they could have objected to Ms. Freeman's appointment.

CONCLUSION

Movants respectfully request that the Court remove Elizabeth Freeman with cause as Wind Down Trustee. Based on her egregious breaches of fiduciary duties, Movants further request that she be ordered to return all fees collected as Wind Down Trustee to the Wind Down Trust. Movants further request that the Court appoint an appropriate replacement as Wind Down Trustee.

**Dated August 4, 2025**

Respectfully submitted,

By:   */s/ Mikell A. West*
      Mikell A. West
      Texas State Bar No. 24070832
      S.D. Tex. Bar No. 1563058
      Robert W. Clore
      Texas State Bar No. 24012436
      S.D. Tex. Bar No. 2032287
      BANDAS LAW FIRM, P.C.
      555 N. Carancahua Street, Suite 1200
      Corpus Christi, Texas 78401
      Telephone: (361) 698-5200
      Facsimile: (361) 698-5222
      rclore@bandaslawfirm.com
      mwest@bandaslawfirm.com

      Shelby A. Jordan
      Texas State Bar No 11016700
      Jordan & Ortiz, P.C.
      500 N. Shoreline Blvd. Suite 804
      Corpus Christi, Texas 78401
      sjordan@jhwclaw.com
      cc:  cmadden@jhwclaw.com

      *Attorneys for Plaintiffs*

25

## Certificate of Service

I hereby certify that on August 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Mikell A. West*