IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br>GWG HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-90032<br><br>Jointly Administered |

**THE ESTATE OF LUMINA ALABASTRO'S OBJECTION TO (I) LIFE RECOVERY FUND LLC'S MOTION FOR AN ORDER (A) ENFORCING THE COURT'S CONFIRMATION ORDER AND (B) FOR RELATED RELIEF, (II) JOINDER OF WELLS FARGO BANK, NATIONAL ASSOCIATION, AND (III) MOTION OF VIDA INSURANCE CREDIT OPPORTUNITY FUND III GP, LLC TO ENFORCE THE CONFIRMATION ORDER AND PLAN**

[Regarding ECF Nos. 2762, 2765, 2767]

The Estate of Lumina Alabastro (the "Alabastro Estate"), by its personal representative, Daphne Alabastro Benitez, hereby responds and objects to (I) Life Recovery Fund LLC's Motion for an Order (A) Enforcing the Court's Confirmation Order and (B) for Related Relief [ECF No. 2762] (the "LRF Motion"), (II) Joinder of Wells Fargo Bank, National Association in Life Recovery Fund, LLC's Motion for an Order (A) Enforcing the Court's Confirmation Order and (B) for Related Relief [ECF No. 2767] (the "Wells Fargo Joinder"), and (III) Motion of Vida Insurance Credit Opportunity Fund III GP, LLC to Enforce the Confirmation Order and Plan [ECF No. 2765] (the "VICOF III Motion"). In support of this objection, the Alabastro Estate submits the Declaration of Daphne Alabastro Benitiz attached hereto as Exhibit 1 hereto (the "Benitez Declaration")[1] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Under Delaware law, it is illegal to wager on human life through life insurance "for the benefit of those who have no relationship to the insured. These policies, commonly known as

---

[1] The Benetiz Declaration was prepared for use in the U.S. District Court for the District of Delaware.

'stranger originated life insurance,' or STOLI, lack an insurable interest and are thus an illegal wager on human life." *PHL Variable Insurance Co. v. Price Dawe 2006 Insurance Trust, ex rel. Christiana Bank & Trust Co.*, 28 A.3d 1059, 1070 (Del. 2011) ("Price Dawe"). Such wagers violate the Delaware Constitution and the state's clear public policy. *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 59 (Del. 2022). The related insurance agreements "are void *ab initio*, never come into legal existence, represent a 'fraud on the court,' and can never be enforced." *Id.* (citing *Price Dawe*, 28 A.3d at 1069 n.25, 1073). The Delaware General Assembly has codified this policy against stranger-originated life insurance policies ("STOLI") in 18 Del. C. § 2704 by (a) requiring a person procuring a life insurance policy to have an "insurable interest" in the life of the insured and (b) providing that the insured or his or her executory or administrator may recover any payments by an insurer to a beneficiary, assignee, or other payee under any policy made in violation of the statute. *Id.* at 59-60 (quoting 18 Del. C. § 2704(a) and (b)).

2. On June 23, 2025, the Alabastro Estate filed an action under 18 Del. C. § 2704(b) to recover the death benefit of a void *ab initio* Delaware life insurance policy (the "Policy"). The Policy was the product of a well-known Delaware-centered stranger-originated life insurance ("STOLI") scheme operated by a group of Delaware entities collectively known as "Coventry." This Delaware state-law-based suit is pending in the United States District Court for the District of Delaware and captioned *Estate of Alabastro v. Wells Fargo Bank*, No. 1:25-cv-954-RGA (the "Delaware Action").[2] Life Recovery Fund LLC ("LRF"), Wells Fargo Bank, NA ("Wells Fargo"), and Vida Insurance Credit Opportunity Fund III GP, LLC ("VICOF III") were among the defendants in the Delaware Action.

---

[2] A copy of the Alabastro Estate's first amended complaint in the Delaware Action is attached hereto as Exhibit 2.

3. LRF filed a motion with this Court on October 27, 2025 [ECF No. 2762], seeking an order enjoining the Alabastro Estate from asserting claims against LRF or any other party receiving proceeds from the Policy and compelling the Alabastro Estate to dismiss the Delaware Action within seven (7) days. LRF contends that the Policy was transferred free and clear under the confirmed plan in the chapter 11 cases [ECF No. 1952 at pp. 48-222] (the "Plan"), which thereby prevents the Delaware Action from proceeding.[3] Additionally, LRF asserts that this Court should exercise jurisdiction even though the dispute is between non-debtors because of language in the confirmation order retaining jurisdiction [ECF No. 1952] (the "Confirmation Order") and the Court is in the best position to interpret and enforce its prior order. Wells Fargo joined LRF's motion [ECF No. 2767].

4. Contrary to LRF's arguments, the Alabastro Estate's right under Delaware law to bring a Section 2704(b) claim was not extinguished by the Confirmation Order or the Plan. First, neither Ms. Alabastro nor Ms. Benitez received notice of these chapter 11 cases or the Plan. To the extent that Ms. Alabastro had a contingent claim, as asserted by LRF, she was a known creditor. She was entitled to actual notice as set out under the Bankruptcy Rules. Publication notice was not sufficient to satisfy due process. Therefore, any transfer of the Policy could not have been free and clear of the claims of Ms. Alabastro and now the Alabastro Estate. Second, to the extent that there is liability under 18 Del. C. § 2704(b), the Debtor did not have any interest in the policies or the proceeds under 18 Del. C. § 2704(a). A transfer free and clear under Bankruptcy Code § 1141 requires that the property actually exists. Under Delaware law, there was no interest in the Policy to transfer. Third, the Alabastro Estate disputes that any right to payment—i.e., a claim—existed

---

[3] LRF asserts that the Policy was transferred to the "Wind Down Trust" under the Plan. According to the terms of the plan, however, the "Policy Portfolio" was transferred to the "Portfolio Co." with the Wind Down Trust merely holding the equity interests in the Portfolio Co. Presumably the Plan was effectuated according to its terms.

3

prior to the insureds payment of the death benefit. The purported parties under the Policy (including the insurer) had no obligations to each other because it was void *ab initio*. In particular, there was no legal relationship between Ms. Alabastro and GWG or its affiliates until the insurer paid the death benefit, giving rise to the Alabastro Estate's right to recover..

5. Further, the injunction sought by the LRF Motion is procedurally improper. Bankruptcy Rule 7001(g) requires proceedings to obtain an injunction or other equitable relief to be brought by an adversary proceeding. While a party can arguably seek to interpret or enforce a plan through a motion, with respect to a separate injunction, the law is clear. The procedural safeguards present in adversary proceedings are important to ensure adequate notice and establish personal jurisdiction. The procedure puts attention on the high substantive burden to receive a preliminary injunction.

6. The Alabastro Estate also submits that the Court should exercise its broad discretion to permissively abstain from the dispute in the interests of comity and respect for state law. This Court clearly has jurisdiction to interpret and enforce the Plan and Confirmation Order. However, the dispute implicates important matters of Delaware law and policy that are ultimately controlling. Courts in Delaware are able to address these issues.

7. VICOF III also filed a motion [ECF No. 2765] seeking similar relief. In addition to the bases set out in the LRF Motion, VICOF III references the exit financing documents and its role as administrative and collateral agent thereunder. The Alabastro Estate dismissed VICOF III from the Delaware Action on November 4, 2025, and submits that VICOF III's motion is moot. There is no active dispute between the Alabastro Estate and VICOF III.

8. Ultimately, the LRF Motion, the Wells Fargo Joinder, and the VICOF III Motion should each be denied. Bankruptcy is not magic. It does not miracle void *ab initio* insurance

policies into enforceable agreements contrary to applicable state law. Nor does it create a claim out of thin air. Indeed, bankruptcy is at its lowest ebb where, as here, there is not constitutionally sufficient notice. As any decision will involve important issues of Delaware law, however, these decisions should be left for adjudication in the Delaware Action.

## BACKGROUND[4]

### A.  GWG'S Business and Chapter 11 Case

9.  GWG bought and sold life insurance policies on the secondary market. *Disclosure Statement for the Debtor's Further Modified Second Amended Joint Chapter 11 Plan, Submitted by the Debtors, the Bondholders Committee, and L Bond Management, LLC as Co-Proponents* at pp. 53-54 [Dkt. No. 1676]. GWG solicited money from investors to fund policy purchases to acquire policies that it believed or calculated would mature (i.e. the insured would die) in time for the GWG to make a profit after covering any premiums and debt service. Once a policy was purchased, GWG would become the "policy's beneficial owner" and make premium payments, service the policy, and make a claim for and collect the death benefit when the insured passed away. *Id.* at 56. As of April 14, 2023, GWG's portfolio of policies consisted of 847 policies with an approximate aggregate face amount of $1.6 billion. *Id.* at 54. According to the LRF Motion, GWG's portfolio included the Policy on Ms. Alabastro's life.

10.  On April 20, 2022, GWG and related entities filed voluntary petitions for chapter 11 relief. The schedules did not list Ms. Alabastro or any of her family members. [See ECF Nos. 422, 424, 426]. On information and belief, neither Ms. Alabastro nor any of her family members were included on the creditor matrix. The Alabastro Estate did not yet exist.

---

[4] The Delaware Action is still in the early stages, and the Alabastro Estate has not yet propounded discovery on other parties. The allegations are based on the information available to the Alabastro Estate and its believe of the evidence likely to be uncovered.

5

11.     Neither Ms. Alabastro nor any of her family members received service of any notice of the bankruptcy, the bar date, the Plan, or the confirmation hearing. Benitez Declaration ¶¶ 4-5. The only notice referred to in the LRF Motion was publication of the commencement of the case in the New York Times on May 9, 2022. LRF Motion at ¶ 11. Neither Ms. Alabastro nor any of her family members were provided actual notice through this publication. Benitz Declaration ¶¶ 4-5.

12.     Moreover, even if Ms. Alabastro or Ms. Benitez had seen the New York Times notice, it would not have been calculated to give them actual notice that Ms. Alabastro's rights could be affected by a chapter 11 case. On March 18, 2022, Ms. Benitez received a voicemail from someone identifying themselves as working for ITM 21st and LexServ checking in on Ms. Alabastro's health as part of a "quarterly update" related to the Policy. Benitz Declaration ¶ 8. The callers did not tell her GWG owned the Policy or tell her anything about a bankruptcy proceeding. Benitz Declaration ¶ 9.

13.     To the extent that Ms. Alabastro had an existing claim at the commencement of GWG's bankruptcy cases, her identity and address could have been uncovered by a reasonably diligent search by GWG and its professionals. The Policy and application attached to LRF's motion were in GWG's possession, custody, and control. Service of notice to the insured persons under the 847 insured policies would have resulted in *de minimis* burden compared to the tens of millions of professional fees incurred by GWG [*See* ECF No. 2281, 2238, 2284][5] and the employment of a claims and notice agent in the case [ECF No. 64].

---

[5] More than $48 million in attorney's fees were incurred in this case between counsel for GWG and the official committee of unsecured creditors, but, according to the position asserted in LRF's Motion, no one ensured that *actual* notice was given to contingent creditors who could be determined by reference to a mere 847 documents.

14. On June 15, 2023, the Court conducted hearing on confirmation of the proposed Plan. At the hearing, the Court verified with GWG's bankruptcy counsel that third parties would still be able to bring independent claims notwithstanding confirmation:

> THE COURT: Finally, in this area, are there any provisions of the Plan that would prohibit someone who held a claim individually? In other words, not a claim that is actually owned by the Debtor but held their own claim that would stop them from prosecuting their own claim other than the exculpated parties -- which are essentially the people that administered the bankruptcy case?
>
> MR. KIRIAKOS [Debtor's counsel]: Your Honor, that was -- **_there are no third-party releases at all_**. And that was one of the first things that was established during mediation. So you're correct in that supposition also.

June 15, 2023, Hrg. Tr. 20:5-15 [Dkt. No. 2010] (emphasis supplied).

15. The Court entered the Confirmation Order on June 20, 2023. [ECF No. 1952]. A copy of the confirmed Plan was attached thereto. According to the Plan, the "Policy Portfolio" would be transferred free and clear of . . . claims . . . to the fullest extent provided by the Bankruptcy Code to the Portfolio Co. . . ." Confirmation Order at p. 92. The Plan became effective on August 1, 2023. [ECF No. 2079].

**B.  Policies Originated by Coventry, Including the Alabastro Policy, are Stranger-Originated Life Insurance and Void *Ab Initio* as Illegal Human Life**

16. In the early 2000's, securitization of the life settlement industry substantially increased investor demand for certain life insurance policies but supply was "constrained by a limited number of seniors who had unwanted policies of sufficiently high value." *Price Dawe*, 28 A.3d at 1070. "As a result, STOLI promoters sought to solve the supply side shortage by generating new, high value policies." *Id.* While there are certain variations, "STOLI schemes [were] created to feign technical compliance with insurable interest statutes" and obscure that policies were being paid for by third parties hoping to profit on the insureds' deaths. *Id.* at 1074.

17. Coventry operated one such STOLI program. It worked with a nationwide network of insurance producers to identify elderly insureds who met Coventry's investment criteria and influence the seniors to become involved in Coventry STOLI transactions.

18. Policies originated through Coventry's program have been declared void *ab initio* under Delaware law in courts across the country. *Vida Longevity Fund v. Estate of Barotz*, 320 A.3d 212 (Del. 2024) (affirming grant of summary judgment for estate of insured on Coventry STOLI policy lacking insurable interest and awarding death benefit and interest to the estate), *aff'g* 2022 WL 16833545; *Estate of Daher v. LSH*, 2024 WL 3571642 (C.D. Cal. July 23, 2024) (declaring Coventry policy void *ab initio* on summary judgment under Delaware law); *U.S. Bank v. Estate of Albart*, 2023 WL 7491131 (Fla. 5th Cir. Ct. Oct. 23, 2023) (same); *Estate of Diamond v. U.S. Bank*, 2023 WL 6392688 (Fla. 15th Cir. Ct. Sept. 15, 2023) (same); *Estate of Berland v. Lavastone Capital*, 2022 WL 15023450 (D. Del. Sept. 28, 2022) (same); *Sun Life v. Wells Fargo Bank*, 2020 WL 1503641 (N.D. Ill. Mar. 30, 2020), *aff'd*, 44 F.4th 1024 (7th Cir. 2022); *Estate of Malkin v. Wells Fargo Bank*, 379 F. Supp. 3d 1263 (S.D. Fla. 2019), *aff'd*, 998 F.3d 1186 (11th Cir. 2021) (same); *Sun Life v. U.S. Bank*, 369 F. Supp. 3d 601 (D. Del. 2019) (same); *U.S. Bank v. Sun Life*, 2016 8116141 (E.D.N.Y. Aug. 30, 2016), *adopted* 2017 WL 347449 (E.D.N.Y. Jan. 24, 2017) (same); *Sun Life v. U.S. Bank*, 2016 WL 161598 (S.D. Fla. Jan. 14, 2016), *aff'd* 693 F. App'x 838 (11th Cir. 2017) (same). The program was illegal.

19. On information and belief, the Policy on Ms. Alabastro's life was one of many policies originated by the Coventry program. In or around 2005, AXA received an application for a life insurance policy on the life of Lumina Alabastro, who was then 74 years old. The application identified the owner and beneficiary of the Policy as the Lumina Alabastro 2005 Insurance Trust (the "Insurance Trust"), a Delaware statutory trust, and was signed in Wilmington, Delaware by

8

Wilmington Trust Company acting as trustee. AXA issued the Policy in March 2006 and delivered it to Wilmington Trust in Delaware.[6]

20. Contrary to LRF's contention that Ms. Alabastro "applied for" the Policy, it was Coventry that submitted the application to AXA though an agent, installed Wilmington Trust as trustee, and paid the Policy's premium. The Policy and application, which are attached to the LRF Motion, confirm that the "Owner" was the Insurance Trust with its address at Wilmington Trust's offices in Wilmington, Delaware. LRF Motion at p. 43. GWG subsequently purchased the Policy from Wilmington Trust.

### C. The Delaware Action

21. On June 23, 2025, the Alabastro Estate filed a complaint in Delaware Superior Court under Section 2704(b) against Wells Fargo seeking to recover the death benefit paid by the insurer to Wells Fargo in connection with the Policy. *See Estate of Alabastro v. Wells Fargo Bank*, No. N25C-06-230 (Del. Super. Ct. June 23, 2025). Wells Fargo removed the case to federal court.

22. LRF, VICOF III, and Wells Fargo filed motions to dismiss the Delaware Action on October 27, 2025. All three defendants argued that the Alabastro Estate's claim was precluded because the Policy had been transferred from a GWG entity's bankruptcy estate under the Plan. On that same date, the defendants filed the LRF Motion, Wells Fargo Joinder, and VICOF III Motion with this Court.

23. The Alabastro Estate dismissed VICOF III from the Delaware Action on November 4, 2025, based on its counsel's representations that it did not receive any of the Policy's death benefit. The Alabastro Estate is not pursuing any action against VICOF III at this time.

---

[6] A Delaware trust-owned life insurance policy is governed by Delaware law irrespective of the location of the insured person. See 18 Del. C. § 2704(e)(4), (g).

# ARGUMENT

24. The arguments presented by LRF and Wells Fargo fail on several independent grounds. Each of them are sufficient for the Court to deny the relief requested in the LRF Motion. Moreover, there is ample reason for the Court to permissively abstain in the interest of comity and respect for state law. The Court should deny the relief either on the merits or without prejudice to the identical arguments raised before the U.S. District Court for the District of Delaware.

### A. Transfer of the Policy Portfolio to the Portfolio Co. Free and Clear of Claims Does Not Preclude the Delaware Action.

*i) GWG and the other plan proponents failed to provide Ms. Alabastro constitutionally sufficient notice of any transfer of the Policy free and clear of her claims.*

25. LRF asserts that the Plan precludes Ms. Alabastro's claim even though she was never provided notice of the Plan or was even served notice of the chapter 11 cases. It is hard to see how that position can be maintained consistent with Bankruptcy Rule 9011(b).

26. There must have been at *least* constitutionally sufficient notice for a chapter 11 plan to be binding on a party. *See, e.g.*, *Thornton v. Seadrill Ltd.*, 626 B.R. 422, 424 n.2 (S.D. Tex. 2021) (indicating that the plan's ability to bind parties is subject to constitutional due process limitations) (citing 4 *Collier on Bankruptcy* § 5.11 (16th ed. 2020); *In Bros. Materials, Ltd.*, 2016 WL 7338409, at *5 (Bankr. S.D. Tex. Nov. 28, 2016), *aff'd* 580 B.R. 475 (S.D. Tex. 2017) ("[T]he crux of finding a final order binding upon a party is whether the challenging party received notice and was afforded an opportunity to litigate the contents of a plan or order."); *In re 50-Off Stores, Inc.*, 231 B.R. 592, 595 (Bankr. W.D. Tex. 1999) (indicating that plan proponents have the obligation to provide creditors notice of the proposed plan).[7] Notice is the elementary and fundamental requirement of

---

[7] Moreover, the Fifth Circuit has held that some "claims and interests" in property require more than merely constitutionally sufficient notice to be cut off by a plan. In particular, Bankruptcy Code § 1141(c) does not eliminate liens unless the lienholder participates in the bankruptcy. *See, e.g., In re S. White Transp., Inc.*, 725 F.3d 494, 496 (5th

due process in any proceeding that is to be accorded finality. *In re Placid Oil Co.*, 463 B.R. 803, 815 (Bankr. N.D. Tex. 2012), *aff'd*, 753 F.3d 151 (5th Cir. 2014) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Notice must be reasonably calculated under the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id.*

27. In bankruptcy, notice by publication is sufficient for "unknown" creditors but not "known" creditors. *Id.* The categories depend on whether creditor's identity can be discovered through reasonably diligent efforts based on information within the debtor's possession. *Id.* (quoting *In re Crystal Oil Co.*, 158 F.3d 291, 297 (5th Cir. 1998)).

28. If Ms. Alabastro had a contingent claim, as LRF asserts, it was clearly a "known" claim. Her name and address are reflected in the Policy Documents indicated in Exhibit 1 to the LRF Motion. That document was under GWG's custody and control. Any debtor in possession or exit financing lender represented by competent counsel would have wanted to see the policy documents before lending those assets. If it was important to those parties—or other claimants who received notice of the chapter 11 cases—that insurance proceeds *not* be subject to recovery under 18 Del. C. § 2704, that could have been expressly specified in the Plan and notice provided to the insured and the insurer. The Court should not allow the very parties who failed to ensure adequate service to use their failure as a shield to the detriment of the Alabastro Estate.

   ii)  *GWG and the bankruptcy estates had no interest in the Policy under applicable non-bankruptcy law if the Alabastro Estate's claims are established.*

29. If the Alabastro Estate establishes the claims it asserts in the Delaware Action, it follows that GWG never had any rights under the Policy. Life insurance agreements lacking a legal

---

Cir. 2013). There is no *statutory* reason that other claims and interests attaching to property would be treated differently.

11

insurable interest "are void *ab initio*, never come into legal existence, represent a 'fraud on the court,' and can never be enforced." *Est. of Malkin*, 278 A.3d at 59. The Delaware Supreme Court has expressly held:

> Nobody can have a 'property interest' in a STOLI policy or its proceeds, however, because, as this Court held in *Price Dawe*, such policies are 'nullities'—invalid human-life wagers that never come into legal existence. Similarly, because STOLI policies are void ab initio, when an investor receives their proceeds it does not commit 'a violation of the rights of the claimant' but rather a violation of Article II, Section 17 of Delaware Constitution and of the State's public policy.

*Id.* at 65. Therefore, no rights with respect to the Policy were ever part of GWG or its affiliates' bankruptcy estates such that they could be "dealt with" by the Plan and therefore washed free and clear of any claims, even if there was appropriate notice.

30.     Neither the Plan nor the Confirmation Order contained an express finding that the Policy at issue here or any of the policies comprising the Policy Portfolios constituted property of on of the bankruptcy estates or were actually sold free and clear. The term "Policy Portfolio" was defined as the "portfolio of near-duration, intermediate-duration, and long-duration life insurance policies, ***owned by Debtors DLP IC and DLP VI***." Plan at Art. I [ECF No. 1952 at p. 17] (emphasis supplied). Further, the Plan expressly limited the transfer free and clear to the acceptable bounds of the Bankruptcy Code:

> On or before the Effective Date, the Policy Portfolio will be transferred free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances (except solely with respect to any such interests expressly granted in connection with the Vida Exit Financing Facility) ***to the fullest extent provided by the Bankruptcy Code*** to Portfolio Co., and the Policy Portfolio Equity Interests will be issued and transferred pursuant to the provisions of this Plan to the Wind Down Trust.

Plan at Art. IV.D [ECF No. 1952 at p. 41]. If the Policy was void *ab initio*, never came into legal existence, would represent a fraud on the court, and could never be enforced, it was not a legal or

equitable right sufficient to be "property" for purposes of the Bankruptcy Code. It did not exist. Being included in an unspecified portfolio of assets with the Plan does not change that.

        iii)     The Alabastro Estate's right to recover under 18 Del. C. § 2704 is not a "Claim" attaching to the Policy.

31.     The Plan uses the defined term "Claims" in describing the claims that the Policy Portfolio was transferred free and clear of "to the fullest extent provided by the Bankruptcy Code." The defined term incorporates the definition from Bankruptcy Code § 101(5), which is a right to payment or a right to equitable remedy for breach of performance if that breach gives right to a right to payment. While that right to payment can be contingent, the contingency must be based on a present right.

32.     Under Delaware law, the parties to an illegal STOLI insurance agreement have no interest in the policy. It is entirely void and unenforceable. The insurer has no obligation to—and indeed should not—pay out on the policy. The ability of the insured's estate to recover under section 2704(b) is therefore not tied to a right to payment from any particular person, but rather it is a mechanism to prevent STOLI investors from profiting from a practice contrary to Delaware public policy. *See Est. of Malkin*, 278 A.3d at 63 (stating the lower court was correct in its "holding that Section 2704(b) effects the Delaware public policy against wagering on human life by ensuring that 'such bets never pay off'"").Until the STOLI investor or a subsequent purchaser has actually received the illegal funds, there is no legal relationship between the parties.

**B.     The Injunction Sought by the LRF Motion Requires an Adversary Proceeding and Should Not be Granted.**

33.     Bankruptcy Rule 7001(7) provides that a proceeding to obtain an injunction or other equitable relief requires an adversary proceeding except when sought though a plan. As discussed above, the Plan does not directly mention or provide any expressly relief on account of the Policy

on Ms. Alabastro's life. The Plan does not contain the injunction LRF is seeking. Therefore, LRF needs to bring an adversary proceeding to obtain the injunctive relief sought..

34. The requirement for an injunction matters substantively. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by *a clear showing*, carries the burden of persuasion." *In re Phila. Newspapers, LLC*, 407 B.R. 606, 617 (E.D. Pa. 2009) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The prerequisites for a preliminary or temporary injunction are: (1) a substantially likelihood that the movant will prevail on the merits, (2) a substantial threat that the movant will suffer irreparable injury in the injunction is not granted, (3) the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction, and (4) that the granting of the injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Angel v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 697 (Bankr. S.D. Tex. 2016). The LRF Motion lacks any allegation or argument related to the requirements for a temporary injunction. LRF did not because it cannot. A preliminary injunction is not appropriate.

### C. The Court Should Exercise its Discretion to Permissively Abstain.

35. Permissive abstention is authorized by 28 U.S.C. § 1334(c)(1). The statute provides:

> Except with respect to a case under chapter 15 or title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

36. The Court should decline to exercise jurisdiction over this dispute. The Delaware Action was initiated post-confirmation against non-debtors and asserts only state law causes of action. These state law issues are as controlling as the bankruptcy issues and raise important issues

of Delaware public and judicial policy in which courts sitting in Delaware have a heightened interest and greater familiarity. The principles of comity strongly support abstention despite the Court's continuing post-confirmation jurisdiction.

37. Further, the interests of judicial economy would not be substantially promoted by retaining the matter before this Court. Due to the recusal of the judge overseeing the case before, at, and after confirmation, the Court would need to get up to speed not only on the state law issues but also the occurrences prior actions before the Court. This is not substantially different than the Delaware District Court. The U.S. District Court for the District of Delaware can also adjudicate the matter.

## CONCLUSION

38. For the reasons set out above, the Court should deny the LRF Motion and Wells Fargo joinder on the merits or as an exercise of the Court's discretion to permissively abstain. The VICOF III Motion should be denied as moot. The arguments are nonsense and do not need to be heard before this Court.

[*Remainder of Page Left Intentionally Blank*]

Dated: December 12, 2025     Respectfully submitted,

SHANNON LEE BEATTY LLP

*/s/R. J. Shannon*
R. J. Shannon
State Bar No. 24108062
Ella A. Cornwall
State Bar No. 24142801
2100 Travis Street, STE 1525
Houston, Texas 77002
Email:  rshannon@shannonleellp.com
          acornwall@shannonleellp.com
Phone: (713) 714-5770

*Bankruptcy Counsel to the Alabastro Estate*

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing document was served (a) by the Court's CM/ECF System on all parties registered to receive such service at the time of filing, and (b) the following parties by separate email:

Counsel to Life Recovery Fund LLC
Debbie E. Green (dgreen@mwe.com)
Robert E. Griffin (robert.griffin@srz.com)
Ajay A. Prabhat (ajay.prabhat@srz.com)

Counsel to Wells Fargo Bank, N.A.
David Primack (dprimack@mgmlaw.com)
Kristen Perry (kristen.perry@faegredrinker.com)

Counsel to Vida Insurance Credit Opportunity Fund III GP, LLC
Patrica Tomasco (pattytomasco@quinnemanuel.com)
Victor Noskov (victornoskov@quinnemanuel.com)

*/s/R. J. Shannon*
R. J. Shannon