United States Bankruptcy Court
Southern District of Texas

**ENTERED**
July 09, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 22-90032** |
| **GWG HOLDINGS, INC.** | § | |
| and | § | |
| **GWG LIFE, LLC** | § | |
| and | § | |
| **GWG LIFE USA, LLC** | § | |
| and | § | |
| **GWG DLP FUNDING IV, LLC** | § | |
| and | § | |
| **GWG DLP FUNDING VI, LLC** | § | |
| and | § | |
| **GWG DLP FUNDING HOLDINGS VI,** | § | |
| **LLC,** | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

<u>**MEMORANDUM OPINION**</u>

In separately filed motions, Life Recovery Fund, LLC ("*LRF*") and Vida Insurance Credit Opportunity Fund III GP, LLC ("*VICOF III*") seek to enforce this Court's confirmation order of the reorganization plan in the instant bankruptcy proceeding against the Estate of Lumina Alabastro, acting through its Personal Representative, Daphne Alabastro Benitez, ("*Alabastro Estate*"), and against all other persons.[1] Wells Fargo Bank, National Association ("*Wells Fargo*" and together with LRF and VICOF III, "*Movants*")  filed its Joinder to LRF's motion.[2] The Movants request an order barring the Alabastro Estate and any other persons from asserting, pursuing, or prosecuting any claims against Movants that relate to death-benefit proceeds under an insurance policy on the life of Ms. Lumina Alabastro ("*Ms. Alabastro*").[3] The Movants contend

---

[1] ECF No. 2762; ECF No. 2765.

[2] ECF No. 2767.

[3] ECF No. 2762; ECF No. 2765.

that the policy proceeds were assets of the estates of GWG Holdings, Inc., GWG Life, LLC, GWG Life USA, LLC, GWG DLP Funding IV, LLC, GWG DLP Funding VI, LLC, and GWG DLP Funding Holdings VI, LLC (each a "*Debtor*," and, collectively, "*Debtors*") and were transferred to the Wind Down Trust on the effective date of the plan, free and clear of all liens, claims, interests, and encumbrances.[4]

On June 9, 2026, this Court conducted an evidentiary hearing, and for the reasons stated herein, the Court grants the Movants' motions to enforce this Court's Confirmation Order. First, this Court retains exclusive jurisdiction to enforce an order confirming the Debtors' Plan. Second, permissive abstention under 28 U.S.C. § 1334(c)(1) is inappropriate under the fourteen-factor test employed by the Fifth Circuit. Third, the publication notice satisfied the constitutional due process requirement for an unknown creditor holding a prepetition contingent claim. Fourth, the Movants properly sought enforcement of the Confirmation Order by a motion and were not required to do so through an adversary proceeding. Fifth, the Alabastro Estate's claims in the Delaware Action were extinguished by operation of the provisions of the Debtors' Plan, the Confirmation Order, and the Bankruptcy Code and therefore, the Alabastro Estate is enjoined from commencing judicial proceedings on account of such claims. And, sixth, the Confirmation Order is a final judgment barring collateral attacks on the determination of estate property and the free-and-clear transfer authorized by the Confirmation Order.

## I.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012-6.[5] The motions

---

[4] ECF No. 2762, at 2, ¶ 1; ECF No. 2765, at 2, ¶ 1; ECF No. 2767 at 2.

[5] 28 U.S.C. §§ 157, 1334; *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

before the Court involve a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).[6] Moreover, as explained more fully *infra*, bankruptcy courts retain jurisdiction to enforce their own confirmation order.[7] Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.[8]

## II.    Background

On June 23, 2025, the Alabastro Estate commenced a lawsuit styled *Estate of Lumina Alabastro v. Wells Fargo Bank, N.A.*, alleging it is entitled to the death benefit proceeds of a life insurance policy bearing policy number 155231755 (the "*Policy*") issued by AXA Equitable Life Insurance Company ("*AXA*") on the life of Ms. Alabastro under 18 Del. C. § 2704(b), which was removed to the United States District Court for the District of Delaware on July 30, 2025 (the "*Delaware Action*").[9] On April 20, 2022, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[10] On June 20, 2023, "Debtors' Further Modified Second Amended Joint

---

[6] 28 U.S.C. § 157(b)(2)(A).

[7] *See Angel v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 696 (Bankr. S.D. Tex. 2016). *See also Mesdag v. Nancy Sue Davis Tr. (In re Davis Offshore, L.P.)*, 644 F.3d 259, 262 n.3 (5th Cir. 2011) (holding that bankruptcy court "had core jurisdiction to interpret the Plan and confirmation order pursuant to 28 U.S.C. § 157(b)"); *In re Nelkin & Nelkin P.C.*, No. 23-34054, 2025 LX 489731, at *9 (Bankr. S.D. Tex. Oct. 1, 2025) (explaining that bankruptcy court has post-confirmation jurisdiction because dispute pertains to, among other things, "compliance with this Court's Confirmation Order"); *TXMS Real Estate Invs., Inc. v. Senior Care Ctrs., LLC (In re Senior Care Ctrs., LLC)*, 622 B.R. 680, 688 (Bankr. N.D. Tex. 2020) (stating, "whether this court retained jurisdiction to interpret the Assumption Order, Confirmation Order, Plan, and Plan-related documents is not subject to dispute" and holding that bankruptcy court had subject matter jurisdiction to interpret confirmation order post-confirmation "even under the narrowest test").

[8] 28 U.S.C. §§ 1408, 1409.

[9] ECF No. 2884-2; ECF No. 2884-5; ECF No. 2884-6; 18 Del. C. § 2704(b).

[10] ECF No. 1.

Chapter 11 Plan, Submitted by the Debtors, the Bondholder Committee, and L Bond Management, LLC as Co-Proponents"[11] (the "*Plan*"), was confirmed (the "*Confirmation Order*").[12]

On October 27, 2025, LRF filed "Life Recovery Fund LLC's Motion For An Order (A) Enforcing The Court's Confirmation Order And (B) For Related Relief"[13] and VICOF III filed "Motion Of Vida Insurance Credit Opportunity Fund III GP, LLC To Enforce The Confirmation Order And Plan" (collectively, the "*Motions to Enforce*").[14] On October 29, 2025, Wells Fargo filed its "Joinder Of Wells Fargo Bank, National Association In Life Recovery Fund, LLC's Motion For An Order (A) Enforcing The Court's Confirmation Order And (B) For Related Relief" (the "*Joinder*").[15] On December 12, 2025, the Alabastro Estate filed "The Estate Of Lumina Alabastro's Objection To (I) Life Recovery Fund LLC's Motion For An Order (A) Enforcing The Court's Confirmation Order And (B) For Related Relief, (II) Joinder Of Wells Fargo Bank, National Association, And (III) Motion Of Vida Insurance Credit Opportunity Fund III GP, LLC To Enforce The Confirmation Order And Plan."[16] On January 16, 2026, LRF filed "Life Recovery Fund LLC's Reply In Support Of Its Motion For An Order (A) Enforcing The Court's Confirmation Order And (B) For Related Relief."[17] On the same day, VICOF III filed "Vida Insurance Credit Opportunity Fund III GP, LLC's Reply Brief In Further Support Of Its Motion To Enforce The Confirmation Order And Plan."[18]

### A. The Policy and the Purchase and Sale Agreement

---

[11] ECF No. 1924.

[12] ECF No. 1952 at 17.

[13] ECF No. 2762.

[14] ECF No. 2765.

[15] ECF No. 2767.

[16] ECF No. 2792.

[17] ECF No. 2819.

[18] ECF No. 2818.

On December 7, 2005, Ms. Alabastro applied for a life insurance policy from AXA.[19] The application indicated that Ms. Alabastro had a net worth of $19,850,000 and was employed in real estate sales.[20] On March 3, 2006, AXA issued the Policy, a flexible premium universal life insurance policy on the life of Ms. Alabastro, with a face amount of $5,000,000.[21] The Policy was issued at Ms. Alabastro's attained age of 75 and was classified as a standard, non-tobacco user policy.[22] On May 28, 2008, Ms. Alabastro entered into a Purchase and Sale Agreement with the Debtor, GWG Life Settlements, LLC ("*GWG Life*").[23] Pursuant to the Purchase and Sale Agreement, Ms. Alabastro sold the Policy to the Debtor for $387,493.06, less an outstanding loan amount of $311,347.67.[24]

In the Purchase and Sale Agreement, Ms. Alabastro made extensive representations and warranties to the Debtor, including that the Policy was in full force and effect, that all insurance premiums owed to AXA had been paid in full, that the Policy was fully enforceable against AXA in all respects, that the original owner of the Policy had a valid and legally cognizable insurable interest in the life of the insured at the time of the issuance of the Policy, that Ms. Alabastro owned good, valid, and marketable title to the Policy free and clear of any and all encumbrances, that after the transfer no person claiming through Ms. Alabastro would have any interest in the Policy or its proceeds, and that Ms. Alabastro agreed to defend Debtor's title to the Policy forever against every person, entity, or governmental authority claiming an interest in or rights to the Policy by or

---

[19] ECF No. 2884-2 at 22.

[20] ECF No. 2884-2, at 23.

[21] ECF No. 2884-2, at 2, 4.

[22] ECF No. 2884-2, at 4.

[23] ECF No. 2884-3.

[24] ECF No. 2884-3, at 2, 17.

through Ms. Alabastro.[25] Following the sale, the nominal owner and beneficiary of the Policy was changed to Wells Fargo, which held title to the Policy as a securities intermediary under the Uniform Commercial Code.[26]

### B.   The Debtors' bankruptcy cases and notice

The Debtors owned and managed a portfolio of near-duration, intermediate-duration, and long-duration life insurance policies (the "*Policy Portfolio*").[27] On April 20, 2022, Debtors filed their Chapter 11 petitions.[28] On May 9, 2022, notice of commencement of the Chapter 11 cases was published in the New York Times (the "*Notice of Commencement*").[29] The Notice of Commencement provided notice that the Debtors had initiated their bankruptcy cases, the contact information for counsel to the Debtors, and the deadline for submitting a proof of claim, which was set for October 17, 2022 (the "*Bar Date*").[30] The Alabastro Estate did not file a proof of claim by the Bar Date, nor did it file any objection to the Plan prior to the confirmation hearing.[31]

### C.   The Plan and Confirmation Order

The Plan provided for the establishment of the Wind Down Trust on the Plan effective date of August 1, 2023 and the transfer of Wind Down Trust Assets to the Wind Down Trust, with such assets vesting in the Wind Down Trust free and clear of all liens, claims, interests, and encumbrances.[32] The Plan defined Wind Down Trust Assets to include the Policy Portfolio Equity

---

[25] ECF No. 2884-3, at 4, at 5-6, ¶ 6.

[26] ECF No. 1952, at 40, ¶ 60; ECF No. 2890-1, at 53; *see* U.C.C. §§ 8-102(a)(14), 8-503.

[27] ECF No. 1952 at 17, 68, ¶ 149.

[28] ECF No. 1.

[29] ECF No. 2885-6.

[30] ECF No. 2885-6.

[31] *See* Claims Register.

[32] ECF No. 1952, at 20-21, ¶ 8, at 148-49, ¶ 1.3(a), (b); ECF No. 2079.

Interests, which, in turn, were defined as the "direct and indirect equity interests in Portfolio Co.," and were deemed property of the Debtors' Estates.[33] Portfolio Co. was defined as the new successor entity, to be created after confirmation, to which Debtors shall transfer the Policy Portfolio.[34] The Policy Portfolio was defined as the portfolio of near-duration, intermediate-duration, and long-duration life insurance policies, owned by the Debtors, including the Policy.[35] The Plan provided that the Policy Portfolio would be transferred free and clear of all Liens, Claims, charges, Causes of Action, as those terms were defined in the Plan, or other encumbrances to the fullest extent provided by the Bankruptcy Code to Portfolio Co., and the Policy Portfolio Equity Interests would be issued and transferred pursuant to the provisions of the Plan to the Wind Down Trust.[36] The Plan also provided for the creation of a Litigation Trust to hold and liquidate Litigation Trust Assets, and for the establishment of the Vida Exit Financing Facility, a $630 million exit credit facility provided by affiliates of VICOF III to fund the operations and management of the Policy Portfolio.[37] Finally, the Plan defined Claim as any claim as defined in 11 U.S.C. § 101.[38]

The Confirmation Order contained detailed findings of fact and conclusions of law, including findings needed for the Plan to satisfy the requirements of 11 U.S.C. § 1141, that the Policy Portfolio constitutes property of the Debtors' estates and was properly transferred to the Wind Down Trust free and clear of all claims, liens, interests, and encumbrances, that the Vida Exit Financing Facility and the Exit Facility Documents, as those terms are defined in the Plan, are legal, valid, and binding obligations that shall not be enjoined or subject to discharge,

---

[33] ECF No. 1952, at 72, ¶ 192, at 68, ¶ 150.

[34] ECF No. 1952, at 69, ¶ 152.

[35] ECF No. 1952, at 68, ¶ 149; *see* ECF No. 2884-2; ECF No. 2884-3.

[36] ECF No. 1952, at 40–41, Article IV(D).

[37] ECF No. 1952, at 92–94; ECF No. 2765, at 6, ¶ 11.

[38] ECF No. 1952, at 56, ¶ 35.

impairment, release, avoidance, recharacterization, or subordination under applicable law, that the liens granted in connection with the Exit Financing are legal, binding, and enforceable liens that shall not be subject to avoidance, recharacterization, or subordination, that the parties have been and will be acting in good faith if they proceed to consummate the Plan and the agreements, settlements, transactions, and transfers contemplated therein, and that this Court retains exclusive jurisdiction with respect to all matters arising from or related to these Chapter 11 cases, the Plan, and the implementation of the Confirmation Order.[39]

### D. Ms. Alabastro's death, Policy payment, and the Delaware Action

On July 12, 2023, Ms. Alabastro passed away.[40] On or about September 27, 2023, AXA allegedly paid the death benefit under the Policy to Wells Fargo as the nominal policyowner and beneficiary of record, on behalf of its beneficial owner, LRF.[41] VICOF III alleges that the death benefit was applied by LRF and VICOF III in accordance with the Exit Financing Documents and the Plan's distribution waterfall.[42]

On June 23, 2025, the Alabastro Estate filed a complaint in the Superior Court of the State of Delaware against Wells Fargo, alleging that the Alabastro Policy was a void *ab initio* STOLI policy lacking insurable interest and seeking to recover the death benefit proceeds under 18 Del. C. § 2704(b).[43] On July 30, 2025, Wells Fargo removed the action to the United States District Court for the District of Delaware.[44] On September 4, 2025, the Alabastro Estate filed a First

---

[39] ECF No. 1952, at 16, ¶ y; at 26, ¶ 19; at 32, ¶ 35.

[40] ECF No. 2762, at 6, ¶ 19; ECF No. 2765, at 9, ¶ 18; ECF No. 2884-6, at 26, ¶ 73.

[41] ECF No. 2762, at 6, ¶ 20; ECF No. 2884-6, at 26, ¶ 73–74.

[42] ECF No. 2765, at 1, ¶ 1, at 2, ¶ 2.

[43] ECF No. 2884-5; ECF No. 2884-6, at 7; 18 Del. C. § 2704(b).

[44] ECF No. 2884-5, at 3.

Amended Complaint naming LRF and VICOF III as additional defendants.[45] In the Delaware Action, the Alabastro Estate alleged that Wells Fargo was paid the death benefits as the Policy's beneficiary of record, and that some or all of the proceeds were paid to and received by one or more of the other defendants.[46] The Alabastro Estate sought to recover the death benefit proceeds (plus applicable interest, attorneys' fees, and other costs and damages) from the defendants that had received them.[47]

### E. The Motions to Enforce

LRF's Motion to Enforce seeks injunctive relief against the Alabastro Estate and all other persons from asserting, pursuing, or prosecuting any claims against LRF related to the Policy, and any other party that the Alabastro Estate alleges received some or all of the Policy's proceeds, including under 18 Del. C. § 2704, in any forum, including in the Delaware Action.[48] LRF asserts that the Policy, a property of the Debtors' estates, was transferred to the Wind Down Trust by the Debtors on the effective date of the Plan free and clear of all "Liens, Claims, Interests, encumbrances, etc.," which necessarily includes the Alabastro Estate's section 2704(b) claim.[49] Through its Joinder, Wells Fargo joins LRF's Motion to Enforce and its request for relief in full for the reasons stated in the Motion to Enforce.[50]

VICOF III's Motion to Enforce seeks an order directing the Alabastro Estate to immediately dismiss with prejudice all claims against VICOF III in the Delaware Action.[51] VICOF

---

[45] ECF No. 2884-6, at 5, ¶ 7–8.

[46] ECF No. 2884-6, at 3, ¶ 3.

[47] ECF No. 2884-6, at 27, ¶ 81.

[48] ECF No. 2762, at 84, ¶ 3.

[49] ECF No. 2762, at 2, ¶ 1.

[50] ECF No. 2767

[51] ECF No. 2765, at 15–16, ¶ 30.

III asserts that the Delaware Action seeks to recover proceeds of the Policy that was transferred to LRF free and clear of all claims under the Plan, and challenges the exit financing approved by this Court by seeking amounts received and distributed by VICOF III, as administrative agent, to repay the exit loan in accordance with the distribution waterfall approved by the Court.[52]

The Alabastro Estate asserts that under Delaware law, it is illegal to wager on human life through life insurance for the benefit of those who have no relationship to the insured.[53] The Alabastro Estate alleges that policies, commonly known as "stranger originated life insurance," or STOLI, lack an insurable interest and are thus an illegal wager on human life, that such wagers violate the Delaware Constitution and public policy, are void *ab initio*, and can never be enforced.[54]

### III.   ANALYSIS

This Court retains exclusive jurisdiction to enforce the Confirmation Order, and abstention under 28 U.S.C. § 1334(c)(1) is not appropriate under the fourteen-factor test.[55] Having failed to file a timely proof of claim or an objection to confirmation, the Alabastro Estate's contingent prepetition claim and any interest in the Policy were extinguished through the free-and-clear transfers effectuated pursuant to the Plan, released under Article VIII.A of the Plan, and barred by the Plan's permanent injunction.[56] Moreover, the Movants may properly seek the foregoing relief by motion rather than adversary proceeding.[57] Finally, because the Confirmation Order is a final,

---

[52] ECF No. 2765, at 2, ¶ 1.

[53] ECF No. 2792, at 1–2, ¶ 1.

[54] ECF No. 2792, at 1–2, ¶ 1.

[55] *See* 28 U.S.C. §§ 157(b), 1334(b); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Pearl Res. Operating Co., LLC v. Transcon Cap., LLC* (*In re Pearl Res. LLC*), Nos. 20-31585, 22-3297, 2022 Bankr. LEXIS 3462, at *9–10 (Bankr. S.D. Tex. Dec. 6, 2022); 28 U.S.C. § 1334(c)(1); ECF No. 1952, at 32, ¶ 35, at 131, ¶¶ 10, 19.

[56] *See* ECF No. 1952, at 72, ¶ 192; at 87, ¶ 2, at 125, 129; ECF No. 2208.

[57] FED. R. BANKR. P. 7001; *Lockwood v. Glassratner Advisory & Cap. Grp. LLC (In re Lockwood Holdings Inc.)*, No. 4:21-cv-00456, 2024 U.S. Dist. LEXIS 30186, at *8–9 (S.D. Tex. Feb. 22, 2024).

unappealed judgment, the Alabastro Estate's attempt to relitigate the estate-property determination in a Delaware court constitutes an impermissible collateral attack that this Court shall not permit.[58]

## A. This Court retains exclusive jurisdiction to enforce the Confirmation Order

This Court possesses jurisdiction to interpret and enforce the Confirmation Order and Plan.[59] A matter is core if it invokes a substantive right provided by the Bankruptcy Code or, by its nature, could arise only in the context of a bankruptcy case.[60] A bankruptcy court maintains jurisdiction to interpret and enforce its own prior orders, and a court's enforcement of its prior order is a "core" matter.[61] Thus, enforcement of the Confirmation Order falls within the Court's core jurisdiction.[62]

Moreover, the Confirmation Order provides that this Court retains exclusive jurisdiction with respect to all matters arising from or related to the Chapter 11 cases, the Plan, and the

---

[58] *Travelers Indem. Co.*, 557 U.S. at 138–39.

[59] *See* 28 U.S.C. §§ 157(b), 1334(b); *Travelers Indem. Co.*, 557 U.S. at 151 (holding that the Bankruptcy Court had jurisdiction to interpret and enforce its own prior orders); *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229–30 (2d Cir. 2002) (concluding that core jurisdiction exists in a dispute between non-debtors over interpretation of the bankruptcy court's sale order); *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266-67 (3d Cir. 1991) (holding that a motion to enforce bankruptcy sale order is a core proceeding, and citing 11 U.S.C. § 105(a) as the "section which gives the bankruptcy court the 'power and the jurisdiction to enforce its valid orders'"); *In re Motors Liquidation Co.*, 513 B.R. 467, 477 (Bankr. S.D.N.Y. 2014) ("And it need hardly be said that I [i.e., the bankruptcy court] have jurisdiction to interpret and enforce my own orders, just as I've previously done, repeatedly, with respect to the very Sale Order here.") (internal citations omitted); *Galaz v. Katona*, No. 5:14-CV-967, 2015 U.S. Dist. LEXIS 125595, at *4 (W.D. Tex. Sept. 21, 2015) ("[I]t is well established that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders.").

[60] *SR Constr. Inc. v. RE Springs II, L.L.C.*, 106 F.4th 406, 413 (5th Cir. 2024) (citing *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[61] FED. R. BANKR. P. 3020(d); *Angel*, 552 B.R. at 684 (citing *Travelers Indem. Co.*, 557 U.S. at 151); *Nelkin & Nelkin P.C. v. Two Rivers Coffee, LLC (In re Nelkin & Nelkin P.C.)*, Nos. 23-34054, 23-02005, 2026 LX 13025, at *7 (Bankr. S.D. Tex. 2026).

[62] *See* 11 U.S.C. § 1141(c); FED. R. BANKR. P. 3020(d); *Angel*, 552 B.R. at 684; *Nelkin & Nelkin P.C.*, 2026 LX 13025, at *7.

implementation of the Confirmation Order.[63] The Plan similarly provides that this Court shall retain exclusive jurisdiction to

> resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan; . . . [64]

> hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan[.]"[65]

## B. Abstention under 28 U.S.C. § 1334(c)(1) is inappropriate

Bankruptcy courts have broad discretion on whether to abstain under 28 U.S.C. § 1334.[66] Courts generally employ the following fourteen factors in considering motions for permissive abstention under 28 U.S.C. § 1334(c)(1): (1) effect or lack thereof on the efficient administration of the estate if the court recommends remand or abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14)

---

[63] ECF No. 1952, at 32, ¶ 35.

[64] ECF No. 1952, at 130, ¶ 10.

[65] ECF No. 1952, at 130, ¶ 19.

[66] *See In re Pearl Res. LLC*, 2022 Bankr. LEXIS 3462, at *9.

possibility of prejudice to other parties in the action.[67] The balance of the factors militates against abstention.

### 1.   *The substantial effect on the efficient administration of the estate*

The first factor favors retention. Litigation of the instant proceeding in a non-bankruptcy court would adversely affect the administration of the estate because the Alabastro Estate seeks to recover property that was determined under the Plan to be property of the Debtors' estate.[68]

### 2.   *The extent to which state law issues predominate over bankruptcy issues*

The second factor favors retention. The Alabastro Estate's STOLI theory is irrelevant if, as here, its claim is barred by the Plan, the Bar Date, and the Confirmation Order regardless of the claim's merits.[69]

### 3.   *Whether there is a difficult or unsettled nature of the applicable law*

The third factor favors retention. The resolution of the issues at bar requires this Court to interpret its own Confirmation Order and provisions of the Bankruptcy Code—a straightforward analysis that will be carried out in this opinion.[70] Stated differently, the matter before the Court does not require it to interpret and apply the Delaware state law since, regardless of the merits, the Alabastro Estate is enjoined from pursuing such claims by operation of bankruptcy law, the Plan, and the Confirmation Order.[71]

---

[67] *See e.g.*, *Schreiber v. Nelkin & Nelkin, P.C. (In re Nelkin & Nelkin, P.C.)*, Nos. 23-34054, 24-3061, 2024 LX 12361, at *7-8 (Bankr. S.D. Tex. Sep. 26, 2024) (citing *In re Pearl Res.*, 2022 Bankr. LEXIS 3462, at *10).

[68] ECF No. 1952, at 68, ¶ 150, at 72, ¶ 192.

[69] *See infra* notes 110–119 and accompanying text; *Sabre Techs., L.P. v. TSM Skyline Exhibits, Inc.*, No. H-08-1815, 2008 U.S. Dist. LEXIS 98515, at *17 (S.D. Tex. Sep. 18, 2008).

[70] *See infra* notes 109–118 and accompanying text.

[71] *See infra* notes 109–118 and accompanying text.

### 4.   *Presence of a related proceeding started in a state court or other non-bankruptcy proceeding*

The fourth factor favors retention. The Alabastro Estate *did* commence a proceeding in a Delaware state court, which was later removed to the Delaware District Court.[72] However, the Plan's permanent injunction enjoins the Alabastro Estate from commencing a lawsuit on account of the released claims, including its Delaware STOLI claims.[73]

### 5.   *The presence of a jurisdictional basis other than under 28 U.S.C. § 1334*

The fifth factor favors retention. This Court possesses jurisdiction on several independent grounds.[74] A bankruptcy court maintains jurisdiction to interpret and enforce its own prior orders.[75] Additionally, the Plan and the Confirmation Order contain provisions whereby this Court explicitly retains jurisdiction over proceedings related to the implementation of the Confirmation Order.[76] Finally, this Court has jurisdiction under 11 U.S.C. §§ 105, 1142.[77]

### 6.   *Whether the instant matter is directly related to the Debtors' bankruptcy cases*

The sixth factor favors retention. The dispute is directly related to the Debtors' bankruptcy cases, involves the interpretation and enforcement of the Confirmation Order and administration of the Debtors' Plan, and concerns property that was deemed to be property of the Debtors' estates by this Court.[78]

---

[72] ECF No. 2884-5; ECF No. 2884-6.

[73] *See infra* notes 109–118 and accompanying text.

[74] *See Travelers Indem. Co.*, 557 U.S. at 151; ECF No. 1952, at 32, ¶ 35, at 130, ¶ 10, 19.

[75] FED. R. BANKR. P. 3020(d); *Angel*, 552 B.R. at 684; *Nelkin & Nelkin P.C.*, 2026 LX 13025, at *7.

[76] ECF No. 1952, at 32, ¶ 35, at 130, ¶ 10, 19.

[77] 11 U.S.C. §§ 105, 1142.

[78] ECF No. 1952, at 32, ¶ 35, at 130, ¶ 10, 19.

### 7.  *The substance rather than the form of an asserted core proceeding*

The seventh factor favors retention. Enforcement of a confirmation order is a core bankruptcy matter under 28 U.S.C. § 157(b)(2)(A) properly within the purview of the Court.[79]

### 8.  *The feasibility of severing state law claims from core bankruptcy matters*

The eighth factor favors retention. The issue of enforcement of the Confirmation Order is a bankruptcy-specific matter and is the only dispositive issue before the Court.[80]

### 9.  *The burden on the bankruptcy court's docket*

The ninth factor is neutral. The burden on the docket is minimal as the instant matter is addressed and resolved in this opinion. However, this Court has no reason to believe that the Delaware District Court cannot do the same.

### 10.  *The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties*

The tenth factor favors retention. This Court is the most appropriate forum to interpret and enforce its own orders.[81] Thus, the Movants' election to seek the relevant relief from this Court does not raise forum-shopping concerns.

### 11.  *The existence of a right to a jury trial*

The eleventh factor favors retention. No party has a right to a jury trial on the issue of enforcement of the Confirmation Order.

### 12.  *The presence of non-debtor parties in the proceeding*

The twelfth factor is neutral. While none of the parties involved in the present matter are debtors, LRF is closely related to the Debtors as it is the entity that was created pursuant to the

---

[79] *Travelers Indem. Co.*, 557 U.S. at 151.

[80] ECF No. 1952, at 32, ¶ 35, at 130, ¶ 10, 19; *see infra* notes 109–118 and accompanying text.

[81] FED. R. BANKR. P. 3020(d); *Angel*, 552 B.R. at 684; *Nelkin & Nelkin P.C.*, 2026 LX 13025, at *7.

Plan to hold the Debtors' primary asset—the Policy Portfolio—necessary for their successful reorganization.[82]

### 13. Comity

The thirteenth factor favors retention. The matter will directly affect the proper administration of the Debtors' estate and the implementation of the Plan. On the other hand, the Delaware Action remains at the pleading stage: the Delaware District Court has not yet ruled on the pending motions to dismiss or, in the alternative, to stay.[83]

### 14. The possibility of prejudice to other parties in the action

The fourteenth factor favors retention. There is no evidence that any party will be prejudiced by abstention or retention.

### C. Publication notice satisfies constitutional due process for an unknown creditor with a contingent, non-accrued claim

The Alabastro Estate's claim to recover Policy proceeds under 18 Del. C. § 2704 constitutes a contingent prepetition claim that is extinguished by the Confirmation Order. The Bankruptcy Code's expansive definition of "claim" explicitly includes contingent and unmatured rights to payment.[84] Bankruptcy law does not require that a claimant be able to assert or enforce its ultimate cause of action at the petition date in order for a claim to exist.[85] The Fifth Circuit has adopted the prepetition relationship test to determine whether an entity has a prepetition claim.[86] Under this test, in order for a future claimant to have a pre-petition claim under the Bankruptcy

---

[82] ECF No. 1952, at 69, ¶ 152; ECF No. 2208; ECF No. 2885-7; ECF No. 2890-1.

[83] ECF No. 2884-5.

[84] 11 U.S.C. § 101(5).

[85] *Pearl-Phil GMT (Far East) Ltd. v. The Caldor Corp.*, 266 B.R. 575, 581 (Bankr. S.D.N.Y. 2001) ("[U]nder the Code, a right to payment need not be currently enforceable in order to constitute a claim.").

[86] *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994); *Trevino v. HSBC Mortg. Servs.* (*In re Trevino*), 535 B.R. 110, 148 (Bankr. S.D. Tex. 2015).

Code, "there must be some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant."[87]

Here, it is undeniable that such a prepetition relationship exists.[88] The alleged conduct by the Debtors that gave rise to the Alabastro Estate's claim—the defective acquisition of the Policy from Ms. Alabastro—occurred prepetition.[89] Thus, Ms. Alabastro had a contingent prepetition claim—a right to payment that hinged on two contingencies: (1) Ms. Alabastro's death, and (2) the subsequent payment of proceeds.[90]

Publication notice can discharge the pre-confirmation claims of unknown creditors.[91] A creditor is known only where the debtor has actual or "reasonably ascertainable" knowledge of the creditor's identity.[92] For a creditor to be known, at a minimum, the debtor must possess "some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable."[93]

At the petition date, Ms. Alabastro held no present right to payment from GWG Life because recovery under 18 Del. C. § 2704 depended entirely on future contingencies: Ms. Alabastro's death and AXA's payment of the Policy proceeds.[94] These events had not occurred and might never have occurred if the policy had lapsed due to nonpayment of premiums before Ms. Alabastro's passing.[95] Moreover, Ms. Alabastro was not a counterparty with a right to payment

---

[87] *See Lemelle*, 18 F.3d at 1277; *Trevino*, 535 B.R. at 148.

[88] *See Lemelle*, 18 F.3d at 1277; *Trevino*, 535 B.R. at 148; ECF No. 2884-3.

[89] *See* ECF No. 2884-3.

[90] *See Lemelle*, 18 F.3d at 1277; *Trevino*, 535 B.R. at 148; ECF No. 2884-3.

[91] *Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 158 (5th Cir. 2014).

[92] *Id.* at 154-55.

[93] *Id.* at 155.

[94] *See* ECF No. 2884-2; ECF No. 2884-3; 18 Del. C. § 2704.

[95] *See* ECF No. 2884-2; ECF No. 2884-3.

under the Policy.[96] She was the insured and the original seller of the Policy.[97] In the 2008 Purchase and Sale Agreement, she made extensive representations and warranties that the Policy was in full force and effect, that the Policy was fully enforceable against AXA in all respects, that the original owner of the Policy had a valid and legally cognizable insurable interest in the life of the insured at the time of the issuance of the Policy, that Ms. Alabastro owned good, valid, and marketable title to the Policy free and clear of any and all encumbrances, that after the transfer no person claiming through Ms. Alabastro would have any interest in the Policy or its proceeds, and that Ms. Alabastro agreed to defend GWG Life's title to the Policy forever against every person, entity, or governmental authority claiming an interest in or rights to the Policy by or through Ms. Alabastro.[98] These representations and agreements defeat any argument that the Debtors should have foreseen the Alabastro Estate's claims.[99]

The fact that STOLI-related litigation was occurring in the life settlements industry does not transform Ms. Alabastro into a known creditor.[100] Generalized litigation risk does not establish that the debtor knew of any specific injury or any specific claim.[101] The Debtors could not reasonably have foreseen that Ms. Alabastro, who had represented that the Policy was valid and enforceable and who had agreed to defend the Debtors' title forever, would later claim that the Policy was void *ab initio*.[102] Accordingly, Ms. Alabastro was at best an unknown creditor holding

---

[96] *See* ECF No. 2884-2; ECF No. 2884-3.

[97] *See* ECF No. 2884-2; ECF No. 2884-3.

[98] ECF No. 2884-3, at 4, 5–6, ¶ 6.

[99] *See* ECF No. 2884-3, at 4, 5–6, ¶ 6.

[100] *See Williams* 753 F.3d at 157.

[101] *See id.*

[102] *See id.*; ECF No. 2884-3, at 4, 5–6, ¶ 6.

a prepetition contingent claim, and publication notice in the New York Times satisfied constitutional due process.[103]

### D. The enforcement of the injunction under the confirmed Plan does not require an adversary proceeding

The Movants were correct in seeking enforcement of the Confirmation Order by a motion rather than an adversary proceeding.[104] Federal Rule of Bankruptcy Procedure 7001 sets forth the types of matters that must be brought through adversary proceedings.[105] A proceeding to obtain an injunction or other equitable relief is an adversary proceeding, except when the relief is provided in a Chapter 9, 11, 12, or 13 plan.[106] The Movants do not request that this Court issue a new injunction; rather, they ask the Court to enforce the injunction that already exists under the confirmed Plan.[107] Thus, the Movants properly sought enforcement of this Court's Order and the injunction contained therein through their Motions to Enforce and Joinder.[108]

### E. Alabastro Estate's claim and interest were extinguished under the Plan, and it is enjoined from commencing actions on account of such claims and interests

Any claims, interests, or causes of action the Alabastro Estate might have with regard to the Policy have been extinguished under the Plan.[109] The Policy was transferred free and clear of liens, claims, interests, and encumbrances to the Wind Down Trust, after which it was sold to Apex in the same manner.[110] Said transfers occurred under the Plan in satisfaction and release of all

---

[103] *See Williams*, 753 F.3d at 157.

[104] FED. R. BANKR. P. 7001; *In re Lockwood Holdings Inc.*, 2024 U.S. Dist. LEXIS 30186, at *8–9 (holding that no adversary proceeding was required to enforce the bankruptcy court's preexisting injunction order).

[105] FED. R. BANKR. P. 7001.

[106] FED. R. BANKR. P. 7001(g).

[107] ECF No. 2762; ECF No. 2765; ECF No. 1952, at 125.

[108] ECF No. 2762; ECF No. 2765; ECF No. 1952, at 125.

[109] *See* ECF No. 1952, at 72, ¶ 192; at 87, ¶ 2, at 125, 129; ECF No. 2208.

[110] *See* ECF No. 1952, at 72, ¶ 192, at 87, ¶ 2; ECF No. 2208.

claims, including those of Ms. Alabastro and the Alabastro Estate.[111] And, the Alabastro Estate is permanently enjoined from commencing or continuing any action or proceeding on account of its released claims.[112]

The confirmed Plan provides for transfer of Policy Portfolio Equity Interests to the Wind Down Trust free and clear of all liens, claims, interests, and encumbrances.[113] The "Policy Portfolio Equity Interests" are defined as "the direct and indirect equity interests in Portfolio Co., which shall constitute property of the Debtors' Estates and shall be retained or transferred as described" in the Plan.[114] "Portfolio Co." is the new successor entity created under the plan (LRF) to which Debtors transfer Policy Portfolio, including the Policy.[115] Thus, under the Plan, the Policy has been transferred free and clear of Ms. Alabastro's potential interest in it.[116] On October 3, 2023, this Court confirmed the Wind Down Trustee's sale of "100% of the issued and outstanding limited liability company interests of LRF" to Apex pursuant to Article IV.A of the Plan—"free and clear of all Liens, Claims, Interests, [and] encumbrances."[117]

The Plan provides that distributions, rights, and treatment provided in the Plan shall be in "complete satisfaction and release" of claims, interests, and causes of action, of any nature whatsoever, including contingent, unmatured, unknown, accrued prepetition or post-petition with regard to Debtors, their estates, or property thereof.[118] Moreover, the confirmed Plan contains an

---

[111] *See* ECF No. 1952, at 125.

[112] See ECF No. 1952, at 129.

[113] ECF No. 1952, at 72, ¶ 192, at 87, ¶ 2.

[114] ECF No. 1952, at 68, ¶ 150.

[115] ECF No. 1952, at 68, ¶ 149, at 69, ¶ 152.

[116] *See* ECF No. 1952, at 72, ¶ 192, at 87, ¶ 2; ECF No. 2208.

[117] ECF No. 1952, at 87, ¶ 2 ("The Wind Down Trust Assets will vest in the Wind Down Trust free and clear of all Liens, Claims, Interests, encumbrances . . . ."); ECF No. 2208.

[118] ECF No. 1952, at 120, ¶ Art. VIII.A.

injunction permanently enjoining holders of claims released under Article VIII.A of the Plan, among other things, from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any of the claims or interests released."[119] Thus, Ms. Alabastro and the Alabastro Estate are permanently enjoined from asserting their contingent prepetition claims and interests, including the claims brought in the Delaware Action, as they were extinguished by the Plan and Confirmation Order.[120]

### F. The Confirmation Order is a final judgment that bars collateral attacks on the determination of estate property and the free-and-clear transfer

The Confirmation Order is a final federal judgment entitled to res judicata effect.[121] Once a confirmation order becomes final (that is, the time for direct appeal has elapsed), it cannot be collaterally attacked, even on grounds that the Court exceeded its jurisdiction.[122] The Confirmation Order was entered on June 20, 2023, and the Plan became effective on August 1, 2023.[123] The Alabastro Estate did not appeal the Confirmation Order within the applicable time period.[124] The Confirmation Order explicitly determined that the Policy Portfolio constitutes property of the Debtors' estates and approved its transfer to the Wind Down Trust free and clear of all claims.[125] The Alabastro Estate's attempt to relitigate whether the Policy was void *ab initio* under Delaware law—and thus whether it was ever estate property—constitutes an impermissible collateral attack

---

[119] *See* ECF No. 1952, at 125.

[120] *See* ECF No. 1952, at 125, 129.

[121] *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987); *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170 (5th Cir. 1992).

[122] *Travelers Indem. Co.*, 557 U.S. at 138-39; *Okla. State Treasurer v. Linn Operating, Inc.* (*In re Linn Energy, L.L.C.*), 927 F.3d 862, 867 (5th Cir. 2019).

[123] ECF No. 1952.

[124] *See* 28 U.S.C. § 158(a); FED. R. BANKR. P. 8002(a); ECF No. 1952, at 36, ¶ 46; ECF No. 2792, at 9, ¶ 21.

[125] ECF No. 1952, at 54, ¶ 14, at 68, ¶ 150, at 72, ¶ 192, at 148, ¶ 1.3.

on the Confirmation Order's final determination.[126] The time to raise such arguments was either before confirmation—through objections to the Plan or through an adversary proceeding—or within fourteen (14) days after the confirmation—through a direct appeal.[127] The Alabastro Estate's failure to do so does not permit it to reopen the estate-property determination years later through a collateral proceeding in state court.[128]

---

[126] *See Travelers Indem. Co.*, 557 U.S. at 138-39; *Republic Supply Co.,* 815 F.2d at 1050.

[127] *See* 28 U.S.C. § 158(a); FED. R. BANKR. P. 3020(b), 7002(b), 8002(a).

[128] *See Travelers Indem. Co.*, 557 U.S. at 138-39; *Republic Supply Co.,* 815 F.2d at 1050.

### IV. CONCLUSION

For the reasons stated herein, the Court grants the Movants' motions to enforce this Court's Confirmation Order. First, this Court retains exclusive jurisdiction to enforce an order confirming the Debtors' Plan. Second, permissive abstention under 28 U.S.C. § 1334(c)(1) is inappropriate under the fourteen-factor test employed by the Fifth Circuit. Third, the publication notice satisfied the constitutional due process requirement for an unknown creditor holding a prepetition contingent claim. Fourth, the Movants properly sought enforcement of the Confirmation Order by a motion and were not required to do so through an adversary proceeding. Fifth, the Alabastro Estate's claims in the Delaware Action were extinguished by operation of the provisions of the Debtors' Plan, the Confirmation Order, and the Bankruptcy Code and therefore, the Alabastro Estate is enjoined from commencing judicial proceedings on account of such claims. And, sixth, the Confirmation Order is a final judgment barring collateral attacks on the determination of estate property and the free-and-clear transfer authorized by the Confirmation Order.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Thursday, July 9, 2026**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**